THOMAS E. PEREZ, Assistant Attorney General
EVE L. HILL, Senior Counselor to the Assistant Attorney General
GREGORY B. FRIEL, Acting Chief
ROBERTA KIRKENDALL, Special Legal Counsel
KATHLEEN P. WOLFE, Special Litigation Counsel
NABINA SINHA, Trial Attorney
MEGAN E. SCHULLER, Trial Attorney, CSBN 281468
     U.S. Department of Justice
     950 Pennsylvania Avenue, N.W. - NYA
     Washington, D.C. 20530
     Telephone: (202) 307-0663
     Facsimile: (202) 305-9775
     Megan.Schuller@usdoj.gov
MELINDA HAAG, United States Attorney
JOANN M. SWANSON, Assistant United States Attorney, Chief, Civil Division, CSBN 88143
MELANIE L. PROCTOR, Assistant United States Attorney, CSBN 228971
     450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102
     Telephone: (415) 436-6730
     Facsimile: (415) 436-6478
     Melanie.Proctor@usdoj.gov
ATTORNEYS FOR UNITED STATES

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, | ) No. CV 12-1830-EMC |
|     Plaintiff, | ) **STATEMENT OF INTEREST OF** |
|     v. | ) **THE UNITED STATES OF AMERICA** |
| LAW SCHOOL ADMISSION COUNCIL, INC., *ET AL.*, | ) **Date**:     July 13, 2012 |
|     Defendants. | ) **Time**:     1:30 p.m. |
| JOHN DOE, JANE DOE, PETER ROE, RAYMOND BANKS, KEVIN COLLINS, RODNEY DECOMO-SCHMITT, ANDREW GROSSMAN, ELIZABETH HENNESSEY-SEVERSON, OTILIA IOAN, ALEX JOHNSON, NICHOLAS JONES, CAROLINE LEE, ANDREW QUAN, STEPHEN SEMOS, GAZELLE TALESHPOUR, KEVIN VIELBAUM, AUSTIN WHITNEY, and all other similarly situated individuals,     Real Parties in Interest. | ) **Judge**:     The Hon. Edward M. Chen |

**Table of Contents**

INTRODUCTION ...................................................................................................................1

STATUTORY AND REGULATORY BACKGROUND................................................................1

PROCEDURAL HISTORY.......................................................................................................4

ARGUMENT ........................................................................................................................5

   I.  THE DEPARTMENT'S IMPLEMENTING REGULATION IS ENTITLED TO
      DEFERENCE AS A REASONABLE CONSTRUCTION OF SECTION 309 OF THE
      ADA. ........................................................................................................5

   II.  REQUIRING UNREASONABLE TYPES AND AMOUNTS OF DOCUMENTATION
      TO SUPPORT AN APPLICANT'S REQUEST FOR A TESTING
      ACCOMMODATION VIOLATES SECTION 309 OF THE ADA. .................................7

   III. LSAC'S PRACTICE OF FLAGGING TEST SCORES VIOLATES THE ADA. ..........12

CONCLUSION....................................................................................................................16

# Table of Authorities

**Cases**

*Bragdon v. Abbott*,
   524 U.S. 624 (1998) ............................................................................................ 6

*Breimhorst v. Educational Testing Service*,
   No. 99-CV-3387, 2000 WL 34510621 (N.D. Cal. Mar. 27, 2000) (unpublished).............. 13-15

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
   467 U.S. 837 (1984) ............................................................................................ 6

*Doe v. National Board of Medical Examiners*,
   199 F.3d 146 (3d Cir. 1999) .................................................................................. 12

*Elder v. National Conference of Bar Examiners*,
   No. C 11-00199 SI, 2011 WL 672662 (N.D. Cal. Feb. 16, 2011) ......................................... 6-7

*Enyart v. National Conference of Bar Examiners*,
   630 F.3d 1153, 1162 (9th Cir. 2011),
   *cert. denied*, No. 10-1304, 2011 WL 4536525 (Oct. 3, 2011) ................................................. 4-8

**Statutes**

28 U.S.C. § 517 ............................................................................................................. 1

42 U.S.C. §§ 12101 *et seq.* ............................................................................................. 2

42 U.S.C. § 12101 note (b)(5) ......................................................................................... 2

42 U.S.C. § 12101(a)(3) ................................................................................................. 2

42 U.S.C. § 12101(a)(7) ................................................................................................. 8

42 U.S.C. § 12101(a)(8) ................................................................................................. 2

42 U.S.C. § 12101(b)(1) .............................................................................................. 1-2

42 U.S.C. § 12102(1) ..................................................................................................... 2

42 U.S.C. § 12102(4)(E)(i) ............................................................................................. 2

42 U.S.C. § 12111(9) ..................................................................................................... 3

42 U.S.C. § 12112(b)(5) ................................................................................................. 3

42 U.S.C. §§ 12181 *et seq.* .......................................................................................... 1-2

42 U.S.C. § 12182(a) ..................................................................................................... 2

42 U.S.C. § 12182(b) ..................................................................................................... 3

42 U.S.C. § 12186(b) ................................................................................................... 1, 3

42 U.S.C. § 12188(b) ..................................................................................................... 1

42 U.S.C. § 12189 ................................................................................................. *passim*

42 U.S.C. § 12203 ....................................................................................................... 15

42 U.S.C. § 12203(b) ................................................................................................... 14

**Other Authorities**

ADA Amendments Act of 2008 (P.L. 110-325) ............................................................... 1

H.R. Rep. No. 101-485 (III), at 68-69 (1990). ............................................................... 3

**Regulations**

28 C.F.R. § 36.102 ....................................................................................................... 2

28 C.F.R. § 36.201 ....................................................................................................... 2

28 C.F.R. § 36.309 ................................................................................................. *passim*

28 C.F.R. § 36.309(b)(1)(i)...................................................................................... 4, 13

28 C.F.R. § 36.309(b)(1)(ii)......................................................................................... 11

28 C.F.R. § 36.309(b)(1)(iv)..................................................................................... 8, 11

28 C.F.R. § 36.309(b)(1)(iv)-(vi)............................................................................... 4-5

28 C.F.R. § 36.309(b)(1)(v)........................................................................................... 9

28 C.F.R. § 36.309(b)(1)(vi)....................................................................................... 8-9

28 C.F.R. § 36.309(b)(1)-(3)......................................................................................... 3

28 C.F.R. § 36.309(b)(2).............................................................................................. 3

28 C.F.R. pt. 36 ............................................................................................................ 1

28 C.F.R. pt. 36, app. A ........................................................................................... 8-11

28 C.F.R. pt. 36, app. C ............................................................................................. 11

iii

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**

**INTRODUCTION**

The United States respectfully submits this Statement of Interest, pursuant to 28 U.S.C. § 517, because this litigation implicates the interpretation and application of title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181 *et seq*., and its implementing regulation.[1]   The Department of Justice ("Department") is the federal agency with primary responsibility for enforcing title III of the ADA and its implementing regulation, including the application of title III of the ADA to private entities offering credentialing examinations for postsecondary education.  *See* 42 U.S.C. § 12188(b) (2011);[2] 28 C.F.R. pt. 36 (2011).[3]

Section 309 of the ADA requires that credentialing examinations for postsecondary education be offered in a manner "accessible to persons with disabilities."  42 U.S.C. § 12189. The Attorney General is charged with issuing regulations to carry out the provisions of title III. 42 U.S.C. § 12186(b).  Pursuant to that authority, the Department promulgated 28 C.F.R. § 36.309, which addresses "[e]xaminations and courses."  Because this case concerns the proper interpretation of Section 309 and the validity of the Department's regulation, the United States has an interest in presenting its views.

Pursuant to this authority, the United States submits this Statement of Interest in support of "Plaintiff's Opposition to Motion to Dismiss."  *See* Pl.'s Opp'n to Mot. Dismiss, June 21, 2012, ECF No. 25.

**STATUTORY AND REGULATORY BACKGROUND**

Congress enacted the ADA in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C.

---

[1] Under 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any . . . district in the United States to attend to the interests of the United States in a suit pending in a court of the United States . . . ."

[2] All citations to the ADA in this Statement of Interest refer to the current text of the ADA, as published in the United States Code ("U.S.C.") 2011 edition, including changes made by the ADA Amendments Act of 2008 (P.L. 110-325), which became effective on January 1, 2009.

[3] All citations to U.S. regulations in this Statement of Interest refer to the Code of Federal Regulations ("C.F.R.") revised as of July 1, 2011, unless noted otherwise.

§ 12101(b)(1).  In enacting the ADA, Congress found that "discrimination against individuals with disabilities persists in such critical areas as employment . . . [and] education."  *Id.* § 12101(a)(3).  Congress further found that

> the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

*Id.* § 12101(a)(8).

The ADA provides federal civil rights protections and guarantees equal opportunity for individuals with disabilities in public accommodations, employment, transportation, state and local government services, and telecommunications.  *See* 42 U.S.C. §§ 12101 *et seq.*  An individual has a "disability" within the meaning of the ADA if he or she has a physical or mental impairment that substantially limits one or more major life activities, has a record of such impairment, or is regarded as having such impairment.  *Id.* § 12102(1).  The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as medication.  *Id.* § 12102(4)(E)(i).  Indeed, when passing the ADA Amendments Act, Congress stated clearly that the primary focus in cases brought under the ADA should be on whether covered entities have complied with their obligations, and "the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis."  *Id.* § 12101 note (b)(5).

Title III of the ADA prohibits discrimination on the basis of disability by public accommodations, commercial facilities, and private entities that offer examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes.  *See* 42 U.S.C. §§ 12181 *et seq.*; 28 C.F.R. §§ 36.102, 36.201.  It does so in several distinct antidiscrimination provisions.  Section 302(a) contains a general prohibition on discrimination.  42 U.S.C. § 12182(a).  Section 302(b) contains numerous specific provisions addressing various activities and actions that constitute disability

discrimination.  *Id.* § 12182(b).  And Section 309 addresses licensing, certification, and credentialing examinations in particular.  *Id.* § 12189.

Section 309 provides, "[a]ny person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals."  42 U.S.C. § 12189.  The legislative history of Section 309 explains that "this provision was adopted in order to assure that persons with disabilities are not foreclosed from educational, professional or trade opportunities because an examination or course is conducted in an inaccessible site or without an accommodation."  H.R. Rep. No. 101-485 (III), at 68-69 (1990).

Congress required the Attorney General and the Department of Justice to issue regulations implementing title III of the ADA.  42 U.S.C. § 12186(b).  Following notice and comment rulemaking, in 1991 the Attorney General promulgated 28 C.F.R. § 36.309 to implement Section 309 of the statute.  That regulation provides that, to ensure accessibility, entities offering credentialing examinations are required to offer "modifications" to an examination or to provide appropriate "auxiliary aids" if needed so as to "best ensure" that the examination measures an individual's aptitude and achievement rather than the individual's disability.  *See* 28 C.F.R. § 36.309(b)(1)-(3).  The regulation further states that "[r]equired modifications to an examination may include changes in the length of time permitted for completion of the examination and adaptation of the manner in which the examination is given."  *Id.* § 36.309(b)(2).  These modifications and auxiliary aids are commonly referred to as "testing accommodations," and will be referred to as such throughout this Statement of Interest.[4]

---

[4]  To be clear, the term "reasonable accommodation" is distinct from the "testing accommodations" referred to herein and does not appear in the title III statutory or regulatory provisions at issue in this case.  Indeed, the phrase "reasonable accommodation" is used only in title I—the statute's employment provisions.  *See* 42 U.S.C. §§ 12111(9), 12112(b)(5).  Thus, case law and guidance interpreting the ADA's "reasonable accommodation" requirement under title I of the ADA are not applicable to the Court's analysis of testing accommodations under title III.  To the contrary, 42 U.S.C. § 12189 and 28 C.F.R. § 36.309 are the controlling provisions

To further ensure accessibility for test takers with disabilities, in 2010 the Department codified longstanding guidance on the processing of requests for testing accommodations and the appropriate bounds of documentation required to support such testing accommodation requests. *See* 28 C.F.R. § 36.309(b)(1)(iv)-(vi).   These additional provisions make clear that testing entities must respond in a "timely manner" to requests for testing accommodations and may only seek reasonable documentation limited to the need for the accommodation requested. *See id.*

### PROCEDURAL HISTORY[5]

The Law School Admission Council, Inc. ("LSAC") is a non-profit organization based in Pennsylvania.  Def.'s Mot. Dismiss 1, May 17, 2012, ECF No. 13.  LSAC provides services to member schools and applicants to law school, including developing and administering the Law School Admission Test ("LSAT").  *Id.*  The Department of Fair Employment and Housing ("DFEH") is a California state agency that has authority to enforce the Unruh Civil Rights Act, which incorporates the ADA.  *See* Compl. ¶¶ 1, 16, Mar. 16, 2012, (attached to Notice of Removal of Action Under 28 U.S.C. § 1441, at Ex. A, at 8-83, April 12, 2012, ECF No. 1). Pursuant to that authority, DFEH investigated complaints against LSAC regarding the provision of testing accommodations to test takers with disabilities and issued LSAC a "Notice of Class Action Complaint and Director's Complaint" on July 22, 2010.  *See* Compl. ¶ 22.  On February 6, 2012, DFEH filed a "Group and Class Accusation" before the California Fair Employment and Housing Commission ("Commission").  Compl. ¶ 40.  LSAC elected to have the dispute heard in civil court rather than before the Commission.  Compl. ¶ 42.  DFEH then timely filed a Complaint against LSAC in the Alameda County Superior Court.  *See* Compl. ¶ 43; Def.'s Mot. Dismiss 4.  The Complaint states five causes of action, all of which are based, at least in part, on

---

in this case, and the standard contained therein governs the conduct of entities offering credentialing and other examinations.  That standard is not a reasonableness or "reasonable accommodation" standard, but rather the heightened "best ensure" standard under Section 309 that is tailored to the unique context of testing.  *See* 28 C.F.R. § 36.309(b)(1)(i); *Enyart v. Nat'l Conference of Bar Exam'rs*, 630 F.3d 1153, 1162 (9th Cir. 2011), *cert. denied*, No. 10-1304, 2011 WL 4536525 (Oct. 3, 2011).

[5] The United States has not developed an independent factual record in this matter and, for purposes of this Statement of Interest, assumes the facts alleged in the Complaint to be true.

the ADA.  *See* Compl. ¶¶ 187-216.  LSAC removed the case to federal court on April 12, 2012.

Def.'s Mot. Dismiss 4.

## **ARGUMENT**

**I.    THE DEPARTMENT'S IMPLEMENTING REGULATION IS ENTITLED TO DEFERENCE AS A REASONABLE CONSTRUCTION OF SECTION 309 OF THE ADA.**

Defendant asserts that Section 309's implementing regulation "imposes obligations that are not found in the statutory provision that it purports to implement (42 U.S.C. § 12189)." Def.'s Mot. Dismiss 18.  More specifically, Defendant challenges the regulation's requirement that testing entities' documentation requests must be reasonable and limited to the need for the testing accommodation; that such entities must give considerable weight to an applicant's documentation of past testing accommodations; and that entities must respond in a timely manner to requests for testing accommodations to ensure equal opportunity for individuals with disabilities.  *See* Def.'s Mot. Dismiss 17-18; *see also* 28 C.F.R. § 36.309(b)(1)(iv)-(vi). Defendant's contentions are baseless.  The regulatory provisions at issue are consistent with and further the statute's nondiscrimination mandate.  Moreover, they are grounded in and derive directly from the Department's longstanding positions and guidance regarding the permissible scope and treatment of requests for testing accommodations.

Both the Ninth Circuit and this Court have previously addressed and rejected similar challenges to the Department's regulatory implementation of Section 309—in particular, with respect to the "best ensure" standard in 28 C.F.R. § 36.309—and conclusively determined that the regulation is a reasonable interpretation of Section 309.  In *Enyart v. National Conference of Bar Examiners*, the Ninth Circuit unequivocally rejected the defendant testing entity's argument that 28 C.F.R § 36.309's "best ensure" standard imposes an obligation beyond the statutory mandate.  *See Enyart*, 630 F.3d 1153, 1162 (9th Cir. 2011), *cert. denied*, No. 10-1304, 2011 WL 4536525 (Oct. 3, 2011).  The court held that the statutory requirement that examinations be offered "in a place and manner accessible to persons with disabilities" is sufficiently ambiguous that the court must respect the Department's interpretive regulations.  *See id.* at 1161-62.  The

- 5 -

Ninth Circuit further held that the Department's interpretation of Section 309 contained in its regulation is a permissible construction of the statute and thus deserves deference.  *See id.* at 1161-62 (concluding that "28 C.F.R. § 36.309 is entitled to *Chevron* deference").  And in *Elder v. National Conference of Bar Examiners*, this Court cited *Enyart*'s holding regarding Section 309 and its implementing regulation, and accorded the Department's regulation deference.  *See Elder*, No. C 11-00199 SI, 2011 WL 672662, at *6-7 (N.D. Cal. Feb. 16, 2011).

The courts' analyses and conclusions in *Enyart* and *Elder* apply equally with respect to the regulatory requirements addressing the types and amount of documentation a testing entity may request from an applicant for testing accommodations.  Such requirements reflect a reasonable construction of Section 309's mandate that examinations must be provided in a manner accessible to people with disabilities, and are therefore authoritative interpretations entitled to deference.  *See Bragdon v. Abbott*, 524 U.S. 624, 646 (1998) (stating that the Department's views in its title III regulations are entitled to deference); *see also Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984) ("Considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer.").

As the Ninth Circuit found in *Enyart*, and as is equally relevant here, the meaning of "accessible" in Section 309 "is ambiguous" and "[n]owhere in § 12189, in [t]itle III more broadly, or in the entire ADA did Congress define these terms."  *Enyart*, 630 F.3d at 1161.  Moreover, the Court noted that "accessible" has various meanings and possible definitions, and the "definition alone does not provide guidance as to what an entity must do to administer an exam in an 'accessible' manner." *Id.* at 1161 n.2.  The Ninth Circuit thus concluded that Section 309 is ambiguous in this respect, and so the Department's construction of the statute is entitled to deference, "so long as that interpretation is based upon a permissible construction of the statute." *See id.* at 1162 (citation omitted).

The *Enyart* Court's finding of ambiguity in this respect easily defeats Defendant's challenge to the regulatory provisions at issue in this case.  As discussed further below, a testing

entity's unreasonable, untimely, and unduly burdensome documentation demands can effectively exclude individuals with disabilities from receiving testing accommodations and equal access to educational and employment opportunities just as if the entity had adopted a strict ban on such individuals taking the exam.  Thus, because the Department's regulatory provisions related to documentation requests are based upon a permissible construction of Section 309, the Department's implementing regulation deserves *Chevron* deference.  *See Enyart*, 630 F.3d at 1162; *see also Elder*, 2011 WL 672662, at \*6 (citing *Enyart*'s holding that 28 C.F.R § 36.309 deserves deference).  Accordingly, 28 C.F.R. § 36.309 sets out the appropriate legal standard to apply in this case.

## II.  REQUIRING UNREASONABLE TYPES AND AMOUNTS OF DOCUMENTATION TO SUPPORT AN APPLICANT'S REQUEST FOR A TESTING ACCOMMODATION VIOLATES SECTION 309 OF THE ADA.

Defendant asserts that "testing organizations have the right to request reasonable documentation" and "to make a timely request for supplemental information if the information submitted by an applicant does not establish the nature of the disability or the need for reasonable testing accommodations."  Def.'s Mot. Dismiss 19.  Even if true, these statements are not contrary to Plaintiff's assertion that "requiring *unreasonable* types and *excessive* amounts of documentation to support each accommodation request" violates the ADA.  *See* Compl. ¶ 213 (emphases added).  Defendant raises this as a point of contention, however, suggesting it misunderstands the provisions of the regulation addressing the proper scope of requests for documentation to support the need for testing accommodations and the process for evaluating test takers' requests for testing accommodations.  Specifically, Defendant seems to misconstrue what is a "reasonable" request for documentation in support of a test taker's application for testing accommodations, as well as the proper weight that such documentation should be afforded when evaluating a test taker's need for testing accommodations.[6]  We thus address these

---

[6] Defendant cites one of the Department's settlement agreements to support its interpretation of what qualifies as a "reasonable" documentation request and the appropriate weight afforded to the documentation provided on behalf of an applicant for testing accommodations.  Def.'s Mot. Dismiss 19.  However, a settlement agreement is not relevant legal authority, as it is "by definition, a compromise and does not necessarily embrace the maximum reach of the statute."

provisions to provide further clarification of what constitutes a violation of Section 309 with respect to documentation requests by testing entities.

The provisions of 28 C.F.R. § 36.309 addressing documentation requests derive directly from Section 309 and further the purposes of the ADA. A fundamental goal of the ADA is to assure equality of opportunity and full participation for individuals with disabilities. *See* 42 U.S.C. § 12101(a)(7). The requirements of Section 309 are integral to ensuring equal access to licensing, certification, and credentialing exams for test takers with disabilities—and, consequently, the educational and employment opportunities that increasingly hinge on such exams. Moreover, the provisions of the regulation implementing Section 309 are consistent with the Department's experience and history of enforcement in this area. This includes the provisions addressing the appropriate bounds of documentation requests by testing entities in support of an applicant's request for testing accommodations.

Section 309's implementing regulation requires that documentation requests by testing entities must be "reasonable and limited to the need for the modification, accommodation, or auxiliary aid or service requested." 28 C.F.R. § 36.309(b)(1)(iv). The regulation thus makes clear that requiring unreasonable types and excessive amounts of documentation to support an applicant's request for a testing accommodation violates the ADA. Testing entities also must respond in a "timely manner" to requests for testing accommodations, *see id.* § 36.309(b)(1)(vi), in order to ensure equal opportunity and equal access for persons with disabilities. *See* 28 C.F.R. pt. 36, app. A, at 785. As explained in the guidance to the regulation, "[f]ailure by a testing entity to act in a timely manner, coupled with seeking unnecessary documentation, could result in such an extended delay that it constitutes a denial of equal opportunity or equal treatment in an

---

*Enyart*, 630 F.3d at 1164 & n.5. Indeed, a more recent settlement agreement, between the United States and LSAC, includes broader documentation provisions that more closely mirror the reach of the statute and regulations. *See Settlement Agreement Between the United States of America and the Law School Admission Council, Inc.*, ADA.gov (Sept. 27, 2011), http://www.ada.gov//lsac_2011.htm (quoting extensively from 42 U.S.C. § 12189 and 28 C.F.R. § 36.309). Ultimately, the ADA and its implementing regulations provide the legal standards applicable to professional examinations, and thus are the appropriate legal source to determine what constitutes a violation of the ADA.

examination setting for persons with disabilities." *Id.* at 786. The guidance thus explains the direct connection between these provisions addressing the processing of requests for testing accommodations and core goals of the ADA.

Indeed, these provisions if implemented properly work in harmony to assure equality of opportunity and full participation for individuals with disabilities. For example, the guidance to the regulation states that, generally, a testing entity should accept, without further inquiry, "documentation provided by a qualified professional who has made an individualized assessment of an applicant that supports the need for the modification, accommodation, or aid requested," and provide the testing accommodation. *See* 28 C.F.R. pt. 36, app. A, at 782-84. The guidance further explains that "[r]eports from experts who have personal familiarity with the candidate should take precedence over those from, for example, reviewers for testing agencies, who have never personally met the candidate or conducted the requisite assessments for diagnosis and treatment." *Id.* at 784. Similarly, the regulation provides that testing entities must give "considerable weight to documentation of past modifications, accommodations, or auxiliary aids or services received in similar testing situations," or pursuant to an educational plan. 28 C.F.R. § 36.309(b)(1)(v). Compliance with these requirements should in turn enable testing entities to respond in a "timely manner" to requests for testing accommodations. *See id.* § 36.309(b)(1)(vi); 28 C.F.R. pt. 36, app. A, at 785-86. In contrast, if testing entities make unreasonable demands for documentation, those demands create impediments to receiving testing accommodations in a timely manner and may not provide applicants with a reasonable opportunity to obtain necessary testing accommodations and still be allowed to take the test in the same testing cycle.[7] *See* 28 C.F.R. pt. 36, app. A, at 785.

---

[7] During the rulemaking process, commenters indicated that complying with the burdensome documentation requirements imposed by testing entities is frequently so difficult, and negotiations over the requests so prolonged, that test applicants forgo taking the test entirely. *See* 28 C.F.R. pt. 36, app. A, at 783. Further, a recent ABA resolution and accompanying report on testing accommodations found that, based upon a review of reports and law suits, "the process to apply for and obtain accommodations is often difficult and sometimes legitimate requests are denied." *See* ABA Comm'n on Disability Rights, *Resolution 111*, at summary (Feb. 2012), *available at* http://www.americanbar.org/content/dam/aba/administrative/mental_physical_ disability/2011nov11_cdr_resolution.pdf. "For example, many applicants are put through a

In promulgating the regulation, the Department considered concerns raised by testing entities that the Department's regulatory language and guidance on documentation requests would require testing entities to accept "a brief note on a doctor's prescription pad as adequate documentation of a disability and the need for an accommodation," and would result in "individuals skewing testing results by falsely claiming or feigning disabilities as an improper means of seeking advantage on an examination."  *See* 28 C.F.R. pt. 36, app. A, at 783.  The Department determined that these concerns were unfounded[8] and explained its position in detail in the guidance to the regulation.  *See id.* at 783-85.  The guidance clarifies that "appropriate documentation may vary depending on the nature of the disability and the specific modification or aid requested" and that "[n]o one piece of evidence may be dispositive in mak[ing] a testing accommodation determination."  *Id.* at 783-84.  The proper weight accorded "a letter or other communication from a doctor or other qualified professional would depend on the professional's relationship with the candidate and the specific content of the communication, as well as how the letter fits in with the totality of the other factors used to determine testing accommodations" under 28 C.F.R. § 36.309.  *Id.* at 784.  The Department's guidance further clarifies that documentation submitted on behalf of a testing candidate must be provided by a "qualified professional"—someone who is "licensed or otherwise properly credentialed" with "expertise in the disability for which the modifications or accommodations are sought," and who "has individually and personally evaluated the candidate as opposed to simply considering scores from a review of documents."  *See id.*

It thus follows that applicants who submit appropriate documentation that meets the standards explained above "should not be subjected to unreasonably burdensome requests for additional documentation."  *See* 28 C.F.R. pt. 36, app. A.  As explained in the guidance to the

---

burdensome process or are denied accommodations that they have been receiving in school for years."  *Id.*

[8] Notably, fewer than 1.5% of LSAT test takers requested testing accommodations during the last testing year (June 2011 to February 2012).  *See* Letter from Joan E. Van Tol, Gen. Counsel, LSAC, to Cal. State Assembly (Apr. 10, 2012) (on file with the Committee on Higher Education of the California State Assembly).

1   2010 regulation, these documentation standards "reflect[] the Department's longstanding
2   position," *id.*, which dates back more than 20 years.  The Department initially set out the
3   parameters of appropriate documentation requests relating to examinations and courses covered
4   by this section in the preamble to the 1991 regulation, stating that "[e]xaminers may require
5   evidence that an applicant is entitled to modifications or aids . . . , but requests for documentation
6   must be reasonable and must be limited to the need for the modification or aid requested."  *See*
7   28 C.F.R. pt. 36, app. C, at 910; *see also* 28 C.F.R. pt. 36, app. A, at 782.  The preamble
8   explained that "[a]ppropriate documentation might include a letter from a physician or other
9   professional, or evidence of a prior diagnosis or accommodation, such as eligibility for a special
10  education program."  28 C.F.R. pt. 36, app. C, at 910.  This guidance was based upon the
11  requirement in paragraph (b)(1)(ii) of the 1991 regulation that any examination designed for
12  individuals with disabilities be offered as often and in as timely a manner as other examinations.
13  *See id.*; 28 C.F.R. § 36.309(b)(1)(ii) (1991).

14          Despite this regulatory provision and clearly worded guidance explaining the legal
15  bounds of documentation requests under the 1991 regulation, the Department, through its
16  enforcement work, determined that testing entities were routinely making common errors in
17  reviewing testing accommodation requests, including making documentation requests that were
18  often inappropriate and burdensome in violation of Section 309.  *See* 28 C.F.R. pt. 36, app. A, at
19  782.  Thus, new regulatory language in the 2010 regulation sought to address these continuing
20  violations of Section 309 by codifying the 1991 preamble language to eliminate any ambiguity
21  about the bounds of appropriate documentation requests under the ADA.  *See id.* at 782; *see also*
22  28 C.F.R. § 36.309(b)(1)(iv) (stating that private testing entities must assure that "[a]ny request
23  for documentation, if such documentation is required, is reasonable and limited to the need for
24  the modification, accommodation, or auxiliary aid or service requested").  The new language in
25  the 2010 regulation thus reflects the Department's longstanding position and enforcement history
26  in this area.  Indeed, the new regulatory language merely sought to clarify testing entities'
27  responsibilities under Section 309 and the 1991 regulation in ways that should lead to fewer
28

misinterpretations of the requirements, more compliance with the ADA, and less discrimination in testing.

Though seemingly narrow when examined alone, these testing accommodations provisions are, fundamentally, civil rights provisions. They comprise a web of protections that are intertwined and work together in furtherance of the purpose of the ADA—to eradicate discrimination against individuals with disabilities and to ensure equal rights and opportunities for all Americans without regard to their disabilities. And, as the above discussion demonstrates, although Defendant asserts that some of Plaintiff's claims of impermissible documentation demands are premised on actions and events that occurred before March 15, 2011, the effective date of the revised 2010 regulation, Def.'s Mot. Dismiss 18, such actions would, regardless, support a claim that Defendant is in violation of Section 309 and the 1991 regulation. *See, e.g.*, Compl. ¶¶ 61-65, 77-78, 89-90, 136-40, 146-49, 153-54, 162-64.

## III. LSAC'S PRACTICE OF FLAGGING TEST SCORES VIOLATES THE ADA.

LSAC has a policy that examinees who receive additional time on the LSAT as a disability-related testing accommodation receive a notation on their score report indicating that their exam scores were earned under nonstandard time conditions. *See* Compl. ¶ 56. This practice is commonly referred to as "flagging" test scores and will be referred to as such in this Statement of Interest. When reporting these scores to law schools, LSAC advises the schools that these examinees' scores "should be interpreted with great sensitivity and flexibility." *Id.* In addition, scores from tests taken under extended time conditions are not averaged with other scores to produce a percentile ranking, as are the test scores for all other test takers, but instead are reported individually. *See* Compl. ¶ 57. Defendant urges this Court to dismiss Plaintiff's claims that LSAC's flagging policy violates the ADA, arguing that the process is "psychometrically sound" and that "nothing in the ADA or its implementing regulations" prohibits flagging test scores.[9] Def.'s Mot. Dismiss 16. To the contrary, LSAC's practice of

---

[9] In support of this sweeping conclusion, Defendant cites a Third Circuit case that, contrary to Defendant's assertion, does not preclude an ADA claim based on test score flagging, and rather, held only that, on the record before it, the plaintiff failed to meet his evidentiary burdens and could not demonstrate a reasonable likelihood of success on his claim that flagging test scores

flagging test scores is the very type of discriminatory policy, based on unfounded stereotypes and prejudices, that Congress sought to eradicate with the ADA.  And Defendant's unjustified practice of singling out persons with disabilities in this way—essentially announcing to law schools that examinees who exercise their civil right to needed testing accommodations may not deserve the scores they received—is discrimination prohibited by the ADA.  Indeed, Defendant's flagging policy, which, at its core, announces an individual's disability above all else, cannot be reconciled with the ADA's mandate that testing entities must administer exams so as to best ensure that exam results reflect individuals' skills and achievement level and *not* their disability.  *See* 28 C.F.R. § 36.309(b)(1)(i).

Section 309 and its implementing regulation require testing agencies to provide testing accommodations for test takers with disabilities and to select and administer the test to best ensure that the test results for test takers with disabilities reflect their actual abilities.  *See* 42 U.S.C. § 12189; 28 C.F.R. § 36.309.  These provisions further the purpose of the ADA by leveling the playing field in the arena of licensing, certification, and credentialing exams. However, under LSAC's reporting system, examinees who receive testing accommodations for proven disabilities have their scores cast into doubt as to their validity and accuracy.  Given Congress's recognition, through Section 309, that nondiscriminatory testing practices are critical to ensuring that individuals with disabilities have a full and equal opportunity to educational and employment opportunities, Defendant's flagging policy can only be seen as an impermissible end-run around its ADA obligations.

Flagging test scores also raises issues of stigma, privacy, and discrimination against test takers with disabilities that implicate core tenets of the ADA.  Flagging a test score because of testing accommodations received necessarily identifies the test taker as a person with a disability,

---

violated the ADA.  *See Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146, 156-57 (3d Cir. 1999); *see also* Def.'s Mot. Dismiss 16.  Notably, this Court, in an unpublished decision, has recognized that flagging test scores may violate the ADA.  *See Breimhorst v. Educ. Testing Serv.*, No. C-99-CV-3387, 2000 WL 34510621, at *8 (N.D. Cal. Mar. 27, 2000) (unpublished) (finding that plaintiffs stated a claim against Educational Testing Service for violation of Sections 309 and 503(b) of the ADA with regard to its practice of flagging test scores).

and does so without his or her consent.  Accordingly, flagging may raise justifiable concerns for some individuals about being stigmatized, discriminated against, or prevented from competing on an equal basis in the highly competitive law school application process.  The American Bar Association (ABA) recently noted that the practice of flagging "raises unfair questions about the score's legitimacy."  *See* ABA Comm'n on Disability Rights, *Resolution 111*, at summary (Feb. 2012),  *available  at*  http://www.americanbar.org/content/dam/aba/administrative/mental_ physical_disability/2011nov11_cdr_resolution.pdf.  According to the February 2012 ABA report on testing accommodations, students with disabilities are "substantially underrepresented in law schools across the country," in part due to the fact that LSAC's testing process "does not afford the same benefits to applicants with disabilities that it affords to other applicants."  *See id.* at report 1-2.   The report further states that "when an accommodated score is labeled as 'nonstandard' or when a testing agency tells the academic program that the score does not conform to the scores of students who were not given accommodations, the student with the accommodated score is placed at a serious disadvantage."  *Id.* at report 4.

Flagging thus interferes with the rights and privacy of test takers with disabilities, and does so because they exercised a right granted and protected by Section 309 of the ADA.  Moreover, flagging may discourage test takers with disabilities from exercising their right to testing accommodations, further undermining the purpose of the ADA generally and Section 309 in particular.  *See* 42 U.S.C. § 12203(b) (It is a violation of the ADA "to coerce, intimidate, threaten, or interfere with an individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed," any right granted or protected by the ADA.); *see also Breimhorst v. Educ. Testing Serv.*, No. C-99-CV-3387, 2000 WL 34510621, at *7 (N.D. Cal. Mar. 27, 2000) (unpublished) (finding that plaintiffs stated a claim against Educational Testing Service for violation of 42 U.S.C. § 12203(b) by flagging test scores achieved with testing accommodations due to an established disability).  Indeed, three of the real parties in interest in this case are using pseudonyms because of "a legitimate fear of negative professional ramifications" should the nature of their disability and need for accommodation be identified

- 14 -

through association with this litigation.  *See* Compl. ¶ 3.  Plaintiff's factual allegations on this point, and the concerns and fears they reflect, fall squarely within the broad and explicit protections established by 42 U.S.C. § 12203, and Defendant's motion to dismiss this claim should be denied.

It is notable that flagging policies, such as LSAC's, have been soundly rejected by the ABA and most major testing entities.  Earlier this year, the ABA adopted a resolution urging LSAC, and all testing entities, to stop the "unfair practice of 'flagging.'"  *See* ABA Comm'n on Disability Rights, *Resolution 111*, at summary (Feb. 2012), *available at* http://www.americanbar.org/content/dam/aba/administrative/mental_physical_disability/2011no v11_cdr_resolution.pdf.  Indeed, according to the ABA, most testing entities have already removed flagging from the testing process.  *See id.*  For example, the Educational Testing Service (ETS), which administers the SAT, the GRE, the GMAT, and some 500 other high stakes screening exams,[10] stopped flagging test scores for all of its exams in 2003.  *See* Press Release, Coll. Bd., The College Board and Disabilities Rights Advocates Announce Agreement to Drop Flagging from Standardized Tests (July 17, 2002), *available at* http://www.collegeboard.com/press/releases/11360.html.  This decision was based in part on the recommendations of a national panel of experts who studied the issue of flagging on the SAT I.[11] *See id.*  Based on scientific, psychometric, and social evidence, a majority of the panel concluded that the SAT scores of accommodated tests had results equivalent to tests with no testing

---

[10] For purposes of this Statement of Interest, the United States assumes the statement of facts in this Court's unpublished opinion in *Breimhorst* to be true.  *See Breimhorst*, 2000 WL 34510621, at *1 (discussing ETS and the exams it administers).

[11] As part of the *Breimhorst* settlement, ETS agreed to stop flagging ETS-administered tests not owned by the College Board, including the GMAT and the GRE, among others.  *See* Press Release, Coll. Bd., The College Board and Disabilities Rights Advocates Announce Agreement to Drop Flagging from Standardized Tests (July 17, 2002), *available at* http://www.collegeboard.com/press/releases/11360.html.  In addition, based on the blue ribbon panel's recommendation, in 2003 ETS and the College Board agreed to stop the practice of flagging on all tests the College Board owned, including the SAT, PSAT/NMSQT, and AP.  *See id.*

accommodations.[12]   This runs counter to Defendant's unilateral assertion that flagging is a "psychometrically sound practice" and demonstrates the lack of support for Defendant's sweeping statements about flagging.

Because LSAC's flagging policy cannot be reconciled with the ADA's requirement that testing entities administer exams in an accessible manner so as to place individuals with disabilities on equal footing with others, and because LSAC's flagging policy, at a minimum, interferes with persons with disabilities' exercise of their civil rights, this practice should not be allowed to continue.

## CONCLUSION

For the foregoing reasons, we support "Plaintiff's Opposition to Motion to Dismiss" and ask that the Court grant deference to the Department's interpretation of the ADA and its implementing regulations when ruling on this matter.

---

[12] In addition to the strong scientific reasons for stopping flagging, the majority of the panel also found that many students were reluctant to request extended time on the SAT I, because the practice of flagging identified them to schools as having a disability.  For the full expert report see Noel Gregg et al., *The Flagging Test Scores of Individuals with Disabilities Who Are Granted the Accommodation of Extended Time: A Report of the Majority Opinion of the Blue Ribbon Panel on Flagging* (2002), *available at* http://www.dralegal.org/downloads/cases/breimhorst/majority_report.pdf.

- 16 -

DATED:        June 27, 2012                 Respectfully submitted,


MELINDA HAAG                          THOMAS E. PEREZ
United States Attorney               Assistant Attorney General
Northern District of California
                                     EVE L. HILL
                                     Senior Counselor to the Assistant Attorney General

                                     Civil Rights Division



/s/ Melanie L. Proctor               /s/ Megan E. Schuller
JOANN M. SWANSON, CSBN 88143         GREGORY B. FRIEL
Assistant United States Attorney     Acting Chief
Chief, Civil Division                ROBERTA KIRKENDALL
MELANIE  L. PROCTOR, CSBN 228971     Special Legal Counsel
Assistant United States Attorney     KATHLEEN P. WOLFE
450 Golden Gate Avenue, Box 36055    Special Litigation Counsel
San Francisco, California 94102      NABINA SINHA
Telephone: (415) 436-6730            Trial Attorney
Facsimile: (415) 436-6478            MEGAN E. SCHULLER, CSBN 281468
Melanie.Proctor@usdoj.gov            Trial Attorney
                                     Disability Rights Section
                                     Civil Rights Division
                                     U.S. Department of Justice
                                     950 Pennsylvania Avenue, N.W. - NYA
                                     Washington, D.C. 20530
                                     Telephone: (202) 307-0663
                                     Facsimile: (202) 305-9775
                                     Megan.Schuller@usdoj.gov