ROBERT E. DARBY (BAR NO. 70576)
JULIE CAPELL (BAR NO. 226662)
FULBRIGHT & JAWORSKI L.L.P.
555 South Flower Street
Forty-First Floor
Los Angeles, CA 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
rdarby@fulbright.com
jcapell@fulbright.com

ROBERT A. BURGOYNE (pro hac vice)
CAROLINE M. MEW (pro hac vice)
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 662-0200
Facsimile: (202) 662-4643
rburgoyne@fulbright.com
cmew@fulbright.com

Attorneys for Defendant
LAW SCHOOL ADMISSION COUNCIL, INC.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING,<br><br>Plaintiff,<br><br>v.<br><br>LAW SCHOOL ADMISSION COUNCIL, INC., *ET AL.*,<br><br>Defendants. | No. 3:12-cv-1830-EMC<br><br>**DEFENDANT LSAC'S RESPONSE TO THE STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**<br><br>**Hearing Date: July 13, 2012**<br>**Hearing Time: 1:30 p.m.** |
| JOHN DOE, JANE DOE, PETER ROE, RAYMOND BANKS, KEVIN COLLINS, RODNEY DECOMO-SCHMITT, ANDREW GROSSMAN, ELIZABETH HENNESSEY-SEVERSON, OTILIA IOAN, ALEX JOHNSON, NICHOLAS JONES, CAROLINE LEE, ANDREW QUAN, STEPHEN SEMOS, GAZELLE TALESHPOUR, KEVIN VIELBAUM, AUSTIN WHITNEY, and all other similarly situated individuals,<br><br>Real Parties in Interest. | |

DOCUMENT PREPARED ON RECYCLED PAPER

## INTRODUCTION

The United States has filed a Statement of Interest in this case because it "implicates" Title III of the Americans with Disabilities Act ("ADA"), as to which the U.S. Department of Justice ("DOJ") is the "primary enforcer." *See* Statement of Interest (D.E. 29) ("Statement"), at 1. The United States' appearance underscores the jurisdictional issues raised by DFEH's pursuit of this broad, ADA-based enforcement action.

For its part, the United States largely ignores the procedural history of this case and the statutory constraints that apply to DFEH in investigating discrimination complaints and initiating legal proceedings pursuant to the California Fair Employment and Housing Act ("FEHA"). Because of the dispositive threshold issues raised by LSAC in its motion to dismiss, the views of the United States need only be considered if the Court concludes that DFEH's jurisdiction extends to requests for accommodations on standardized admissions tests. *See* LSAC Mot. to Dismiss (D.E. 13) at 7-10. Furthermore, because the United States focuses exclusively on issues relating to LSAC's documentation and flagging policies, *see* Statement at 5-15, its arguments only become relevant if the Court further holds that DFEH can pursue its documentation and flagging claims notwithstanding the fact that such claims were not made by any of the 17 Complainants in the complaints they filed at the administrative level, and were not the subject of reasonable notice to LSAC and good-faith conciliation efforts on the part of DFEH. *See* LSAC Mot. to Dismiss at 10-12.

Finally, even if the United States' views on documentation requirements and flagging are considered, they do not alter the conclusion that DFEH has failed to plead sufficient facts to support its first, second, third, and fifth causes of action, or its fourth cause of action to the extent it challenges LSAC's documentation policies.[1]

Nothing in the United States' Statement of Interest undermines the arguments made by LSAC in support of its Motion to Dismiss.

---

[1] The United States acknowledges that it "has not developed an independent factual record" regarding the complaints that are the subject of this lawsuit. Statement at 4.



DOCUMENT PREPARED ON RECYCLED PAPER

## I. THE UNITED STATES DOES NOT DISPUTE THAT DFEH'S FIRST CAUSE OF ACTION FAILS TO STATE A CLAIM.

DFEH's first claim is based on a definitional "rule of construction" found in the ADA. *See* Complaint ¶¶ 187-192. As LSAC explained in its motion to dismiss, there is no private right of action under the ADA for an alleged violation of an ADA definition and, regardless, there is nothing in LSAC's accommodations policies that would "violate" this definition. *See* LSAC Mot. to Dismiss at 13-15. The United States' Statement of Interest does not argue otherwise.[2]

## II. DFEH CANNOT PURSUE ITS FOURTH AND FIFTH CAUSES OF ACTION CHALLENGING LSAC'S DOCUMENTATION REQUIREMENTS.

The United States' first two arguments relate to the documentation-related claims found in Counts Four and Five of the Complaint. *See* Statement at 5-12. As LSAC has previously argued, DFEH cannot pursue a cause of action under 42 U.S.C. § 12189 grounded in LSAC's allegedly "excessive" documentation requirements, because nothing in § 12189 imposes a limitation on the documentation that may be requested in order to evaluate a request for testing accommodations. *See* LSAC Mot. to Dismiss at 17-18. The United States asserts that the "provisions of 28 C.F.R.

---

[2] The United States does argue generally that "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as medication." Statement at 2 (citing 42 U.S.C. § 12102(4)(E)(i)). This definitional provision, relied upon by DFEH in the first count of its Complaint, *see* Complaint ¶ 188, was added to the ADA as part of the ADA Amendments Act of 2008 (P.L. 110-325) ("ADAAA"), and changed the existing standard for determining disability with respect to mitigating measures. *See* 42 U.S.C. § 12101 note (b)(2) (identifying one purpose of the ADAAA as "to reject the requirement enunciated by the Supreme Court in *Sutton v. United Air Lines, Inc.* … that whether an impairment substantially limits a major life activity is to be determined with reference to the ameliorative effects of mitigating measures"). The Unruh Act, however, does not incorporate this amended provision of the ADA into California law. Rather, the Unruh Act specifically states that "[a] violation of the right of any individual under the federal Americans with Disabilities Act ***of 1990 (P.L. 101-336)*** shall also constitute a violation of this section." Civil Code § 51(f) (emphasis added). Under the Americans with Disabilities Act of 1990, the ameliorative effects of mitigating measures such as medication could be considered in determining whether an individual was disabled within the meaning of the statute. *See, e.g.*, *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999). This is yet another reason why the first count of DFEH's complaint fails to state a claim and must be dismissed -- even if DFEH could pursue a cause of action for an alleged violation of an ADA definition, and even if the factual premise for DFEH's claim was accurate (which it is not, as shown by properly noticed materials).



DOCUMENT PREPARED ON RECYCLED PAPER

§ 36.309 addressing documentation requests derive directly from Section 309 [of the ADA, 28 U.S.C. 12189,]" Statement at 8, but Section 309 does not even mention documentation, much less impose any requirements on that subject.

As LSAC has further argued, the regulation relied upon by DFEH (and by the United States in its Statement of Interest), 28 C.F.R. § 36.309(b)(1)(iv), cannot provide a basis for liability because it imposes obligations that are not found in the statute it purports to implement. *See* LSAC Mot. to Dismiss at 18. The controlling authority is *Lonberg v. City of Riverside*, 571 F.3d 846 (9th Cir. 2009), which the United States fails to address. In *Lonberg*, the Ninth Circuit held that "[o]nly those regulations effectuating the statute's clear prohibitions and requirements are enforceable through the statute's private right of action . . . ." *Id.* at 851-52. Because the documentation requirements found in 28 C.F.R. § 36.309 (which, as noted in LSAC's Motion, did not become effective until 2011) do not trace back to any "clear prohibitions or requirements" found in 42 U.S.C. § 12189, the regulation is not enforceable through a private right of action.

Relying primarily on the Ninth Circuit's decision in *Enyart v. National Conference of Bar Examiners* and this Court's decision in *Elder v. National Conference of Bar Examiners*, the United States argues that the new regulation's documentation requirements are a reasonable construction of the "mandate" in Section 12189 "that examinations must be provided in a manner accessible to people with disabilities, and are therefore entitled to deference." *See* Statement at 5-6. But documentation requirements were not at issue in these cases and were not discussed in either opinion. *Enyart*, 630 F.3d at 1161-63; *Elder*, at *6-8. The United States has failed to show that the documentation requirements found in 28 C.F.R. § 36.309(b)(1)(iv) are enforceable through a private right of action. Count Four of the Complaint therefore fails to state a claim.

With respect to DFEH's fifth cause of action, DFEH has not sufficiently plead a claim of coercion, intimidation, threat or interference with respect to any of the 17 Complainants arising from LSAC's documentation requirements. Because DFEH has failed to plead any facts regarding any Complainant that would support a plausible claim of coercion, intimidation, or the like, it has failed to state a claim for which relief can by granted, and its fifth cause of action must be dismissed. *See* Mot. to Dismiss at 18-20. The United States does not address DFEH's



DOCUMENT PREPARED ON RECYCLED PAPER

pleading failures, and its "clarification of what constitutes a violation of Section 309 with respect to documentation requests by testing entities," Statement at 8; *see also id.* at 8-12, is irrelevant on this issue.[3]

It is nonetheless appropriate to comment briefly on the position that DOJ has taken regarding the documentation that a testing organization can request when an individual asks for extra testing time or other accommodations that are not available to other test takers on a high-stakes test, and which could provide an unfair advantage to that individual – to the detriment not only of individuals with no disabilities, but also to individuals who are disabled within the meaning of the ADA and have a legitimate need for accommodations. According to the "guidance" that accompanied DOJ's recent amendment to its regulations, a testing entity should generally "accept, **without further inquiry**, 'documentation provided by a qualified professional who has made an individualized assessment of an applicant that supports the need for the modification, accommodation, or aid requested,' and provide the accommodation." Statement at

[3] In this regard, the United States challenges LSAC's reliance on a recent Settlement Agreement between the United States and another testing agency that expressly addressed the documentation that testing organizations may request from candidates who ask for accommodations. Statement at 7 n.6. According to the United States, the Settlement Agreement "is not relevant legal authority" and instead represents a mere '"compromise'" that "'does not necessarily embrace the maximum reach of the statute.'" *Id*. (quoting *Enyart v. NCBE, supra*). This is a remarkable position for the United States to take. Surely the United States is not suggesting that it can subject LSAC to documentation requirements that differ from the requirements set forth in the referenced Settlement Agreement, because a government agency must treat regulated parties evenhandedly and may not "'grant to one person the right to do that which it denies to another similarly situated....' Deference to administrative discretion or expertise is not a license to a regulatory agency to treat like cases differently." *U.S. v. Diapulse Corp.*, 748 F.2d 56, 62 (2d Cir. 1984)(citation omitted); *see also Burlington Northern & Sante Fe Ry. v. Surface Transp. Bd.*, 403 F.3d 771, 777 (D.C. Cir. 2005)("An agency must provide an adequate explanation to justify treating similarly situated parties differently."). Nor could the United States really be suggesting that the documentation policies discussed in the Settlement Agreement might be unlawful under the ADA, but the United States agreed to them anyway as a "compromise." Article II, Section 3 of the Constitution requires the Executive Branch to "take Care that the Laws be faithfully executed." Therefore, DOJ would not enter into a settlement agreement if it had concerns regarding the lawfulness of the policies and practices endorsed in that agreement. It is presumably for this reason that courts "treat settlement agreements between an agency and a private party as equivalent to agency regulations for deference purposes." *SBC Comm'ns, Inc. v. FCC*, 407 F.3d 1223, 1230 (D.C. Cir. 2005).

9 (emphasis added, citation omitted). The "guidance" further states that documentation provided by a candidate's supporting professional "'should take precedence'" over the reports of ay professionals who have been consulted by a testing entity regarding a given candidate's accommodation request. *Id.*

This "guidance" finds no footing in the ADA and cannot be reconciled with DOJ's own documentation policies for handling accommodation requests from DOJ employees:

> [W]hen a disability and/or need for reasonable accommodation is not obvious…, the component may require that the individual provide reasonable documentation about the disability and functional limitations. The agency has a right to request supplemental medical information if the information submitted does not clearly explain the nature of the disability or the need for reasonable accommodation…. The agency also has the right to have medical information reviewed by a medical expert of the agency's choosing at the agency's request and at the agency's expense.

*See* U.S. Department of Justice, "*Manual and Procedures for Providing Reasonable Accommodations*," at 4 ("Medical Documentation and Confidentiality") (2002) (available at www.justice.gov/jmd/eeos/ddaccomprocfinal081502.htm). Similarly, in a May 28, 2010 memorandum distributed to all Civil Rights Division employees regarding the "Process for Requests for Reasonable Accommodations by Individuals with Disabilities," Assistant Attorney General Perez noted (at p. 5) that the Civil Rights Division may have an employee's medical documentation "reviewed by a medical expert" who is selected and paid by the Division. Such review would be improper if the Civil Rights Division had a legal obligation simply to defer to the recommendation of a qualified professional who had supported an employee's request for accommodations. There is no such legal obligation, however -- on DOJ or on testing entities. *Cf. Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003) (rejecting argument that there should be an evidentiary presumption in favor of a plaintiff's physician in cases involving eligibility for disability benefits under ERISA).

## III. LSAC'S PRACTICE OF FLAGGING TEST SCORES DOES NOT VIOLATE THE ADA, AND DFEH'S SECOND AND THIRD CAUSES OF ACTION MUST BE DISMISSED.

Twenty-two years after the ADA's enactment, and less than a year after the U.S. Department of Justice informed the U.S. Government Accountability Office that it was

"considering" providing "technical assistance" regarding "test score flagging,"[4] the United States asserts, for the first time to LSAC's knowledge, that the longstanding practice of flagging accommodated test scores is "discrimination prohibited by the ADA." Statement at 13.[5] DOJ made no such claim when it entered into a settlement agreement with LSAC in 2002 after conducting a lengthy investigation of LSAC's accommodation policies and practices (as well as its documentation requirements), yet it now says that LSAC's "flagging policy can only be seen as an impermissible end-run around its ADA obligations." *Id.* [6]

The United States points to no language in § 12189 or its implementing regulations that prohibits the practice of flagging. *See* Statement at 12-16. It suggests instead that flagging "may" discourage test takers from exercising their rights, and thereby "undermine" the purpose of the ADA generally and 42 U.S.C. § 12203(b) specifically, *see id.* at 14 – ignoring the fact that there is no allegation in *this case* that any of the Complainants were discouraged from exercising their rights by requesting accommodations on the LSAT. *See* LSAC Reply Br. at 9-10.

Nor does the United States point to any informal agency guidance prohibiting or even discouraging the practice of flagging accommodated test scores, despite the fact that LSAC and other testing organizations have been flagging accommodated test scores for many years. Instead, the United States relies on a recent resolution by the American Bar Association, proposed

---

[4] Letter from Eve L. Hill to George Scott, attached as Appendix II to GAO Report No. GAO-12-40 (Nov. 2011)(available at www.gao.gov).

[5] The United States asserts that, by flagging scores achieved with extra testing time, LSAC is "essentially announcing to law schools that examinees who exercise their civil right to needed testing accommodations may not deserve the scores they received." Statement at 13. This is a gross distortion of what LSAC actually says regarding the significance of a flagged score. Law schools are advised by LSAC that accommodated test scores "should be interpreted with great sensitivity and flexibility." Complaint ¶ 56. This is hardly a statement that the flagged scores are "undeserved."

[6] *See* "Settlement Agreement Between the United States of America and the Law School Admission Council" (Feb. 22, 2002)(attached hereto as Ex. A). This agreement resolved a lawsuit brought by DOJ involving LSAC's documentation requirements for individuals seeking accommodations based upon physical disabilities. DOJ was aware of LSAC's flagging policy but did not challenge that policy in its lawsuit, nor did the settlement agreement prohibit flagging or suggest that flagging might be unlawful.



DOCUMENT PREPARED ON RECYCLED PAPER

by the ABA's Commission on Disability Rights, that urges LSAC to discontinue its flagging policy. *See* Statement at 14-15. This resolution was not grounded in any statutory or regulatory language regarding flagging, but rather on unsupported and often inaccurate factual premises regarding the use of flagged scores. More importantly, Congress has tasked DOJ with enforcing the ADA, not the American Bar Association. If DOJ has concerns about flagging and wants to regulate the practice, it should conduct a notice-and-comment rulemaking under the Administrative Procedures Act (the "APA") after evaluating whether such a regulation would be consistent with, and not go beyond, the ADA's statutory mandate. DOJ should not attempt to bypass the APA's rulemaking requirements by filing Statements of Interest in adjudicatory proceedings that purport to impose new legal restrictions on regulated parties. *See, e.g., Nat'l Labor Relations Bd. v. Wyman-Gordon Co.*, 394 U.S. 759, 763-64 (1969)(stating that the rulemaking requirements of the APA "were designed to assure fairness and mature consideration of rules of general application" and cannot be "avoided by the process of making rules in the course of adjudicatory proceedings").

The United States notes that another testing organization, ETS, has decided to stop flagging accommodated test scores. *See* Statement at 15-16. However, ETS's decision (based on the recommendation of a divided panel of psychometric experts) reflected research relating to its particular tests. As one member of the panel majority, Dr. Stephen Sireci, has subsequently noted, "decisions regarding whether to flag scores from accommodated test administrations must be based on a comprehensive evaluation of validity and comparability evidence for a specific testing program," and "the case for flagging is much stronger" for the LSAT exam than it is for the test that was the subject of the panel's report, the SAT.[7]

Research shows that LSAT test scores obtained with the accommodation of extra time are not comparable to test scores obtained under standard-time conditions and tend to over-predict

---

[7] S. Sireci, "*Unlabeling the Disabled: A Perspective on Flagging Scores from Accommodated Test Administrations,*" Educational Research, Vol. 34, No. 1, at 7, 11 (Jan./Feb. 2005).



DOCUMENT PREPARED ON RECYCLED PAPER

grades in the first year of law school.[8] In such a case, well-accepted psychometric standards support the use of a flagged or annotated score: "When there is credible evidence of score comparability across regular and modified administrations, no flag should be attached to a score. When such evidence is lacking, specific information about the nature of the modification should be provided, if permitted by law, to assist users properly to interpret and act on test scores." Standard 10.11, *Standards for Educational and Psychological Testing* (1999); *see also id.* at 103 ("Appropriate professional judgment should be exercised in interpreting and using [accommodated] scores."), *and* 105 ("The fundamental principles relevant here are that important information about test score meaning should not be withheld from test users who interpret and act on test scores, and that irrelevant information should not be provided.").[9]

Thus, LSAC's decision to flag accommodated test scores is not a "discriminatory policy based on unfounded stereotypes and prejudices." Statement at 13. It is a non-discriminatory policy made in response to specific research results, and it is consistent with applicable professional standards. Nothing in Section 12189 of the ADA or the DOJ's implementing regulations prohibits such a policy. *See generally Doe v. Nat'l Bd. of Medical Examiners*, 199 F.3d 146 (3d Cir. 1999)(noting that the DOJ's ADA regulations do not "bar the practice of flagging the test scores of examinees who have received testing accommodations," and that the "expert testimony [in that case] was unanimous that it is not possible know how scores of exams taken with accommodations compare to scores of exams taken under standard conditions. The annotation simply indicates that Doe's scores are not psychometrically comparable to the scores of examinees who took the test without accommodations.").[10]

---

[8] *See* A. Amodeo et al., Executive Summary, "Predictive Validity of Accommodated LSAT Scores for the 2002-2006 Entering Law School Classes," LSAT Technical Reports (Mar. 2009). The Executive Summary is available at http://www.lsac.org/LsacResources/Research/TR/TR-09-01.asp. The full research report is available from a link on that page.

[9] The *Standards* are jointly published by the American Educational Research Association, the American Psychological Association, and the National Council on Measurement in Education.

[10] Not surprisingly, the United States dismisses *Doe v. Nat'l Bd. of Medical Examiners* (a case in which the United States chose not to participate even though the central issue in the case was score flagging), while urging the Court to rely instead on *Breimhorst v. Educational Testing*

In any event, this Court need not decide whether flagging is lawful under Section 12189 of the ADA and DOJ's implementing regulations, because DFEH should not be pursuing any flagging-related claims. No Complainant made any allegation in his or her administrative complaint relating to LSAC's flagging policy; individuals with flagged scores were not part of the class that DFEH identified to LSAC at the outset of its investigation as being the subject of the investigation; and LSAC's flagging policy was not the subject of good faith conciliation efforts on the part of DFEH. *See* LSAC Mot. to Dismiss at 10-13, 20-21; LSAC Reply Br. at 3-5, 12-14. Moreover, the Complaint in this case fails to plead *facts* that would support its flagging claims, as required by *Twombly* and *Iqbal*. *See* LSAC Mot. to Dismiss at 15-17; LSAC Reply Br. at 7-10.

**CONCLUSION**

LSAC's motion to dismiss should be granted.

Dated: July 11, 2012

Respectfully submitted,

FULBRIGHT & JAWORSKI L.L.P.

By /s/ Robert A. Burgoyne

Attorneys for Defendant Law School Admission Council, Inc.

---

*Services.* Statement at 12 n.9, 14. However, *Breimhorst* was designated "DO NOT PUBLISH" and thus "may not be cited as persuasive authority." *Westley v. Oclarao, Inc.*, 2012 U.S. Dist. LEXIS 42098, *7 (N.D. Cal. Mar. 27, 2012).