THOMAS E. PEREZ, Assistant Attorney General
EVE L. HILL, Senior Counselor to the Assistant Attorney General
GREGORY B. FRIEL, Acting Chief
ROBERTA KIRKENDALL, Special Legal Counsel
KATHLEEN P. WOLFE, Special Litigation Counsel
NABINA SINHA, Trial Attorney
MEGAN E. SCHULLER, Trial Attorney, CSBN 281468
    U.S. Department of Justice
    950 Pennsylvania Avenue, N.W. - NYA
    Washington, D.C. 20530
    Telephone: (202) 307-0663
    Facsimile: (202) 305-9775
    Nabina.Sinha@usdoj.gov
MELINDA HAAG, United States Attorney, CSBN 132612
SARA WINSLOW, Acting Chief, Civil Division, DCBN 457643
MELANIE L. PROCTOR, Assistant United States Attorney, CSBN 228971
    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-6730
    Facsimile: (415) 436-6478
    Melanie.Proctor@usdoj.gov
ATTORNEYS FOR UNITED STATES, PLAINTIFF-INTERVENOR

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, | ) No. CV 12-1830-EMC<br>) |
|     Plaintiff, | )<br>) |
| v. | )<br>) |
| LAW SCHOOL ADMISSION COUNCIL, INC., *ET AL.*, | ) **NOTICE OF MOTION AND**<br>) **MOTION BY THE UNITED STATES**<br>) **TO INTERVENE AND POINTS AND** |
|     Defendants. | ) **AUTHORITIES IN SUPPORT**<br>) |
| JOHN DOE, JANE DOE, PETER ROE, RAYMOND BANKS, KEVIN COLLINS, RODNEY DECOMO-SCHMITT, ANDREW GROSSMAN, ELIZABETH HENNESSEY-SEVERSON, OTILIA IOAN, ALEX JOHNSON, NICHOLAS JONES, CAROLINE LEE, ANDREW QUAN, STEPHEN SEMOS, GAZELLE TALESHPOUR, KEVIN VIELBAUM, AUSTIN WHITNEY, and all other similarly situated individuals, | )<br>) **Hearing Date: October 12, 2012**<br>) **Hearing Time: 1:30 p.m.**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
|     Real Parties in Interest. | ) |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES

IN SUPPORT OF MOTION TO INTERVENE ..................................................................... 1

PROCEDURAL HISTORY ................................................................................................... 2

STATEMENT OF FACTS .................................................................................................... 3

STATUTORY AND REGULATORY BACKGROUND ....................................................... 5

    A.  Section 309 of the ADA ............................................................................................ 5

    B.  Section 302 of the ADA ............................................................................................ 6

    C.  Section 503(b) of the ADA ........................................................................................ 7

STATEMENT OF ISSUES TO BE DECIDED .................................................................... 8

ARGUMENT ........................................................................................................................ 8

    A.  The United States Is Entitled to Intervention as of Right .......................................... 8

        1. The United States' Application for Intervention Is Timely ............................................ 9

        2. The United States Has a Significant Protectable Interest in the Litigation .................. 10

        3. The United States' Interest Would Be Impaired if Intervention Is Not Permitted ....... 12

        4. The United States' Interest Is Inadequately Represented by Existing Parties ............. 13

    B.  The United States' Application for Permissive Intervention Should Be Granted ........... 15

CONCLUSION ..................................................................................................................... 17

i

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*Ceres Gulf v. Cooper*, 957 F.2d 1199 (5th Cir. 1992) ................................................................. 11

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893 (9th Cir. 2011).... 8, 9, 10, 12

*Cnty. of Fresno v. Andrus*, 622 F.2d 436 (9th Cir. 1980) .................................................. 12, 14

*Enyart v. Nat'l Conference of Bar Exam'rs*, 630 F.3d 1153 (9th Cir.),
   *cert. denied*, 132 S. Ct. 366 (2011) ....................................................................................... 14

*Greene v. United States*, 996 F.2d 973 (9th Cir. 1993) ..................................................... 10

*NAACP v. New York*, 413 U.S. 345 (1973)........................................................................... 9

*Nw. Forest Res. Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996)...................................... 9

*Nuesse v. Camp*, 385 F.2d 694 (D.C. Cir. 1967) ........................................................... 12

*Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006)............................................................ 9

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983)........................................ 14

*San Juan Cnty. v. United States*, 503 F.3d 1163 (10th Cir. 2007) (Ebel, J., dissenting) ............. 14

*Scotts Valley Band of Pomo Indians of the Sugar Bowl Rancheria v.*
   *United States*, 921 F.2d 924 (9th Cir. 1990) ............................................................ 14, 15

*Smith v. Pangilinan*, 651 F.2d 1320 (9th Cir. 1981)........................................................ 11

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001)............................ 9, 10, 14

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002)....................................... 12, 13

*United States v. Oregon*, 913 F.2d 576 (9th Cir. 1990) ................................................... 9

*United States v. Oregon*, 745 F.2d 550 (9th Cir. 1984) ................................................... 9

**FEDERAL STATUTES**

20 U.S.C. § 1400................................................................................................................ 6

28 U.S.C. § 517 ............................................................................................................. 14

29 U.S.C. § 794 ............................................................................................................... 6

42 U.S.C. § 12101 ..................................................................................... 1, 4, 5, 10, 11

42 U.S.C. § 12181 ...................................................................................................... 1, 6

42 U.S.C. § 12182 ................................................................................................. *passim*

42 U.S.C. § 12186 ................................................................................................. 4, 5, 12

42 U.S.C. § 12188 ................................................................................................. *passim*

42 U.S.C. § 12189 ................................................................................................. 2, 3, 5

42 U.S.C. § 12203 ................................................................................................. *passim*

**FEDERAL RULES**

Fed. R. Civ. P. 24 ................................................................................................. *passim*

**FEDERAL REGULATIONS**

28 C.F.R. § 36.104 .......................................................................................................... 6

28 C.F.R. § 36.201 .......................................................................................................... 6

28 C.F.R. § 36.202 .......................................................................................................... 7

28 C.F.R. § 36.206 ....................................................................................................... 5, 7

28 C.F.R. § 36.302 .......................................................................................................... 2

28 C.F.R. § 36.309 ................................................................................................... 2, 5, 6

28 C.F.R. pt. 36 ...................................................................................................... 4, 5, 12

**CALIFORNIA STATUTES**

Civ. Code § 51 ................................................................................................................ 1

Gov't Code § 12948 ........................................................................................................ 1

1    PLEASE TAKE NOTICE that on October 12, 2012, at 1:30 p.m., or as soon thereafter

2    as counsel may be heard, the United States will present argument on its Motion to Intervene.

3    The United States seeks to intervene in this action as of right because it has a significant

4    protectable interest in enforcing the Americans with Disabilities Act ("ADA"), 42 U.S.C.

5    §§ 12101 *et seq*.  Alternatively, the United States seeks permissive intervention because its

6    claims share common questions of law and fact with the main action and because the action

7    involves the interpretation of a statute the Attorney General is charged by Congress to implement

8    and enforce.

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION TO INTERVENE

10   The United States seeks to intervene in this action to remedy alleged violations of titles

11   III and V of the ADA, 42 U.S.C. §§ 12181 *et seq*. and 12203.  Plaintiff, the Department of Fair

12   Employment and Housing ("DFEH"), brings this action to remedy systemic discriminatory

13   practices by the Law School Admission Council, Inc. ("LSAC") in its administration of the Law

14   School Admission Test ("LSAT").  On behalf of a statewide class, DFEH alleges, *inter alia*, that

15   LSAC violated the ADA – as incorporated into the California Fair Employment & Housing Act

16   ("FEHA"), Cal. Gov't Code § 12948, via the Unruh Civil Rights Act ("Unruh Act"), Cal. Civ.

17   Code § 51(f) – when it failed to provide required testing accommodations to individuals with

18   disabilities; when it subjected applicants who requested testing accommodations to excessive and

19   unduly burdensome documentation demands; and when it annotated, or "flagged," such

20   individuals' test results prior to sending their scores to member law schools.

21   The United States requests leave to intervene as of right, or, alternatively, to intervene by

22   permission, pursuant to Rule 24 of the Federal Rules of Civil Procedure.  Intervention as of right

23   is warranted in this case because the United States has a significant protectable interest in the

24   enforcement of the ADA that is not adequately represented by the existing parties and that may

25   be impaired if intervention is denied.  *See* Fed. R. Civ. P. 24(a)(2).  Alternatively, the United

26   States moves for permissive intervention because its claims against LSAC have questions of law

27   and fact in common with the main action and because the main action involves the interpretation

28

- 1 -

CASE NO. CV 12-1830-EMC
NOTICE OF MOTION AND MOTION BY THE UNITED STATES TO INTERVENE AND POINTS AND AUTHORITIES IN SUPPORT

1   of a statute that the Attorney General is entrusted by Congress to administer.  *See* Fed. R. Civ. P.

2   24(b)(1)-(2); *see also* 42 U.S.C. § 12188(b).

3                                        **PROCEDURAL HISTORY**

4          DFEH is a California state agency that has authority under FEHA to enforce the Unruh

5   Act, which incorporates the ADA.  *See* DFEH Compl. ¶¶ 1, 16, Mar. 16, 2012 (attached to

6   Notice of Removal of Action Under 28 U.S.C. § 1441, at Ex. A, at 8-83, Apr. 12, 2012, ECF No.

7   1).  Pursuant to that authority, DFEH filed a complaint against LSAC on March 16, 2012, in the

8   Alameda County Superior Court.  *See* DFEH Compl. ¶ 43; Def.'s Mot. Dismiss 4, May 17, 2012,

9   ECF No. 13.  The DFEH complaint states five causes of action, all of which are based on the

10  ADA – as incorporated into FEHA via the Unruh Act – and its implementing regulations.  *See*

11  DFEH Compl. ¶¶ 187-216.

12         LSAC removed the case to federal court on April 12, 2012.  Def.'s Mot. Dismiss 4.

13  LSAC filed a Motion to Dismiss on May 17, 2012.  *Id.*  LSAC's arguments for dismissal are

14  based in part on the ADA and the permissible scope of its implementing regulations.  *Id.* at 13-

15  20.  In response to LSAC's motion, the United States Department of Justice ("Department")

16  submitted a statement of interest opposing LSAC's ADA-based arguments.  Statement of

17  Interest, June 27, 2012, ECF No. 29.  As the agency charged by Congress to promulgate

18  regulations to implement title III of the ADA, the Department explained its position regarding

19  the proper application of the ADA and implementing regulations at issue in LSAC's motion.  *Id.*

20  A hearing on LSAC's motion to dismiss was held on July 13, 2012.  ECF No. 38.

21         On July 27, 2012, three of the real parties in interest named in the DFEH complaint –

22  Andrew Quan, Nicholas Jones, and Elizabeth Hennessey-Severson – filed a motion to intervene.

23  Quan *et al*. Mot. Intervene, ECF No. 42.  Their proposed complaint in intervention states four

24  causes of action, two of which allege violations of the ADA and its implementing regulation, 42

25  U.S.C. §§ 12182, 12189; 28 C.F.R. §§ 36.302, 36.309.  *See* Quan *et al*. Proposed Compl. ¶¶ 48-

26  72, July 27, 2012, ECF. No. 42-3.  The hearing on the motion to intervene filed by Quan, Jones,

27  and Hennessey-Severson is scheduled for September 7, 2012.

28

## STATEMENT OF FACTS

The United States seeks to intervene in this action to allege that LSAC engaged in a pattern or practice of discrimination against individuals with disabilities who took, or sought to take, the LSAT with testing accommodations.  Based on many of the same facts underlying the DFEH complaint and the Quan *et al*. proposed complaint in intervention, the United States' proposed complaint in intervention (attached as Exhibit A) alleges that LSAC has failed to administer the LSAT in a manner accessible to prospective law students with disabilities, in violation of 42 U.S.C. § 12189, by: (1) failing to provide testing accommodations so as to best ensure that test results reflect aptitude rather than disability, (2) making unreasonable requests for documentation in support of requests for testing accommodations, (3) failing to give considerable weight to documentation of past testing accommodations received in similar testing situations, (4) failing to respond in a timely manner to requests for testing accommodations, (5) failing to provide appropriate auxiliary aids, and (6) "flagging" (or annotating) test scores obtained with the testing accommodation of extended time.  LSAC's policies and practices also fail to provide prospective law students with disabilities the full and equal enjoyment of its goods, services, facilities, privileges, advantages, and accommodations, in violation of 42 U.S.C. § 12182, by unnecessarily flagging test scores obtained with accommodations, and by identifying and reporting otherwise confidential disability-related information through the flagging process. LSAC's flagging policy also interferes with individuals' exercise of their rights under the ADA, in violation of 42 U.S.C. § 12203.

As a result of its discriminatory policies and practices, LSAC has denied prospective law students with disabilities a full and equal opportunity to demonstrate their knowledge and aptitude and to fairly compete for educational and employment opportunities for which the LSAT is a prerequisite.  The United States' proposed complaint in intervention recognizes that Plaintiff DFEH has alleged a statewide class action and identified 17 real parties in interest harmed by LSAC's discriminatory policies and practices.  The United States' proposed complaint in intervention specifically identifies eight victims of LSAC's discriminatory policies and practices: Andrew Quan, Nicholas Jones, and Elizabeth Hennessey-Severson are also named

in the DFEH complaint and Quan *et al.* proposed complaint in intervention; in addition, the United States alleges discrimination against Matthew Kaplan, Rachel Mech, Alexander Tucker, Charles Whitman, and Lauren Wiehle.  The United States further alleges that LSAC's policies and practices have likely resulted in discrimination against other individuals with disabilities, and seeks relief under the ADA for all aggrieved individuals.

As credentialing examinations, such as the LSAT, increasingly become the gateway to educational and employment opportunities, the ADA demands that each individual with a disability has the opportunity to fairly compete for and pursue all such opportunities.  The United States' participation in this action is critical to protecting the public interest in the important issues raised in this case.

In enacting the ADA, Congress sought "to ensure that the Federal Government plays a central role in enforcing the standards established [in the Act] on behalf of individuals with disabilities . . . ." 42 U.S.C. § 12101(b)(3).  To effectuate that purpose, Congress charged the Department with primary responsibility for enforcing the ADA.  *See id.* § 12188(b); 28 C.F.R. pt. 36.  That responsibility includes promulgating regulations to implement titles III and V of the ADA.  *See* 42 U.S.C. § 12186(b); 28 C.F.R. pt. 36.  The Attorney General is also authorized to investigate allegations of disability discrimination and to file suit where there is reasonable cause to believe that an entity has engaged in a pattern or practice of discrimination or that an entity's discriminatory actions raise an issue of general public importance.  *See* 42 U.S.C. §§ 12188(b)(1)(A)(i), (b)(1)(B).

The United States' enforcement authority under the ADA is directly implicated by the claims alleged in this action, which reach core principles underlying the ADA.  The ADA rests on Congress' determination that "the Nation's proper goals" regarding individuals with disabilities include "equality of opportunity" and "full participation" for such individuals, and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."  42 U.S.C. §§ 12101(a)(7)-(8).  The ADA's requirement that testing entities administer examinations in an accessible manner is

1   pivotal to furthering the ADA's purpose "to provide a clear and comprehensive national mandate

2   for the elimination of discrimination against individuals with disabilities." *Id.* § 12101(b)(1).

3                           **STATUTORY AND REGULATORY BACKGROUND**

4          Title III of the ADA prohibits discrimination on the basis of disability by public

5   accommodations and by entities that offer examinations or courses related to applications,

6   licensing, certification, or credentialing for secondary or postsecondary education, professional,

7   or trade purposes. *See* 42 U.S.C. §§ 12182, 12189; 28 C.F.R. pt. 36. Title V of the ADA

8   prohibits any entity from coercing, intimidating, threatening, or interfering with an individual's

9   exercise or enjoyment of a right granted by the ADA. 42 U.S.C. § 12203; 28 C.F.R. § 36.206(b).

10         **A.      Section 309 of the ADA**

11         Section 309 of the ADA provides:

12             Any person that offers examinations or courses related to applications, licensing,
13             certification, or credentialing for secondary or postsecondary education,
               professional, or trade purposes shall offer such examinations or courses in a place
14             and manner accessible to persons with disabilities or offer alternative accessible
               arrangements for such individuals.
15

16   42 U.S.C. § 12189. As required by statute, 42 U.S.C. § 12186(b), in 1991, following notice and

17   comment rulemaking, the Department issued regulations implementing title III, including 28

18   C.F.R. § 36.309 to implement Section 309 of the statute. That regulation provides that, to ensure

19   accessibility, entities offering credentialing examinations must ensure that the examination is

20   administered so as to "best ensure" that the examination results accurately reflect an individual's

21   aptitude or achievement rather than the individual's disability. *See* 28 C.F.R. § 36.309(b)(1)(i).

22   The testing entity must provide any modifications, accommodations, or auxiliary aids or services

23   (commonly referred to as "testing accommodations") needed to meet the "best ensure" standard.

24   *See id.* §§ 36.309(b)(1)-(3).

25         To ensure accessibility for test takers with disabilities, the Department, in 2010 amended

26   Section 309's implementing regulation to add provisions that codify longstanding guidance on

27   the processing of requests for testing accommodations and the appropriate bounds of

28   documentation required to support such requests. *See* 28 C.F.R. §§ 36.309(b)(1)(iv)-(vi). These

1   added provisions, which were adopted through notice-and-comment rulemaking, make clear that

2   testing entities must respond in a "timely manner" to requests for testing accommodations and

3   seek only reasonable documentation limited to the need for the accommodation requested.  *See

4   id.* §§ 36.309(b)(1)(iv), (vi).  Testing entities must also give considerable weight to

5   documentation of past testing accommodations received in similar testing situations, as well as to

6   testing accommodations provided in response to an Individualized Education Program (IEP)[1] or

7   Section 504 Plan,[2] when considering an applicant's request for testing accommodations.  *See id.*

8   § 36.309(b)(1)(v).

9

10          **B.      Section 302 of the ADA**

11          In addition to the specific requirements for testing, Section 302 of the ADA prohibits

12   disability-based discrimination by all private entities that own, operate, lease (or lease to) places

13   of public accommodation.  42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).  Title III's general rule

14   provides:

15          No individual shall be discriminated against on the basis of disability in the full
16          and equal enjoyment of the goods, services, facilities, privileges, advantages, or
            accommodations of any place of public accommodation by any person who owns,
17          leases (or leases to), or operates a place of public accommodation.

18   42 U.S.C. § 12182(a).  Title III defines a "place of public accommodation" as "a facility operated

19   by a private entity whose operations affect commerce and fall within at least one" of twelve

20   categories, including convention centers, lecture halls, and other places of gathering, and

21   secondary, undergraduate, or postgraduate private schools or other places of education.  *Id.*

22   § 12181(7); 28 C.F.R. § 36.104 (definitions).

23          Title III's general rule prohibits public accommodations from affording an individual or

24   class of individuals, on the basis of disability, an unequal opportunity to participate in or benefit

25   from a good, service, facility, privilege, advantage, or accommodation.  42 U.S.C.

26   _____

27   [1] An IEP is an agreement describing the special education and related aids and services provided under
     the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*

28   [2] A Section 504 Plan is an agreement describing special or regular education and related aids and services
     provided pursuant to section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

§ 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).  It is also discriminatory for public accommodations to provide such individuals with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation that is as effective as that provided to others.  42 U.S.C. § 12182(b)(1)(A)(iii); 28 C.F.R. § 36.202(c).  Public accommodations are also prohibited from utilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability.  42 U.S.C. § 12182(b)(1)(D); 28 C.F.R. § 36.202(c).  Public accommodations must also provide reasonable modifications to policies, practices and procedures when needed to provide equal access to people with disabilities, 42 U.S.C. § 12182(b)(2)(A)(ii), and to provide auxiliary aids and services when needed to ensure equally effective communication with people with disabilities.  42 U.S.C. § 12182(b)(2)(A)(iii).  These general prohibitions, in concert with the ADA's specific testing discrimination prohibitions, reflect congressional intent to provide broad protection against disability-based discrimination, toward eliminating unnecessary barriers to full and equal opportunity for all persons with disabilities.

### C.    Section 503(b) of the ADA

Section 503(b) of the ADA prohibits interference with an individual's exercise or enjoyment of a right granted by the ADA:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act.

42 U.S.C. § 12203(b); *see also* 28 C.F.R. § 36.206(b).  The implementing regulation for Section 503(b) states that all public and private entities are subject to this anti-interference provision. *See* 28 C.F.R. § 36.206(b) ("No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by the Act or this part.").

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the United States may intervene in this action as of right.

  a. Is the United States' application timely?

  b. Does the United States have a protectable interest in the enforcement of the ADA?

  c. Is the United States so situated that disposing of the action may as a practical matter impair or impede the United States' ability to protect its interest in the enforcement of the ADA?

  d. Do the existing parties inadequately represent the United States' interest in the enforcement of the ADA?

2. Whether the United States may intervene by permission.

  a. Is the United States' application timely?

  b. Do the United States' claims share a common question of law or fact with the main action?

  c. Are any of the parties' claims or defenses based on a statute administered by the Attorney General or a regulation issued under such a statute?

  d. Will delay and prejudice to the parties' rights be avoided if intervention is permitted?

## ARGUMENT

**A. <u>The United States Is Entitled to Intervention as of Right</u>**

Federal Rule of Civil Procedure 24(a) provides that upon timely application anyone shall be permitted to intervene in an action who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). An applicant for intervention as of right must prove four elements: "(1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest. *Citizens for*

1    *Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (citing *Prete v.*

2    *Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (internal quotation marks and citation omitted)); *see*

3    *also Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001). As discussed

4    herein, the United States meets the prerequisites for intervention as of right.

5                    1.    The United States' Application for Intervention Is Timely

6            Timeliness is a threshold requirement for intervention as of right and so should be

7    considered before all other requirements. *See United States v. Oregon*, 913 F.2d 576, 588 (9th

8    Cir. 1990). When deciding whether an applicant's motion is timely, the Ninth Circuit considers

9    three factors: (1) the stage of the proceeding; (2) whether the parties would be prejudiced; and

10   (3) the reason for the delay, if any, in moving to intervene. *See id.*; *Nw. Forest Res. Council v.*

11   *Glickman*, 82 F.3d 825, 836-37 (9th Cir. 1996). Delay will weigh against intervention, but the

12   mere lapse of time alone does not necessarily preclude intervention. *See United States v.*

13   *Oregon*, 745 F.2d 550, 552 (9th Cir. 1984). Instead, timeliness should be determined by the

14   totality of the circumstances. *NAACP v. New York*, 413 U.S. 345, 366 (1973).

15          Applying these principles in this case, the United States' motion to intervene is timely

16   because the proceedings are at an early stage, intervention now would not cause prejudice to the

17   original parties, and there has been no delay by the United States in moving to intervene. DFEH

18   filed this suit in March 2012, and the United States learned of the litigation when LSAC removed

19   the action to federal court in April 2012. Consistent with the Department's administrative

20   policies, the Department undertook a deliberative evaluation of whether intervention by the

21   United States would be appropriate in this case. In the interim, LSAC filed a motion to dismiss,

22   and the United States filed a statement of interest opposing that motion. Also in the interim, real

23   parties in interest Quan, Jones, and Hennessey-Severson, filed a motion to intervene. LSAC's

24   motion to dismiss and the motion to intervene by Quan, Jones, and Hennessey-Severson are

25   pending. Discovery has not yet begun. And while the United States' proposed complaint in

26   intervention identifies additional individuals adversely affected by LSAC's actions, the United

27   States' claims turn on the same policies, practices, and procedures at issue in the pending action.

28   As such, the United States' intervention would be neither unduly burdensome nor time-

- 9 -

CASE NO. CV 12-1830-EMC
NOTICE OF MOTION AND MOTION BY THE UNITED STATES TO INTERVENE AND POINTS AND AUTHORITIES IN SUPPORT

consuming and would not prejudice the existing parties, or the potential intervenors Quan, Jones, and Hennessey-Severson, because there will be no need to reopen or re-litigate any prior proceedings between the parties.  In light of these facts, the United States' application for intervention as of right should be deemed timely.  *See Citizens for Balanced Use*, 647 F.3d at 897 (noting that traditional features of a timely application include being made at an early stage and not causing prejudice or delay).

2.   <u>The United States Has a Significant Protectable Interest<br>in the Litigation</u>

To warrant intervention as of right, an applicant must have a significant protectable interest relating to the property or transaction that is the subject of the action.  *See Citizens for Balanced Use*, 647 F.3d at 897.  To demonstrate such an interest, an applicant needs to establish that its interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue.  *Id.* at 897.  "Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry."  *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818 (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993) (citation omitted).

The United States' interest in the pending litigation supports intervention as of right.  As the federal agency charged with enforcing the ADA, the Department has a significant protectable interest in the subject matter of the pending litigation.  Underlying enactment of the ADA was Congress' intent to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1).  Congress sought "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities," and explicitly stated that one of the purposes of the ADA was "to ensure that the Federal Government plays a central role in enforcing the standards established [in the Act] on behalf of individuals with disabilities . . . ."  *Id.* §§ 12101(b)(2)-(3).  The United States' prominent enforcement role is reflected in the statutory authorization given the Attorney General to commence a legal action when discrimination prohibited by the ADA takes place.  *Id.* § 12188.  And only the Attorney General is authorized under title III to seek compensatory

- 10 -

1    damages for aggrieved individuals and civil penalties where appropriate to vindicate the public

2    interest. *Id.* § 12188.

3          This case directly implicates the United States' interest in enforcing titles III and V of the

4    ADA to ensure the "clear, strong, consistent, enforceable standards" envisioned by Congress.

5    *See* 42 U.S.C. § 12101(b)(2).  Currently, virtually every person who wants to attend a law school

6    in America must take the LSAT, and, as a practical matter, an applicant's LSAT score may be

7    dispositive as to whether and where they are admitted, what scholarships they are eligible for,

8    and even what summer jobs or internships they can obtain.  LSAC's pattern and practice of

9    discriminating against individuals with disabilities thus implicates guaranteed rights to equal

10   educational and employment opportunities that are at the heart of the ADA's protections.  And

11   while Plaintiff DFEH represents a proposed statewide class, LSAC's policies and practices are

12   applicable nationwide and the United States has a significant protectable interest in ensuring that

13   LSAC brings its policies and procedures into compliance with the ADA so that no individual

14   taking the LSAT is subject to discrimination on the basis of disability.

15         Furthermore, LSAC has already challenged, in its pending motion to dismiss, the validity

16   and scope of the ADA implementing regulations promulgated by the Department.  The United

17   States has a significant protectable interest in defending the Department's regulations from such

18   challenges and in ensuring that the Department's interpretation of the statute and regulation are

19   accurately presented to the Court in the course of this litigation.  Accordingly, the United States'

20   significant protectable interest in ensuring that this case results in clear, consistent, enforceable

21   standards, both substantive and remedial, supports intervention as of right.  *See Smith v.*

22   *Pangilinan*, 651 F.2d 1320, 1324 (9th Cir. 1981) (allowing intervention as of right by the

23   Attorney General in connection with enforcement duties related to the Certificate of Identity Act

24   of 1978 and explaining that "[c]learly, the Attorney General, who is charged with administration

25   and enforcement of the laws relating to immigration and naturalization, has an interest in a case

26   in which people seek to have it determined that they are persons who will be entitled to become

27   United States citizens"); *cf. Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203-04 (5th Cir. 1992)

28   (holding the interest of the director of Office Workers' Compensation Programs in the

1   "consistent application of . . . a statutory scheme he is charged with administering" was sufficient

2   to support intervention as of right); *Nuesse v. Camp*, 385 F.2d 694, 700-01 (D.C. Cir. 1967)

3   (finding that a state government official charged with administering a banking law had an

4   interest in advocating a particular construction of the law that was sufficient to support

5   intervention as of right).

6          Additionally, because the alternative to the United States' intervention in DFEH's lawsuit

7   is a separate action including the United States' ADA claims, the efficiency goals implicit in

8   Rule 24(a) are furthered if intervention is permitted here.  *See Cnty. of Fresno v. Andrus*, 622

9   F.2d 436, 438 (9th Cir. 1980) (the significant protectable interest requirement "is primarily a

10  practical guide to disposing of lawsuits by involving as many apparently concerned persons as is

11  compatible with efficiency and due process"); *United States v. City of Los Angeles*, 288 F.3d

12  391, 397-98 (9th Cir. 2002) ("A liberal policy in favor of intervention serves both efficient

13  resolution of issues and broadened access to the courts.") (internal quotation marks and citation

14  omitted).  As noted previously, the Department wrote the ADA regulations at issue in this case,

15  and plays the primary role in coordinating the implementation and enforcement of the statute.

16  *See* 42 U.S.C. § 12186; 28 C.F.R. pt. 36.  Through its regulatory and enforcement work, the

17  Department has accumulated significant experience in guiding covered entities in amending

18  policies, practices, and procedures to conform to the mandates of titles III and V.  The

19  Department's unique experience and familiarity with the statute and regulations at issue will

20  facilitate the efficient litigation of this dispute and promote a resolution which provides the clear,

21  consistent, enforceable standards contemplated by Congress.

22                    3.      The United States' Interest Would Be Impaired if Intervention
23                            Is Not Permitted

24          Under the third intervention factor, an applicant for intervention as of right must

25  demonstrate that disposition of the action may practically impair an applicant's ability to protect

26  its interest in the subject matter of the litigation.  *See Citizens for Balanced Use*, 647 F.3d at 900

27  (stressing that "intervention of right does not require an absolute certainty that a party's interests

28  will be impaired").

Federal decisions interpreting and applying the provisions of the ADA are an important enforcement tool.  This case, in particular, is among the first to involve claims based on the Department's 2010 revised regulation on examinations and courses, as well as challenges to the validity of those revisions.  This Court will also address Plaintiff's claim that LSAC's flagging policy violates the ADA – an issue in which the United States has expressed a substantial interest and one that few courts have had the opportunity to address.  As such, an unfavorable disposition here may, as a practical matter, impair the United States' ability to enforce the ADA's provision requiring that examinations be administered in an accessible manner and that public accommodations provide full and equal enjoyment of all goods, services, privileges, advantages, and accommodations without interference, coercion or intimidation.  And the outcome of this case, including the potential for appeals by existing parties, implicates *stare decisis* concerns that warrant the United States' intervention.  *See City of Los Angeles*, 288 F.3d at 400 (holding that amicus status may be insufficient to protect the rights of an applicant for intervention "because such status does not allow [the applicant] to raise issues or arguments formally and gives it no right of appeal").  Additionally, title III of the ADA authorizes only the Attorney General to seek damages, where appropriate, for individuals aggrieved by LSAC's discriminatory actions and to request that the Court assess a civil penalty against LSAC; private plaintiffs have no statutory right to seek either compensatory damages or civil penalties under title III or Section 503(b) of the ADA.  42 U.S.C. §§ 12188(b), 12203(c).  The United States has a significant protectable interest in pursuing in appropriate cases, such as this one, all available relief against discriminating private entities.  Accordingly, because a holding in favor of LSAC may negatively affect the United States' title III and V enforcement efforts, both in this case and others, the third factor for intervention as of right is met.

4.    The United States' Interest Is Inadequately Represented
by Existing Parties

The fourth and final element to justify intervention of right is inadequate representation of the United States' interest by existing parties to the litigation.  In determining adequacy of representation, courts consider whether the interest of a present party is such that it will

- 13 -

1  undoubtedly make all the intervenor's arguments; whether the present party is capable and

2  willing to make such arguments; and whether the intervenor would offer any necessary elements

3  to the proceedings that other parties would neglect. *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d

4  525, 528 (9th Cir. 1983); *County of Fresno*, 622 F.2d at 438-39.

5          The existing parties to this litigation, and potential intervenors Quan, Jones, and

6  Hennessey-Severson, cannot adequately represent the United States' interests. Only the

7  Attorney General can attend to the interests of the United States. 28 U.S.C. § 517 ("The

8  Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney

9  General to any State or district in the United States to attend to the interests of the United States

10 in a suit pending in a court of the United States, or in a court of a State, or to attend to any other

11 interest of the United States."). As the Ninth Circuit recognized in a case allowing private

12 parties to intervene alongside government agency defendants, "[t]he interests of government and

13 the private sector may diverge." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823; *cf. Scotts

14 Valley Band of Pomo Indians of the Sugar Bowl Rancharia v. United States*, 921 F.2d 924, 926-

15 27 (9th Cir. 1990) (recognizing that city government's interest could not be adequately

16 represented by another entity); *San Juan Cnty. v. United States*, 503 F.3d 1163, 1228 (10th Cir.

17 2007) (Ebel, J., dissenting) (distinguishing a local county's narrow interest from the United

18 States' broad interests).

19         In this case, the United States' interest in enforcing the ADA to advance the public

20 interest in ending disability discrimination with regard to examinations is inadequately

21 represented by the existing parties. *See Enyart v. Nat'l Conference of Bar Exam'rs*, 630 F.3d

22 1153, 1167 (9th Cir.) (discussing the public's interest in compliance with the ADA), *cert. denied*,

23 132 S. Ct. 366 (2011). Because the United States represents the public interest on a national

24 scale, its interests differ from those represented by DFEH, whose jurisdiction is confined to

25 California, and, as such, seeks relief only for victims within the state. Similarly, the United

26 States' interests also differ from those represented by potential intervenors Quan, Jones, and

27 Hennessey-Severson, whose case will be directed primarily at winning individual remedies.

28 Significantly, only the Attorney General has authority under title III of the ADA to seek

compensatory damages for individuals harmed by LSAC's failure to administer the LSAT in an accessible manner and a civil penalty to vindicate the public interest in eliminating disability discrimination. 42 U.S.C. § 12188(b). Accordingly, DFEH and potential intervenors Quan, Jones, and Hennessey-Severson, cannot and will not make all the United States' arguments. The United States' interest in a clear and consistent interpretation and application of relevant titles III and V provisions cannot be adequately represented by the parties in this case. *Cf. Scotts Valley Band of Pomo Indians of the Sugar Bowl Rancharia*, 921 F.2d at 926-27.

Furthermore, consistent with its "broader" interest in enforcing titles III and V on behalf of the public nationwide, the Department brings to this action the Civil Rights Division's extensive experience in investigating and litigating discrimination complaints relating to the administration of examinations. And as the entity charged with formulating and issuing regulations under titles III and V, the Department brings a unique expertise and familiarity with key issues in this case. Such expertise will be necessary to litigate this case to advance the United States' interests on behalf of the public nationwide. These facts demonstrate that the interests of DFEH and potential intervenors Quan, Jones, and Hennessey-Severson, may not sufficiently align with those of the United States, and support a finding that Plaintiff's and potential Plaintiff-Intervenors' representation may be inadequate to protect the United States' interests.

Because the United States can prove each of the requisite elements for Rule 24(a)(2) intervention, we respectfully request that this Court grant the United States' application for leave to intervene as of right.

**B.** **The United States' Application for Permissive Intervention Should Be Granted**

If the United States is not entitled to intervene as of right, it should be allowed to intervene by permission because the Department's involvement in this case would fall squarely within that contemplated by the language of Rule 24(b):

(2) *By a Government Officer or Agency.*  On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

    (A)    a statute . . . administered by the officer or agency; or

    (B)    any regulation . . . issued or made under the statute or executive order.

Fed. R. Civ. P. 24(b)(2).

The Department has the central role in administering and enforcing titles III and V of the ADA.  The Department's extensive regulatory work further evidences the United States' vital interest in enforcing the statutes and regulations at issue on behalf of the public interest in ending illegal disability discrimination.  As discussed above in conjunction with the Rule 24(a) analysis, the United States' application for intervention is timely.

Furthermore, the United States' claims against LSAC share common questions of law and fact with those in the pending litigation.  Rule 24(b) states, in part:

(1) *In General.*  On timely motion, the court may permit anyone to intervene who:

    . . .

    (B)    has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24(b)(1).

Like DFEH and potential intervenors Quan, Jones, and Hennessey-Severson, the United States would assert, as a common question of law, that LSAC's conduct violates title III of the ADA and the relevant implementing regulations.  As an additional common question of law, both DFEH and the United States assert that LSAC's conduct violates title V of the ADA.

For these reasons, and those addressed in our discussion of intervention as of right, the United States respectfully requests that this Court grant the motion to intervene by permission.

**CONCLUSION**

For the reasons set forth above, this Court should grant the United States' motion to intervene as of right.  In the alternative, the Court should grant the United States' motion for permissive intervention.

DATED: September 5, 2012                              Respectfully submitted,


MELINDA HAAG, CSBN 132612                 THOMAS E. PEREZ
United States Attorney                               Assistant Attorney General
Northern District of California                      Civil Rights Division

SARA WINSLOW, DCBN 457643               EVE L. HILL
Assistant United States Attorney                 Senior Counselor to the Assistant Attorney General
Acting Chief, Civil Division                         Civil Rights Division

                                                            GREGORY B. FRIEL
                                                            Acting Chief
                                                            ROBERTA KIRKENDALL
                                                            Special Legal Counsel
                                                            KATHLEEN P. WOLFE
                                                            Special Litigation Counsel
                                                            Disability Rights Section
                                                            Civil Rights Division



/s/ *Melanie L. Proctor*                              /s/ *Nabina Sinha*
MELANIE  L. PROCTOR, CSBN 228971        NABINA SINHA
Assistant United States Attorney                 Trial Attorney
450 Golden Gate Avenue, Box 36055          MEGAN E. SCHULLER, CSBN 281468
San Francisco, California 94102                   Trial Attorney
Telephone: (415) 436-6730                         Disability Rights Section
Facsimile: (415) 436-6478                          Civil Rights Division
Melanie.Proctor@usdoj.gov                        U.S. Department of Justice
                                                            950 Pennsylvania Avenue, N.W. - NYA
                                                            Washington, D.C. 20530
                                                            Telephone: (202) 307-0663
                                                            Facsimile: (202) 305-9775
                                                            Nabina.Sinha@usdoj.gov