**United States District Court**
For the Northern District of California

1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                          NORTHERN DISTRICT OF CALIFORNIA

7

8   DEPARTMENT OF FAIR EMPLOYMENT                No. C-12-1830 EMC
    AND HOUSING,
9
                    Plaintiff,                   **ORDER GRANTING IN PART AND**
10                                               **DENYING IN PART DEFENDANT'S**
            v.                                   **MOTION TO DISMISS**
11
    LAW SCHOOL ADMISSION COUNCIL                 **(Docket No. 13)**
12  INC, *et al.*,

13                  Defendants.
    _____/
14

15                          I.    <u>INTRODUCTION</u>

16          The California Department of Fair Employment and Housing (DFEH) filed suit against the

17  Law School Admission Council, Inc. (LSAC) seeking damages and injunctive relief over alleged

18  failures of the Defendant to provide disability related accommodations to test-takers of the Law

19  School Admission Test (LSAT) in violation of the Americans with Disabilities Act of 1990, 42

20  U.S.C. §§ 12101, *et. seq.*  DFEH's Complaint (Docket No. 1, Ex. A) states that it brought this action

21  both on behalf of seventeen named individuals and as a class action.  Compl. ¶ 7-8.  LSAC thereafter

22  filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) asking this Court to

23  dismiss Plaintiff's complaint in its entirety, or, alternatively, in substantial part.  LSAC's arguments

24  in support of its motion fall within five broad categories: (1) that DFEH lacks jurisdiction over the

25  subject matter of this litigation, (2) that the claims asserted in DFEH's complaint fail to state a claim

26  under Fed. R. Civ. P. 12(b)(6), (3) that certain requested money damages are unavailable as a matter

27  of state law, (4) that certain class-based claims cannot be pursued as a matter of law because DFEH

28  failed to follow proper administrative procedure at earlier stages in this litigation, and (5) that Doe

1  defendants must be dismissed from the complaint because DFEH fails to plead any facts regarding

2  their alleged actions or inactions.  Having considered the parties' submissions and oral argument, the

3  Court **GRANTS IN PART and DENIES IN PART** Defendant's motion for the reasons set forth

4  below.

5  **II.   FACTUAL & PROCEDURAL BACKGROUND**

6          LSAC is a non-profit membership organization based in Pennsylvania that, among other

7  things,  administers the Law School Admissions Test (LSAT) to prospective law students.  The

8  LSAT is a standardized test that evaluates potential law school applicants on their acquired reading

9  and verbal reasoning skills.  Compl. ¶ 46.  The test consists of a battery of five sections labeled as

10  either reading comprehension, analytical reasoning, or logical reasoning.  *Id.* ¶ 49.  Each of these

11  five sections consists of multiple-choice type questions, and test-takers are allotted thirty-five

12  minutes to complete each section.  *Id.* ¶ 47.  The test also includes an unscored thirty-five minute

13  written component, which LSAC forwards to law schools along with a test-taker's scores.  *Id.*

14          DFEH's Complaint focuses on LSAC's practices in providing testing accommodations to

15  test-takers who claim to be disabled.  LSAC claims to conscientiously evaluate requests for testing

16  accommodation to ensure that "individuals with *bona fide* disabilities receive accommodations, and

17  that those without disabilities do not receive accommodations" which could provide them with an

18  unfair advantage on the exam.  Def's Motion (Docket No. 13) at 2 (quoting *Powell v. Nat'l Bd. of*

19  *Med. Examiners*, 364 F.3d 79, 88-89 (2d Cir. 2004)).

20          DFEH claims that LSAC's accommodations evaluation procedures include, among other

21  things, requirements that testing candidates requesting extra time or other accommodations for a

22  "cognitive or psychological impairment" submit to psychoeducational and neuropsychological

23  testing, and provide a "full diagnostic report" that includes records of the candidates' aptitude and

24  achievement testing.  Compl. ¶ 54.  DFEH also claims that LSAC requires applicants to disclose in

25  an accommodations request whether or not they took prescribed medications during medical

26  evaluations of their condition, and if not, to explain their failure to do so.  *Id.* ¶ 55.  According to

27  LSAC, "more than a thousand individuals request disability-based accommodations on the LSAT

28

2

**United States District Court**

For the Northern District of California

1   every year, and LSAC grants accommodations to most, but not all, of those individuals." Def's

2   Motion (Docket No. 13) at 2.

3       DFEH also alleges that LSAC maintains a policy of "flagging" the LSAT exam scores of

4   individuals who receive disability accommodations for extra time. Compl. ¶ 56. LSAC includes a

5   notation on an accommodated individuals' score report that the score was achieved under non-

6   standard time constraints, and excludes extended-time scores when calculating its LSAT percentile

7   rankings. *Id.* ¶¶ 56-57. As a consequence, the fact that an individual received extended-time on the

8   LSAT is disclosed to all law schools receiving that individual's score report. *See Id.* ¶ 56.

9   However, LSAC does advise schools that extended-time score reports "should be interpreted with

10   great sensitivity and flexibility." *Id.* ¶ 56.

11       In 2010, DFEH received multiple written "verified complaints of discrimination" from

12   individuals alleging that  LSAC had denied them reasonable accommodations for their disabilities

13   when taking the LSAT. *Id.* ¶ 19-20. These written complaints alleged that LSAC had unlawfully

14   denied them "full and equal access to the LSAT" in violation of the California Fair Housing and

15   Employment Act (FEHA) (Cal. Gov. Code §§ 12900, *et. seq.*) and the Unruh Civil Rights Act (Cal.

16   Civ. Code §§ 51, *et. seq.*). Compl. ¶¶  19-20. By virtue of its incorporation into the Unruh Act, a

17   violation of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101, *et. seq.*) also

18   constitutes a violation of the Unruh Act. Compl. ¶ 16; *see also* Unruh Act, Cal. Civ. Code § 51(f).

19       Upon receiving these complaints, DFEH began an investigation to ascertain whether LSAC's

20   alleged denial of full and equal access affected a larger class of test-takers. *Id.* ¶ 21. On July 22,

21   2010, DFEH issued to LSAC a document titled "Notice of Class Action Complaint and Director's

22   Complaint." *Id.* ¶ 22.; *See* Compl., Ex. 3. The notice defined the potentially affected class as "all

23   disabled individuals in the State of California who have or will request an accommodation for the

24   Law School Admission Test (LSAT), administered by the LSAC, and who have or will be

25   unlawfully denied such request from January 19, 2009 to the conclusion of the Department's

26   investigation of this complaint." *Id.* During its investigation, DFEH sought administrative

27   discovery to determine the identities of other individuals in California who had been denied

28   reasonable accommodations by LSAC during the period mentioned in the notice. *Id.* ¶ 23. Over

1   LSAC's objections, DFEH obtained an order from a California Superior Court directing LSAC to

2   respond to DFEH's discovery requests.  *Id.*

3        As a result of its investigation and discovery, DFEH filed an administrative accusation

4   before the California Fair Employment and Housing Commission on February 6, 2012, which LSAC

5   elected to have transferred to the California Superior Court in Alameda County under Cal. Gov.

6   Code § 12965(c)(1).  Compl. ¶¶ 40-42.  The administrative accusation, brought on behalf of

7   seventeen individuals as a group, and as a class action on behalf of "all disabled individuals in the

8   State of California who requested a reasonable accommodation for the Law School Admission Test

9   (LSAT) from January 19, 2009 to February 6, 2012," charged LSAC with violations of the Unruh

10  Act.  *Id.* ¶¶ 7-8, 40.  LSAC thereafter removed the matter from the Alameda County Superior Court

11  to this Court on April 12, 2012, pursuant to 28 U.S.C. § 1441 on the basis of federal question

12  jurisdiction and diversity jurisdiction.

13       DFEH's state court complaint advances the following five causes of action against LSAC for

14  violations of the Americans with Disabilities Act:

15       (1)    LSAC unlawfully considered mitigation measures in determining whether an

16             impairment substantially limits a major life activity by requiring applicants for

17             reasonable accommodations to take their prescribed medications while being

18             evaluated, or to provide an explanation for a failure to do so, in violation of 42 U.S.C.

19             § 12102(4)(E)(1)(i)(I);

20       (2)    LSAC's policy of flagging score reports of individuals receiving additional

21             time failed to ensure that the LSAT measured aptitude, rather than disability, in

22             violation of 42 U.S.C. § 12189 and 28 C.F.R. § 36.309;

23       (3)    LSAC's flagging policy unlawfully coerced and discouraged potential

24             applicants from seeking reasonable accommodations or punished those who received

25             accommodations, in violation of 42 U.S.C. § 12203;

26       (4)    LSAC breached its duty to make the LSAT accessible to disabled individuals

27             by requiring excessive documentation and by denying reasonable accommodations, in

28             violation of 42 U.S.C. § 12189 and 28 C.F.R. § 36.309(b)(1)(iv); and

**United States District Court**
For the Northern District of California

(5)     LSAC's policy of requiring excessive documentation to support

accommodation requests coerced and discouraged potential applicants from seeking

reasonable accommodations, in violation of 42 U.S.C. § 12203.

Compl. ¶¶ 187-216.  DFEH brought the first three causes of action on behalf of all class members,

while the fourth and fifth causes of actions were brought only on behalf of the seventeen named

plaintiffs.  *Id.*

LSAC filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  LSAC

asserts five arguments for dismissal:  (1) that DFEH lacks jurisdiction over the subject matter of this

litigation, (2) that the claims asserted in DFEH's complaint fail to state a claim under Fed. R. Civ. P.

12(b)(6), (3) that certain requested money damages are unavailable as a matter of state law, (4) that

certain class-based claims cannot be pursued as a matter of law because DFEH failed to follow

proper administrative procedure at earlier stages in this litigation, and (5) that Doe defendants must

be dismissed from the complaint because DFEH fails to plead any facts regarding their alleged

actions or inactions.

Aside from the Plaintiff's and Defendant's briefs on this motion, two additional non-parties

to this litigation have filed materials with the Court regarding LSAC's motion:  the Legal Aid

Society-Employment Law Center (LAS-ELC) and the United States Department of Justice (DOJ),

which filed a Statement of Interest in this matter pursuant to 28 U.S.C. § 517.

### III.     DISCUSSION

A.     Legal Standard - Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the

failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion to

dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *See Parks*

*Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court

must take all allegations of material fact as true and construe them in the light most favorable to the

nonmoving party, although "conclusory allegations of law and unwarranted inferences are

insufficient to avoid a Rule 12(b)(6) dismissal."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir.

2009).  Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

United States District Court

For the Northern District of California

1    more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

2    not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

3         At issue in a 12(b)(6) analysis is "not whether a plaintiff will ultimately prevail, but whether

4    the claimant is entitled to offer evidence to support the claims" advanced in his or her complaint.

5    *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  While "a complaint need not contain detailed factual

6    allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'"

7    *Cousins,* 568 F.3d at 1067 (9th Cir. 2009).   "A claim has facial plausibility when the plaintiff pleads

8    factual content that allows the court to draw the reasonable inference that the defendant is liable for

9    the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v.*

10   *Twombly*, 550 U.S. at 556.  "The plausibility standard is not akin to a 'probability requirement,' but

11   it asks for more than sheer possibility that a defendant acted unlawfully."  *Id.*

12        In ruling on a motion to dismiss, a court may look to documents whose contents are

13   specifically alleged as part of a complaint, even though the plaintiff did not append them to the

14   complaint.  Although generally "a district court may not consider any material beyond the pleadings

15   in ruling on a Rule 12(b)(6) motion," "material which is properly submitted as part of the complaint

16   may be considered" on such a motion.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d

17   1542, 1555 n. 19 (9th Cir.1990).  A "document is not 'outside' the complaint if the complaint

18   specifically refers to the document and if its authenticity is not questioned."  *Branch v. Tunnell*, 14

19   F.3d 449, 453 (9th Cir. 1994) *overruled on other grounds by Galbraith v. County of Santa Clara*,

20   307 F.3d 1119 (9th Cir. 2002) (citing *Townsend v. Columbia Operations,* 667 F.2d 844, 848-49 (9th

21   Cir.1982)).  "[D]ocuments whose contents are alleged in a complaint and whose authenticity no

22   party questions, but which are not physically attached to the pleading, may be considered in ruling

23   on a Rule 12(b)(6) motion to dismiss."  *Id.* at 454.

24        In the context of a motion under Rule 12(b)(1) for lack of jurisdiction, the district court has

25   greater flexibility.  "When considering a motion to dismiss for lack of subject matter jurisdiction, the

26   district court may properly review evidence outside the pleadings to resolve factual disputes

27   concerning the existence of jurisdiction."  *Wilson-Combs v. California Dept. of Consumer Affairs*,

28

**United States District Court**

For the Northern District of California

1   555 F. Supp. 2d 1110, 1114 (E.D. Cal. 2008) (citing *Land v. Dollar,* 330 U.S. 731, 735 Fn. 4

2   (1947)).

3   B.      Jurisdiction of DFEH

4          DFEH is a California state agency responsible for enforcing the state's civil rights laws.  It

5   derives its enforcement authority from California's Fair Employment and Housing Act (FEHA), Cal.

6   Gov. Code, § 12900 *et seq*, wherein DFEH is granted, among other authorities, the power to

7   "receive, investigate, and conciliate complaints" of discrimination not only in employment matters

8   under § 12940 (*see* § 12930(f)(1)), but also in discrimination cases that fall within the scope of

9   California's Unruh Civil Rights Act.  Cal. Gov't Code § 12930(f).  In addition, FEHA substantively

10  incorporates the Unruh Act, as § 12948 declares it "an unlawful practice under this part for a person

11  to deny or to aid, incite or conspire in the denial of the rights created by Section 51, 51.5, 51.7, 54,

12  54.1, or 54.2 of the Civil Code."  Cal. Gov't Code § 12948.

13         The Unruh Civil Rights Act, in turn, states that all persons within the State of California are

14  "entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all

15  business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).  In addition, the Unruh

16  Act expressly incorporates the Americans with Disabilities Act by providing that a "violation of the

17  right of any individual under the federal Americans with Disabilities Act of 1990 (P.L. 101-336)

18  ("ADA") shall also constitute a violation of this section."  Cal. Civ. Code § 51(f).

19         Section 12189 of the ADA contains a specific provision addressing disability access and

20  accommodations in the context of standardized testing.  The ADA directs that "any person that

21  offers examinations or courses related to applications, licensing, certification, or credentialing for

22  secondary or post-secondary education, professional, or trade purposes shall offer such examinations

23  or courses in a place and manner accessible to persons with disabilities or offer alternative

24  accessible arrangements for such individuals."  42 U.S.C. § 12189.

25         Thus under FEHA, DFEH has jurisdiction to investigate ADA violations in the State of

26  California, including § 12189 of the ADA via its enforcement of § 51 of the Unruh Civil Rights Act.

27         LSAC's motion challenges DFEH's statutory authority to investigate or file complaints

28  involving accommodation requests on standardized admissions tests, and to pursue claims of

**United States District Court**
For the Northern District of California

1  disability discrimination that are not first alleged in a verified complaint received by the agency.

2  LSAC argues that (1) DFEH lacks statutory jurisdiction to assert claims for disability discrimination

3  that are not expressly created under § 51 of the California Civil Code, *see* Def's Motion at 8-10, and

4  (2) that a proper reading of DFEH's jurisdiction under California law limits its investigatory and

5  prosecutorial authority solely to claims expressly raised in a verified complaint received by the

6  agency, *see* Def's Motion at 10-12.  At oral argument, LSAC questioned further whether the Unruh

7  Act's incorporation of the "Americans with Disabilities Act of 1990 (P.L. 101-336)," *see* Cal. Civ.

8  Code § 51(f), limits DFEH's derivative jurisdiction via the Unruh Act to only those provisions of the

9  ADA that existed in 1992 at the time of its incorporation into state law, *see* 1992 Cal. Legis. Serv.

10  Ch. 913 (A.B. 1077) §§ 1, 3.  This last argument challenges, in essence, whether DFEH can enforce

11  amendments to the ADA in its suit against LSAC.

12       1.   <u>Rights 'Created' Under § 51</u>

13       LSAC argues that DFEH lacks statutory jurisdiction to assert claims for disability

14  discrimination that are not expressly "created" under § 51 of the California Civil Code.  In

15  particular, LSAC argues that the FEHA limits DFEH's scope of authority to "rights *created* by

16  Section 51 . . . of the Civil Code."  *Id*. at 8 (citing Cal. Gov't Code § 12948).  Inasmuch as ADA

17  violations are incorporated into § 51 by virtue of subsection (f), which expressly makes a "violation

18  of the right of any individual under the federal Americans with Disabilities Act of 1990" also

19  violative "of this section," they are not according to LSAC "*created*" by Section 51 and thus fall

20  outside the scope of DFEH's enforcement authority.  *Id.* at 9 (emphasis added).  LSAC's reading of

21  FEHA is unpersuasive.

22       First, the rights encompassed by § 51 are in common parlance "created" by that provision.

23  Whether the rights are explicitly enumerated in § 51 or incorporated by reference pursuant to its

24  terms, § 51 accords them legal status, brings them into existence, and thus "creates" them.  *See*

25  American Heritage Dictionary, 3rd Edition, p. 438 (1992) (defining "create" as "To cause to exist;

26  bring into being"); www.meriam-webster.com/dictionary/create ("create" defined as "to bring into

27  existence."  Thus, under the California Constitution, the California Legislature *created* the rights

28  encompassed by § 51 when it enacted that section into law.

**United States District Court**
For the Northern District of California

1    Second, it makes no logical or policy sense why the DFEH would be empowered to enforce

2   some rights encompassed by § 51 (*i.e.*, those under 51(b))[1] and not others (those under 51(f)).

3   Indeed, it would be contrary to the general legislative intent behind the Unruh Act's incorporation of

4   the ADA.  More than fifteen years before the enactment of the federal ADA, the California

5   Legislature in 1977 amended the Fair Employment Practices Act to include physical handicap as a

6   prohibited basis for discrimination.  *See* former Cal. Labor Code § 1420(a) (repealed by Stats. 1980,

7   c. 992, p. 3166, § 11).  That same year, the California Legislature declared that "[i]t is the policy of

8   this state to encourage and enable individuals with a disability to participate fully in the social and

9   economic life of the state."  Cal. Gov't Code § 19230 (added by Stats. 1977, c. 1196, p. 3977, § 2).

10   Nineteen years later, in response to the passage of the federal ADA, California amended the Unruh

11   Act as part of omnibus legislation designed to "strengthen California law where it is weaker than the

12   ADA and to retain California law when it provides more protection than the ADA."  *See* Stats. 1992,

13   ch. 913, § 1 (AB 1077) and Assembly Judiciary Committee, AB 1077 (Jan. 22,1992), at 2.  In

14   addition, such a narrow interpretation of the Unruh Act contravenes the directive of the California

15   Supreme Court to construe that law liberally.  In *Munson v. Del Taco, Inc*., 46 Cal. 4th 661, 669

16   (2009), the California Supreme Court stated "with regard to the Unruh Civil Rights Act . . . that it

17   must be construed liberally in order to carry out its purpose to create and preserve a

18   nondiscriminatory environment in California business establishments by 'banishing' or 'eradicating'

19   arbitrary, invidious discrimination by such establishments."  *Id*. at 666 (citing *Angelucci v. Century*

20   *Supper Club*, 41 Cal.4th 160, 167 (2007)).

21    Furthermore, the DFEH interprets FEHA as conferring upon it jurisdiction to enforce the

22   ADA as it is incorporated into the Unruh Act; the enforcing agency's interpretation is entitled to

23   some weight.  As observed in *Giles v. Horn*, 100 Cal. App. 4th 206 (2002):

24         Additionally, "[w]hile the ultimate interpretation of a statute is an
          exercise of the judicial power [citation], when an administrative
25

26    [1]  Section 51(b) of the Unruh Civil Rights Act states that "all persons within the jurisdiction
of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national
27   origin, disability, medical condition, genetic information, marital status, or sexual orientation are
entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all
28   business establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).

United States District Court

For the Northern District of California

1                agency is charged with enforcing a particular statute, its interpretation
2  of the statute will be accorded great respect by the courts 'and will be
   followed if not clearly erroneous.'"  *Judson Steel Corp. v. Workers'*
3  *Comp. Appeals Bd.* (1978) 22 Cal. 3d 658, 668-669, 160 Cal. Rptr.
   250, 586 P.2d 564 (*Judson Steel*), quoting *Bodinson Mfg. Co. v.*
   *California E.Com.* (1941) 17 Cal. 2d 321, 325-326, 109 P.2d 935.
4  Courts find administrative interpretations of a law to be "significant
   factors in ascertaining statutory meaning and purpose.  [Citations.]"
5  *Nipper v. California Auto. Assigned Risk Plan* (1977) 19 Cal. 3d 35,
   45, 136 Cal. Rptr. 854, 560 P.2d 743.

6

7  *Giles*, 100 Cal. App. 4th at 220-21.  *See Rodriguez v. Airborne Express*, 265 F.3d 890, 898 (9th Cir.

8  2001) ("We accord great respect to the Commission's interpretation of its authority and will follow

9  it unless it is clearly erroneous.").[2]

10         In support of its narrow reading of FEHA, LSAC relies solely on *Turner v. Ass'n of*

11  *American Medical Colleges*, 167 Cal. App. 4th 1401 (2008).  LSAC reads the *Turner* decision as

12  holding that the rights 'created' by § 51 of the Unruh Act are limited to the rights enumerated in §

13  51(b), and do not include any ADA-based rights incorporated into the Unruh Act through subsection

14  (f).  *See* Def's Motion at 8; Def's Reply (Docket 30) at 2.  LSAC's reading of *Turner* not only

15  misstates the court's holding in that case, but also ignores the court's explicit finding that a violation

16  of the ADA can also constitute a violation of the Unruh Act.  In *Turner*, plaintiffs challenged

17  "certain standards for the administration of the Medical College Admission Test (MCAT), including

18  a time limit for each section of the test," which were "neutral and extend to all applicants regardless

19  of their membership in a particular group."  167 Cal. App. 4th at 1409.  Importantly, the plaintiffs in

20  *Turner* claimed that their request for accommodations for more time and/or a private room "should

21  have been considered under [California] state laws, which define disability more broadly than the

22  ADA to include a mental, psychological or physical condition that limits a major life activity, i.e.,

23  that makes the achievement of the major life activity difficult."  *Id.* (internal citations and quotations

24  omitted).  Plaintiffs did *not* premise their claims on violations of the ADA as incorporated into the

25  Unruh Act through operation of § 51(f), as Plaintiffs in the instant case do.  Instead, plaintiffs' claim

26  in *Turner* were based solely on rights covered by § 51(b).  *Turner* found that because the limiting

27  _____

28       [2]  To be sure, the degree of deference to the agency's interpretation may arguably be lessened
   where that interpretation is not formally codified in a regulation.

1    language in § 51(c) restricts the scope of § 51(b) from applying to "practices and policies that apply

2    equally to all persons," plaintiffs could not base their complaint over the denial of reasonable

3    accommodation on § 51(b) of the Act.[3]  *Id.* at 1408.

4        Since *Turner* did not base its ruling on a construction of § 51(f) of the Unruh Act, the court

5    stated its holding "does not mean that disabled persons in California may not seek reasonable

6    accommodations for their learning and reading-related disabilities when taking a standardized test."

7    *Id.* at 1410.  Quite to the contrary, *Turner* expressly held that "the Unruh Act *does* indirectly

8    penalize a failure to grant reasonable accommodations in Civil Code section 51, subdivision (f),

9    which incorporates otherwise relevant ADA standards as a floor under state law," and, thus, "a

10   violation of the right of any individual under the Americans with Disabilities Act of 1990" would

11   "also constitute a violation of this section."  *Id.* (emphasis in original).  In such a case:

12           Civil Code section 51, subdivision (c) and the cases construing it can
             be readily harmonized with section 51, subdivision (f) and the ADA
13           provisions it incorporates. Simply put, in addressing a claim that a
             facially neutral testing policy has a disparate impact on persons with
14           learning and reading-related disabilities, accommodations are required
             to the extent they are required under the ADA.
15

16   *Turner*, 167 Cal. App. 4th at 1410.

17       Thus, the *Turner* decision did *not* conclude that the rights 'created' by § 51 are limited to

18   those listed in subsection (b) of the Act.  It simply held that § 51(c) restricted the scope of rights

19   under § 51(b) but recognized that § 51(f) – incorporating those rights protected by the ADA –

20   provided an independent source of protection.

21       The LSAC has failed to prove that DFEH lacks jurisdiction under § 51(f) of the Unruh Act to

22   pursue violations of the ADA.

23       2.    Unruh Act Violations Limited to Subject Matter of FEHA

24       LSAC further argues that DFEH's jurisdiction to pursue Unruh Act violations is limited to

25   matters that involve the original subject matter of FEHA.  *See* Def's Motion at 10.  LSAC maintains

26   _____

27       [3]  Section 51(c) states "this section shall not be construed to confer any right or privilege on a
     person that is conditioned or limited by law or that is applicable alike to persons of every sex, color,
     race, religion, ancestry, national origin, disability, medical condition, marital status, or sexual
28   orientation or to persons regardless of their genetic information."  Cal. Civ. Code § 51(c).

United States District Court

For the Northern District of California

1  that FEHA's original subject matter is limited to employment and housing discrimination, and

2  neither of these encompasses standardized tests.  *See id.*  It argues in the alternative that the

3  California Legislature intended to incorporate into the Unruh Act "only those provisions of the ADA

4  germane to the original scope of those state laws."  *See id. (citing Bass v. County of Butte*, 458 F.3d

5  978, 982 (9th Cir. 2006)).  In support of this latter argument, LSAC cites to *Anderson v. County of*

6  *Siskiyou*, 2010 WL 3619821, at *6 (N.D. Cal. Sept. 13, 2010), where a court held that the Unruh Act

7  did not incorporate ADA claims that could be brought against a jail since the jail lacked the

8  attributes of a business and would not qualify as a "business establishment" under the terms of the

9  Act.  Under either theory, LSAC argues, DFEH lacks jurisdiction to pursue ADA claims regarding

10  standardized testing.  Neither of these arguments stands up to scrutiny.

11      As discussed above, the California legislature amended the Unruh Act in 1992 to explicitly

12  incorporate rights guaranteed under the federal ADA.  That incorporation under § 51(f) contains no

13  exclusion of the ADA as it affects public accommodations.  The purpose of this amendment was to

14  "conform state anti-discrimination laws with the provisions of the Americans with Disabilities Act."

15  *Bass v. County of Butte*, 458 F.3d 978, 981 (9th Cir. 2006) (citing Assem. Off. of Research, 3d

16  reading analysis, A.B. 1077 (Cal.1992 Reg. Sess.)).  Indeed, more to the point, the Unruh Act

17  prohibits a range of discriminatory practices with respect to public accommodations.  Charged with

18  enforcement of the Unruh Act, the DFEH obviously has jurisdiction to enforce anti-discrimination

19  rights beyond matters of employment and housing.  While "California courts have, historically,

20  rejected attempts by plaintiffs to expand the scope of the Unruh Act to include employment claims,"

21  *Bass*, 458 F.3d at 981, here the rights at issue fall squarely within the historical arena of the Unruh

22  Act and are "germane to the statutes' original subject matter."  *See Id.* at 980, 983.

23      Furthermore, the California Fair Employment and Housing Commission ("Commission") has

24  held in *Dep't Fair Empl. & Hous. v. Univ. Of Cal. Berkeley*, 1993 WL 726830, at *11, that neither

25  Government Code § 12930 nor § 12948 contain "any limitation on the kinds of Unruh Act violations

26  that may be addressed administratively under the FEHA, and the obvious conclusion is that no such

27  limitation was intended."  *Id.* at 10.  The statute's provisions are to be "construed liberally for the

28  accomplishment of [its] purposes," Cal. Gov't. Code § 12993, and courts generally "accord great

United States District Court

For the Northern District of California

respect to the Commission's interpretation of its authority and will follow it unless it is clearly erroneous," *Rodriguez v. Airborne Express*, 265 F.3d 890, 898 (9th Cir. 2001).

Accordingly, the DFEH has jurisdiction under the Unruh Act to enforce Title III violations of the ADA, including rights thereunder with respect to standardized testing.[4]

3.      ADA Incorporation into the Unruh Act

At oral argument, the parties disagreed over whether § 51(f) of the Unruh Act incorporates the ADA as it currently exists in federal law, or only as it existed in 1992 when the Legislature enacted § 51(f).  Having reviewed the supplementary briefing materials, the Court concludes that the Unruh Act incorporates the ADA not only as it currently exists, but also as it "may be changed from time to time." *Palermo v. Stockton Theatres*, 32 Cal. 2d 53, 59 (1948).

Section 51(f) states that a "violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (P.L. 101-336) shall also constitute a violation of this section."  Since its initial passage in 1990, the ADA has been amended at least five times.  *See* Pub. L. 102-166, Nov. 21, 1991, 105 Stat. 1071; Pub. L. 104-1, Jan. 23, 1995, 109 Stat. 8; Pub. L. 104-59, Nov. 28, 1995, 109 Stat. 608; Pub. L. 104-287, Oct. 11, 1996, 110 Stat. 3400; Pub. L. 110-325, Sept. 25, 2008, 122 Stat. 3554.  The last of these amendments introduced several changes to the ADA, including changes to the definition of the term 'disability.'  *See Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 861 (9th Cir. 2009) (the 2008 amendments "explicitly reject[] several Supreme Court decisions that defined 'disability' more narrowly than many of the ADA's original Congressional proponents had intended").  Both parties cite *Palermo v. Stockton Theatres* as the lead case for determining the scope of the ADA's incorporation into the Unruh Act, including the applicability of these latter ADA amendments to § 51(f).

In *Palermo*, the California Supreme Court set out a standard for distinguishing among state laws that incorporate other statutes by reference.  "[W]here a statute adopts by specific reference the

---

[4] "Title III of the ADA prohibits discrimination on the basis of disability by public accommodations, commercial facilities, and private entities that offer examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes."  Statement of Interests of the United States of America (Docket No. 29) at 2 (citing 42 U.S.C. § 12181, *et. seq.*, and 28 C.F.R. §§ 36.102 and 36.201).

provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified." *Palermo v. Stockton Theatres*, 32 Cal. 2d at 58-59. In contrast, "where the reference is general instead of specific, such as a reference to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time." *Id*. at 59. While § 51(f) refers specifically to the original ADA's public law number, the broad scope of the ADA, even as it existed in 1990, counsels in favor of the broader prong of *Palermo*.[5] *See* Americans with Disabilities Act of 1990, P.L. 101-336,104 Stat 327, § 2(b)(1) ("It is the purpose of this Act [] to provide a clear and *comprehensive* national mandate for the elimination of discrimination against individuals with disabilities") (emphasis added).

In any event, subsequent California Supreme Court decisions have clarified that, as here, "when the statutory words themselves do not make clear whether the statute contemplates only a time-specific incorporation, the determining factor will be legislative intent." *People v. Anderson*, 28 Cal. 4th 767, 779 (2002) (quoting *In re Jovan B.*, 6 Cal. 4th 801, 816 (Cal. 1993)). *See also People v. Domagalski*, 214 Cal. App. 3d 1380, 1386 (Cal. Ct. App. 1989) ("in cases where it is questionable whether only the original language of a statute is to be incorporated or whether the statutory scheme, along with subsequent modifications, is to be incorporated, the determining factor will be the legislative intent behind the incorporating statute."); *People v. Pecci*, 72 Cal. App. 4th 1500, 1505 (1999) ("the *Palermo* rule is not to be applied in a vacuum. The determining factor is legislative intent.") (citing *In re Jovan B.*, 6 Cal.4th at 816).

Here, it is evident that the California Legislature intended to incorporate the ADA as a "system or body of laws," including evolving changes. The systemic nature of the laws incorporated

---

[5] It should be noted that under California law a citation to a specific legal provision does not necessarily render that incorporation a "specific reference" under *Palermo*. *See e.g. In re Jovan B.*, 6 Cal.4th at 816 (citation in Cal. Welf. & Inst. Code § 726 to specific sections of the California Penal Code was an incorporation of a system or body of laws, including subsequent amendments); *People v. Van Buren*, 93 Cal. App. 4th 875, 878-79 (2001) *overruled on other grounds by People v. Mosby*, 33 Cal. 4th 353 (2004) (citation to Cal. Penal Code § 667.5 "incorporated the contemporaneous version . . . along with subsequent amendments").

United States District Court

For the Northern District of California

1   is evidenced by the general principle that animated the Legislature:  "It is the intent of the

2   Legislature in enacting this act to strengthen California law in areas where it is weaker than the

3   Americans with Disabilities Act of 1990 (Public Law 101–336) and to retain California law when it

4   provides more protection for individuals with disabilities than the Americans with Disabilities Act of

5   1990."  *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 669 (2009) (quoting Stats.1992, ch. 913, § 1, p.

6   4282).  *See also* Cal. Gov't Code § 12926(1)(a).  Indeed, the Ninth Circuit held in *Lentini v.*

7   *California Ctr. for the Arts, Escondido* that "the Unruh Act has adopted the full expanse of the

8   ADA."  370 F.3d 837, 847 (9th Cir. 2004) (citing with approval *Presta v. Peninsula Corridor Joint*

9   *Powers Bd.*, 16 F. Supp. 2d 1134, 1135 (N.D. Cal. 1998)).  Importantly, *Lentini* was decided after

10  four of the five post-1990 ADA amendments had already been enacted.

11          The Court, therefore, finds that § 51(f) of the Unruh Act incorporates by reference the whole

12  of the federal ADA "not only in [its] contemporary form, but also as [it] may be changed from time

13  to time."  *Palermo*, 32 Cal. 2d at 59.

14  C.      Limits to DFEH's Authority Based on Underlying Complaints

15          LSAC also challenges DFEH's ability to bring the specific ADA causes of action advanced

16  in its complaint for essentially failure to exhaust.  LSAC argues that a proper reading of DFEH's

17  jurisdiction under California law limits its investigatory authority solely to those claims that were

18  expressly raised in verified complaints received by the agency.  *See generally* Def's Motion at 10-

19  12.  Implicit within DFEH's authorizing statutes, argues LSAC, lies an important limitation that

20  "DEFH cannot challenge actions or policies in a post-conciliation accusation" that (1) "were not first

21  identified in a verified complaint to the agency," (2) "cannot reasonably be expected to grow out of

22  DFEH's investigation of the allegedly unlawful conduct," and (3) "were not the subject of good faith

23  conciliation efforts by DFEH."  Def's Motion at 12.  In this case, Defendant argues that "none of the

24  Complainants alleged any ADA violation," and "none of the Complainants alleged that LSAC's

25  flagging policy or any of its documentation policies are unlawful."  *Id.*  It contends, because these

26  issues were not specifically raised by the Complainants, "it was therefore improper for DFEH to

27  include in the Complaint *any* ADA-based claim."  *Id.*  This argument fails to recognize the wide

28

**United States District Court**
For the Northern District of California

1   investigative latitude afforded DFEH under California law, and the notice of the content of the

2   complaints given to LSAC prior to the initiation of its enforcement action.

3        California's Fair Employment and Housing Act empowers DFEH "to receive, investigate,

4   and conciliate complaints" that allege violations of law within the scope of its jurisdiction.  Cal.

5   Gov't Code § 12930(f).  The Act contains a specific procedure for DFEH to use in investigating a

6   complaint.  Broadly speaking, the act allows "any person claiming to be aggrieved by an alleged

7   unlawful practice" to "file with the department a verified complaint" setting "forth the particulars"

8   of  "the unlawful practice complained thereof."  Cal. Gov't Code § 12960(b).  In situations where

9   "an unlawful practice alleged in a verified complaint adversely affects, in a similar manner, a group

10  or class of persons . . . the aggrieved person or the director may file the complaint on behalf and as

11  representative of such a group or class."  Cal. Gov't Code § 12961.  Upon receiving "any complaint

12  alleging facts sufficient to constitute a violation of any of the provisions of this part," DFEH is

13  directed to "make [a] prompt investigation."  Cal. Gov't Code § 12963.  If DFEH determines that the

14  "complaint is valid, the department shall immediately endeavor to eliminate the unlawful . . .

15  practice complained of by conference, conciliation, and persuasion."  Cal. Gov't Code § 12963.7.  If

16  this non-judicial reconciliation process fails to resolve the complaint, DFEH may issue a "written

17  accusation" and require "the respondent to answer the charges at a hearing."  Cal. Gov't Code §

18  12965.  As with all other aspects of the Fair Employment and Housing Act, the investigatory and

19  adjudicatory procedure is to be "construed liberally for the accomplishment of the purposes of [the

20  Act]."  Cal. Gov't Code § 12993(a).

21        Construing DFEH's statutory scheme broadly, the Ninth Circuit has held that claims not

22  originally brought in verified complaints may nonetheless be brought in subsequently when they are

23  "like or reasonably related to" the initial allegations.  *Rodriguez v. Airborne Express*, *supra*, 265

24  F.3d at 897.  Adopting a 'relation-back' theory as articulated by the Fifth Circuit in *Sanchez v.*

25  *Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970), the Ninth Circuit in *Rodriguez* held that new

26  accusations of wrongdoing could be added later to a DFEH complaint "on the principle that the

27  proper scope of the charge is determined by facts alleged in the original complaint, not the legal

28  theory originally attached to those facts."  *Rodriguez*, 265 F.3d at 899.  In that case, however, the

1   court rejected an argument that a complainant's new claim of "disability discrimination may

2   properly be related back to his original complaint alleging discrimination on the ground that [he]

3   was Mexican-American." *Id.* The court held that while "factual allegations of the original

4   complaint, rather than the legal theory, establish the proper boundaries of the charge," those initial

5   "factual allegations must be able to bear the weight of the new theory added by amendment." *Id.*

6        In the instant case, each of the Complainants' recitation of the facts in their claims makes

7   quite clear that they wish to challenge LSAC's conduct on the basis of disability discrimination.

8   That the verified complaints received by DFEH did not explicitly identify the ADA as the legal basis

9   of their theories for recovery is not dispositive since it is the "factual allegations of the original

10  complaint, rather than the legal theory" that controls. *Rodriguez*, 265 F.3d at 899. Thus, in light of

11  the standard set by the court in *Rodriguez*, LSAC's argument that it was improper "for DFEH to

12  include in the Complaint any ADA-based claim" cannot be accepted. *See* Mot. to Dismiss at 12.

13  Nor can it be maintained that, on the basis of the facts alleged in the verified complaints, "it was

14  improper for DFEH to include claims that challenge the guidance that LSAC provides to

15  professionals who submit evaluations in support of an accommodation request," or to include claims

16  challenging "LSAC's documentation requirements for individuals requesting accommodations,"

17  Def's Motion at 12. The record demonstrates quite clearly that the original verified complaints

18  received by DFEH challenged, at least in part, LSAC's allegedly discriminatory documentation

19  procedures. *See* Compl., Ex. 2 (Verified Complaint of Nicholas Jones) (alleging a denial of

20  reasonable accommodations because of disability in connection with LSAC's documentation

21  requirements); Compl. ¶ 148 ("Mr. Quan contested LSAC's need for additional documentation,

22  asserting that it was unnecessary, unaffordable, and burdensome."), ¶¶ 182-183 (challenging

23  relevance of LSAC's Guidelines for Documentation of Cognitive Impairments).

24        LSAC asserts that a discrimination claim involving someone who has been denied reasonable

25  accommodations on the LSAT is not "like or reasonably related to" a discrimination claim by

26  someone who received accommodations and objects to LSAC's "flagging" policy. That argument

27  also lacks merit. The relationship between denying individuals accommodations on the LSAT and

28  discriminating against disabled individuals by "flagging" their test scores is not as attenuated as

discrimination claims previously held not "reasonably related" by the courts.  *See e.g. Rodriguez*, 265 F.3d at 898 (holding that plaintiff's original complaint with the DFEH alleging race-based discrimination could not be extended to include disability discrimination); *Winter v. Correction Corp. of America*, 2009 WL 1796309, at *4 (S.D. Cal. Jun. 24, 2009) (holding that plaintiff's claims about disability were not like or reasonably related to race/color-based discrimination).  The ADA claims alleged by DFEH all fall within the general scope of the claim that Defendant failed to provide reasonable accommodations to test-takers of a standardized exam.  Flagging an individual's test results because they received some form of testing accommodations could constitute a *de facto* denial of accommodations to the extent that flagging results in the LSAT not being offered "in a place and manner accessible to persons with disabilities." 42 U.S.C. § 12189.  Likewise, to the extent that flagging erects a *de facto* barrier to applicants receiving accommodations because it "intimidate[s] them not to request accommodations" or "punishes them for doing so," that also amounts to an allegation that LSAC's practice discriminates against disabled test takers on account of their disability.  *Breimhorst v. Educ. Testing Serv.*, 2000 WL 34510621 (N.D. Cal. Mar. 27, 2000).  Unlike the claims advanced in *Rodriguez* and *Winter*, the claims in Plaintiff's state court complaint have not markedly shifted from one type of discriminatory behavior (*e.g.* on the basis of race) to another (*e.g.* on the basis of disability).  Rather, all five claims advanced by DFEH involve the same kind of improper conduct – the denial of reasonable accommodations on a standardized test on account of disability.  This is enough to satisfy the "like or reasonably related standard" set out in *Rodriguez.*

LSAC's final challenge to DFEH's ability to bring the specific ADA causes of action advanced in its complaint flows from FEHA's "conciliation" provision.  Cal. Gov't Code § 12963.7 provides that where DFEH determines that a "complaint is valid, the department shall immediately endeavor to eliminate the unlawful . . . practice complained of by conference, conciliation, and persuasion."  LSAC's motion argues that DFEH failed engage in good faith conciliation as required by statute, and as a consequence cannot issue a written accusation without first exhausting that requirement.  Def's Motion at 12.  This argument is unsupported by the language of FEHA, the cases interpreting it, and the facts of this case.

1   The use of the permissive word *endeavor* in § 12963.7, on its face, undercuts any reading of

2   this section that would impose conciliation as a necessary prerequisite to issuing a written

3   accusation.  Cal. Gov't Code § 12965(a), which states that "[i]n the case of failure to eliminate an

4   unlawful practice under this part through conference, conciliation, or persuasion, *or in advance*

5   *thereof if circumstances warrant*, the director in his or her discretion may cause to be issued in the

6   name of the department a written accusation," also indicates that conciliation is not required in every

7   case.  *Id*. (emphasis added).

8   Further, in both *Motors Ins. Corp. v. Div. of Fair Employment Practices*, and *DFEH v. Hoag*

9   *Memorial Hospital Presbyterian,* the California Court of Appeal and the Fair Employment and

10   Housing Commission have confirmed that conciliation under FEHA is not a condition precedent to

11   filing suit.  *See Motors Ins. Corp. v. Div. of Fair Employment Practices*, 118 Cal. App. 3d 209, 224

12   (Cal. Ct. App. 1981) (DFEH is able "to file an accusation within the statutorily prescribed time even

13   if it has not obtained optimum results from its investigation or its efforts at conciliation"); In the

14   Matter of the Accusation of the *DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING v.*

15   *HOAG MEMORIAL HOSPITAL PRESBYTERIAN*, Case No. FEP82-83 K9-011se L-30469 85-10,

16   1985 WL 62889 at *8 (Aug. 1, 1985) ("Neither is there any jurisdictional requirement that the

17   Department, in each instance, engage in conciliation efforts, formally or informally, before issuing

18   an accusation.").

19   Finally, the Court notes that DFEH did in fact engage in a day-long conciliation meeting on

20   February 3, 2012, where it "presented LSAC with a detailed settlement demand which included

21   notice of all the unlawful policies that the DFEH intended to pursue, including the issues of

22   mitigation, annotation or flagging, and excessive documentation."  Declaration of Susan Saylor

23   (Docket No. 40, Ex.1) ("Saylor Decl.") ¶ 11.  The Court, therefore, rejects LSAC's argument that

24   the "conciliation" provision in § 12963.7 deprives DFEH of jurisdiction to pursue its complaint in

25   this matter.

26   D.   First Cause of Action

27   DFEH's First Cause of Action states that LSAC violated the rights of class members under

28   FEHA, the Unruh Act, and the ADA "by requiring applicants to take the medications prescribed for

United States District Court

For the Northern District of California

their disabilities while being evaluated for accommodations or explain their failure to do so." Compl. ¶¶ 187-192.  This requirement, they argue, violates the ADA's directive that "determination[s] of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as . . . medication."[6]  42 U.S.C. § 12102(4)(E)(1)(i)(I).

LSAC, in turn, argues that DFEH's First Cause of Action fails to state a claim under Rule 12 (b)(6) for two reasons.  First, LSAC asserts that "the language relied upon by DFEH is simply a rule of construction that courts are to use in determining whether someone is disabled within the meaning of the ADA."  Def's Motion at 14.  Under it, no "private right of action" exists such that the Defendant could "be separately sued for violating the ADA's definition of disability."  *Id.* (internal quotation marks omitted).  Second, LSAC contends that DFEH's claim is "based upon an incorrect factual premise."  *Id.*  Contrary to Plaintiffs' allegations, LSAC asserts that it never "require[d]" individuals who requested accommodations to "take the medications prescribed for their disabilities while being evaluated for accommodations or explain their failure or refusal to do so."  *Id.*  Rather, LSAC "simply suggests" that professional evaluators of these applicants conduct their evaluations while the applicants are taking their medications on the assumption that the applicant would be taking the same medication while sitting for their LSAT exam.  *Id.*  If an evaluator chooses not to examine an applicant while they are taking their medications, LSAC "simply asks the evaluator to provide an explanation" of that decision.  *Id.*  These two arguments will be addressed in turn.

     1.   <u>No Private Right of Action</u>

In support of its assertion that there is no private right of action for "the definition of disability" violation because the text of the statute grants no such remedy, LSAC cites *Cort v. Ash*, 422 U.S. 66, 78-85 (1975) (discussing relevant factors in determining whether a private remedy is implicit in a statute not expressly providing one), *Northstar Fin. Advisors, Inc. v. Schwab Investments*, 615 F.3d 1106, 1115-22 (9th Cir. 2010) (discussing whether there is a private right to enforce § 13(a) of the Investment Company Act of 1940), and *In re Digimarc Corp. Derivative*

---

    [6] "A physical or mental impairment that substantially limits one or more major life activities" constitutes a disability under the ADA.  42 U.S.C. § 12102(1)(A).

1   *Litig.*, 549 F.3d 1223, 1229-33 (9th Cir. 2008) (reviewing whether district court erred in determining

2   that provision of the Sarbanes–Oxley Act does not contain a private right of action).  These cases

3   generally discuss how to determine whether a statute implicitly provides for a private right of action

4   when the statutory text does not expressly grant such a remedy.  LSAC's argument is meritless for

5   several reasons.

6          First, it is undisputed that FEHA authorizes the DFEH to enforce the Unruh Act.  *See* Cal.

7   Gov. Code § 12930.  As noted above, the Unruh Act incorporates the substantive standards of the

8   ADA and creates a private right of action as a matter of state law.  Whether the ADA itself provides

9   a private cause of action under federal law does not affect enforcement of the Unruh Act – a state

10  statute governed by its own enforcement mechanism.

11         Second, even if the analysis here were governed by the existence of a right of action directly

12  under the ADA, LSAC's argument lacks merit.  There is no need to imply a private right of action

13  under *Cort v. Ash* because the ADA explicitly provides for a private right of action under §

14  12188(a)(1).  That statute provides "remedies . . . to any person who is being subjected to

15  discrimination on the basis of disability in violation of this subchapter."  LSAC makes no

16  convincing argument why the rights guaranteed under § 12189 are not enforceable under §

17  12188(a)(1).

18         Instead, LSAC seems to argue that § 12102(4)(E)(1)(i)(I) which broadened the definition of

19  "disability" under the ADA is merely definitional and does not provide a basis for a private right of

20  action.  LSAC misconstrues the gravamen of DFEH's complaint.

21         Title III of the ADA states that "any person that offers examinations or courses related to

22  applications, licensing, certification, or credentialing for secondary or post-secondary education,

23  professional, or trade purposes shall offer such examinations or courses in a place and manner

24  accessible to persons with disabilities or offer alternative accessible arrangements for such

25  individuals."  42 U.S.C. § 12189.  "The purpose of this section is to assure that persons with

26  disabilities are not foreclosed from educational, professional, or trade opportunities because an

27  examination or course is conducted in an inaccessible site or without an accommodation."  *Enyart v.*

28  *Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1160 (9th Cir. 2011) *cert. denied*, 132 S.

1   Ct. 366 (2011) (quoting H.R.Rep. No. 101–485(III), at 68–69 (1990), *reprinted in* 1990

2   U.S.C.C.A.N. 445, 491–92.). Proof of a violation of § 12189 and the right to an accommodation

3   thereunder first turns on the threshold question of whether the complainant is a person with a

4   "disability." *See Agranoff v. Law Sch. Admission Council, Inc*., 97 F. Supp. 2d 86, 87 (D. Mass.

5   1999) ("The Americans With Disabilities Act (ADA) specifically requires private organizations that

6   offer educational examinations to make them available in a manner accessible to persons with

7   disabilities.") (internal quotation marks omitted). "Disability" is defined in § 12102 as "a physical

8   or mental impairment that substantially limits one or more major life activities." 42 U.S.C. §

9   12102(1)(A). In 2008, the United States Congress enacted the ADA Amendments Act of 2008

10  (ADA Amendments), Pub. L. 110-325, and broadened the definition of "disability" by providing

11  that the "determination of whether an impairment substantially limits a major life activity shall be

12  made *without* regard to the ameliorative effects of mitigating measures such as . . . *medication*." §

13  12102(4)(E)(i)(I) (emphasis added). Requiring applicants to take prescribed medication while being

14  evaluated for accommodations does not simply contravene a definition; it can have the legal effect

15  of erroneously and wrongfully denying an applicant the legal status of a person with a disability, and

16  thereby deprive them of the right to accommodations to which he or she would otherwise be entitled

17  under § 12189. Hence, the alleged conduct of LSAC not only contravenes the definition of

18  disability under § 12102(4)(E)(i)(I); it can cause the deprivation of substantive rights under § 12189.

19          2.      Incorrect Factual Premise

20          Turning to LSAC's charge that this First Cause of Action should be dismissed for failure to

21  state a claim under Fed. R. Civ. P. 12(b)(6) because it is "based upon an incorrect factual premise,"

22  the Court finds this argument to be unfounded. *See* Def's Motion at 14. As noted above, LSAC

23  denies that it requires individuals seeking testing accommodations to take their prescribed medicines

24  while being evaluated for accommodations or explain their failure to do so. *See id.* at 14; Def's

25  Reply at 7. LSAC's argument reduces to a dispute over evidentiary facts. When considering a

26  motion to dismiss under Rule 12(b)(6), "all allegations of material fact are taken as true and

27  construed in the light most favorable to the nonmoving party." *Silvas v. E\*Trade Mortg. Corp*., 514

28  F.3d 1001, 1003 (9th Cir. 2008). DFEH supported its First Cause of Action with well-pleaded facts

in the complaint. It alleges, among other things, that LSAC requires applicants to disclose in an accommodations request whether or not they took prescribed medications during medical evaluations of their condition, and if not, to explain their failure to do so. *See* Compl. ¶ 55. LSAC counters this allegation with an invitation to view certain documents on its website; an invitation which the Court declines to take at the 12(b)(6) stage. As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). There are two exceptions to this general rule for materials that the "plaintiff's complaint necessarily relies on" whose "authenticity ... is not contested," and materials that are of "public record." *Id.* at 688-689. Neither exception applies to LSAC's website. As such, LSAC's motion to dismiss DFEH's First Cause of Action is **DENIED**.

E.      Second Cause of Action

DFEH's Second Cause of Action argues that LSAC's policy of flagging score reports of individuals receiving additional time fails to ensure that the LSAT measures aptitude, rather than disability, in violation of the duties imposed on test providers under Title III of the ADA. Compl. ¶¶ 193-195. As discussed above, § 12189 requires test providers like LSAC to offer ADA-governed examinations "in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189. The Department of Justice, which is charged with issuing regulations to carry out Title III's provisions, *see* 42 U.S.C. § 12186(b), has interpreted § 12189 as requiring test providers to administer ADA-governed examinations:

> so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills.

28 C.F.R. § 36.309(b)(1)(I). DFEH argues on the basis of these two provisions that LSAC's "blanket policy of annotating scores taken under extended time conditions" communicates "to law schools that it does not know whether or not the applicant's exam results accurately reflect aptitude or achievement, and, as such, run afoul of the ADA." Compl. ¶ 195. LSAC counters that neither the

1    statute nor the regulation "prohibit the psychometrically sound practice of annotating scores that are

2    achieved with extra testing time" or address "the manner in which scores are reported."  Def's

3    Motion at 15-16.

4         The question presented under this cause of action is relatively novel in ADA law, as

5    demonstrated by the paucity of cases cited by either party.  The sole reported case directly on point

6    is *Doe v. Nat'l Bd. of Med. Examiners*, 199 F.3d 146 (3d Cir. 1999).  *Doe* involved a challenge

7    brought by a medical student with multiple sclerosis against the National Board of Medical

8    Examiners (NBME), claiming that the NBME's practice of flagging accommodated scores on the

9    United States Medical Licensing Examination (USMLE) violated Title III of the ADA.  On appeal

10   from the district court's grant of a preliminary injunction, the Third Circuit held that § 12189's

11   direction that exams be offered "in a place and manner accessible to persons with disabilities" does

12   not "ipso facto" prohibit NBME from flagging test results.  *Doe v. Nat'l Bd. of Med. Examiners*, 199

13   F.3d at 149.  The court held that neither the ADA nor its implementing regulations require scores

14   received with testing accommodations to "be declared psychometrically comparable to the scores of

15   examinees who take the test under standard conditions."  *Id.* at 156.  "In the absence of a statutory

16   proscription against annotating the test scores of examinees who receive accommodations," the court

17   stated, "we do not view the annotation on Doe's score . . . as itself constituting a denial of access"

18   under Title III.  *Id.*  The court noted, however, that the record before it contained "conflicting expert

19   testimony regarding the comparability of time-accommodated scores to scores achieved under

20   standard conditions."  *Id.* at 151.  It posited that had the plaintiff demonstrated "either that his scores

21   are psychometrically comparable to the scores of candidates who take the test under standard time

22   conditions, or that his scores will be ignored by the programs to which they are reported, he might

23   have demonstrated a reasonable likelihood of success on this claim," and thereby preserved his

24   preliminary injunction against NBME.  *Id.* at 156-157.  "On the current record," however, the court

25   found that Doe failed to meet his evidentiary burden.  *Id.* at 157.  The Third Circuit, therefore,

26   placed the burden on the plaintiff to prove the scores were "psychometrically comparable" in order

27   to invalidate flagging.

28

In an unreported decision, Judge Orrick in this District took a slightly different view of this question. *Breimhorst v. Educ. Testing Serv.*, 2000 WL 34510621 (N.D. Cal. 2000),[7] concerned a challenge brought by plaintiffs' regarding the Educational Testing Service's (ETS) practice of "flagging test score reports for test takers who obtained accommodations for their disabilities to indicate that the scores were obtained under special conditions." *Breimhorst v. Educ. Testing Serv.*, 2000 WL 34510621 at *1.  Ruling on ETS's motion for a judgment on the pleadings, Judge Orrick construed the applicable statutes and regulations as requiring test providers "to take steps to *best ensure* that the tests equally measure the skills of disabled and nondisabled test takers." *Id*. at *5.  In light of the ADA's goal to "assure equality of opportunity for disabled people," *id.* at *5 (citing 42 U.S.C. § 12101(8)), the court refused to "focus narrowly on the ability of disabled people to take [a] test" and instead declared, "to fulfill the goals of the ADA, the test itself must allow disabled people to demonstrate their true abilities." *Id*. at *5.  The court found that "§ 36.309(b)(1) [of Title 28 of the C.F.R.] imposes a *duty on test providers* to best ensure that their tests are selected and administered to equally measure the abilities of disabled and nondisabled test takers." *Id*. (emphasis added).   Importantly, "if *test providers* meet this burden, then there would be no reason to flag the test results of disabled test takers who receive accommodations." *Id*. (emphasis added).  Judge Orrick acknowledged that "it may be that there is no way to ensure that the test results are precisely equivalent," and in such a case, even though a test provider "may have taken steps to best ensure that the results are equal, the results may still differ so significantly that flagging is appropriate." *Id*.  However, he declined to render an opinion on the matter, recognizing that it was "an issue of fact . . . and not a matter to be decided on a motion for judgment on the pleadings." *Id*.  Importantly Judge Orrick placed the burden of proving the "best ensure" standard on the test providers.

In the instant case, the Second Cause of Action alleges that LSAC failed to carry its burden. It alleges that LSAC adhered to a blanket policy of flagging without knowing whether the applicant's exam results accurately reflect aptitude or achievement.  Compl. ¶ 195.  While the

---

[7] A copy of this decision appears in Def's Notice of Authority (Docket No. 21).  While not published, the decision does not contain the words "Not for Citation" as specified in Civil Local Rule 7-14 for marking uncitable orders or opinions.

1    complaint does not allege that the scores are in fact "psychometrically equivalent," a fact Plaintiff

2    would have to plead and prove under *Doe*, this Court is persuaded that Judge Orrick's interpretation

3    in *Breimhorst* of the relevant laws is correct.  Under *Breimhorst*, the test provider has the burden of

4    proving it best ensured that the test equally measured abilities of disabled and non-disabled test

5    takers.  That interpretation is consistent with § 12189 which places a general duty on *test providers*

6    to offer accessible examinations or offer alternative accessible arrangements, and the DOJ's

7    regulation at 28 C.F.R. § 36.309(b)(1)(I) which likewise requires *test providers* to "best ensure" that

8    the examination accurately reflects aptitude or achievement levels, not impaired skills.  Judge

9    Orrick's interpretation is also consistent with the Ninth Circuit's decision in *Enyart v. Nat'l*

10   *Conference of Bar Examiners, Inc.*, 630 F.3d 1153 (9th Cir. 2011) *cert. denied*, 132 S. Ct. 366 (U.S.

11   2011), applying § 12189.  In *Enyart*, the Ninth Circuit rejected an argument that the ADA required

12   test providers to provide "reasonable accommodations" under § 12189 instead of adhering to the

13   "best ensure" standard set out in the Justice Department's regulations at 28 C.F.R. § 36.309(b)(1)(I).

14   The court held that:

15           one reasonable reading of § 12189's requirement that entities make
             licensing exams accessible is that such entities must provide disabled
16           people with an equal opportunity to demonstrate their knowledge or
             abilities to the same degree as nondisabled people taking the exam—in
17           other words, the entities must administer the exam so as to best ensure
             that exam results accurately reflect aptitude rather than disabilities.
18

19   *Enyart*, 630 F.3d at 1162.  While the precise contours of the "best ensure" standard are not clear, it is

20   more exacting than a "reasonableness" standard.  *See Enyart*, 630 F.3d at 1161.  *See also Bonnette v.*

21   *Dist. of Columbia Court of Appeals*, 796 F. Supp. 2d 164, 184–85 (D.D.C. July 13, 2011); *Elder v.*

22   *Nat'l Conference of Bar Examiners,* 2011 WL 672662, at *6 (N.D. Cal. 2011); *Jones v. Nat'l*

23   *Conference of Bar Examiners*, 801 F. Supp. 2d 270, 284 (D. Vt. 2011).

24           Since this question is before the Court on a Rule 12(b)(6) motion, the Court **DENIES**

25   LSAC's motion to dismiss this cause of action.

26   F.    <u>Third Cause of Action</u>

27           DFEH's Third Cause of Action argues that LSAC's flagging policy unlawfully coerced and

28   discouraged potential test-takers from seeking testing accommodations or punished those who

1   received accommodations in violation of 42 U.S.C. § 12203.  *See* Compl. ¶¶ 200-201.  That

2   provision of the ADA makes it unlawful "to coerce, intimidate, threaten, or interfere with any

3   individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed,

4   or on account of his or her having aided or encouraged any other individual in the exercise or

5   enjoyment of, any right granted or protected by [the ADA]."  42 U.S.C. § 12203(b).  In support of its

6   motion to dismiss, LSAC repeats the arguments it made earlier that "nothing in the ADA or its

7   implementing regulations . . . prohibit the psychometrically sound practice of annotating test

8   scores," and therefore LSAC's flagging practice cannot give rise to a claim that a "right granted or

9   protected by [the ADA]" has been violated.  *See* Def's Motion ( citing 42 U.S.C. § 12203(b)).  This

10  claim, based as it is on the premise that score 'flagging' cannot give rise to an ADA violation fails

11  for the reasons discussed above.

12          LSAC also calls into question whether DFEH has adequately pled its claim of coercion and

13  interference with sufficient facts to survive a challenge under Rule 12(b)(6).  In the context of a Rule

14  12(b)(6) motion, "a complaint need not contain detailed factual allegations," but it "must plead

15  'enough facts to state a claim to relief that is plausible on its face.'"  *Cousins,* 568 F.3d at 1067 (9th

16  Cir. 2009).  Facial plausibility is met when "the plaintiff pleads factual content that allows the court

17  to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

18  *Iqbal*, 129 S. Ct. 1937, 1949 (2009).  As noted above, the complaint states that LSAC's practice of

19  'flagging' score reports of individuals who received disability related accommodations violates §

20  12189.  As to whether that practice also intimidates disabled test-takers from seeking

21  accommodations or punished those who received accommodations, DFEH has also pled sufficient

22  facts to satisfy the standard set in *Cousins* and *Iqbal*.  Paragraph 201 of the complaint alleges, among

23  other things, that "flagging" score reports discourages applicants from seeking an accommodation

24  and punishes those who do receive accommodations.  As in *Breimhorst*, DFEH states a claim that

25  flagging can "coerce, intimidate, threaten, or interfere with" the enjoyment of an individual's right's

26  under Title III of the ADA, 42 U.S.C. § 12203(b).  2000 WL 34410621 at *7.  LSAC's practice of

27  'flagging' necessarily "announces an individual's disability above all else," and this practice "cannot

28  be reconciled with the ADA's mandate that testing entities must administer exams so as to best

1  ensure that exam results reflect individuals' skills and achievement level and not their disability."

2  *See* Statement of Interests of the United States (Docket No. 29) at 13.  This result, in itself,

3  "interfere[s] with any individual in the exercise or enjoyment of, or on account of his or her having

4  exercised or enjoyed . . . any right granted or protected by this chapter."  42 U.S.C. § 12203(b).

5      The Court, therefore, **DENIES** LSAC's motion to dismiss DFEH's Third Cause of Action.

6  G.    Fourth Cause of Action

7      DFEH's Fourth Cause of Action argues that LSAC breached its duty to make the LSAT

8  accessible to disabled individuals by requiring excessive documentation and by denying reasonable

9  accommodations in violation of 42 U.S.C. § 12189 and 28 C.F.R. § 36.309(b)(1)(iv).  Section

10  36.309(b)(1)(iv) of the ADA's implementing regulations state "any private entity offering an

11  examination covered by this section must assure that any request for documentation, if such

12  documentation is required, is reasonable and limited to the need for the modification,

13  accommodation, or auxiliary aid or service requested.  *Id*.  LSAC does not challenge this cause of

14  action insofar as it alleges that LSAC denied "a reasonable accommodation to each real party in

15  interest."  Def's Motion at 17.  It does, however, challenge the sufficiency of the first half of

16  DFEH's claim that it violated rights of the Complainants by "requiring excessive amounts of

17  documentation."  *See id.*

18      LSAC advances two arguments in support of this component of its motion to dismiss.  First,

19  it posits that "the regulation that DFEH relies upon did not become effective" until after "LSAC

20  processed twelve of the Complainants' requests for accommodations," and cannot, therefore, "be the

21  source of claimed violation of their rights."  Def's Motion at 18.  Second, LSAC renews its

22  argument that no private right of action exists to enforce the regulatory mandate in a slightly

23  modified form.

24      Taking the second argument first, LSAC argues that DFEH cannot rely on 28 C.F.R. §

25  36.309(b)(1)(iv) as a "source of a claimed violation" of the ADA because "it imposes obligations

26  that are not found in the statutory provision it purports to implement."  Def's Motion at 18.  LSAC

27  cites *Lonberg v. City of Riverside*, 571 F.3d 846 (9th Cir. 2009) and *Abrahams v. MTA Long Island

28  Bus*, 644 F.3d 110 (2d Cir. 2011) broadly for the proposition that "[o]nly those regulations

United States District Court

For the Northern District of California

1   effectuating the statute's clear prohibitions or requirements are enforceable through the statute's

2   private right of action." *Id.* Each of these cases addressed whether plaintiffs could state a cause of

3   action under the ADA for failure to carry out a provision of DOJ's ADA regulations; *Lonberg*

4   addressed a public entity's obligation to create a "transition plan" to achieve program accessibility

5   as required by 28 C.F.R. § 35.150(d), and *Abrahams* addressed procedural requirements mandated

6   by the Department of Transportation in 49 C.F.R. § 37.137(c) that public entities permit ongoing

7   public participation in developing and assessing paratransit services.  In each case, the court held

8   that the regulation at issue could not be enforced in a private right of action because a public entity's

9   violation of the regulation did not amount to a violation of the ADA.  *See Lonberg*, 571 F.3d at 851

10  ("The existence or non-existence of a transition plan does not, by itself, deny a disabled person

11  access to a public entity's services, nor does it remedy the denial of access."); *Abrahams*, 644 F.3d

12  at 119 ("by its own terms, the 'ongoing requirement' of 49 C.F.R. § 37.137(c) has a broader

13  application than the implementation of an initial plan or the submission of annual updates [as

14  required under 42 U.S.C. § 12143] . . . [t]ellingly, a public entity may be in full compliance with §

15  12143's public participation requirements, while simultaneously violating § 37.137(c)'s ongoing

16  public participation requirement.").

17        Unlike *Lonberg* and *Abrahams*, the regulation at issue in this case does not create an

18  obligation that extends beyond the statutory requirements of the ADA.  Section 12189 requires test

19  providers to offer their examinations "in a place and manner accessible to persons with disabilities

20  or offer alternative accessible arrangements for such individuals."  42 U.S.C. § 12189.  Failure to do

21  so gives rise to a private right of action "to any person who is being subjected to discrimination on

22  the basis of disability in violation of this subchapter."  42 U.S.C. § 12188(a)(1).  The Ninth Circuit

23  has previously considered the meaning of § 12189's language and held that "[b]ecause § 12189 is

24  ambiguous with respect to its requirement that entities administer licencing exams in a manner

25  "accessible" to individuals with disabilities, we defer to DOJ's interpretation of the statute so long as

26  that interpretation is based upon a permissible construction of the statute."  *Enyart v. Nat'l*

27  *Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1162 (9th Cir. 2011) (*Enyart* rejected a similar

28

1  challenge brought by a testing entity against a DOJ regulation that purportedly imposed an

2  obligation beyond § 12189's statutory mandate).

3          The regulation at issue here requires "any request for documentation, if such documentation

4  is required," to be "reasonable and limited to the need for the modification, accommodation, or

5  auxiliary aid or service requested."  28 C.F.R. § 36.309(b)(1)(iv).  LSAC may be correct in asserting

6  that the language of § 12189 does not explicitly address "limitations regarding documentation," *see*

7  Def's Motion at 17:28-18:3, but it does mandate that examinations be offered "in a place and

8  manner accessible to persons with disabilities."  Unlike the regulations at issue in *Lonberg* and

9  *Abrahams* which clearly imposed regulatory mandates in excess of statutory text, excessive or

10 unreasonable documentation could deny an applicant's access to an examination in violation of the

11 ADA.  In its Notice of Proposed Rulemaking preceding the agency's 2010 revisions to 28 C.F.R.

12 Part 36, DOJ noted how "[t]hrough its enforcement efforts, the Department has discovered that the

13 requests made by testing entities for documentation regarding the existence of an individual's

14 disability and her or his need for a modification or an auxiliary aid or service are often inappropriate

15 or burdensome."  73 Fed. Reg. 34508, 34539 (June 17, 2008).  Thus, 28 C.F.R. § 36.309(b)(1)(iv) is

16 simply an interpretative regulation which clarifies and gives specific meaning to § 12189.  It is true

17 that "[l]anguage in a regulation may invoke a private right of action that Congress through statutory

18 text created, but it may not create a right that Congress has not," *Alexander v. Sandoval*, 532 U.S.

19 275, 291 (2001); however, § 36.309(b)(1)(iv) does not run afoul of that standard.  Section

20 36.309(b)(1)(iv) does not create a new right; it merely delineates a concrete example of what

21 constitutes a denial of access under the ADA with regard to a testing provider's documentation

22 requirements.

23         LSAC's argument regarding the effective date of the regulation also fails.  LSAC's argument

24 implies that, absent the Justice Department's regulation found at 28 C.F.R. § 36.309(b)(1)(iv), it

25 would not otherwise be required to limit its documentation requests to that which is "reasonable and

26 limited to the need for the modification" [testing accommodation in this context].  28 C.F.R. §

27 36.309(b)(1)(iv).  This misstates the law.  As noted above, the obligation to refrain from imposing

28 inappropriate or burdensome requests for documentation in support of a testing accommodation

1    request, springs not from the Justice Department's regulatory scheme, but from the ADA itself.

2    Section 12189 affirmatively requires test providers to offer examinations "in a place and manner

3    accessible to persons with disabilities." 42 U.S.C. § 12189.  As the Justice Department makes clear

4    in its Statement of Interests, for more than 20 years, the Department has interpreted this provision of

5    the ADA as inherently limiting "requests for documentation" made by test providers to that which is

6    "reasonable" and "limited to the need of the modification or aid requested." *See* Statement of

7    Interests of the United States of America (Docket No. 29) at 10-11.  Indeed, it codified this

8    interpretation in the preamble to its 1991 ADA regulations. *See* 56 Fed. Reg. 35544, 35573 (July

9    26, 1991).  When the Department issued the regulation specifically enumerating this longstanding

10   interpretation of § 12189, it "merely sought to clarify testing entities' responsibilities under [section

11   12189]" in a way "that should lead to fewer misinterpretations of the requirements, more compliance

12   with the ADA, and less discrimination in testing."  Statement of Interests of the United States of

13   America at 11-12.  The codification of this long standing interpretation at 28 C.F.R. §

14   36.309(b)(1)(iv) did not alter any existing rights or obligations; it merely clarified what those rights

15   and obligations under § 12189 are and have been.  Contrary to Defendant's argument, this regulation

16   is not the source of a claimed violation of complaints rights; the ADA is, and the regulation is

17   merely interpretive. *See Manhattan Gen. Equip. Co. v. Comm'r,* 297 U.S. 129, 135 (1936)

18   (explaining that agency rule interpreting a statute "is no more retroactive in its operation than a

19   judicial determination construing and applying a statute to a case in hand").

20         For these reasons, the Court **DENIES** LSAC's motion to dismiss DFEH's Fourth Cause of

21   Action.

22   H.    Fifth Cause of Action

23         DFEH's Fifth Cause of Action contends that LSAC's policy of requiring excessive

24   documentation to support accommodation requests coerced and discouraged the real parties in

25   interest to this suit from seeking disability related accommodations in violation of 42 U.S.C. §

26   12203(b).  Much like its Third Cause of Action, DFEH frames this claim on the belief that requiring

27   excessive documentation in violation of § 12189 operated in a manner that "coerce[d], intimidate[d],

28

United States District Court
For the Northern District of California

1  threaten[d], or interfere[d]" with the plaintiffs' enjoyment of their rights under the ADA.  Compl. ¶

2  213.

3          LSAC's motion to dismiss argues, in essence, that its actions were not coercive, intimidating,

4  or threatening because (1) it has a "right to request reasonable documentation" in support of an

5  accommodation request, and (2) DFEH merely disagrees with LSAC's assessment of what

6  documentation was required under the ADA in order to grant plaintiffs' requested accommodations.

7  *See* Def's Motion at 19.  DFEH does not dispute LSAC's right to request reasonable documentation

8  under the ADA.  DFEH does allege that LSAC exceeded that right in regard to the documentation

9  requests made of the plaintiffs in this case.  *See* Compl. ¶¶ 211-216.  Again, in the context of a

10  motion to dismiss under Rule 12(b)(6), the allegations of the complaint must be taken as true.

11          LSAC's second argument construes DFEH's Fifth Cause of Action as, essentially, a

12  "disagreement" over factual issues as to whether Complainants sufficiently documented their need

13  for testing accommodations, and then states that "such disagreement cannot be converted into a

14  cause of action."  Def's Motion at 19-20.  The Court disagrees.  This element of the Complaint

15  alleges that LSAC's documentation policies and practices both coerced and discouraged the real

16  parties, from seeking accommodations on the LSAT, and punished those who did apply for

17  accommodations by subjecting them to excessive and capricious documentation requirements.  The

18  complaint states a claim under § 12203(b).

19          As such, LSAC's motion to dismiss DFEH's Fifth Cause of Action is **DENIED.**

20  I.     Narrowing of The Class

21          LSAC next challenges DFEH's authority to seek class relief under California's Fair

22  Employment and Housing Act.  Defendant argues that DFEH only has authority to seek relief on a

23  class basis where "an unlawful practice alleged in a verified complaint adversely affects, in a similar

24  manner, a group or class of persons of which the aggrieved person filing the complaint is a member,

25  or where such an unlawful practice raises questions of law or fact which are common to such a

26  group or class."  Def's Motion at 20; *see also* Cal. Gov't Code § 12961.  LSAC contends that a class

27  action complaint may only include "similarly situated" individuals to those originally filing verified

28  complaints and may only address practices at issue in those original verified complaints.  *See id.*

1    LSAC also asserts that DFEH must properly notify it of any class-based allegations, provide LSAC

2    the opportunity to address any allegedly unlawful actions and participate in conciliation discussions.

3    *See id.*   To that end, LSAC contends that the notice it received was improper and that DFEH

4    insufficiently attempted to resolve the complaints in this matter through conciliation since the

5    conciliation process consisted of only a single meeting where a settlement payment was demanded.

6          LSAC's narrow reading here of the class relief mechanism presented in the FEHA largely

7    duplicates its earlier argument challenging DFEH's jurisdiction to pursue claims that emerged

8    during the course of investigating a verified complaint.   As noted above, claims asserted by DFEH

9    that are "like or reasonably related to" the allegations set forth in the Notice of Class Action are

10   permissible under *Rodriguez v. Airborne Express, supra*, 256 F.3d 890.   DFEH's Notice of Class

11   Action clearly stated that the agency was investigating claims that LSAC "engaged in unlawful

12   practices against [verified complainants] which were discriminatory on the basis of disability," and

13   that its investigation would expand to include "all disabled individuals in the State of California who

14   have or will request a reasonable accommodation for the [LSAT], administered by the LSAC, and

15   who have or will be unlawfully denied such request" within the time period specified.   Compl., Ex. 3

16   ¶¶ 1-3.   The fact that  DFEH's Notice of Class Action Complaint specifically mentions class

17   members who were *denied* accommodations does not necessarily preclude potential class members

18   who were *granted* accommodations on the LSAT from being "similarly situated."   Both groups of

19   individuals may have been impacted by LSAC's allegedly unlawful practices in regards to

20   discrimination on the basis of a disability.   For example, both those who were granted and denied

21   reasonable accommodations on the LSAT faced LSAC's alleged unlawful practices of requiring

22   individuals to take their medication or submit a justification for failure to do so (first class cause of

23   action), LSAC's failure to ensure that the exam measures aptitude rather than disability (second

24   class cause of action), and LSAC's imposition of excessive documentation requirements (fourth

25   class cause of action).   *See* Compl. ¶¶ 187-204.   The claims of the class members are thus similar;

26   regardless of whether accommodations were denied or granted, their claims raise common questions

27   of law and fact.

28

1    On the facts pled in the complaint, the declarations submitted accompanying this motion, and

2   Ninth Circuit precedent in this area of law, the Court concludes the breadth of DFEH's class claims

3   did not deprive LSAC of proper notice of the claims brought against it in this Complaint.  Indeed,

4   one of the first verified complaints in this matter – that of Nicholas Jones – specifically placed

5   LSAC on notice that the scope of DFEH's investigation would be conducted on a class basis.  *See*

6   Compl., Ex. 2 (Verified Complaint of Nicholas Jones) ("I am making this complaint on behalf of

7   myself and all other disabled individuals, who have been, are now, or will in the future be similarly

8   aggrieved.").  That same verified complaint clearly indicates that LSAC's documentation practices

9   were being called into question.  *See Id.*  Having already concluded that DFEH's allegations

10  regarding LSAC's flagging practice is "like or reasonably related to" the allegations originally

11  presented in the verified complaints, the Court rejects LSAC's argument that it did not receive

12  adequate notice of the scope of allegations that ultimately made their way into the Complaint.

13    LSAC further argues that DFEH has no need to proceed in this matter on a class basis.  *See*

14  Def's Motion at 21, Fn.7.  LSAC states that a Notice of Investigation was sent to 311 individuals, 89

15  of whom consented to disclosure of their names to DFEH.  *Id.*  From those 89 names, LSAC decided

16  to seek relief on behalf of only seventeen individuals.  *Id.*  Thus, LSAC argues, DFEH has already

17  had a chance to review "applicable records" and identified viable claims.  However, LSAC offers no

18  legal support for its assertion that DFEH's decision to proceed on a class basis is impermissible.  It

19  cites no cases or statutes that deprive DFEH of the ability to maintain a class complaint under the

20  facts of this case.  Plaintiffs' claims are all "within the scope of the administrative investigation

21  which can reasonably be expected to grow out of the [initial charges] of discrimination."  *Rodriguez*

22  *v. Airborne Express* at 897.

23    The Court therefore rejects LSAC's arguments that the scope of DFEH's proposed class

24  ought to be limited.

25  J.    Recovery of Damages Under the Unruh Act

26    LSAC asserts that DFEH may not recover the treble damages DFEH seeks under Cal. Civ.

27  Code § 52 for alleged violations of the Unruh Act.  Def's Motion at 21.  Rather, LSAC argues that

28  DFEH's damages claims are governed by Cal. Gov. Code § 12970.  *Id.* at 22 (citing *Dep't of Fair*

1    *Empl. & Housing v. Marion's Place*, 2006 WL 1130912, at *12 (Cal. FEHC 2006)).  As such, LSAC

2    claims that DFEH's claims for treble damages and a minimum recovery of $4,000 per Unruh Act

3    violation pursuant to California Civil Code § 52 must fail as a matter of law.  Def's Motion at 22.

4          California Civil Code § 52(a) states that those who discriminate under the Unruh Act are

5    "liable for each and every offense for the actual damages, and any amount that may be determined

6    by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual

7    damage but in no case less than four thousand dollars ($4,000) . . . suffered by any person denied the

8    rights provided in Section 51, 51.5, or 51.6."  Cal. Civ. Code § 52(a).  Notwithstanding this

9    provision, the California Fair Employment and Housing Commission ("FEHC") has ruled that

10   actions before the Commission are governed not by § 52, but rather by Cal. Gov. Code § 12970,

11   which authorizes the Commission to award damages in an amount different from that available

12   under § 52(a).  *See Dep't of Fair Empl. & Housing v. Marion's Place*, 2006 WL 1130912, at *12

13   (Cal. FEHC 2006).

14          Importantly, DFEH's complaint here is being heard in civil court and not in front of the

15   FEHC.  Indeed, as DFEH points out in its papers, LSAC chose to remove the matter to civil court in

16   lieu of an FEHC hearing. Consequently, DFEH contends that LSAC is subject to a civil court's

17   authority to award damages, and not damages as would be available before FEHC.  Pl's Opp. at 21.

18          LSAC offers two arguments attempting to rebut DFEH's claim that § 52(a) governs an award

19   of damages in this case, but both are unpersuasive. LSAC contends that nothing in the statutory

20   provision allowing a party to have its claim heard in civil court rather than in front of the FEHC

21   includes a requirement that the parties "forego FEHA damages in favor of damages awarded under

22   the Unruh Act."  Def's Reply at 15.  In support of its argument that a court's authority to award

23   damages ought to parallel the damages available before FEHC, LSAC cites Cal. Govt. Code §

24   12970(a)(3) which states that FEHC "may award the same damages 'as may be available in civil

25   actions under this part.'"  *Id.* (citing Cal. Gov't Code § 12970(a)(3)).

26          Despite LSAC's arguments to the contrary, the amount of damages that can be awarded by

27   FEHC are simply not relevant to this action.  While § 12970 and *Marion's Place* may impose limits

28   on FEHC's remedial authority, they do not purport to limit damages awardable in court.  In actions

United States District Court

For the Northern District of California

1  removed from FEHC to court via Cal. Gov. Code § 12965(c)(1), subsection (c)(3) provides that "[a]

2  court may grant as relief in any action filed pursuant to this subdivision any relief a court is

3  empowered to grant in a civil action brought pursuant to subdivision (b)," the provision of FEHA

4  involving suits in court for complaints that are not heard by the agency and for which a right-to-sue

5  notice has issued.  That statute does not incorporate any limit on damages applicable under FEHA.

6  Courts may award aggrieved parties treble damages under the Unruh Act, *see* Cal. Civ. Code § 52.

7  No statutory provision prevents the Court from awarding similar damages in actions brought by

8  DFEH under 12965(b) and (c)(3).

9  K.     Dismissal of Doe Defendants

10         DFEH brought all five of its ADA claims against not only LSAC but also ten unnamed Doe

11 Defendants .  Compl. ¶ 5.  DFEH asserts in the complaint that it is ignorant of the Doe Defendants

12 "true names or capacities," but that it will amend the Complaint to include that information when it

13 is ascertained through the course of litigation.  *Id*.  DEFH states that each Doe Defendant was an

14 employee of LSAC during the time of the alleged unlawful conduct, and that each should be held

15 jointly and severally liable to the real parties in the action for damages.  *Id*. ¶ 6.  LSAC makes three

16 main arguments to support its assertion that the Doe Defendants should be dismissed from the

17 complaint.  First, LSAC asserts that DFEH failed to plead "a single fact" regarding any alleged

18 misconduct by any of the Doe Defendants and therefore runs afoul of Fed. R. Civ. P. 8.  Def's

19 Motion at 22.  Second, LSAC contends that no individual person offers the LSAT, only LSAC the

20 business entity does, and thus there is no possibility that an individual person could be held liable for

21 the ADA violations complained of in this action.  *Id.* at 23.  Third, LSAC claims that DFEH is

22 precluded from naming the Doe Defendants because no individuals were specifically named as

23 defendants in the original administrative complaints filed by the Complainants.  *Id*. at 24.

24         LSAC cites *Dydzak v. George*, 2010 U.S. Dist. Lexis 144336 at *24 (C.D. Cal. 2010).  In

25 *Dydzak*, a plaintiff brought suit against the State Bar of California as well as judges and other

26 attorneys involved in an alleged "conspiracy" which led to the plaintiff's disbarment.  *See Id.* at *6-

27 7.  In addition to suing the State Bar itself, the plaintiff also named ten unnamed state bar

28 defendants, Does 1-10.  *Id*. at *23.  Because the complaint failed to allege specific factual matters or

1    acts that the unidentified individuals committed beyond a general assertion of their complicity in the

2    alleged wrongs, the court found that the claims against the Doe defendants failed to meet the

3    pleading standards set under Fed. R. Civ. P. 8 and dismissed the Doe defendants from the action.

4    *See id.* at *25.

5            DFEH has not submitted any legal authority or factual claims to rebut LSAC's argument.

6    Rather, DFEH merely states that it "may find" that other "entity defendants are responsible for some

7    or all of the alleged ADA violations." Pl's Opp. at 22. Similar to the plaintiff in *Dydzak*, DFEH has

8    only named ten Doe Defendants in a cursory manner and has not pled any specific factual

9    allegations beyond the assertions that such defendants worked in some capacity for LSAC and are

10   somehow materially involved in LSAC's alleged unlawful conduct. *See* Compl. ¶¶ 5-6. As such,

11   DFEH has failed to meet the standard set forth by Fed. R. Civ. P. 8. Indeed, DFEH comes close to

12   conceding that it has no strong legal basis for retaining the Doe defendants when it "asks this

13   Court's leave to retain its DOE allegations through the date of initial disclosures." Pl's Opp. at 22.

14           LSAC also argues that individual liability is unavailable as a remedy under the ADA claims

15   advanced by DFEH. *See* Def's Motion at 23. Focusing on the second and fourth claims in DFEH's

16   complaint, LSAC contends that claims against individuals are unavailable in this case under 42

17   U.S.C. § 12189, since, by its terms, this section can only apply to a person that "offers" a

18   standardized examination. *See id.* As the complaint reflects, no individual can offer the LSAT; only

19   LSAC offers the LSAT. *Id.* Although LSAC does not advance any direct legal support to show that

20   claims against individuals are not available under 42 U.S.C. § 12189, LSAC does support its

21   argument by citing to several cases where courts refused to impose remedies against individual

22   defendants under 42 U.S.C. § 12812(a), Title III's public accommodation provision. *See* Def's

23   Motion at 23. In *Emerson v. Thiel College*, 296 F.3d 184 (3d Cir. 2002), the Third Circuit held that

24   individual college defendants did not "operate" Thiel College, a place of public accommodation, and

25   thus were not liable under Title III of the ADA. *Emerson v. Thiel College*, 296 F.3d at 189. *See*

26   *also White v. Creighton Univ.*, 2006 WL 3419782 (D. Neb. Nov. 27, 2006) (no ADA liability found

27   under Title III because individual defendants do not 'operate' the university). In the absence of

28   contrary authority, the Court finds LSAC's argument persuasive.

DFEH has failed to satisfy the pleading standard set forth by Fed. R. Civ. P. 8 regarding the ten Doe Defendants, and has likewise failed adequately to demonstrate that its causes of action can impose individual liability under the ADA.  As such, the Court **GRANTS** LSAC's motion to dismiss with prejudice the ten Doe Defendants from the complaint.

## IV.   CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** Defendant's motion to dismiss the ten Doe Defendants from this action, and **DENIES** the remainder of Defendant's motion to dismiss in its entirety.

This order disposes of Docket No. 13.


IT IS SO ORDERED.


Dated:  September 18, 2012

_____
EDWARD M. CHEN
United States District Judge