1   Claudia Center, State Bar No. 158255
    Gina Gemello, State Bar No. 282964
2   The LEGAL AID SOCIETY –
       EMPLOYMENT LAW CENTER
3   180 Montgomery Street, Suite 600
    San Francisco, CA 94104
4   Telephone:   (415) 864-8848
    Facsimile:   (415) 593-0096
5   Emails:      ccenter@las-elc.org
                 ggemello@las-elc.org
6
    Attorneys for Plaintiff-Intervenors
7   ANDREW QUAN, NICHOLAS JONES and
    ELIZABETH HENNESSEY-SEVERSON

8

9                 IN THE UNITED STATES DISTRICT COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12  THE DEPARTMENT OF FAIR                Case No.  CV 12-1830-EMC
    EMPLOYMENT AND HOUSING,
13                                        COMPLAINT IN INTERVENTION FOR
                  Plaintiff,              DAMAGES, EQUITABLE RELIEF, AND
14                                        ATTORNEYS' FEES AND COSTS FOR
           v.                             VIOLATIONS OF THE AMERICANS WITH
15                                        DISABILITIES ACT OF 1990, 42 U.S.C. §
    LAW SCHOOL ADMISSION COUNCIL,         12101, ET SEQ.; CALIFORNIA'S UNRUH
16  INC., ET AL.,                         CIVIL RIGHTS ACT, CAL. CIVIL CODE §
                                          51, ET SEQ., AND CALIFORNIA'S UNFAIR
17                Defendants.             BUSINESS PRACTICES ACT, CAL. BUS. &
                                          PROF. CODE § 17200, ET SEQ.
18  JOHN DOE et al., and all other similarly
    situated individuals,
19
                  Real Parties in Interest
20
    _____
21
    ANDREW QUAN, NICHOLAS JONES, and
22  ELIZABETH HENNESSEY-SEVERSON,

23                Plaintiff-Intervenors,
           v.
24
    LAW SCHOOL ADMISSION COUNCIL,
25  INC.,

26                Defendant.

27

28

1    Plaintiff-Intervenors ANDREW QUAN, NICHOLAS JONES, and ELIZABETH

2  HENNESSEY-SEVERSON complain and allege as follows:

3                                                    **INTRODUCTION**

4       1.   This is an action for relief from Defendant's violation of the civil rights of Plaintiff-

5  Intervenors ANDREW QUAN, NICHOLAS JONES, and ELIZABETH HENNESSEY-

6  SEVERSON.  These violations, which are more particularly alleged herein, include disability-

7  based discrimination in violation of the Americans with Disabilities Act (ADA), disability-based

8  discrimination in violation of California's Unruh Civil Rights Act, and unlawful business

9  practices in violation of California's Unfair Business Practices Act.

10      2.   Plaintiff-Intervenors QUAN, JONES, and HENNESSEY-SEVERSON are individuals

11 with disabilities within the meaning of federal and state disability nondiscrimination laws,

12 including Title III of the ADA and California's Unruh Civil Rights Act.

13      3.   Plaintiff-Intervenors QUAN, JONES, and HENNESSEY-SEVERSON requested

14 accommodations from Defendant LSAC for the Law School Admission test (LSAT).  In

15 violation of law, Defendant LSAC imposed upon Plaintiff-Intervenors onerous and unnecessary

16 documentation requirements and subjected them to an arbitrary, ineffective, and unpredictable

17 evaluation and appeals procedure.  In violation of law, Defendant LSAC refused to make

18 reasonable modifications to testing conditions for Plaintiff-Intervenors.  In violation of law, after

19 finally providing testing accommodations to Plaintiff-Intervenor HENNESSEY-SEVERSON,

20 Defendant LSAC refused to provide her with an LSAT score in the same format as her

21 nondisabled peers.

22      4.   Plaintiff-Intervenors seek declaratory and injunctive relief, equitable relief, actual

23 damages, treble damages, restitution, reasonable attorneys' fees and costs, as well as other

24 appropriate relief as determined by this court.

25                                                    **JURISDICTION**

26      5.   This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §

27 1331.  Plaintiff-Intervenors bring this suit under Title III of the ADA, 42 U.S.C. § 12181, *et seq.*

28

6.  This court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a).  Plaintiff-Intervenors' claims pursuant to California's Unruh Civil Rights Act, Cal. Civil Code § 51, *et seq*., and California's Unfair Business Practices Act, Cal. Bus. & Prof. Code § 12700, *et seq.*, are related, as all of Plaintiff-Intervenors' claims share common operative facts.  Resolving all state and federal claims in a single action serves the interests of judicial economy, convenience, and fairness to the parties.

**VENUE**

7.  Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2), in that the claims of Plaintiff-Intervenors and Real Parties in Interest QUAN and HENNESSEY-SEVERSON along with the claims of other Real Parties in Interest occurred herein.

**PARTIES**

1.  Plaintiff-Intervenor ANDREW QUAN is a citizen of the United States and a resident of Hayward (Alameda County, California).

2.  Plaintiff-Intervenor QUAN has Attention Deficit Hyperactive Disorder (ADHD), dysgraphia, hypotonia, and a visual-motor deficit with slow processing speed.  These conditions limit and substantially limit several major life activities.  He is an individual with a "disability" within the meaning of federal and state disability nondiscrimination laws, including Title III of the ADA and California's Unruh Civil Rights Act.

3.  Plaintiff-Intervenor NICHOLAS JONES is a citizen of the United States and a resident of Palm Desert (Riverside County, California).

4.  Plaintiff-Intervenor JONES has amblyopia and posterior vitreous detachment, which are visual impairments.  These conditions limit and substantially limit several major life activities. He is an individual with a "disability" within the meaning of federal and state disability nondiscrimination laws, including Title III of the ADA and California's Unruh Civil Rights Act.

5.  Plaintiff-Intervenor ELIZABETH HENNESSEY-SEVERSON is a citizen of the United States and a resident of San Francisco (San Francisco County, California).

6.  Plaintiff-Intervenor HENNESSEY-SEVERSON has ADHD-I and learning disabilities.

1    These conditions limit and substantially limit several major life activities.  She is an individual

2    with a "disability" within the meaning of federal and state disability nondiscrimination laws,

3    including Title III of the ADA and California's Unruh Civil Rights Act.

4        7.    Defendant LSAC is a Delaware corporation with its headquarters in Newtown,

5    Pennsylvania.  The LSAC administers the LSAT throughout the United States, including in this

6    judicial district.  The LSAC is a "person that offers examinations or courses related to

7    applications, licensing, certification, or credentialing for secondary or post-secondary education,

8    professional, or trade purposes" within the meaning of Title III of the ADA.  The LSAC is also a

9    "public accommodation" within the meaning of Title III of the ADA. The LSAC is a "business

10   establishment" within the meaning of California's Unruh Civil Rights Act.

## STATEMENT OF FACTS

### LSAC and the Law School Admission Test (LSAT)

13       8.    Defendant LSAC administers the Law School Admission Test (LSAT), a half-day,

14   standardized test used in the admissions decisions of virtually all ABA-accredited law schools,

15   and many non-accredited law schools.  The test consists of five multiple choice sections (35

16   minutes each) and one writing sample (35 minutes).  Approximately 150,000 LSATs are

17   administered worldwide each year.  Defendant LSAC also offers a "Credential Assembly

18   Service" to law schools, in which applicants to law school upload undergraduate transcripts,

19   evaluations, and application materials.  LSAC then disseminates the application materials, along

20   with an applicant's LSAT score report, to law schools.

21       9.    Applicants with disabilities may seek testing accommodations on the LSAT pursuant to

22   the LSAC's policies, procedures, and practices.  As alleged herein, these policies, procedures,

23   and practices are inconsistent with the requirements of state and federal laws and operate to

24   discriminate against and exclude persons with disabilities.

25       10.   Under the LSAC's policies, procedures, and practices, disabled applicants seeking

26   testing accommodations must complete and submit an extensive portfolio of current and

27   historical materials including medical and/or psychological documentation by a stated deadline.

28

(a)    Each disabled applicant seeking testing must submit a three-page application form, a score report from past standardized tests, a verification of accommodations received on each of those tests, and one three-page medical form filled out by a qualified professional, as necessary to document the applicant's condition(s).

(b)    Depending upon the type of disability, applicants are required to submit additional documentation.

(c)    Applicants with "cognitive and psychological impairments," a category which includes learning disorders, processing deficiencies, and ADHD, are referred to a three-page, single-spaced document detailing extensive additional requirements, including:

- Full psychoeducational and/or neuropsychological evaluation which addresses sensory-motor, auditory, attention, and visual-spatial issues; receptive and expressive language; immediate and delayed memory; achievement; and intelligence; and which includes a comprehensive diagnostic interview;

- Complete aptitude assessment such as Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV);

- Comprehensive achievement battery;

- Timed reading comprehension measure;

- Timed writing measures if additional time on the nonscored writing section is requested;

- Measures of spelling and grammar skills if a computer with spelling and/or grammar check is requested;

- Objective data measures (such as the CPT-II or TOVA) and tests measuring information processing (such as WAIS-IV) for applicants with information/attention processing diagnoses (including ADHD); and

- Personality tests (LSAC recommends submitting an objective test such as the MMPI-II or MCMI-III and a projective testing instrument like the Rorschach) for applicants seeking accommodations based on psychiatric disorders.

All tests for cognitive and psychological disabilities must be no older than three years if the applicant is under the age of twenty-one, or five years if the applicant is over twenty-one.

(d)    Applicants who are blind or who have other visual disabilities must submit, in addition to the standard requirements, a four-page Evaluation Report filled out by their treating practitioner.

1    (e)    Applicants with "physical/medical impairments" must submit, in addition to the

2    standard requirements, a two-page Physical Evaluation Report.

3    (f)    Applicants with hearing impairments must submit, in addition to the standard

4    requirements, a comprehensive psycho-educational assessment.

5    (g)    Applicants seeking testing accommodations based upon more than one type of

6    impairment must comply with the documentation requirements of each type of impairment.

7    11.   The LSAC's documentation requirements for testing accommodations are frequently

8    onerous and unnecessary.  For example, applicants seeking testing accommodations related to a

9    learning disability typically can demonstrate a history of testing accommodations in other

10   contexts and can provide copies of psycho-educational testing and evaluation documents

11   conducted throughout K-12.  Yet to comply with the LSAC's rigid documentation requirements,

12   including the specific tests required and the requirement that the testing be less than three or five

13   years old (depending upon the age of the individual), these applicants must often hire

14   psychologists and other medical professionals to administer and compile the battery of required

15   tests and reports.  The out-of-pocket costs can total thousands of dollars.

16   12.   The LSAC's documentation requirements are frequently unclear.  For example, various

17   testing measures are described as "preferred" or "helpful" but the requirements nowhere explain

18   the relative weight or preference given to such instruments, or the risks involved with providing

19   an alternate measure.

20   13.   The LSAC's procedures for receiving, evaluating, and reconsidering requests for testing

21   accommodations are vague, ambiguous, and arbitrary.

22   (a)    While LSAC publications set forth specific deadlines for requesting

23   accommodations, applicants are urged to submit requests "well in advance" of the deadlines or

24   "there will be little or no opportunity to rectify deficiencies in documentation or seek

25   reconsideration."  No definition is provided for "well in advance."  Related, the deadline for

26   "reconsideration," which is Defendant LSAC's label for its appeals process, is the same deadline

27   as for submitting an original request for testing accommodations.  An applicant can thus meet or

28

1    exceed the initial deadline, be denied, and not have any time remaining for an appeal.

2        (b)    The standards by which applications are evaluated initially and upon

3    reconsideration are opaque.  Denial letters are frequently cursory (*e.g.*, "the documentation you

4    provided did not reflect an impairment related to taking the LSAT.").

5        (c)    As a result, it is extraordinarily difficult for an applicant to determine what is

6    missing from his or her application, obtain that information from a permitted source, and submit

7    the information in time to obtain accommodation prior to a scheduled test date.

8    14.   Those applicants who are successful in obtaining testing accommodations from the

9    LSAC do not receive an LSAT score in the same format as their nondisabled peers.  Unlike the

10   test scores issued by the College Board or by Educational Testing Service (ETS), such as the

11   SAT, PSAT, and GRE, the scores of persons who take the LSAT with testing accommodations

12   are "flagged" – they are accompanied by a letter disclosing that the test was taken under

13   nonstandard testing conditions.

14                              **Andrew Quan**

15   15.   Plaintiff-Intervenor ANDREW QUAN has ADHD, dysgraphia, hypotonia, and a visual-

16   motor integration deficit with slow processing speed.  ADHD (Attention Deficit-Hyperactive

17   Disorder) is a neurobehavioral condition with common symptoms of difficulty paying attention,

18   staying on task, and controlling impulses.  Dysgraphia, a learning disability that affects the motor

19   and information processing skills associated with writing, can result in spelling errors, "bad"

20   handwriting, difficulty expressing thoughts in writing, and/or difficulty organizing letters,

21   numbers, and words on a line or page.  Hypotonia refers to decreased muscle tone, which can

22   affect an individual's mobility, posture, breathing, speech, and reflexes.  The diagnosis "visual-

23   motor integration deficit" is correlated with the code for "Learning Disability Not Otherwise

24   Specified" in the DSM (Diagnostic and Statistical Manual of Mental Disorders) IV.  Mr. QUAN

25   also has physical disabilities, in part related to the above-referenced disabilities.  These

26   conditions limit and substantially limit several major life activities including reading,

27   concentrating, and the operation of a major bodily function (brain).

28

16.   Mr. QUAN was first diagnosed with disabilities when he was nine years old.  Mr. Quan has consistently received accommodations in school, beginning in the fourth grade.  He received accommodations for the ACT, a pre-college standardized exam.  Mr. QUAN attended the University of California, Santa Cruz, where he received accommodations for his disabilities, such as double time on exams, a quiet testing environment, use of a scribe, and use of a laptop for essay exams.  Mr. QUAN graduated from UC Santa Cruz with honors in June 2012.

17.   Mr. QUAN has wanted to become a lawyer since he was a child.  He seeks to advocate for the civil rights of persons with disabilities.

18. When he registered for the October 2011 LSAT, Mr. QUAN applied for accommodations largely equivalent to those he received in college:  extra time, a private testing space, a non-Scantron answer sheet, and the use of a scribe or a laptop.  His application included extensive documentation regarding his disabilities and listed the accommodations he had received in the past.  He submitted LSAC's required forms (a three-page "Evaluator Form" filled out by licensed psychologist; a three-page "Evaluator Form" filled out by an M.D.; a three-page "Physical Evaluation Report filled out by an M.D.; and a four-page "Candidate Form" which he filled out).  He also provided an April 22, 2008 psycho-educational assessment report confirming and analyzing his disabilities based upon a review of his special education history and the results of psychometric testing (WAIS-III, Developmental Test of Visual Motor Integration (VMI), the Beery Developmental Test of Motor Coordination, and Test of Visual-Perceptual Skills – Upper Level (TVPS-UL)), and noting "greatly varying" test results with "significant" gaps between verbal aptitude/ability and visual-motor integration skills.  He also provided confirmation that he had received testing accommodations while a student at UC Santa Cruz, and copies of IEP documentation confirming special education services in high school from Fall 2004 through Spring 2008, including the granting of extra time and other accommodations on tests.

19.   In a letter dated September 7, 2011, Defendant LSAC requested additional documentation, including "testing results and a full diagnostic report from a comprehensive up-to-date psychoeducational/neuropsychological assessment" in compliance with the LSAC's

1  guidelines.  Mr. QUAN provided additional documentation; he also researched and wrote a letter

2  to Defendant LSAC, arguing that under both the ADA and 2010 U.S. Department of Justice

3  (DOJ) regulations, his documentation was sufficient.  He noted that obtaining and providing the

4  required testing and report would cost thousands of dollars, and would not be covered by his

5  insurance.

6      20.   Thereafter, on September 13, 2011, Defendant LSAC denied Mr. QUAN's request for

7  testing accommodations.  The denial letter reiterated the need to provide "testing results and a

8  full diagnostic report from a comprehensive **up-to-date** psychoeducational/neuropsychological

9  assessment," emphasis in original, in compliance with the LSAC's guidelines.  (The

10 psychoeducational assessment provided by Mr. QUAN had been completed three and a half

11 years earlier in March/April 2008.)  The letter further stated that any such compliant report

12 would not be considered for the October 2011 LSAT:  "Since the receipt deadline for this

13 administration of the LSAT has passed, no further consideration will be given to your request for

14 accommodations until all of the aforementioned documentation is received for a **future** LSAT

15 only."  The LSAC never responded to Mr. QUAN's concurrent request for testing

16 accommodations related to his physical disabilities.

17     21.   Mr. QUAN took the October 2011 LSAT without accommodations.  Mr. QUAN's non-

18 accommodated score was inconsistent with his academic achievement.

19     22.   Mr. QUAN next registered for December 2011 LSAT.  He again applied for

20 accommodations, and provided documentation, by LSAC, by the stated deadline.  By October

21 31, 2011, Mr. QUAN was again denied accommodations.

22     23.   Mr. QUAN contacted the Legal Aid Society – Employment Law Center (LAS-ELC).

23 On November 11, 2011, LAS-ELC counsel notified Defendant LSAC that its handling of Mr.

24 QUAN's request for testing accommodations violated Department of Justice 2010 regulations

25 designed to address the "inappropriate or burdensome" standards used by testing agencies such

26 as the LSAC when evaluating requests for testing accommodations.

27

28

24.   On November 28, 2011, Defendant LSAC responded to LAS-ELC counsel as follows: "This will acknowledge receipt of your email and attachment.  Your request for reconsideration not timely and therefore cannot be considered."  Defendant LSAC sent a similar letter to Mr. QUAN.  On November 28, 2011, LAS-ELC reiterated to Defendant LSAC that it had been required to comply with the DOJ regulations as of March 15, 2011.  On November 28, 2011, Defendant LSAC responded with an email stating in its entirety:  "LSAC was fully aware of the legal authorities you cited when it reviewed Mr. Quan's file.  Mr. Quan's file remains incomplete."

25.   In an effort to mitigate the denial of testing accommodations, Mr. QUAN hired an LSAT tutor.  Mr. QUAN took the December 2011 LSAT without accommodations.   Again, his non-accommodated score was not commensurate with his academic record.

26.   Mr. QUAN applied to dozens of law schools, including the public law schools in California.  He expended time and resources crafting a personal statement to explain the stark disconnect between his excellent academic record and his poor performance on the LSAT.  Initially, Mr. QUAN was not accepted to any "top tier" law schools.  After months on the waiting list, he was accepted to UC Hastings, in the Legal Education Opportunity Program (LEOP) program.

**Nicholas Jones**

27.   Plaintiff-Intervenor NICHOLAS JONES has two eye conditions, amblyopia and posterior vitreous detachment, which result in compromised vision.  Amblyopia causes Mr. JONES to have impaired visual processing.  Posterior vitreous detachment causes persistent "floaters" to appear in Mr. JONES's field of vision.  These conditions limit and substantially limit several major life activities including seeing, reading, and the operation of a major bodily function (special sense organ).  Mr. JONES must constantly move his eyes from side to side to remove the "floaters" that appear in his field of vision, but as soon as he refocuses, the spots re-appear.  Because his reading is interrupted each time he must clear his vision, Mr. JONES often must go back to re-read something in order to orient himself.  Mr. JONES's reading speed,

1    comprehension, and concentration are thus all affected by his disability. Mr. JONES also

2    experiences migraines and fatigue as a result of his visual conditions.

3        28.   Mr. JONES took the September 2009 LSAT without accommodations.  His non-

4    accommodated score was not commensurate with his academic record, and the score report

5    provided by Defendant LSAC showed that the large majority of incorrect answers occurred at the

6    end of each section, when Mr. JONES was running out of time.  Mr. JONES is and historically

7    has been a strong student; Mr. JONES graduated Salutatorian from high school and his

8    cumulative undergraduate LSAC-calculated GPA was 3.98/4.00.

9        29.   On or about October 20, 2009, after learning about testing accommodations from his

10   board certified ophthalmologist and retinal surgeon, Mr. JONES applied for accommodations on

11   the December 2009 LSAT.  Mr. JONES requested time-and-a-half on both the multiple choice

12   and written portions of the exam (i.e., an additional 17.5 minutes for each 35-minute section).

13   He also requested a 5-minute break between each section.  In support of his request, Mr. JONES

14   submitted a three-page "Candidate Form" and a four-page "Evaluator Form" completed by his

15   treating provider, a board-certified ophthalmologist and retinal surgeon, which listed Mr.

16   JONES's diagnoses and described the practical effects of Mr. JONES's visual conditions.   Mr.

17   JONES also wrote a two-page letter describing his struggle to complete the LSAT in the allotted

18   time due to his disability, and explaining that he had not sought accommodations in the past

19   because he had not known they existed.

20       30.   In a letter dated October 27, 2009, Defendant LSAC denied Mr. JONES's request for

21   accommodations.  Defendant gave no reason for the denial and provided no suggestions as to

22   how Mr. JONES might successfully appeal.  The letter stated only that the documentation

23   submitted "did not reflect an impairment related to taking the LSAT" and that if Mr. JONES

24   wished to seek reconsideration, "new information must be provided by your evaluator."  The

25   letter noted that the deadline for reconsideration was November 3, 2009 – a week away and the

26   same deadline for an initial request for accommodations.

27

28

Plaintiff-Intervenors' Complaint In Intervention for Damages, Equitable Relief, Attorneys' Fees and
Costs
Case No. CV 12-1830-EMC                                                                          11

1    31.   Mr. JONES appealed this decision prior to the November 3 deadline.  On short notice,

2    he obtained and provided a supplemental, two-page letter from his treating ophthalmologist and

3    retinal surgeon which detailed the link between Mr. JONES's conditions and his reading speed

4    and reading ability, as well as the fatigue and headaches that accompany Mr. JONES's disability.

5    The ophthalmologist stressed Mr. JONES's need for accommodations on the LSAT.

6    32.   On November 9, 2009, Defendant LSAC again denied Mr. JONES's appeal in a three-

7    sentence letter.  The letter stated that a "Vision Rehabilitation Specialist" had reviewed his file

8    and that Mr. JONES had not demonstrated that he had a "significant visual condition."

9    33.   Mr. JONES contacted the LAS-ELC.  On November 24, 2009, LAS-ELC counsel

10   notified Defendant LSAC that Mr. JONES's visual conditions constitute disabilities affecting his

11   reading speed and stamina, thereby impairing his ability to sit for the LSAT without

12   accommodations.  Counsel explained that Mr. JONES had not previously requested or received

13   accommodations, but had obtained such modifications informally by working with flexible

14   instructors and accessing on-line courses.  Counsel requested that accommodations be put in

15   place for the December 5, 2009 LSAT.

16   34.   On December 1, 2009, Defendant LSAC responded that "Mr. Jones does not

17   demonstrate that his visual difficulties … affect his ability to take the LSAT without

18   accommodations.  In fact, he took the September 2009 LSAT *without* requesting

19   accommodations and was able to complete every item on each section" (italics in original).

20   Although Mr. JONES submitted supplemental material prior the November 3, 2009 deadline,

21   Defendant LSAC stated that "further reconsideration is not possible as the deadline for seeking

22   reconsideration was November 3, 2009."

23   35.   On December 3, 2009, LAS-ELC counsel sent a further letter to Defendant LSAC.

24   Counsel noted that the content of the prior communications from the LSAC violated a 2002

25   settlement agreement between LSAC and the DOJ, prohibiting LSAC from considering prior

26   performance on standardized testing when evaluating an accommodations request, and requiring

27   that defendant LSAC provide "clear written explanations" in denial letters, and that neither the

28

1  initial denial nor the denial of reconsideration had done so.  Defendant LSAC did not change its

2  position and Mr. JONES was not granted testing accommodations.

3      36.  Mr. JONES again took the LSAT without accommodations on December 5, 2009.  His

4  score was, again, not commensurate with his academic record.  The score report provided by

5  Defendant LSAC, again, revealed that the large majority of incorrect answers occurred at the end

6  of each section.

7      37.  Mr. JONES took the test again in February 2010 without accommodations; his score did

8  not significantly change.  As the February 2010 LSAT was an undisclosed test, no detailed score

9  report was provided by Defendant LSAC.

10      38.  Mr. JONES applied to law school using results from his non-accommodated LSAT

11  scores.  Because he was not satisfied with his score, Mr. JONES applied to more than thirty

12  schools, including all of the public law schools in California.  He was denied admission, or was

13  waitlisted, to almost all of the higher-ranked schools to which he applied. Mr. JONES is

14  currently a 3L at a private law school, where he pays full tuition.  He is informed and believes,

15  and thereupon alleges, that he would have qualified for scholarship monies with an

16  accommodated LSAT score.

17                              **Elizabeth Hennessey-Severson**

18      39.  Plaintiff-Intervenor ELIZABETH HENNESSEY-SEVERSON has Reading Disorder,

19  Disorder of Written Expression, Mathematics Disorder, and ADHD-I (Attention Deficit-

20  Hyperactive Disorder-Inattentive).  These conditions limit and substantially limit several major

21  life activities including reading, concentrating, and the operation of a major bodily function

22  (brain).  Her combined learning disabilities cause Ms. HENNESSEY-SEVERSON to have

23  impaired reading, writing, and math abilities.  Her ADHD-I results in difficulty with sustained

24  concentration, processing speed, distractibility, and difficulties with planning and organization.

25      40.  Ms. HENNESSEY-SEVERSON was first diagnosed with her disabilities in 2002, while

26  she was in high school, although she began manifesting symptoms years earlier, while in grade

27  school.  Ms. HENNESSEY-SEVERSON received the accommodation of extra time both in high

28

1   school and as an undergraduate at Dartmouth College.  She also received extra time as an

2   accommodation on the SAT.

3       41.  Ms. HENNESSEY-SEVERSON wants to be a civil rights attorney working on behalf of

4   individuals in the criminal justice system.  She worked for two years as a paralegal in San

5   Francisco after graduating from college.

6       42.  Ms. HENNESSEY-SEVERSON applied to take the LSAT on April 27, 2011, in

7   advance of the May 3, 2011 deadline.  She requested extra time on both the multiple choice and

8   reading portions of the LSAT (20 extra minutes for each 35-minute section), and 10-minute

9   breaks between each section.  She submitted extensive documentation to Defendant LSAC which

10  established her disabilities and confirmed prior testing accommodations received.  Ms.

11  HENNESSEY-SEVERSON submitted LSAC's required forms, including:  a four-page

12  "Candidate Form"; a two-page "Evaluator Form" addressing her learning disabilities filled out

13  by a licensed psychologist with a specialty in pediatric neuropsychology; and a second two-page

14  "Evaluator Form" addressing her ADHD-I filled out by the same licensed psychologist.  Ms.

15  HENNESSEY-SEVERSON also provided a complete psycho-educational assessment dated July

16  2009; a previous psycho-educational assessment dated October 2002; confirmation that she had

17  received testing accommodations while a student at Dartmouth; and confirmation that she had

18  received testing accommodations on the SAT.

19      43.  Defendant LSAC denied Ms. HENNESSEY-SEVERSON's request by letter dated April

20  29, 2011.  In the letter, Defendant LSAC "acknowledged" that Ms. HENNESSEY-SEVERSON

21  had a learning disorder, but stated that her documentation did not demonstrate a "limitation of a

22  major life activity" which affected her ability to take the test under standard (non-

23  accommodated) conditions.  To support its decision, Defendant LSAC cited Ms. HENNESSEY-

24  SEVERSON's high IQ score and her "very superior" and "high average" scores on portions of

25  her psycho-educational assessment.  The letter stated that Ms. HENNESSEY-SEVERSON had

26  until May 3, 2011, to seek reconsideration – four days away and the same deadline for an initial

27  request for accommodations.

28

44.   By May 3, 2011, Ms. HENNESSEY-SEVERSON requested reconsideration of the denial, and submitted a five-page letter from her psychologist in support of her request.   The psychologist explained that the "very superior" and "high average" scores that Defendant LSAC cited to support its denial were achieved by Ms. HENNESSEY-SEVERSON on untimed measures of reading, whereas on other, timed, measures, the results were "poor."   The psychologist inserted three tables comparing HENNESSEY-SEVERSON's performance various timed versus untimed scores.

45.   On May 10, 2011, Defendant LSAC sent a letter to Ms. HENNESSEY-SEVERSON stating:  "After full consideration of all of the documentation submitted on your behalf, there has been no change in our decision."

46.   Thereafter, Ms. HENNESSEY-SEVERSON sought legal counsel to obtain testing accommodations on the LSAT.  For some months, these efforts were unavailing.  Recently, Defendant LSAC granted Ms. HENNESSEY-SEVERSON testing accommodations for the June 2012 LSAT.  Defendant LSAC did not grant all of the accommodations requested by Ms. HENNESSEY-SEVERSON.  As well, Ms. HENNESSEY-SEVERSON's score is subject to Defendant LSAC's "flagging" policy.

47. Ms. HENNESSEY-SEVERSON intends to register to take the LSAT again at some point over the next several years.  She intends to again request testing accommodations.

### FIRST CLAIM FOR RELIEF
**Disability-Based Discrimination in Violation of
Title III of the Americans with Disabilities Act
42 U.S.C. § 12181 *et seq.***

48.   Plaintiff-Intervenors incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 47 above.

49.   As a privately operated service establishment whose operations affect commerce, the LSAC and the services it provides constitute a public accommodation.  *See* 42 U.S.C. § 12181(7), (7)(F); *Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 85 (2d Cir. 2004) (defendant

National Board of Medical Examiners "concedes that its services constitute a public accommodation covered by Title III.").

50. Title III of the ADA prohibits discrimination against a person with a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. 41 U.S.C. § 12182(a).

51. Such prohibited discrimination includes the use of "eligibility criteria that screen[s] out or tends to screen out" individuals with disabilities from equal enjoyment of the services, privileges, or advantages being offered, as well as the use of "standards or criteria or methods of administration [that] have the effect of discriminating on the basis of disability." 42 U.S.C. § 12182 (b)(2)(A)(i), (b)(1)(D)(i).

52. Such prohibited discrimination includes the failure to make to make "reasonable modifications to policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." 42 U.S.C. § 12182 (b)(2)(A)(ii). A public accommodation "shall" make these reasonable modifications. 28 C.F.R. § 36.302 (a).

53. Such prohibited discrimination includes providing individuals with disabilities an "unequal benefit" compared to that of individuals without disabilities. 42 U.S.C. § 12182(b)(1)(A)(ii).

54. At all times relevant herein, and through to the present, Plaintiff-Intervenors QUAN, JONES, and HENNESSEY-SEVERSON were and are individuals with disabilities who required reasonable modifications to participate on a full and equal basis on the LSAT and who are entitled to protection against prohibited disability discrimination.

55. By imposing upon Plaintiff-Intervenors QUAN, JONES, and HENNESSEY-SEVERSON onerous and unnecessary documentation requirements to support requests for testing accommodations, and by subjecting them to arbitrary, ineffective, and unpredictable evaluation and appeals procedures, Defendant LSAC violated Title III of the ADA. By refusing to make reasonable modifications to testing conditions for Plaintiff-Intervenors QUAN, JONES,

and HENNESSEY-SEVERSON, Defendant LSAC violated Title III of the ADA.  After ultimately granting testing accommodations to Plaintiff-Intervenor HENNESSEY-SEVERSON, but refusing to provide her with an LSAT score in the same format as her nondisabled peers, Defendant LSAC violated Title III of the ADA.

56.    As a result of Defendant LSAC's unlawful actions and inactions, Plaintiff-Intervenors QUAN, JONES, and HENNESSEY-SEVERSON were forced to obtain and submit burdensome and unnecessary documentation in support of their requests for testing accommodations.  When their requested accommodations were nevertheless denied, Plaintiff-Intervenors QUAN, JONES, and HENNESSEY-SEVERSON were subjected to the stress and aggravation of the LSAC's capricious appeals process.  Denied accommodations even after appealing, Plaintiff-Intervenors QUAN, JONES, and HENNESSEY-SEVERSON were then forced to seek legal counsel.  Nevertheless denied accommodations, Plaintiff-Intervenors QUAN and JONES were forced to take the LSAT without the modifications that would have enabled them to earn a score that effectively measured their aptitudes and abilities.  After nearly 12 months of being denied accommodations, and then granted some of the testing accommodations she requested, Plaintiff-Intervenor HENNESSEY-SEVERSON was subjected to the Defendant LSAC's policy and practice of "flagging" accommodated test scores.

57.    Without an effectively accommodated LSAT score, Plaintiff-Intervenors QUAN and JONES were denied the opportunity to compete for admission to law schools on an equal basis with their nondisabled peers.  With an accommodated but "flagged" LSAT score, Plaintiff-Intervenor HENNESSEY-SEVERSON was denied a test score in an equivalent format as her nondisabled peers.

58.    As a result of the Defendant LSAC's unlawful testing accommodation policies, procedures, and practices, Plaintiff-Intervenors QUAN, JONES, and HENNESSEY-SEVERSON experienced emotional distress, extensive inconveniences, and financial burdens.  The exclusion of disabled test-takers including Plaintiff-Intervenors from equal access to the LSAT is associated with additional outcomes, such as the denial of the experience, scholarship money,

1   and career opportunities that are available via admission to and graduation from higher-ranking

2   law schools.

3        59.   In taking the above-described actions and inactions, Defendant LSAC failed to make

4   any good faith effort or attempt to comply with the ADA.

5        60.   As a direct and proximate result of the unlawful acts described herein, Plaintiff-

6   Intervenors QUAN, JONES, and HENNESSEY-SEVERSON have suffered and continue to

7   suffer injuries.

8        61.   Plaintiff-Intervenors QUAN, JONES, and HENNESSEY-SEVERSON are entitled to

9   equitable relief, including declaratory and injunctive relief, attorneys' fees and costs, and such

10  other relief as the court considers to be appropriate.

### SECOND CLAIM FOR RELIEF

**Failure to Provide an Accessible Examination in
Violation of Title III of the Americans with Disabilities Act
42 U.S.C. § 12189**

14       62.   Plaintiff-Intervenors incorporate by reference the allegations in paragraphs 1 through

15  61, as though fully set forth herein.

16       63.   Title III of the ADA specifies that "[a]ny person that offers examinations or courses

17  related to applications, licensing, certification, or credentialing for secondary or post-secondary

18  education, professional, or trade purposes shall offer such examinations or courses in a place and

19  manner accessible to persons with disabilities or offer alternative accessible arrangements for

20  such individuals."  42 U.S.C. § 12189.

21       64.   To ensure that "the key gateways to education and employment are open to individuals

22  with disabilities," 28 C.F.R. § 36 app. B, examinations, like the LSAT, must be administered to

23  an individual with a disability so that "the examination results accurately reflect the individual's

24  aptitude or achievement level or whatever other factor the examination purports to measure,

25  rather than reflecting the individual's impaired sensory, manual, or speaking skills[.]"  *Id*. at §

26  36.309(b)(1)(i).  Meeting this standard may require the test administrator to make modifications

27  to the examination for an individual with a disability, including "changes in the length of time

28

1    permitted for completion of the examination and adaptation of the manner in which the

2    examination is given." *Id*. at § 36.309(b)(2).

3        65.  Testing entities such as Defendant LSAC are required to assure that any requests for

4    documentation are "reasonable and limited to the need for the modification, accommodation, or

5    auxiliary aid or service requested." *Id*. at § 36.309(b)(1)(iv).

6        66.  When considering requests for accommodations, a testing entity such as defendant

7    LSAC must give "considerable weight" to documentation of an individual's past

8    accommodations on testing given under similar conditions. *Id*. at § 36.309(b)(1)(v).

9        67.  When considering requests for accommodations, a testing entity such as defendant

10   LSAC must "respon[d] in a timely manner to requests for modifications, accommodations or aids

11   to ensure equal opportunity for individuals with disabilities." *Id*. at § 36.309(b)(1)(vi).

12       68.  At all times relevant herein, and through to the present, Plaintiff-Intervenors QUAN,

13   JONES, and HENNESSEY-SEVERSON were and are individuals with disabilities who required

14   reasonable modifications to participate in a fair, full, and equal basis on the LSAT.

15       69.  By imposing upon Plaintiff-Intervenors QUAN, JONES, and HENNESSEY-

16   SEVERSON onerous and unnecessary documentation requirements to support requests for

17   testing accommodations, and by subjecting them to arbitrary, ineffective, and unpredictable

18   evaluation and appeals procedures, Defendant LSAC has violated Title III of the ADA.  By

19   refusing to make reasonable modifications to testing conditions for Plaintiff-Intervenors QUAN,

20   JONES, and HENNESSEY-SEVERSON, Defendant LSAC has violated Title III of the ADA.

21   After ultimately granting some of the testing accommodations requested to Plaintiff-Intervenor

22   HENNESSEY-SEVERSON, but refusing to provide her with an LSAT score in the same format

23   as her nondisabled peers, Defendant LSAC violated Title III of the ADA.

24       70.  In taking the above-described actions and inactions, Defendant LSAC failed to make

25   any good faith effort or attempt to comply with the ADA.

26       71.  As a direct and proximate result of the unlawful acts described herein, Plaintiff-

27   Intervenors QUAN, JONES, and HENNESSEY-SEVERSON have suffered and continue to

28

1  suffer injuries.

2     72.   Plaintiff-Intervenors QUAN, JONES, and HENNESSEY-SEVERSON are entitled to

3  equitable relief, including injunctive and declaratory relief, attorneys' fees and costs, and such

4  other relief as the court considers to be appropriate.

5  **THIRD CLAIM FOR RELIEF**

6  **Disability-Based Discrimination in Violation of**
**California's Unruh Civil Rights Act**

7  **Cal. Civ. Code § 51, *et seq.***

8     73.   Plaintiff-Intervenors incorporate by reference the allegations in paragraphs 1 through

9  72, as though fully set forth herein.

10     74.   California's Unruh Act provides that "all persons … no matter what their sex, race,

11  color, religion, ancestry, national origin, or disability are entitled to the full and equal

12  accommodations, advantages, facilities, privileges, or services in all business establishments of

13  every kind whatsoever … ."  Cal. Civ. Code § 51(b).  Further, "[a] violation of the right of any

14  individual under the federal Americans with Disabilities Act of 1990 (P.L. 101-336) … also

15  constitute[s] a violation of [the Act]."  Cal. Civ. Code § 51(f).

16     75.   Under the Act, and as required by the ADA, a business establishment must make

17  reasonable modifications in policies, practices, or procedures, when such modifications are

18  necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to

19  individuals with disabilities, and may not engage in discrimination against a person with a

20  disability, as defined.  *See* para. 49 to 53 and 63 to 67, *supra*.

21     76.   At all times relevant herein, and through to the present, Plaintiff-Intervenors QUAN,

22  JONES, and HENNESSEY-SEVERSON were and are individuals with disabilities who required

23  reasonable modifications to participate in a fair, full, and equal basis on the LSAT.

24     77.   In violation of their right to be free from disability-based discrimination under Title III

25  of the ADA, Defendant LSAC imposed upon Plaintiff-Intervenors QUAN, JONES, and

26  HENNESSEY-SEVERSON onerous and unnecessary documentation requirements to support

27  requests for testing accommodations, and subjected them to an arbitrary, ineffective, and

28

unpredictable evaluation and appeals procedure.  In violation of their right to be free from disability-based discrimination under Title III of the ADA, Defendant LSAC refused to provide Plaintiff-Intervenors QUAN, JONES and HENNESSEY-SEVERSON with the reasonable modifications they needed to take the LSAT on an equal basis with other nondisabled test takers. In violation of her right to be free from disability-based discrimination under Title III of the ADA, Defendant LSAC refused to provide Plaintiff-Intervenor HENNESSEY-SEVERSON – who was ultimately granted some of the testing accommodations she requested after months of delay – with a test score in an equivalent format as her nondisabled peers.

78. In taking the above-described actions and inactions, Defendant LSAC failed to make any good faith effort or attempt to comply with state and federal laws.

79.   Defendant LSAC's unlawful actions were intentional, willful, malicious and/or done with reckless disregard to Plaintiff-Intervenors' right to be free from discrimination based on their disabilities.

80.   As a direct and proximate result of the unlawful acts described herein, Plaintiff-Intervenors QUAN, JONES, and HENNESSEY-SEVERSON have suffered and continue to suffer injuries, including emotional injuries.

81.   Plaintiff-Intervenors QUAN, JONES, and HENNESSEY-SEVERSON are entitled to actual damages, treble damages, attorneys' fees and costs, declaratory and injunctive relief, and other appropriate relief as determined by this court.

### FOURTH CLAIM FOR RELIEF
**Unlawful Business Practices in Violation of
California's Unfair Business Practices Act
Cal. Bus. & Prof. Code § 17200, *et seq.***

82.   Plaintiff-Intervenors incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 81, above.

83.   California's Unfair Business Practices Act prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.

84.  Defendant LSAC committed unlawful and unfair business practices, including but not

1  limited to:  violations of Title III of the ADA; and violations of the Unruh Civil Rights Act.

2      85.   As a result of these unfair business practices, Plaintiff-Intervenors QUAN, JONES and

3  HENNESSEY-SEVERSON have suffered injuries in fact, as described herein.

4      86.   As a result of these unfair business practices, Plaintiff-Intervenors QUAN, JONES and

5  HENNESSEY-SEVERSON have also lost money or property, such losses incurred due to

6  postage, mileage, telephone, Xeroxing, and faxing associated with the unlawful documentation

7  and appeals process, and additional application fees associated with the effects of receiving an

8  LSAT score that did not effectively measure their aptitude and abilities.  Mr. QUAN expended

9  additional monies on two LSAT review courses and for assistance with his applications to ensure

10  that his personal statement explained the disparity between his academic record and his test

11  score.  Ms. HENNESSEY-SEVERSON also expended additional monies on two LSAT review

12  courses.  Plaintiff-Intervenors QUAN, JONES, and HENNESSEY-SEVERSON have further

13  been denied the benefit of the service which they purchased from defendant LSAC, that is, a

14  professional examination that lawfully and fairly measured their abilities and aptitudes, and that

15  provided a test score in a format equivalent to that granted to nondisabled peers.

16      87.   Plaintiff-Intervenors QUAN, JONES and HENNESSEY-SEVERSON are entitled to

17  restitution, injunctive relief, declaratory relief, attorneys' fees and costs, and other appropriate

18  relief as determined by this court.

19                      **DECLARATORY AND EQUITABLE RELIEF**

20      88.   Plaintiff-Intervenors incorporate by reference the allegations in paragraphs 1 through

21  87, as though fully set forth herein.

22      89. Defendant LSAC's unlawful policies, procedures, and practices, and their impacts upon

23  persons with disabilities, are longstanding.  However, because these unlawful actions and

24  inactions affect persons taking an entrance examination for law school, and these persons

25  inevitably move on from taking the LSAT to either entering or not entering law school, the

26  claims of the Plaintiff-Intervenors are capable of repetition, yet evading review.

27      90.   A present and actual controversy exists between Plaintiff-Intervenors QUAN, JONES,

28

and HENNESSEY-SEVERSON and Defendant concerning their rights and respective duties. Plaintiff-Intervenors contend that Defendant violated their rights under the ADA and the Unruh Civil Rights Act.  Plaintiff-Intervenors are informed and believe, and thereon allege, that defendant LSAC denies these allegations.  Declaratory relief is therefore necessary and appropriate.

91.  Plaintiff-Intervenors QUAN, JONES, and HENNESSEY-SEVERSON seek a judicial declaration of the rights and duties of the respective parties.

92. Plaintiff-Intervenor HENNESSEY-SEVERSON seeks injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff-Intervenors respectfully request that this court order:

1.  Declaratory and injunctive relief;

2.  Equitable relief;

3.  Actual damages;

4.  Treble damages;

5.  Restitution;

6.  Reasonable attorneys' fees, reasonable expert witness fees, and other costs of the action, pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 2617(a)(3), Cal. Civil Code §§ 52(a), 54.3(a), 55, Cal. Code Civ. Proc. §1021.5, and other laws;

7.  Interest, including pre- and post-judgment interest and an upward adjustment for inflation; and

8.  Such other and further relief as this court may deem just and proper.

/ / / / /

/ / / / /

1

Dated:  October 19, 2012                    Respectfully submitted,

2

3                                            Claudia Center
                                             The LEGAL AID SOCIETY -   EMPLOYMENT
                                             LAW CENTER
4

5                               By:          _____/s/ Claudia Center_____

6                                            Claudia Center

7                                            Attorney for Plaintiff-Intervenors ANDREW
                                             QUAN, NICHOLAS JONES, and ELIZABETH
8                                            HENNESSEY-SEVERSON

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28