UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, *et. al.*, <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br>LAW SCHOOL ADMISSION COUNCIL, INC., <br><br>　　　　Defendant. <br>_____/ | No. C-12-1830 EMC <br><br> **ORDER GRANTING IN PART AND DENYING IN PART INDIVIDUAL PLAINTIFF-INTERVENORS' MOTION TO AMEND** <br><br>**(Docket No. 81)** |

## I.　INTRODUCTION

The California Department of Fair Employment and Housing ("DFEH") filed suit against the Law School Admission Council, Inc. ("LSAC"), seeking damages and injunctive relief over alleged failures of the Defendant to provide disability-related accommodations to test-takers of the Law School Admission Test ("LSAT"), in violation of the Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51, *et. seq.*, California's Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code, § 12900 *et seq*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, *et. seq.* DFEH brought its action both on behalf of seventeen named individuals and as a "group or class" complaint on behalf of "all disabled individuals in the State of California who requested a reasonable accommodation for the Law School Admission Test (LSAT) from January 19, 2009 to the present." First Amended Group and Class Action Complaint ("FAC") (Docket No. 104) ¶ 7. The Legal Aid Society - Employment Law Center ("LAS-ELC"), a "public interest legal organization dedicated to advancing and protecting the civil rights of persons with disabilities," *see*

1  Request to Participate as Amicus Curiae (Docket No. 34-1), filed a motion to intervene under Fed.
2  R. Civ. P. 24(a)(2) and 24(b) on behalf of three of the individuals named in DFEH's complaint.[1]
3  Mot. to Intervene (Docket No. 42). The Court granted permissive intervention to LAS-ELC to
4  represent the individual Plaintiff-Intervenors, *see* Order Granting in Part Motion to Intervene
5  (Docket No. 61), who thereafter filed their complaint in intervention, *see* Intervenor Complaint
6  (Docket No. 63). The Plaintiff-Intervenors now move for leave to file an amended complaint
7  pursuant to Fed. R. Civ. P. 15. Motion for Leave to File Amended Complaint (Docket No. 81).
8  LSAC opposes the motion. *See* LSAC's Opposition to Motion of Individual Plaintiff-Intervenors
9  ("Def's. Opp'n. Br.") (Docket No. 96). Having considered the parties' briefs and accompanying
10 submissions, as well as the oral argument of counsel, the Court hereby **GRANTS IN PART AND**
11 **DENIES IN PART** the Plaintiff-Intervenors' motion for the reasons set forth below.[2]

## II.  FACTUAL & PROCEDURAL BACKGROUND

13  DFEH filed an administrative accusation before the California Fair Employment and
14 Housing Commission on February 6, 2012, which LSAC elected to have transferred to the California
15 Superior Court in Alameda County under Cal. Gov. Code § 12965(c)(1). FAC ¶¶ 39-41. The
16 administrative accusation, styled a "Group and Class Accusation," was brought on behalf of
17 seventeen named individuals and certain "class complainants" consisting of "all disabled individuals
18 in the State of California who requested a reasonable accommodation for the Law School Admission
19 Test (LSAT) from January 19, 2009 to February 6, 2012," and charged LSAC with violations of the
20 Unruh Act. FAC ¶¶ 6-7, 39. *See* Declaration of Caroline Mew (Docket No. 116-1), Ex. 1 (Group
21 and Class Accusation). LSAC removed the matter from the Alameda County Superior Court to this

---

[1]  The individual Plaintiff-Intervenors are identified as Andrew Quan, Nicolas Jones, and Elizabeth Hennessey-Severson. *See* Intervenor Complaint.

[2]  LAS-ELC, on behalf of the individual Plaintiff-Intervenors, filed a supplemental declaration in support of its motion to amend after the Court held its hearing on this matter. *See* Supplemental Declaration of Claudia Center (Docket No. 131), filed April 8, 2013. The Civil Local Rules for the Northern District of California do not permit parties to file supplemental declarations such as this without first obtaining leave of court. *See* Civil L.R. 7-3(d) ("Once a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval . . ."). LAS-ELC did not obtain leave of this Court prior to filing its supplemental declaration. Consequently, neither it nor LSAC's response shall be considered. Both are stricken from the record.

Court on April 12, 2012, pursuant to 28 U.S.C. § 1441, on the basis of federal question jurisdiction and diversity jurisdiction. *See* Notice of Removal of Action Under 28 U.S.C. § 1441 (Docket No. 1) at 2.

The complaint in intervention advanced by the three Plaintiff-Intervenors presents four claims for relief. The Second and Third claims allege violations of 42 U.S.C. § 12189, the provision of the ADA that directly addresses the conduct of testing providers, and violations of California's Unruh Civil Rights Act. Both of these claims parallel similar allegations made in DFEH's amended complaint. The First Claim for Relief alleges that LSAC violated 42 U.S.C. § 12181, the ADA's general "public accommodations" provision, and the Fourth claim advances a theory of liability under California's Unfair Business Practices Act ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et. seq*. These two latter clams are not advanced in DFEH's amended complaint. Each cause of action in the complaint in intervention focuses on LSAC's allegedly burdensome and arbitrary documentation requirement for receiving testing accommodations, and LSAC's practice of "flagging" test score reports received under accommodated conditions. *See* Compl. in Intervention ¶¶ 48-81. The UCL cause of action alleges monetary losses the three parties have incurred as a result of LSAC's unlawful practices. *See id.* ¶¶ 82-87.

The Plaintiff-Intervenors seek through their instant motion "to amend their complaint to allege a cause of action against Defendant [LSAC] under . . . California Education Code section 99161.5," a new provision of the Education Code that entered into force on January 1, 2013, *see* Stats. 2012, c. 583 (A.B. 2122)), "and to amend their claim under California's Business and Professions Code to cross-reference the new provision." Memorandum in Support of Motion for Leave to File Amended Complaint ("Pl.'s Mot.") (Docket No. 82), at 2. This new provision of the California Education Code directs "[t]he test sponsor of the Law School Admission Test [to] provide testing accommodations to a test subject with a disability who makes a timely request to ensure that the Law School Admission Test accurately reflects the aptitude, achievement levels, or other factors that the test purports to measure and does not reflect the test subject's disability." Cal. Educ. Code § 99161.5(a)(1). It also places restrictions on the process by which LSAC determines whether to grant an accommodations request, mandates the establishment of an appeals process "for a test subject

who is denied an accommodation request," *see id.* § 99161.5(a)(3), and prohibits the "flagging" of accommodated test score reports.

### III. DISCUSSION

#### A. Legal Standard

Amendments to pleadings are governed by Federal Rule of Civil Procedure 15, which states that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (implying leave to amend should be granted in the absence of undue delay, bad faith or dilatory motive, undue prejudice to the opposing party, or futility of amendment). A district court has discretion to deny a motion for leave to amend, but it must provide some justification for doing so. *Foman*, 371 U.S. at 182. *See also Campbell v. Board of Trustees of Leland Stanford Jr. Univ.*, 817 F.2d 499, 506 (9th Cir. 1987) (noting that an abuse of discretion standard applies with respect to proposed amendments under Rule 15(a)). "In exercising its discretion, a court must be guided by the underlying purpose of Rule 15," which is "to facilitate [a] decision on the merits, rather than on the pleadings or technicalities." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (citation and quotation marks omitted).

In general, "[f]ive factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). "Not all of the factors merit equal weight. As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d at 1052. *See also Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) (Prejudice is the "touchstone of the inquiry under rule 15(a).").

#### B. Undue Delay

While undue delay factors into the calculus of whether a motion for leave to amend should be granted, undue delay by itself "is insufficient to justify denying a motion to amend." *Bowles v.*

*Reade*, 198 F.3d 752, 758 (9th Cir. 1999). There must also be either (1) prejudice to the opposing party, (2) bad faith by the moving party, or (3) a finding of futility as to the amendment. *See id.* (noting that "[w]e have previously reversed the denial of a motion for leave to amend where the district court did not provide a contemporaneous specific finding of prejudice to the opposing party, bad faith by the moving party, or futility of the amendment"). LSAC does not challenge the Plaintiff-Intervenors' motion on the basis of undue delay. *See* Def.'s Opp'n. Br. Regardless, the Court finds that the Plaintiff-Intervenors did not unduly delay in bringing their motion. "Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (citations omitted). It is undisputed that the new provision of the California Education Code which the Plaintiff-Intervenors seek to add to their complaint did not come into force until January 1, 2103. LAS-ELC filed its motion seeking leave to amend a mere fifteen days later. On these facts, it is apparent that the Plaintiff-Intervenors were not tardy in bringing the instant motion. Therefore, this factor weighs in favor of granting leave to amend.

C.   Undue Prejudice

Ninth Circuit case law holds that prejudice may effectively be established by demonstrating that a motion to amend was made after the cutoff date for such motions, or when discovery had closed or was about to close. *See, e.g., Zivkovic v. Southern Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming denial of plaintiff's motion for leave to amend where proposed amendment would have added additional causes of action which would have required further discovery and discovery was set to close five days after motion to amend was filed); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (stating that "[a] need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint"); *Solomon v. North Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (affirming the denial of leave to amend where the motion was made "on the eve of the discovery deadline" and "[a]llowing the motion would have required re-opening discovery, thus delaying the proceedings"). The burden of having to defend a new claim alone is not undue prejudice under Rule 15. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d at 186 ("[L]iberality

1  in granting leave to amend is not dependent on whether the amendment will add causes of action or
2  parties. It is, however, subject to the qualification that amendment of the complaint does not cause
3  the opposing party undue prejudice"); *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981)
4  (mere addition of new claims in motion for leave to amend insufficient to support denial under Rule
5  15).

6        LSAC obliquely challenges the prejudicial impact of Plaintiff-Intervenor's motion by
7  arguing that "[a]llowing them to pursue new claims, not asserted by the original plaintiff, would be
8  inconsistent with the limited role they are playing in this case" as permissive intervenors. Def.'s
9  Opp'n. Br. at 9. However, LSAC, fails to cite any authority establishing that undue prejudice results
10 when a plaintiff-intervenor amends a complaint to add new claims. Often, the addition of claims
11 does not amount to undue prejudice under Rule 15. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d
12 at 186; *United States v. Webb*, 655 F.2d at 980.

13       The procedural posture of this case makes it unlikely that LSAC would suffer any substantial
14 prejudice were the Court to grant the Plaintiff-Intervenors' motion for leave to amend. The parties'
15 own stipulated proposed deadline for seeking leave to file amended pleadings is still several months
16 away. *See* Updated Joint Case Management Statement (Docket No. 127) § 5 ("The parties propose a
17 deadline of December 13, 2013 for seeking leave to file amended pleadings, but do not preclude
18 themselves from also seeking leave to amend later pursuant to Rule 15 of the Federal Rules of Civil
19 Procedure."). *See Hofstetter v. Chase Home Finance, LLC*, 751 F. Supp. 2d 1116, 1122 (N.D. Cal.
20 2010) (no undue delay or undue prejudice where the motion to amend was filed well before the
21 established deadline for pleading amendments). The parties also seek to keep fact discovery open
22 until February 14, 2014, and expert discovery open until August 29, 2014. *See* Updated Joint Case
23 Management Statement § 17. Given the fact that the Plaintiff-Intervenors' motion comes at such an
24 early point in this action, there is no basis for concluding that granting the motion would result in
25 "[e]xpense, delay, and wear and tear on individuals and companies," and result in undue prejudice.
26 *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994). *Cf. M/V Am. Queen v. San Diego Marine*
27 *Const. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983) (finding undue delay and prejudice in part
28 because "a motion for summary judgment was pending and possible disposition of the case would be

6

unduly delayed by granting the motion for leave to amend"). The posture of this case stands in stark contrast to those cases in which the amendment was sought either after or on the eve of the close of discovery.

LAS-ELC asserts, and LSAC does not dispute, that the proposed amended complaint does not "[introduce] new fact patterns nor substantially alter[] the nature of the lawsuit. The facts giving rise to the proposed additional cause of action are identical to the facts alleged in the original complaint in intervention. Discovery regarding the proposed claim under the California Education Code . . . will cover the same territory as discovery regarding the [existing] claims." Pl.'s Mot. at 3. The Court concludes on the basis of these facts that LSAC will not suffer undue prejudice if leave to amend were granted, and finds that this factor weighs in favor of granting the Plaintiff-Intervenors' motion.

D.   Futility

"Leave to amend need not be given" under Rule 15 if it would be futile to do so, such as "if a complaint, as amended, is subject to dismissal." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). *See also Howey v. United States*, 481 F.2d 1187, 1190-91 (9th Cir. 1973) ("Where there is a lack of prejudice to the opposing party and the amended complaint is obviously not frivolous, or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny such a motion. The purpose of the litigation process is to vindicate meritorious claims.").

The Plaintiff-Intervenors have articulated two reasons supporting why they seek to add a theory of liability based on Cal. Educ. Code § 99161.5 to their complaint in intervention. First, they state "each of the individual Plaintiff-Intervenors seeks declaratory relief for violations of state and federal laws as well as relief under the Unfair Business Practices Act. As such, they are entitled to bring a claim for relief directly under the new provision as well as an amended claim under the Unfair Business Practices Act cross-referencing the new provision." Pl.'s Mot. at 4. Second, they

argue that the amendments are necessary to support claims advanced by Plaintiff-Intervenor Hennessey-Severson," who "alleges ongoing violations of disability discrimination." *Id.*

### 1. Prospective Relief

Considering the second rationale first, it is clear that the Plaintiff-Intervenors seek remedies not only for alleged past violations of the ADA and Unruh Act, but also prospective relief on behalf of Ms. Hennessey-Severson, who intends to re-take the LSAT and anticipates being again subjected to the alleged discriminatory conduct complained of in this action. *See* Proposed First Amended Complaint ("PAC") (Docket No. 82-4) ¶ 47 ("Ms. Hennessey-Severson intends to register to take the LSAT again at some point over the next several years. She intends to again request testing accommodations.").

LSAC argues that there is no private right of action and hence the amendment is futile. Since the California Supreme Court's decision in *Moradi–Shalal v. Fireman's Fund Insurance Co.*, 46 Cal.3d 287, 250 (1988), California courts have generally held that whether a private right of action exists under California law is primarily a question of legislative intent. *See, e.g., Animal Legal Defense Fund v. Mendes*, 160 Cal. App.4th 136, 142 (2008) (noting that the question of whether a statute creates a private right of action is "primarily [an issue] of legislative intent"); *Thornburg v. El Centro Regional Med. Ctr.*, 143 Cal. App. 4th 198, 204 (2006) (stating that "'[t]he question of whether a regulatory statute creates a private right of action depends on legislative intent'"); *Farmers Ins. Exchange v. Superior Court*, 137 Cal. App. 4th 842, 850 (2006) (noting that, since *Moradi–Shalal*, California "Courts of Appeal have held that a statute creates a private right of action only if the statutory language or legislative history affirmatively indicates such an intent"). The California Supreme Court has held that "legislative intent, if any, is revealed through the language of the statute and its legislative history." *Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal. 4th 592, 596 (2010); *see also Dunn–Edwards Corp. v. Bay Area Air Quality Management Dist.*, 9 Cal. App. 4th 644, 658 (1992), *disapproved on other grounds in Western States Petroleum Assn. v. Superior Court*, 9 Cal. 4th 559, 570, and n.2 (1995) (stating that "courts are not at liberty to impute a particular intention to the Legislature when nothing in the language of the statute implies such an intention").

1  LSAC argues that nothing in the text of § 99161.5, nor in its legislative history, "confers a
2 private right of action or refers in any way to private enforcement of the statute." Def.'s Opp'n. Br.
3 at 4. While there may be merit to this contention, LSAC overlooks the fact that the Unruh Act itself
4 provides the Plaintiff-Intervenors with a private right of action. Cal. Civ. Code § 52(a) provides,
5 "[w]hoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to
6 Section 51 [the Unruh Act] . . . , is liable for each and every offense for the actual damages, and any
7 amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three
8 times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any
9 attorney's fees that may be determined by the court in addition thereto, suffered by any person
10 denied the rights provided in Section 51 . . ." The plain language of § 99161.5 states that it "does
11 not constitute a change in, but is declaratory of, existing law, *see id.* § 99161.5(a) and (c)(3), and
12 explicitly ties its protections to the Unruh Act, *see id.* § 99161.5(e) ("This section shall not provide
13 greater protections to persons with disabilities than those provided by Section 51 of the Civil
14 Code."). Inasmuch as § 99161.5 supplies the legislature's interpretation and clarification of rights
15 under the provision of the Fair Employment and Housing Act which are incorporated into the Unruh
16 Act, the Unruh Act provides for the private right of action herein.

17  Similarly, to the extent a violation of § 99161.5 provides an avenue of recovery under the
18 Plaintiff-Intervenors' UCL cause of action, that statute also contains its own private right of action.
19 *See Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002) ("By defining unfair competition to include any
20 *unlawful* business act or practice, the UCL permits violations of other laws to be treated as unfair
21 competition that is independently actionable.") (citations and quotation marks omitted; emphasis in
22 original); *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180
23 (1999) (The UCL's "coverage is sweeping, embracing anything that can properly be called a
24 business practice and that at the same time is forbidden by law.") (citations and quotation marks
25 omitted).

26  As to Ms. Hennessey-Severson, she has alleged sufficient facts to establish standing for
27 injunctive relief as she plans to re-take the LSAT and absent a change in LSAC's practices to
28 policies is sufficiently likely to be affected by the practices and policies challenged herein.

2. <u>Retroactivity</u>

LSAC argues that the Plaintiff-Intervenors' motion to add a new claim under § 99161.5 is futile "because this new statutory provision, which became effective on January 1, 2013, cannot be applied retroactively to LSAC's challenged conduct with respect to the three individual plaintiff-intervenors, all of which occurred prior to the effective date of the new statute." Def.'s Opp'n. Br. at 5-6. LSAC's argument applies to Plaintiff-Intervenors' assertion of § 99161.5 to all claims except Ms. Hennessey-Severson's claim for prospective relief.

"Generally, statutes operate prospectively only." *McClung v. Employment Dev. Dept.*, 34 Cal. 4th 467, 475 (2004).

> [T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.

*Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994) (internal citations omitted). "A statute does not operate [retroactively] merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Landgraf*, 511 U.S. at 269-70 (internal citations omitted). "This is not to say," however, " that a statute may never apply retroactively." *McClung*, 34 Cal. 4th at 475. In California, "[a] statute's retroactivity is, in the first instance, a policy determination for the Legislature and one to which courts defer absent some constitutional objection to retroactivity." *Id*., at 475. Under California law, "a statute may be applied retroactively only if it contains express language of retroactivity or if other sources provide a clear and unavoidable implication that the Legislature intended retroactive application." *Myers v. Philip Morris Companies, Inc.*, 28 Cal. 4th 828, 844 (2002). No such language or clear intent is evident with respect to § 99161.5. Indeed, as Plaintiff Intervenors conceded at the hearing, some provisions of the statute which prescribe certain procedures cannot be applied retroactively. *See* Cal. Ed. Code § 99161.5(a)(2) and (3).

On the other hand, legislation which merely clarifies existing law may be found not retroactive in effect. *See, e.g., Colmenares v. Braemar Country Club, Inc.*, 29 Cal. 4th 1019, 1028 (2003) ("This pattern of Legislative action compels our conclusion that in 2000 the Legislature intended not to make a retroactive change, but only to clarify the degree of limitation required for physical disability under the [Fair Employment and Housing Act]."). "Courts are not to infer that legislation merely clarifies existing law unless (1) the nature of the amendment clearly demonstrates such an intent or (2) the legislature has itself stated that the particular amendment is merely declaratory of existing law." *Goldman v. Standard Ins. Co.*, 341 F.3d 1023, 1029 (9th Cir. 2003). Whether § 99161.5 statement that it is "declaratory of [ ] existing law" thus meeting the test of *Goldman v. Standard Ins. Co.* is unclear.

In any event, the Court need not reach this question because counsel for the Plaintiff-Intervenors has represented both at the hearing and in the briefing on this motion that her clients do not seek retroactive application of § 99161.5. Plaintiff-Intervenors contend that with respect to any application to prior conduct, their citation to § 99161.5 is meant only as an interpretative tool of FEHA and the Unruh Act.

Plaintiff-Intervenors do not assert a direct claim under § 99161.5. They do not use it as a claim incorporated into a cause of action under the Unruh Act or UCL; rather, they cite it only as a basis to seek, *e.g.*, civil penalties in their amended complaint under Cal. Educ. Code § 99163 for acts that transpired prior to the statute's effective date. Nor do they seek other retrospective monetary relief based on § 99161.5 as an interpretive tool in construing FEHA and the Unruh Act.

3. <u>Derivative UCL Action</u>

Finally, LSAC argues that, "because [§ 99161.5] does not operate retroactively . . . they [the Plaintiff-Intervenors] cannot pursue a derivative claim from alleged violations of the statute under the UCL based on LSAC's conduct prior to January 1, 2013." Def.'s Opp'n Br. at 8. As stated above, Plaintiff-Intervenors have disclaimed any attempt to assert § 99161.5 in a "retroactive application" of a UCL claim. Therefore, the Plaintiff-Intervenors may amend their complaint in intervention to include the phrase "and violations of section 99161.5 of the California Education Code" in their UCL cause of action only as to conduct occurring after January 1, 2013.

11

E.  Bad Faith

This Court has previously found that a motion to amend was taken in bad faith where, after the Court granted a defendant's motion for summary judgment, plaintiff moved to amend "as a last-ditch attempt to avoid the case being dismissed in its entirety." *Trans Video Electronics, Ltd. v. Sony Electronics, Inc.*, 278 F.R.D. 505, 510 (N.D. Cal. 2011) *aff'd sub nom. Trans Video Electronics, Ltd. v. Sony Electronics Inc.*, 475 F. App'x 334 (Fed. Cir. 2012). *Cf. Schlacter–Jones v. General Tel.*, 936 F.2d 435, 443 (9th Cir. 1991) (stating that "[a] motion for leave to amend is not a vehicle to circumvent summary judgment"), *overruled in part on other grounds by Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 692 (9th Cir. 2001). LSAC does not argue, and there is no indication on the record before the Court, that the Plaintiff-Intervenors' motion to amend has been brought in bad faith. The relevant facts upon which the new provisions of the complaint in intervention rest were presented in the initial complaint, and the timing of the Plaintiff-Intervenors' motion can be directly attributed to the entry into force of California Education Code § 99161.5. This factor, therefore, weighs in favor of granting leave to amend.

F.  Prior Amendments

Finally, the Court notes that its "discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). *See also Fid. Fin. Corp. v. Fed. Home Loan Bank of San Francisco*, 792 F.2d 1432, 1438 (9th Cir. 1986) (refusing to allow plaintiff to file a fourth amended complaint where "[t]he factual bases of the claims were known to [plaintiff] long before" and the defendant would have been prejudiced). This factor is plainly inapplicable to the instant motion since the Plaintiff-Intervenors have made no previous effort to amend, and therefore weighs in favor of granting leave to amend.

## IV.  CONCLUSION

For the reasons stated above, the Court **GRANTS** the Plaintiff-Intervenors' Motion for Leave to File a First Amended Complaint but **DENIES** leave to file any claim which seeks to give retroactive binding effect to California Education Code § 99161.5. The Plaintiff-Intervenors may

12

file an amended complaint consistent with the findings presented in this order within thirty (30) days of the date of this order.

      This order disposes of Docket No. 81.

      IT IS SO ORDERED.

Dated: April 19, 2013

_____
EDWARD M. CHEN
United States District Judge