United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, *et. al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>LAW SCHOOL ADMISSION COUNCIL, INC.,<br><br>  Defendant.<br>_____/ | No. C-12-1830 EMC<br><br>**ORDER GRANTING DFEH'S MOTION TO PROCEED FOR GROUP OR CLASS RELIEF**<br><br>**(Docket No. 106)** |

## I.   <u>INTRODUCTION</u>

The California Department of Fair Employment and Housing ("DFEH") filed suit against the Law School Admission Council, Inc. ("LSAC"), seeking damages and injunctive relief over alleged failures of the Defendant to provide disability-related accommodations to test-takers of the Law School Admission Test ("LSAT"), in violation of the Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51, *et. seq.*, California's Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code, § 12900 *et seq*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, *et. seq.* DFEH brought its action both on behalf of seventeen named individuals and as a "group or class" complaint on behalf of "all disabled individuals in the State of California who requested a reasonable accommodation for the Law School Admission Test (LSAT) from January 19, 2009 to the present." First Amended Group and Class Action Complaint (Docket No. 104)

1  ("FAC") ¶ 7.[1] DFEH now moves for an order "confirming that [it] may proceed in this enforcement
2  action without filing a motion under Fed. R. Civ. P. 23." Motion to Proceed for Group or Class
3  Relief (Docket No. 106) ("Pl.'s Mot.") at 1. LSAC opposes the amendment. *See* LSAC's
4  Opposition to DFEH Motion (Docket No. 116) ("Def's. Opp'n. Br."). Having considered the
5  parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court
6  hereby **GRANTS** DFEH's motion for the reasons set forth below.

## II. FACTUAL & PROCEDURAL BACKGROUND

LSAC is a non-profit membership organization based in Pennsylvania that, among other things, administers the Law School Admission Test (LSAT) to prospective law students. The LSAT is a standardized test that evaluates potential law school applicants on their acquired reading, verbal, and reasoning skills. FAC. ¶ 45. In 2010, DFEH received two written "verified complaint[s] of discrimination" from individuals alleging that LSAC had denied them certain testing accommodations for their disabilities when taking the LSAT. *Id.* ¶ 18-19. These written complaints alleged that LSAC had unlawfully denied test applicants "full and equal access to the LSAT" in violation of FEHA and the Unruh Act. *Id*. By virtue of its incorporation into the Unruh Act, a violation of the ADA also constitutes a violation of the Unruh Act. *Id*. ¶ 15; *see also* Unruh Act, Cal. Civ. Code § 51(f). Through DFEH's investigation into the merits of these complaints, "the Department came to believe that LSAC's policies and practices toward disabled applicants requesting reasonable accommodation were affecting a larger group of class of applicants in a similar manner." FAC ¶ 20.

Following its investigation into these complaints, DFEH filed an administrative accusation before the California Fair Employment and Housing Commission on February 6, 2012, which LSAC elected to have transferred to the California Superior Court in Alameda County under Cal. Gov. Code § 12965(c)(1). FAC ¶¶ 39-41. The administrative accusation, styled a "Group and Class

---

[1] In DFEH's original complaint, this "group or class" component was limited to "all disabled individuals in the State of California who requested a reasonable accommodation for the Law School Admission Test (LSAT) from January 19, 2009 to February 6, 2012." *See* Complaint ("Compl.") (Docket No. 1, Ex. A) ¶ 8. DFEH was granted leave to expand the "group or class" definition by this Court on February 6, 2013. *See* Order Granting DFEH's Motion for Leave to File First Amended Complaint (Docket No. 103).

1 Accusation," was brought on behalf of seventeen named individuals and certain "class
2 complainants" consisting of "all disabled individuals in the State of California who requested a
3 reasonable accommodation for the Law School Admission Test (LSAT) from January 19, 2009 to
4 February 6, 2012," and charged LSAC with violations of the Unruh Act. FAC ¶¶ 6-7, 39. *See*
5 Declaration of Caroline Mew (Docket No. 116-1), Ex. 1 (Group and Class Accusation). LSAC
6 removed the matter from the Alameda County Superior Court to this Court on April 12, 2012,
7 pursuant to 28 U.S.C. § 1441, on the basis of federal question jurisdiction and diversity jurisdiction.
8 *See* Notice of Removal of Action Under 28 U.S.C. § 1441 (Docket No. 1) at 2.

DFEH's lawsuit focuses on LSAC's practices regarding the provision of testing accommodations to test-takers who claim to be disabled. According to LSAC, "more than a thousand individuals request disability-based accommodations on the LSAT every year, and LSAC grants accommodations to most, but not all, of those individuals." Def.'s Mot. to Dismiss (Docket No. 66) at 2. LSAC claims to conscientiously evaluate requests for testing accommodation to ensure that "individuals with *bona fide* disabilities receive accommodations, and that those without disabilities do not receive accommodations," which could provide them with an unfair advantage on the exam. Def.'s Mot. to Dismiss (Docket No. 13) at 2 (quoting *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 88-89 (2d Cir. 2004)). DFEH claims that LSAC's accommodations evaluation procedures include, among other things, requirements that testing candidates requesting extra time or other accommodations for a "cognitive or psychological impairment" submit to psychoeducational and neuropsychological testing, and provide a "full diagnostic report" that includes records of the candidates' aptitude and achievement testing. FAC ¶ 53. DFEH also claims that LSAC requires applicants to disclose in an accommodations request whether or not they took prescribed medications during medical evaluations of their condition, and if not, to explain their failure to do so. *Id.* ¶ 54.

DFEH also alleges that LSAC maintains a policy of "flagging" the LSAT exam scores of individuals who receive disability accommodations for extra time. FAC ¶ 55. LSAC allegedly includes a notation on an accommodated individuals' score report that the score was achieved under non-standard time constraints, and excludes extended-time scores when calculating its LSAT

3

percentile rankings. *Id.* ¶¶ 55-56. As a consequence, the fact that an individual received extended-time on the LSAT is disclosed to all law schools receiving that individual's score report. *See id.* ¶ 55. However, LSAC does advise schools that extended-time score reports "should be interpreted with great sensitivity and flexibility." *Id.*

Despite styling its administrative accusation and amended complaint as a "Group and Class Action," DFEH contends that this suit is not a class action within the meaning of Fed. R. Civ. P. 23. As "the State of California's main civil rights agency," DFEH argues that "this action -- like similar [enforcement] actions brought by the United States Equal Employment Opportunity Commission (EEOC) -- may proceed on behalf of a group or class of persons without Court approval under [Rule 23] . . . because these actions are, by their very nature, not class actions." Pl.'s Mot. at 1 (emphasis omitted). LSAC, in opposition, contends that the Federal Rules of Civil Procedure apply to this civil action just the same as any other civil action being heard by a U.S. District Court, and that DFEH's suit cannot properly be characterized as a "government enforcement action" exempt from the requirements of Rule 23. Def.'s Opp'n. Br. at 4, 7. DFEH's present motion seeks to resolve the question of whether it can pursue its "group or class" claims in federal court without having to comply with the class action provisions of Rule 23.

### III.   DISCUSSION

A.   Rule 23 and Government Enforcement Actions

In the normal course of affairs "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties" when stating a cause of action in federal court. *Powers v. Ohio*, 499 U.S. 400, 410 (1991). The U.S. Supreme Court recently reaffirmed that "[t]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 11-864, __U.S. __, 2013 WL 1222646 at *4 (U.S. Mar. 27, 2013) (quoting *Califano* v. *Yamasaki,* 442 U.S. 682, 700–701 (1979)). "To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Behrend*, 11-864, __U.S. __, 2013 WL 1222646 at *4 (quoting *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S.

4

——, —— (2011) (slip op., at 10)). Rule 23 permits "[o]ne or more members of a class [to] sue or be sued as representative parties on behalf of all members only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23 "does not set forth a mere pleading standard," but rather requires that a party "'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)" in order to prosecute a class action. *Behrend*, 11-864, __U.S. __, 2013 WL 1222646 at *4 (quoting *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. ——, —— (2011) (slip op., at 10)) (emphasis in original). Additionally, the party seeking to maintain a class action "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Behrend*, 11-864, __U.S. __, 2013 WL 1222646 at *4. "At an early practicable time after a person sues or is sued as a class representative," Rule 23 requires "the court [to] determine by order whether to certify the action as a class action," and in that order to "define the class and the class claims, issues, or defenses, and . . . appoint class counsel." Fed. R. Civ. P. 23(c)(1).

  The Supreme Court has also recognized a related exception to the normal rule that litigants "cannot rest a claim to relief on the legal rights or interests of third parties," for certain kinds of government enforcement actions. *Powers*, 499 U.S. at 410. In *General Telephone Co. of the Nw., Inc. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318 (1980), the Court held that the EEOC could maintain a civil action for the enforcement of a statute under its jurisdiction "and may seek specific relief for a group of aggrieved individuals without first obtaining class certification pursuant to Federal Rule of Civil Procedure 23." *Id*., 446 U.S. 318, 333-34. *General Telephone* involved a suit commenced by the EEOC under Title VII of the Civil Rights Act of 1964 (as amended), stemming from the investigation of four General Telephone employees' complaints of sex

5

discrimination. The EEOC's suit sought broad injunctive relief and backpay for a number of General Telephone employees across several states, but "[t]he complaint did not mention Federal Rule of Civil Procedure 23, and the EEOC did not seek class certification pursuant to that Rule." *General Telephone*, 446 U.S. at 321-22. General Telephone objected, citing the EEOC's failure to comply with Rule 23. The Supreme Court granted certiorari on the question of "whether the [EEOC] may seek classwide relief under § 706(f)(1) of Title VII of the Civil Rights Act of 1964 (Title VII) without being certified as the class representative under Rule 23 of the Federal Rules of Civil Procedure." *Id*. at 320.

Upholding the EEOC's authority to pursue classwide relief without first obtaining class action certification, the Supreme Court held, "[g]iven the clear purpose of Title VII, the EEOC's jurisdiction over enforcement, and the remedies available, the EEOC need look no further than § 706 for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals. Its authority to bring such actions is in no way dependent upon Rule 23, and the Rule has no application to a § 706 suit." *General Telephone*, 446 U.S. at 324. The Court held that Title VII "empowers the EEOC to prevent any person from engaging in any unlawful practice as set forth in the Title," and "specifically authorizes the EEOC to bring a civil action against any respondent not a governmental entity upon failure to secure an acceptable conciliation agreement, the purpose of the action being to terminate unlawful practices and to secure appropriate relief, including reinstatement or hiring, with or without back pay, for the victims of the discrimination." *Id*. at 323-24 (internal quotation marks omitted). "Title VII thus itself authorizes the procedure that the EEOC followed in this case," and the Court found "no basis for imposing the Rule 23 framework in an EEOC enforcement action" when the operative statute "seems to us to authorize the EEOC to sue in its own name to enforce federal law by obtaining appropriate relief for those persons injured by discriminatory practices forbidden by the Act." *Id*. at 324-25.

*General Telephone* recognized a longstanding practice of permitting the Attorney General to bring civil enforcement actions seeking classwide relief under Title VII based on "a pattern or practice of discrimination" by an employer without requiring compliance with Rule 23. *See General Telephone*, 446 U.S. at 327 ("Prior to 1972, the Department of Justice filed numerous . . .

6

1  pattern-or-practice suits. In none was it ever suggested that the Attorney General sued in a
2  representative capacity or that his enforcement suit must comply with the requirements of Rule 23.")
3  (citations omitted). The decision extended that exception to Rule 23 to enforcement actions brought
4  by the EEOC in its own name to secure classwide relief for the victims of unlawful employment
5  practices. In so doing, the Court focused heavily on the statutory enforcement regime under which
6  the EEOC operates. When Congress amended Title VII in 1972 to "secure more effective
7  enforcement" of the statute, it expanded the EEOC's enforcement powers "by authorizing [it] to
8  bring a civil action in federal district court against private employers reasonably suspected of
9  violating Title VII," and "[i]n so doing, Congress sought to implement the public interest as well as
10 to bring about more effective enforcement of private rights." *Id*. at 325-26. Importantly, the 1972
11 amendments "did not transfer all private enforcement to the EEOC," but kept in place the private
12 right of action that had been previously available to aggrieved parties. *Id*. at 326. The Court found
13 that "[t]hese private-action rights suggest that the EEOC is not merely a proxy for the victims of
14 discrimination and that the EEOC's enforcement suits should not be considered representative
15 actions subject to Rule 23." *Id*. Rather, "[w]hen the EEOC acts, albeit at the behest of and for the
16 benefit of specific individuals, it acts also to vindicate the public interest in preventing employment
17 discrimination." *Id*. Hence, EEOC's enforcement rights exist outside of Rule 23.
18     The Court also noted that "forcing EEOC civil actions into the Rule 23 model would in many
19 cases distort the Rule as it is commonly interpreted and in others foreclose enforcement actions not
20 satisfying prevailing Rule 23 standards but seemingly authorized by [Title VII]." *General
21 Telephone*, 446 U.S. at 329-30. Title VII permits the EEOC to bring enforcement actions against
22 employers with as few as 15 employees. Applying Rule 23 to actions of that size "would require the
23 EEOC to join all aggrieved parties despite its statutory authority to proceed solely in its own name,"
24 since a putative class of 15 "would be too small to meet the numerosity requirement" of the Rule.
25 *Id*. at 330. Similarly, the typicality requirement of Rule 23 "would limit the EEOC action to claims
26 typified by those of the charging party," despite the fact that existing law renders actionable "[a]ny
27 violations that the EEOC ascertains in the course of a reasonable investigation of the charging
28 party's complaint." *Id*. at 331. Finally, the adequate representation requirement of Rule 23 may

7

operate to foreclose an enforcement action "where there is a conflict of interest between the named plaintiff [the EEOC] and the members of the putative class." *Id*. The Court reasoned,

> unlike the Rule 23 class representative, the EEOC is authorized to proceed in a unified action and to obtain the most satisfactory overall relief even though competing interests are involved and particular groups may appear to be disadvantaged. The individual victim is given his right to intervene for this very reason. The EEOC exists to advance the public interest in preventing and remedying employment discrimination, and it does so in part by *making the hard choices* where conflicts of interest exist.

*General Telephone*, 446 U.S. at 331 (emphasis added). For these reasons, the Court held "that the nature of the EEOC's enforcement action is such that it is not properly characterized as a 'class action' subject to the procedural requirements of Rule 23." *Id*. at 334 n.16.

Subsequent courts have read *General Telephone* broadly, finding certain government enforcement actions exempt from Rule 23 beyond the context of the EEOC and its authorizing statute. In *N.L.R.B. v. Plumbers & Pipefitters Local Union No. 403, Affiliated with United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus., AFL-CIO*, the Ninth Circuit held that the rationale of *General Telephone* equally "applies to an action brought by the [National Labor Relations Board] under section 10 of the [National Labor Relations Act], for the action is one to vindicate '[t]he public interest in effectuating the policies of federal labor laws;' it is not a civil proceeding brought by a group of individual claimants to vindicate the wrongs they have suffered." *Id.*, 710 F.2d 1418, 1420 (9th Cir. 1983) (*quoting Vaca v. Sipes*, 386 U.S. 171, 182 n.8 (1967)). *See also Donovan v. University of Texas at El Paso*, 643 F.2d 1201 (5th Cir. 1981) (same).

Similarly, several courts have held that government enforcement actions do not constitute "class actions" within the meaning of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, 1711–15, because they are not "civil action[s] filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action," 28 U.S.C. § 1332(d)(1)(B) (defining "class action"). *See Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 850 (9th Cir. 2011) (*parens patriae* actions filed by state Attorneys General "lack statutory requirements for numerosity, commonality, typicality, or adequacy of representation that would make them

sufficiently 'similar' to actions brought under Rule 23, and that they do not contain certification procedures. *Parens patriae* suits lack the defining attributes of true class actions. As such, they only 'resemble' class actions in the sense that they are representative suits."); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661 (9th Cir. 2012) (same). *See also LG Display Co., Ltd. v. Madigan*, 665 F.3d 768, 772 (7th Cir. 2011) (*parens patriae* suit not a "class action" under Rule 23 because the "case was brought by the Attorney General, not by a representative of a class"); *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 174–76 (4th Cir. 2011) (State Attorney General's *parens patriae* action to enforce consumer protection statute not removable under CAFA because state statute lacked the procedural requirements of Rule 23). Importantly, these decisions have found enforcement actions by *state* agencies to be outside the strictures of Rule 23.

The principle that has emerged is that where a governmental agency is authorized to act in the public's interest to obtain broad relief, *e.g.*, in the role of *parens patriae*, and the authorizing statute confers such power without reference to class certification, Rule 23 may not apply. This principle applies to both state and federal law enforcement agencies. Such actions are not "class actions" subject to Rule 23. *General Telephone*, 446 U.S. at 334, n. 16.

Thus, for instance, in *People v. Pac. Land Research Co.*, the California Supreme Court held "that consumer protection actions brought by the People, seeking injunctive relief, civil penalties and restitution," were not "the equivalent of class actions brought by private parties, requiring the same safeguards to protect a defendant from multiple suits and other harmful consequences." *Id.*, 20 Cal. 3d 10, 17 (1977). Referring specifically to Fed. R. Civ. P. 23, the Court found that "[a]n action filed by the People seeking injunctive relief and civil penalties is fundamentally a law enforcement action designed to protect the public and not to benefit private parties" and "lacks the fundamental attributes of a consumer class action filed by a private party." *Id.*, 20 Cal. 3d at 17-18. "The Attorney General or other governmental official who files [such a suit] is ordinarily not a member of the class, his role as a protector of the public may be inconsistent with the welfare of the class so that he could not adequately protect their interests . . . , and the claims and defenses are not typical of the

1 class." *Id*. at 18.[2] While *Pac. Land Research* is a decision of state court, as noted above, federal
2 courts, including the Ninth Circuit, have similarly found state enforcement actions not governed by
3 Rule 23.

4 DFEH argues that its enforcement of the provisions of FEHA, the Unruh Act, and, by
5 extension, the ADA, through civil litigation designed to secure classwide relief on behalf of
6 aggrieved individuals is similarly a government enforcement action that "falls outside the scope of
7 Fed. R. Civ. P. 23." Pl.'s Mot. at 7. Following *General Telephone*, this Court must examine "the
8 nature of [DFEH's] enforcement action" to determine whether or not it is "properly characterized as
9 a 'class action' subject to the procedural requirements of Rule 23." *General Telephone*, 446 U.S. at
10 334 n.16.

B. DFEH Enforcement Authority

The legislature of the State of California has vested DFEH with the authority to enforce the civil rights of California citizens as "an exercise of the police power of the state for the protection of the welfare, health, and peace of the people of this state." Cal. Gov't. Code § 12920. "[S]ince 1959 the DFEH has been actively investigating, prosecuting and conciliating" complaints of discrimination falling within those areas under its jurisdiction. *State Pers. Bd. v. Fair Employment & Hous. Com.*, 39 Cal. 3d 422, 431 (1985). FEHA, the California statute that created DFEH, "was meant to supplement, not supplant or be supplanted by, existing antidiscrimination remedies, in order to give [Californians] the maximum opportunity to vindicate their civil rights against discrimination." *Id*. at 431. *See* Cal. Gov't. Code § 12993(a) ("Nothing contained in this part shall be deemed to repeal any of the provisions of the Civil Rights Law or of any other law of this state relating to discrimination because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, age, or sexual orientation, unless those provisions provide less protection to the enumerated classes of

---

[2] A State Court of Appeals in Arizona has specifically held that classwide civil rights enforcement actions brought by the Arizona Civil Rights Division, the state agency that enforces the Arizona Civil Rights Act, are not subject to the state equivalent of Rule 23 under the reasoning advanced in *General Telephone*. *See Arizona Civil Rights Div., Dept. of Law v. Hughes Air Corp.*, 139 Ariz. 309, 314 (Ct. App. 1983).

10

persons covered under this part"); *id*. ("The provisions of this part shall be construed liberally for the accomplishment of the purposes of this part."). FEHA's declared purpose is "to provide effective remedies that will eliminate these discriminatory practices." Cal. Gov't. Code § 12920. *See Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 666 (2009) ("[t]he Unruh Civil Rights Act," incorporated into FEHA via Cal. Gov't. Code § 12948, "must be construed liberally in order to carry out its purpose to create and preserve a nondiscriminatory environment in California business establishments by banishing or eradicating arbitrary, invidious discrimination by such establishments.") (internal citations and quotation marks omitted).

FEHA authorizes the Director of DFEH to file administrative charges and to bring suit in court for group or class relief. *See* Cal. Gov't. Code §§ 12930, 12961; *see also id.* § 11180 ("head of each department may make investigations and prosecute actions"). In particular, § 12961 of FEHA states:

> Where an unlawful practice alleged in a verified complaint adversely affects, in a similar manner, a group or class of persons of which the aggrieved person filing the complaint is a member, or where such an unlawful practice raises questions of law or fact which are common to such a group or class, the aggrieved person or the director may file the complaint on behalf and as representative of such a group or class. Any complaint so filed may be investigated as a group or class complaint, and, if in the judgment of the director circumstances warrant, shall be treated as such for purposes of conciliation, dispute resolution, and civil action.

Cal. Gov't. Code § 12961. Remedial civil actions brought by the Director under FEHA are brought "in the name of the department on behalf of the person claiming to be aggrieved." Cal. Gov't. Code § 12965(a). The California Supreme Court has recognized that "DFEH is a public prosecutor testing a public right," when it pursues civil litigation to enforce statutes within its jurisdiction. *State Pers. Bd. v. Fair Employment & Hous. Com.*, 39 Cal. 3d 422, 444 (1985) (citations and internal quotation marks omitted).

Thus, like the EEOC, the DFEH has the authority to investigate complaints on behalf of a group or class and to bring an enforcement action seeking group or class type relief. The California legislature has amended FEHA to allow DFEH to secure more effective enforcement of the statutes under its purview. *See* "Governor's Message Relative to Reorganization Plan No. 1 of 1979,"

*Assembly Journal*, Vol. 4, 1979-1980, Regular Session, at 6270 (creation of consolidated DFEH "would have the organizational stature necessary to conduct its activities effectively"); Cal. Gov't. Code § 12930(h) (effective January 1, 2013) (authorizing DFEH to sue directly in state or federal court). While the director is authorized to file a complaint "on behalf of and as a representative of . . . a group of class," nothing in § 12961 requires that the complaint be filed as a class action. Also, like the EEOC, aggrieved individuals have the right to participate in DFEH enforcement actions with their own counsel, underscoring the "public interest" focus of a DFEH suit. *See* Cal. Gov't. Code § 12965(a); *see also DFEH v. Am. Airlines, Inc.*, No. 91-06, FEHC Precedential Decs. 1990-1991, 1991 WL 370086 at *17 (Mar. 7, 1991) ("[T]he Department does not represent the complaining party but rather the interests of the state. Its job is to effectuate the declared public policy of the state 'to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of ... physical handicap.'") (quoting Cal. Gov't. Code § 12920). Courts have recognized the similarities between Title VII and FEHA, *see e.g. Price v. Civil Serv. Com.*, 26 Cal. 3d 257, 271 (1980), *superseded on other grounds by constitutional amendment*, *Strauss v. Horton*, 46 Cal. 4th 364 (2009), and have relied on Title VII jurisprudence when interpreting FEHA's provisions, *see e.g. Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996).

In this action, DFEH alleges that it "filed suit to remedy LSAC's pattern of denial of the right to reasonable accommodation," and claims "an interest in ensuring that gateways to education and employment are open to individuals with disabilities." Pl.'s Mot. at 6 (citations omitted). DFEH states that "California's public policy against discrimination on the basis of disability is substantial and fundamental." *Id*. at 8. *See City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 1161 (1998) ("we think discrimination based on disability, like sex and age discrimination, violates a substantial and fundamental public policy") (quotation marks omitted).[3] It views the LSAT as playing a "crucial role" in "determining applicants' admission to law school (and by extension, to

---

[3] *See also* Cal. Civ. Code § 51(b) ("All persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever").

the legal profession).” Pl.'s Mot. at 8. Consequently, it "filed suit to halt the ongoing harm to persons with disabilities who seek to enter the legal profession." *Id*. at 9.

The Court finds that, following the analysis presented in *General Telephone*, DFEH's suit against LSAC is properly characterized as a government enforcement action seeking relief for a class of aggrieved individuals, and is not a "class action" within the meaning of Rule 23. Just as with an EEOC enforcement action under § 706, provisions of FEHA codified at Cal. Gov't. Code § 12961 and § 12965(a) give DFEH the authority to pursue the remedies sought here. Thus, "[i]ts authority to bring such actions is in no way dependent upon Rule 23." *General Telephone*, 446 U.S. at 324. Like Title VII, FEHA empowers DFEH to "prevent any person from engaging in any unlawful practice as set forth in the [statute]," *id.* at 323, and "specifically authorizes [DFEH] to bring a civil action," *id.* at 324, in the role of a "public prosecutor testing a public right," *State Pers. Bd. v. Fair Employment & Hous. Com.*, 39 Cal. 3d at 444. In bringing enforcement actions, DFEH acts "not merely [as] a proxy for the victims of discrimination," but also "to vindicate the public interest in preventing [certain forms of] discrimination." *General Telephone*, at 326. Indeed, the instant suit began when Phyllis Cheng issued a "Notice of Class Action Complaint and Director's Complaint" in her official capacity as the Director of DFEH. *See* FAC, Ex. 3 (Director's Complaint). The Plaintiff for purposes of evaluating this motion is DFEH and not any specifically identified victim, as is readily apparent by this Court's earlier order granting permission for some of DFEH's identified "real parties in interest" to intervene in this suit on their own behalf. *See* Order Granting in Part Motion to Intervene by Legal Aid Society - Employment Law Center (Docket No. 61). Given the procedure employed by DFEH in bringing this suit, and the authority with which it is vested to obtain broad relief for alleged discriminatory conduct under California law, the Court concludes that DFEH's instant "enforcement suit[] should not be considered [a] representative action[] subject to Rule 23." *General Telephone*, at 326.

Further, as with EEOC enforcement actions, it is "apparent that forcing" DFEH civil actions such as this one "into the Rule 23 model would in many cases distort the Rule as it is commonly interpreted and in others foreclose enforcement actions not satisfying prevailing Rule 23 standards but seemingly authorized by [FEHA]." *General Telephone*, 446 U.S. at 329-30. FEHA permits

DFEH to bring enforcement actions against employers with as few as five employees (10 less than required under Title VII). *See* Cal. Gov't. Code § 12926(d). Applying Rule 23 to actions of that size "would require [DFEH] to join all aggrieved parties despite its statutory authority to proceed solely in its own name," since a putative class of five "would be too small to meet the numerosity requirement" of the Rule. *General Telephone*, at 330. Similarly, the typicality requirement of Rule 23 "would limit [DFEH's] action to claims typified by those of the [original] charging party," *id*. at 331, despite the fact that existing law renders actionable additional claims that are "like or reasonably related" to the original charge filed with DFEH, *see Rodriguez v. Airborne Express*, 265 F.3d 890, 897 (9th Cir. 2001). *See also Dep't of Fair Employment & Hous. v. Law Sch. Admission Council Inc.*, C-12-1830 EMC, 2012 WL 4119827 at *12 (N.D. Cal. Sept. 18, 2012) (approving addition of claims "like or reasonably related" to those originally filed with DFEH). Finally, the adequate representation requirement of Rule 23 may operate to foreclose an enforcement action "where there is a conflict of interest between the named plaintiff [DFEH] and the members of the putative class." *General Telephone*, at 331. Like the EEOC, DFEH "is authorized to proceed in a unified action and to obtain the most satisfactory overall relief even though competing interests are involved and particular groups may appear to be disadvantaged." *Id*. In such cases, DFEH is charged with "advanc[ing] the public interest . . . in part by making the hard choices where conflicts of interest exist." *Id*. The distortion that would result by forcing DFEH to pursue broad relief for victims of discrimination through the mechanism of Rule 23 leads this Court to conclude that DFEH's present enforcement action cannot be "properly characterized as a 'class action' subject to the procedural requirements of Rule 23." *Id*. at 334 n.16.

FEHA "itself authorizes the procedure" that DFEH seeks to follow in this case, and this Court finds "no basis for imposing the Rule 23 framework in [a DFEH] enforcement action" when the operative statute authorizes the agency "to sue in its own name to enforce [state] law by obtaining appropriate relief for those persons injured by discriminatory practices forbidden by the Act." *General Telephone*, at 324-25. Like the Supreme Court, this Court is "reluctant . . . [to impose] requirements that might disable [an] enforcement agency from advancing the public interest

in the manner and to the extent contemplated by [its organic] statute," and thereby undermine a public interest enforcement scheme crafted by the State of California. *Id*. at 331.

Finally, there is a significant policy basis for distinguishing the DFEH's action here and a Rule 23 class action. Unlike a private class action, where typicality requirements ensure that absent class members are not denied due process of law when they are bound without their explicit consent, *see Hansberry v. Lee*, 311 U.S. 32 (1940), absent victims whose claims would otherwise fall within the scope of a government enforcement action are not bound by the outcome of such an enforcement suit. *See Shimkus v. Gersten Companies*, 816 F.2d 1318, 1320 (9th Cir. 1987) ("When the government brings a discrimination action against a party resulting in a consent order, private parties, not in privity with the order, are not bound by its terms and may bring their own suit against the defendant.") (citations omitted). The need for procedural safeguards of Rule 23 are thus obviated to some degree.

C.  LSAC's Objections

LSAC offers three arguments as to why Rule 23 ought to apply to DFEH's present suit. First, Defendant asserts that adopting DFEH's position would create an untenable conflict between FEHA (specifically Cal. Gov't. Code § 12961) and Rule 23. It is uncontested that the Federal Rules of Civil Procedure apply to the conduct of all civil actions and proceedings in United States district courts, including cases removed from state court such as the instant suit. *See* Fed. R. Civ. P. 1; Fed. R. Civ. P. 81(c)(1); *see also* 28 U.S.C. § 2072(a) (providing that the Supreme Court "shall have the power to prescribe general rules of practice and procedure . . . for cases in the United States district courts"). "And like the rest of the Federal Rules of Civil Procedure, Rule 23 automatically applies 'in all civil actions and proceedings in the United States district courts,' Fed. Rule Civ. Proc. 1." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, __, 130 S. Ct. 1431, 1438 (2010) (citing *Califano v. Yamasaki*, 442 U.S. 682, 699–700 (1979)). From these two premises, LSAC concludes that "DFEH cannot pursue class claims unless a class is certified in accordance with Rule 23." Def's. Opp'n. Br. at 4.

The unstated, erroneous premise implicit within LSAC's argument is, of course, that DFEH's "class claims" asserted here constitute a "class action" within the meaning of Rule 23. As described

at length above, the Supreme Court's *General Telephone* decision recognizes that certain government enforcement actions are not "class actions" under Rule 23 despite the fact that they may seek to obtain classwide relief on behalf of a class of aggrieved parties. LSAC correctly asserts that when there is a conflict between a state statute and a federal procedural rule, the federal procedural rule controls "'unless it exceeds statutory authorization or Congress's rulemaking power.'" *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1203 (10th Cir. 2012) (citing *Shady Grove*, 130 S. Ct. at 1437)). But in this case there is no such conflict. DFEH does not argue, and this Court does not hold, that "California law in any sense trumps Rule 23." Pl.'s Mot. at 16. Rather, what *General Telephone* and the cases following it show is that under established federal law, certain government enforcement actions seeking classwide remedies are not "class actions" within the meaning of Rule 23 and are thus not governed by the provisions of that rule. Quite simply, Rule 23 does not apply to the present suit. There is, therefore, no conflict between federal and state procedural rules in this case.[4]

Second, LSAC contends "[n]otwithstanding the class certification allegations in its own Complaint, DFEH now seeks to avoid application of Rule 23's class action certification requirements by arguing that DFEH is not pursuing a class action after all." Def.'s Opp'n. Br. at 7. The fact that DFEH's complaint uses the phrase "class action" is of no moment. *General Telephone* established that the parties' "characterization" of a suit is not the key issue. Rather "[t]he issue is whether an action, however it is styled, brought by a Government agency to enforce the . . . law with whose enforcement the agency is charged is subject to the requirements of Rule 23." *General Telephone*, 446 U.S. at 323 n.5. Further, it is clear from the pleadings that to the extent DFEH sought to establish compliance with the Rule 23 in its complaint, such pleadings were made in the alternative. *See* FAC ¶ 8 ("Section 12961 authorizes the DFEH to seek class relief without being certified as the class representative. Nonetheless, this lawsuit meets the criteria for class

---

[4] Because this action is not subject to the provisions of Rule 23, there is no need to consider whether Rule 23 operates to "abridge, enlarge or modify any substantive right" so as to run afoul of the Federal Rules Enabling Act, 28 U.S.C. § 2072(b). *Dep't of Fair Employment & Hous. v. Lucent Technologies, Inc.*, is similarly inapposite because this case does not raise the question of whether "state law [can] negate the requirement of [a] federal rule." *Id.*, 642 F.3d 728, 741 (9th Cir. 2011).

certification."); *Grid Sys. Corp. v. Texas Instruments Inc.*, 771 F. Supp. 1033, 1041 (N.D. Cal. 1991) ("It is well established that a plaintiff may offer conflicting allegations in the alternative in his complaint.").

LSAC also seeks to distinguish *Washington v. Chimei Innolux Corp.*, *Nevada v. Bank of Am. Corp*, and similar *parens patriae* suits not subject to Rule 23 on the basis that those suits did not involve claims seeking classwide relief on behalf of specific individuals. "The doctrine of *parens patriae* allows a sovereign to bring suit on behalf of its citizens when the sovereign alleges injury to a sufficiently substantial segment of its population, articulates an interest *apart from the interests of particular private parties*, and expresses a quasi-sovereign interest." *Washington v. Chimei Innolux Corp.*, 659 F.3d at 847 (citing *Alfred L. Snapp & Son, Inc. v. Puerto Rico,* 458 U.S. 592, 607 (1982)) (emphasis added). In this suit, LSAC alleges that "DFEH is not seeking relief for the public at large or civil penalties payable to the State of California, but rather, specific relief on behalf of the real parties in interest and members of the purported class." Def's. Opp'n. Br. at 8.

*General Telephone* clearly establishes that seeking remedies solely on behalf of the sovereign or in the general public interest is not the metric by which a government enforcement action falls outside the scope of Rule 23. When a government agency brings an enforcement action, it may have multiple objectives. The Court in *General Telephone* observed, "[w]hen the EEOC acts, albeit at the behest of and for the benefit of specific individuals, *it acts also* to vindicate the public interest in preventing employment discrimination." *General Telephone*, 446 U.S. at 326 (emphasis added). Here, it is clear that DFEH seeks remedies extending beyond the interests of the identified "real parties in interest." It seeks, for example, injunctive relief prohibiting Defendant from "specifically annotating LSAT . . . test scores administered under extended time conditions," and from considering "mitigation measures such as medication when making a determination as to whether an applicant needs an accommodation." FAC ¶¶ 218-219. These remedies clearly extend beyond the more narrow interest of the specific aggrieved individuals identified by DFEH. They are "designed to protect the public" and seek, via injunctive relief, to prevent what the agency considers "continued violations of the law." *See People v. Pac. Land Research Co.*, 20 Cal. 3d 10, 17 (1977) ("An action filed by the People seeking injunctive relief . . . is fundamentally a law enforcement

17

action designed to protect the public and not to benefit private parties. The purpose of injunctive relief is to prevent continued violations of law . . ."). The record before the Court demonstrates quite clearly that DFEH seeks to "vindicate" what it considers to be "the public interest in preventing . . . discrimination" in the administration of the LSAT, and not simply to secure remedies for a discrete group of individuals. *General Telephone*, 446 U.S. at 326. LSAC's argument distinguishing *parens patriae* suits from the instant action is, therefore, inapposite.

Finally, LSAC argues in opposition to DFEH's motion that "[a]t a more fundamental level, it is one thing to conclude that a *federal* statute allows a *federal* government enforcement action to be pursued outside the class action requirements of the *federal* rules, as the Supreme Court did in *General Telephone*. But this same analysis cannot be extended wholesale to allow a *state* statute to prescribe the procedure for pursuing purported class claims in *federal* court." Def.'s Opp'n. Br. at 10 (emphasis in original). LSAC cites as support the Supreme Court's decision in *Hanna v. Plumer*, where it reasoned "[t]o hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act." *Id.*, 380 U.S. 460, 473-74 (1965).

Again, Defendant's argument misses the import of *General Telephone*. When a government agency pursues classwide relief through a civil enforcement action, it is not prosecuting a "class action" subject to Rule 23. This is so irrespective of whether state or federal law authorizes the agency's enforcement action. As noted above, *General Telephone* did not limit its holding to enforcement actions brought solely under the authority of federal law; subsequent cases have applied *General Telephone* to state agency enforcement actions.

///
///
///
///
///
///

18

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** DFEH's Motion to Proceed for Group or Class Relief and hereby orders that DFEH may proceed in this enforcement action without filing a motion for class certification under Fed. R. Civ. P. 23.

This order disposes of Docket No. 106.

IT IS SO ORDERED.

Dated: April 22, 2013

_____
EDWARD M. CHEN
United States District Judge