United States District Court
Northern District of California

| | |
|---|---|
| DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>LAW SCHOOL ADMISSION COUNSEL,<br><br>　　　　　　　Defendant. | Case No.: 12-cv-1830 (EMC) KAW<br><br>ORDER REGARDING THE PARTIES' JOINT LETTER |

　　　　Plaintiffs—the Department of Fair Employment and Housing (DFEH), the United States of America, Andrew Quan, Nicholas Hones, and Elizabeth Hennessy-Severson—allege that Defendant—the Law School Admission Counsel (LSAC)—discriminated against individuals with disabilities who took the Law School Admission Test (LSAT), by flagging the test scores of applicants who received the testing accommodation of extra time to complete the test.

　　　　On March 5, 2013, Judge Chen entered an order setting out a joint pre-ADR discovery plan. Discovery for the purpose of ADR was to be completed by June 14, 2013. The parties agreed that "discovery for the purposes of ADR will be tailored and focused to those topics and those sources necessary for meaningful participation in ADR." A settlement conference is set before Magistrate Judge Spero on July 9, 2013.

　　　　On May 24, 2013, the parties filed a joint letter regarding several discovery disputes. *See* Dkt # 141. Specifically, the parties have disputes regarding Plaintiffs' joint document requests numbers: 1; 18-19 and 27; 9 and 13; Defendant's document requests to the United States numbers 1-5, 7, 46-48; and Defendant's document requests to DFEH numbers 24-27, 31; and 39.

///

///

### 1. Plaintiffs' joint document request No. 1

Plaintiffs requested the applicant files that LSAC maintains for each of the individuals named in Plaintiffs' complaints, and the applicant files for every individual who requested testing accommodations for the October 2012 administration of the LSAT.

Defendant does not argue that the discovery sought is not relevant, but objects solely on the basis of third parties' privacy. Defendant has requested releases from the 21 individuals named in the complaints, but Plaintiffs have not provided them. In addition, Defendant has agreed to make available for inspection at LSAC's offices the requested files for the October 2012 LSAT, but will not allow copying of the files. Defendant has an established policy that it will "make every effort to see that all reasonable precautions are taken to protect the privacy" of the applicants, and that Defendant will release data from an applicant's file only pursuant to an enforceable subpoena or court order. Defendant argues that even though the parties have entered into a protective order, which ensures that confidential files will not be disclosed to the public, Plaintiffs' attorneys and agents may well be peers or classmates of the applicants whose information will be disclosed.

Federal courts recognize a constitutionally based right of privacy that can be raised in response to discovery requests. *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995). The party whose privacy is affected may object to the discovery request or seek a protective order. *Id.* "Resolution of a privacy objection or request for a protective order requires a balancing of the need for the information sought against the privacy right asserted." *Id.*

Here, it appears that the discovery sought is directly relevant to Plaintiffs' claims. Defendant's policy of not disclosing applicant files does not trump its discovery obligations under the Federal Rules. As noted above, the parties have already entered into a protective order that prevents the disclosure of the applicant files to the public. *See* Dkt #123. Although Defendant argues that some of Plaintiffs' attorneys' agents may be peers of the applicants, and therefore disclosure of the files to them could injure the applicants' professional reputations, this concern is too speculative to warrant denying Plaintiffs discovery of the files. After balancing Plaintiffs' need for the discovery against the third parties' privacy rights, the Court finds that the documents sought are discoverable. Because the need for the discovery outweighs the privacy rights of the

individuals, Defendant's suggestion that Plaintiffs only be allowed to obtain the files of those individuals who have signed releases is rejected.

Defendant further objects that Plaintiff DFEH should not be entitled to obtain copies of the files of applicants who were not California residents, because DFEH's complaint only pertains to California residents. But this does not mean that the discovery of non-California resident's files is not relevant to the claims in DFEH's complaint. The Court will not bar DFEH's discovery of all of the documents in question.

The Court rejects Defendant's suggestion that Plaintiffs be allowed to review and inspect, but not copy, some of the records at Defendant's office. *See* Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request . . . to permit the requesting party . . . to inspect, copy, test or sample" discovery). Because the protective order adequately addresses the individuals' privacy rights, there is no reason for a prohibition on copying the documents.

**2. Plaintiffs' joint document requests Nos. 18-19 and 27**

Plaintiffs seek discovery of: 1) the data underlying studies that LSAC relied on to justify the flagging of scores; 2) any documents that explain the data; and 3) any documents describing the "correlation studies" referred to in a document titled "Predictive Validity of Accommodated LSAT Scores for the 2002-2006 Entering Law School Classes." Joint Letter, Ex. C at 11-12, 15. Defendant objects on the basis that the discovery is not "reasonably tailored to ADR discovery," because it is technical, expert discovery.

The data and documents sought by Plaintiffs appear to be relevant. Notably, the data and documents are relevant to Defendant's assertion that it flags the LSAT scores of applicants who take the test with the accommodation of extra time because those applicants' LSAT scores are not comparable to the scores of applicants who took the test without accommodations. Plaintiffs seek the raw data underlying studies in order to test the validity of Defendant's conclusions regarding the comparability of the scores.

As a preliminary matter, the Court notes that while the parties' joint pre-ADR discovery plan provides that "discovery for the purposes of ADR will be tailored and focused to those topics and those sources necessary for meaningful participation in ADR and will pertain to the claims

and defenses alleged by any of the parties," and that no expert depositions will be taken for the purposes of ADR, there is no prohibition against the discovery of documents whose meaning might need to be interpreted by an expert witness.

Defendant argues 1) that the raw data sought in Requests 18 and 19, as well as the correlation studies sought in Request 27, are "voluminous," and a "significant and undue burden"; and 2) that the discovery of the data will lead to Plaintiff bringing expert opinions into the ADR proceedings, which will not "helpful to the settlement judge."

The Court must limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C). Here, Defendant explains that it would be a "significant burden" to collect and produce the raw data. But Defendant does not give any details regarding the burden of collecting the data, such as how many hours it would take, or how many different locations the data is stored in. As to the correlation studies sought, Defendant states that Plaintiffs seek the studies from 2009 onwards, that there are 396 studies from the year 2009-2010 alone, and that a report summarizing the 2009 and 2010 studies is available to Plaintiffs. But Defendant provides no convincing details regarding the burden of complying with the discovery request. It may be that, despite the large number of the correlation studies, they are all readily accessible, and may be produced without undue burden.

On the other hand, the likely benefit of the proposed discovery is significant. The reason that Defendant flags the test scores of applicants with accommodations is a central issue in this lawsuit, and Plaintiffs are entitled to obtain data that may undermine the validity of the reasons Defendant gives for flagging the scores. Even though some of the data may need to be organized and interpreted by an expert, this does not mean that it will not be helpful for the purposes of ADR.

Because Defendant has not shown that the burden of producing the data and documents outweighs their likely benefit, the Court orders Defendant to either: 1) produce all of the discovery by July 1, 2013, or 2) within seven days of the date of this order, make a sufficient showing, supported by a declaration by a person with personal knowledge of the facts therein, that producing the data and documents would constitute an undue burden.

4

### 3. Plaintiffs' joint document requests Nos. 9 and 13

Plaintiffs seek all documents "that support, or detail the basis for, the time limits established by the LSAC for the LSAT and/ or portions of the LSAT," as well as a "complete set of LSAC's technical materials and technical manuals, including but not limited to information regarding test development, reliability and 'validity,' for the current version or form of the LSAT, as required by the *Standards for Educational and Psychological Testing*." Joint Letter, Ex. C at 8, 10.

Defendant originally objected that these requests were overly broad, burdensome, and not reasonably tailored for the purposes of ADR discovery. After the parties met and conferred, Defendant agreed to produce some documents, including a "discrete collection of test specifications" and "a discrete technical manual." Plaintiff has objected to the term "discrete" to the extent that it implies that Defendants are withholding documents on the basis that they contain non-responsive information. Defendant clarifies that it is not withholding documents on the basis that portions of the documents are non-responsive, yet also states, "[t]o date, LSAC has not been able to identify a discrete document or documents that relate exclusively to time limits established by the LSAC for the LSAT." Though it refuses to produce all of the documents that are responsive to this request on the grounds that most of the documents are not relevant or "appropriate for ADR discovery," Defendant offers to "check whether there are discrete documents responsive to these requests that LSAC could produce for ADR discovery."

On the one hand, it appears that these discovery requests may be overly broad, as they appear to seek the production of a number of documents that are relevant to this case. For example, it is not apparent why *all* of Defendant's technical materials and manuals for the current version of the LSAT would relate to the claims in this case. On the other hand, it is improper for Defendant to pick and choose which responsive documents it will produce.

The parties are ordered to meet and confer in good faith, in person or telephonically, within two days of the date of this order, in order to resolve this dispute. Plaintiffs must narrow the scope of their requests to plainly relevant information for the purposes of ADR, and Defendant must produce all responsive documents to such a reasonably narrowed request. If the

parties are truly unable to resolve this dispute through the meet and confer process, they may file a joint letter to the Court within seven days of the date of this order.

**4. Defendant's document requests to the United States Nos. 1-5, 7, 46-48**

Defendant has requested "all documents that discuss the meaning or interpretation of, or obligations imposed by" all of the federal statutes the United States claims that Defendant violated. The United States produced a number of documents responsive to this request, and produced more documents after the parties met and conferred about the scope of the request, but parties still disagree on two specific points.

First, the United States refuses to produce "All documents prepared by DOJ that discuss the meaning or interpretation of the phrase 'place of public accommodation' as that phrase is used 42 U.S.C. § 12182(a) and 28 C.F.R. § 36.201." The United States argues that responding to this request would entail producing, among other documents, all of the 1400 Title III settlement agreements that the Civil Rights division has ever entered into, regardless of subject matter. Defendant contends that the broad scope of the discovery request is purely a consequence of the DOJ's decision to bring causes of action against Defendant under these statutes.

Although the DOJ's past interpretation of the phase "place of public accommodation" in similar cases is relevant, it would be unduly burdensome for the DOJ to produce all documents interpreting this phrase for the narrowly tailored purposes of ADR discovery. The parties are ordered to meet and confer to narrow the scope of this request to only documents from cases, or other opinions, that are similar or factually analogous to the instant lawsuit.

Through the meet and confer process, the parties agreed on a number of search terms for the United States to search its electronic files, but disagree about Defendant's proposed search term "NCBE[1] and accommodations." The United States objects that this search term will produce not only relevant documents, which the United States has already produced, but also documents relating to communications between DOJ and third parties regarding NCBE that have "nothing to do with LSAC." Defendant explains that the NCBE was involved in several lawsuits which addressed the nature of testing accommodations imposed on testing organizations under the ADA.

---

[1] NCBE stands for National Conference of Bar Examiners.


6

1  The documents pertaining to these lawsuits that will be found through this search appear to be
2  relevant, even if they do not directly involve LSAC, because they pertain to the United States'
3  interpretation of the ADA's requirements regarding testing accommodations. The United States
4  has not shown that the search would be unduly burdensome. Therefore, it is ordered to perform
5  the search with these terms.
6  In addition, the parties disagree regarding the United States' refusal to produce
7  communications between the DOJ and the U.S. Government Accountability Office (GAO) and
8  documents regarding a particular 2011 GAO report. The report examined the types of disability-
9  based accommodations that are requested on standardized tests, including how federal agencies
10 enforce compliance with relevant disability laws, and DOJ sent a letter to GAO commenting on a
11 draft report. The documents sought are relevant because they discuss issues and regulatory
12 requirements that are central to this lawsuit, as well as DOJ's interpretation of these issues.
13 Accordingly, the documents should be produced.

### 5. Defendant's document requests to DFEH numbers 24-27, 31

Defendant requests that DFEH produce, for the real parties in interest in this case and the individuals authorized by DFEH to receive their LSAC accommodation records, all DFEH investigative and interview notes, progress memos that were not directed to or from attorneys or generated during settlement efforts, and medical records. DFEH asserts that it has provided Defendant with medical records, non-privileged communications with complaining parties, and non-privileged correspondence with third parties, but objects that the rest of the documents are privileged.

Defendant argues that the documents sought cannot be considered privileged, because under DFEH's directives 603 and 312, documents of this type will ordinarily be produced in response to a third-party subpoena. Directive 603, "Response to Third-Party Subpoenas," "sets forth procedures for responding subpoenas served on . . . [DFEH] by third parties involved in litigation to which [DFEH] is not a party." The Directive further states that a number of the types of records sought by Defendant will be produced, but "documents prepared by the Department's Legal Counsel are normally privileged." *Id.* § 4.B.6. Directive 312 § 4.(C) states, "When an

7

accusation is issued, Progress Memos are discoverable pursuant to Government Code section 11507.6."

DFEH asserts that in the investigation underlying this case, unlike its standard investigations, in this case, DFEH investigators prepared the documents under the direction and supervision of the agency's attorney-managed Special Investigations Unit, after DFEH made a preliminary determination of cause.

To the extent that the documents requested were prepared at the direction of the Department's Legal Counsel, they are privileged, and do not fall within the scope of the Directives. It appears that DFEH has turned over all of the documents requested that were not prepared at the direction of counsel. Accordingly, the Court will not order further production with respect to this request.

### 6. Defendant's document requests to DFEH number 39

Defendant seeks discovery of DFEH's communications with third parties regarding *LSAC v. State of California*, a lawsuit filed by Defendant challenging a California statute enacted in 2012 that applies exclusively to LSAC. The statute was enacted to prevent Defendant from informing test score recipients if an applicant received extra time, and imposes other requirements on Defendant. The defendants in that case are the Governor, the Attorney General and the State Superintendent of Public Instruction and Director of Education.

DFEH argues that the documents in question are protected from disclosure under the joint defense/ common interest doctrine, because they are communications between counsel for DFEH and the AG, Department of Education, and Governor's offices, and members of the California State Assembly; and, that the documents are outside of the scope of ADR discovery.

"Participants in a joint or common defense or individuals with a community of interests . . . may communicate among themselves and with the separate attorneys on matters of common legal interest, for the purpose of preparing a joint strategy," and their communications will be protected by the attorney-client privilege. *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (citations omitted). The common interest privilege applies where "(1) the communication is made by separate parties in the course of a matter of common [legal] interest;

(2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Id.* (citations omitted). The joint defense theory is not limited to parties to litigation, but can extend to "interested third parties who have a community of interests with respect to the subject matter of the communications," and "is applicable whenever parties with common interests joint [sic] forces for the purpose of obtaining more effective legal assistance." *Id.*

Here, DFEH and the defendants in *LSAC v. State of California* had a common legal interest—to prevent Defendant from flagging the test scores of applicants who received extra time on the test. DFEH asserts, and the Court has no reason to disbelieve, that the communications at issue were made in anticipation of, or during, litigation, and therefore, that the communications were designed to further their litigation interests.

There is no indication that the privilege has been waived through the disclosure of the communications to third parties. DFEH has produced a privilege log detailing the documents at issue. Although Defendant argues that the documents may not have been originally privileged, because there may not have been "an understanding that everyone would treat the communications as confidential and privileged," Defendant provides no factual support for this speculation. There is no reason to believe that the attorneys were ignorant of the availability of the joint defense privilege at the time of the communications.

Accordingly, the Court finds that the documents need not be disclosed, and does not reach DFEH's argument regarding the scope of the discovery.

**7. Conclusion**

As stated above, it is hereby ORDERED:

1. Plaintiffs are entitled to the discovery sought in Plaintiffs' joint document requests number 1.

2. With respect to Plaintiffs' joint document requests numbers 18, 19 and 27, Defendant shall either: 1) produce all of the discovery, or 2) within seven days of the date of this order, make a sufficient showing, supported by a declaration by a person with personal knowledge of the facts therein, that producing the data and documents would constitute an undue burden.

3. With respect to Plaintiffs' joint document requests numbers 9 and 13, the parties are ordered to meet and confer in good faith, in person or telephonically, in order to resolve this dispute. Plaintiffs must narrow the scope of their requests to plainly relevant information for the purposes of ADR, and Defendant must produce all responsive documents to such a reasonably narrowed request. If the parties are truly unable to resolve this dispute through the meet and confer process, they may file a joint letter to the Court within seven days of the date of this order.

4. With respect to Defendant's document requests to the United States numbers 1-5 and 7, the parties are ordered to meet and confer to narrow the scope of these requests to only documents from cases, or other opinions, that are similar or factually analogous to the instant lawsuit. The United States is ordered to conduct a search with the proposed search term "NCBE and accommodations." The United States is ordered to produce documents responsive to Defendant's document requests to the United States numbers 46-48.

5. With respect to Defendant's document requests to DFEH numbers 24-27 and 31, no further production is required.

6. With respect to Defendant's document requests to DFEH number 39, no further production is required.

7. All production of documents pursuant to this order shall be completed by July 1.

IT IS SO ORDERED.

Dated: June 14, 2013

*Kandis Westmore*

KANDIS A. WESTMORE
UNITED STATES MAGISTRATE JUDGE