1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

9

10

| | |
|---|---|
| THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, )<br>Plaintiff, )<br>v. )<br>LAW SCHOOL ADMISSION COUNCIL, INC., )<br>Defendant. ) | Case No. CV 12-1830-EMC |
| THE UNITED STATES OF AMERICA, )<br>Plaintiff-Intervenor, )<br>v. )<br>LAW SCHOOL ADMISSION COUNCIL, INC., )<br>Defendant. ) | ~~[PROPOSED]~~ CONSENT DECREE |
| ANDREW QUAN, NICHOLAS JONES, and )<br>ELIZABETH HENNESSEY-SEVERSON, )<br>Plaintiff-Intervenors, )<br>v. )<br>LAW SCHOOL ADMISSION COUNCIL, INC., )<br>Defendant. ) | |

20
21
22
23
24
25
26
27
28

1

## TABLE OF CONTENTS

2

3  INTRODUCTION ................................................................................................................. 1

4  PARTIES ............................................................................................................................... 2

5     1. Plaintiffs ..................................................................................................................... 2

6     2. Defendant ................................................................................................................... 2

7     3. LSAC .......................................................................................................................... 2

8  INJUNCTIVE RELIEF ........................................................................................................ 3

9     4. General Obligations .................................................................................................... 3

10    5. LSAC Shall Ensure That Documentation Requests Are Reasonable And Limited To

11       The Need For The Testing Accommodation Requested ............................................. 3

12    6. LSAC Shall Diversify The Expert Consultants It Uses To Review Requests For

13       Testing Accommodations ........................................................................................... 8

14    7. LSAC Shall Implement Best Practices As Established By A Panel Of Experts To Be

15       Agreed Upon By The Parties To Comply With 28 C.F.R. § 36.309 ......................... 9

16           a. Panel ................................................................................................................. 9

17           b. Duties ............................................................................................................... 10

18           c. Issues To Be Addressed By Panel .................................................................... 10

19                i.    Diversification ........................................................................................ 10

20                ii.   Documentation ........................................................................................ 10

21                iii.  Review of Testing Accommodation Requests ........................................ 11

22                iv.   Other ....................................................................................................... 12

23           d. Process ............................................................................................................. 12

24           e. Communications ............................................................................................... 15

25           f. Access ............................................................................................................. 16

26

i

27

28

g.  Final Report ....................................................................................................16

h.  Cost ..............................................................................................................16

8.  Tracking and/or Maintenance of Testing Accomodation Data.................................17

PERMANENT INJUNCTION ON SCORE ANNOTATIONS ..........................................19

9.  Permanently Discontinue Score Annotating ...........................................................19

CIVIL PENALTY .................................................................................................................19

10.  Civil Penalty ($55,000)............................................................................................19

MONETARY RELIEF ..........................................................................................................20

11.  Payments To Individuals ($7,675,000.00)..............................................................20

a.  Monetary Relief To Individuals Named In The United States' And The DFEH's
    Complaints ($945,000) ..............................................................................20

b.  Compensation Fund For Individuals Who Requested Testing Accommodations For
    The LSAT Between January 1, 2009 And May 20, 2014 And Who Are Eligible
    Persons Under This Decree ($6,730,000) ...................................................21

    i.    Potential Eligible Persons.................................................................22

    ii.   Eligible Persons ...............................................................................22

    iii.  Retention Of Claims Administrator ..................................................23

    iv.   Duties Of The Claims Administrator ................................................23

    v.    Dispute Resolution ...........................................................................24

    vi.   Potential Eligible Persons List To Administrator.............................25

    vii.  Notice By LSAC ..............................................................................25

    viii. Notice By Administrator ...................................................................26

    ix.   Locating Potential Eligible Persons .................................................26

    x.    Claims Period ...................................................................................26

12.  Establishment Of Standards ....................................................................................27

ii

13. Claims Reporting .................................................................................27

14. Payment .........................................................................................28

15. No Set-Off ......................................................................................28

16. Notification Of Final Payment .............................................................28

17. Residual Amount In Compensation Fund ...............................................29

18. Taxes .............................................................................................29

OTHER RELIEF ............................................................................................29

19. Renewed Requests For Testing Accommodations ....................................29

20. Specific Testing Accommodations For Named Individuals ..........................29

ATTORNEY FEES AND COSTS FOR THE DFEH AND INDIVIDUAL PLAINTIFF-

INTERVENORS ...........................................................................................30

21. Attorney Fees And Costs ....................................................................30

ADA MONITOR AND REPORTING .................................................................31

22. Notice By LSAC ...............................................................................31

23. Reporting By LSAC ...........................................................................32

24. ADA Monitor ...................................................................................32

25. Audits By ADA Monitor ......................................................................33

26. Audit Reports By ADA Monitor ............................................................34

a. Access ........................................................................................34

27. Communications ...............................................................................35

28. Cost ..............................................................................................35

ADDITIONAL TERMS ..................................................................................36

29. Notification .....................................................................................36

30. Term Of This Decree .........................................................................37

31. Disputes ..........................................................................................37

iii

32. Use Of Information ........................................................................................38

33. Scope ...............................................................................................................38

34. Releases ...........................................................................................................38

35. Pending Complaints .......................................................................................39

36. Binding ............................................................................................................39

37. Non-Waiver .....................................................................................................39

38. Severability .....................................................................................................40

39. Litigation Holds .............................................................................................40

40. Authority .........................................................................................................40

SIGNATURES .................................................................................................................41

ORDER AND PERMANENT INJUNCTION ..................................................................45

1

## **INTRODUCTION**

2      This matter is before the Court for entry of a consent decree agreed upon by the Parties –

3 Plaintiff California Department of Fair Employment and Housing ("DFEH"); Plaintiff-Intervenor

4 the United States of America ("United States"); individual Plaintiff-Intervenors Andrew Quan,

5 Nicholas Jones, and Elizabeth Hennessey-Severson ("individual Plaintiff-Intervenors") (each a

6 "Plaintiff" and collectively "Plaintiffs"); and the Law School Admission Council, Inc.

7 ("LSAC").  Plaintiffs allege that LSAC discriminates against individuals with disabilities who

8 take, or seek to take, the Law School Admission Test ("LSAT") with testing accommodations, in

9 violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*.,[1] based on

10 LSAC's alleged failure to offer the LSAT in a manner accessible to individuals with disabilities

11 and on LSAC's policy of annotating, or "flagging," test scores achieved with the testing

12 accommodation of extended time.[2]  LSAC denies all of Plaintiffs' allegations.

13      Prior to the commencement of this litigation, the United States and the DFEH had not

14 issued a regulation or technical assistance publication explicitly addressing score annotation by

15 any private entity that offers examinations or courses related to applications, licensing,

16 certification, or credentialing for secondary or post-secondary education, professional or trade

17 purposes.  However, the United States and the DFEH maintain that 42 U.S.C. § 12189 and 28

18 C.F.R. § 36.309 prohibit score annotation.  LSAC disputes the position of the United States and

19 the DFEH on this issue.  The United States and the DFEH further maintain that, under 42 U.S.C.

20

21 ---

[1] A violation of the ADA constitutes a violation of the Unruh Act, Cal. Civ. Code section 51(f).  All
22 references to the ADA are intended to include alleged ADA violations that by incorporation would violate
California law.  Nothing in this Consent Decree is intended to waive California law.

23
[2] The DFEH and the individual Plaintiff-Intervenors additionally allege violations of the California Unruh
24 Civil Rights Act (California Civil Code section 51 *et seq*.) and California Education Code section
99161.5. The individual Plaintiff-Intervenors also allege violations of the Unfair Competition Act
25 (California Business and Professions Code section 17200 *et seq*.).

26
27
28

1   § 12206(e), LSAC is not excused from compliance with the requirements of the ADA because of

2   any failure to receive technical assistance.

3          Plaintiffs and LSAC agree that it is in the Parties' best interests, the DFEH believes it is

4   in the public interest of California, and the United States believes it is in the public interest, to

5   fully and finally resolve this matter on mutually agreeable terms without trial of any issues of

6   fact or law raised in any of the Plaintiffs' complaints, and without resort to protracted litigation.

7   Further, the Parties acknowledge and agree that there has been no adjudication as to the merits of

8   any of the claims raised herein, and the fact that LSAC has entered into this Consent Decree

9   should in no way be considered evidence of guilt or liability that it has violated the law in any

10  way.  The Parties hereby agree and stipulate to the Court's entry of this Consent Decree,

11  including the Order and Permanent Injunction, resolving the Plaintiffs' complaints against

12  LSAC.

13         Now it is hereby ORDERED AND DECREED as follows:

14                                        **<u>PARTIES</u>**

15         1.     Plaintiffs are: (1) the DFEH, a California state agency charged with enforcing the

16  rights of all Californians under the California Unruh Civil Rights Act ("Unruh Act"), Cal. Civ.

17  Code §§ 51 *et seq*.; (2) the United States of America; and (3) Andrew Quan, Nicholas Jones, and

18  Elizabeth Hennessey-Severson, individuals with alleged disabilities who claim that they were

19  subjected to discrimination by LSAC.

20         2.     Defendant LSAC is a Delaware non-profit corporation headquartered at 662 Penn

21  Street, Newtown, Pennsylvania 18940.  LSAC administers the LSAT multiple times each year

22  across the United States.

23         3.     LSAC is a "person" that offers examinations related to applications for post-

24  secondary education within the meaning of 42 U.S.C. § 12189 and a "private entity" that offers

25  examinations related to applications for post-secondary education within the meaning of

26

27

28

28 C.F.R. § 36.309.  The LSAT is a secure examination, and LSAC routinely takes steps to protect the security of LSAT examination content.

## INJUNCTIVE RELIEF

4.     General Obligations.  LSAC shall comply with the requirements of 42 U.S.C. § 12189 of the ADA and its implementing regulation at 28 C.F.R. § 36.309 (and California law where applicable), including, *inter alia*, the obligation to offer the LSAT in a place and manner accessible to persons with disabilities.

a.     Pursuant to 28 C.F.R. § 36.309(b)(1)(i), LSAC shall select and administer the LSAT so as to best ensure that, when the LSAT is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the LSAT results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills (except where those skills are the factors that the LSAT purports to measure).

b.     Pursuant to 28 C.F.R. § 36.309(b)(3), LSAC shall provide appropriate auxiliary aids for persons with impaired sensory, manual, or speaking skills, unless LSAC can demonstrate that offering a particular auxiliary aid would fundamentally alter the measurement of the skills or knowledge the examination is intended to test or would result in an undue burden.

5.     LSAC Shall Ensure That Documentation Requests Are Reasonable And Limited To The Need For The Testing Accommodation[3] Requested.

a.     For those candidates whose documentation establishes that they previously were approved to receive testing accommodations on any standardized examination offered in the United States related to applications for post-secondary admission,[4] and with respect to the

---

[3] The commonly used term "testing accommodation" refers, collectively, to "modifications, accommodations, or auxiliary aids or services" as referenced in 28 C.F.R. § 36.309.

[4] For purposes of Paragraph 5(a), these examinations are the LSAT, SAT I and II, ACT, GED, GRE, GMAT, DAT, and MCAT examinations, unless this list is modified by agreement of the Parties.

testing accommodations for which they were previously approved, LSAC shall require no more documentation than proof of the approval for such testing accommodations, and certification by the candidate through a checkmark box on the candidate form that the candidate is still experiencing the functional limitations caused by the disability(ies) for which testing accommodations were approved.  Acceptable proof of prior testing accommodations shall consist of a letter or similar documentation from the other test sponsor confirming that testing accommodations were approved and specifically identifying what those approved testing accommodations were.  Upon receipt of such proof in accordance with LSAC's established deadlines, without further inquiry or request for additional documentation, LSAC shall grant those previously approved testing accommodations, or the equivalent testing accommodation offered on the LSAT,[5] with respect to requests for extended time up to double time[6] as well as certain other testing accommodations that are listed in Exhibit 1.  Testing accommodations will only be provided in accordance with this Paragraph 5(a) if the testing can be administered on one day.  If the requested testing accommodations cannot be administered on one day, they will be evaluated in accordance with Paragraphs 5(b)-(d).  If the requested testing accommodation is one that is not covered by this Paragraph 5(a) and Exhibit 1, it will be evaluated in accordance with Paragraphs 5(b)-(d).

---

[5] For example, LSAC shall provide a candidate who submits appropriate documentation that she received double time for the GRE with extended time for both the multiple choice sections and the writing section of the LSAT – despite the fact that the GRE may not specify the sections on which a candidate received extended time.  Likewise, a candidate may submit appropriate documentation showing that she previously received the testing accommodation of "large block answer sheet" on the ACT.  If that exact testing accommodation is not offered for the LSAT, LSAC shall grant the closest equivalent testing accommodation provided for the LSAT – such as an alternate non-Scantron answer sheet.

[6] Although candidates who previously received in excess of double time will be granted double time under this provision, LSAC will consider the balance of requested extended time, and any other testing accommodations not previously received on a standardized examination related to applications for post-secondary admission, under the provisions of Paragraphs 5(b)-(d).

b.      For those requests that do not meet the requirements of Paragraph 5(a) in whole or in part, any request from LSAC for documentation with respect to any part of a request not covered by Paragraph 5(a) shall be reasonable and limited to the need for the testing accommodation requested.

c.      Subject to any further direction from the Panel as set forth in Paragraph 7(c)(ii):

i.      Requests by candidates who were previously approved to receive extended time in excess of double time,[7] or any testing accommodation not covered by Paragraph 5(a) and Exhibit 1, for any standardized examination related to applications for post-secondary admission, and who seek the same testing accommodations on the LSAT, will be subject to LSAC's then-applicable documentation requirements, as revised herein.

ii.      Requests by candidates who seek more extended test time or break time than they previously were approved to receive as a testing accommodation for any standardized examination related to applications for post-secondary admission[8] will be subject to LSAC's then-applicable documentation requirements, as revised herein.

iii.      When reviewing the requests identified in this Paragraph 5(c), LSAC will not re-evaluate whether the candidate has a covered disability within the meaning of the ADA.

d.      In evaluating testing accommodation requests under Paragraphs 5(b)-(c):

i.      LSAC shall consider all facts and explanations offered by the candidate regarding his or her history or the need for the requested testing accommodations,

---

[7] For such requests, LSAC shall automatically grant double time on the LSAT, consistent with the provisions of Paragraph 5(a).

[8] For such requests, LSAC shall automatically grant the amount of extended test time or break time previously approved by the other testing entity, subject to the requirements of Paragraph 5(a).

1    including factors such as late-in-life diagnosis of disability, recent onset of a disability,

2    progression of a disability, lack of resources, or having a non-traditional educational background.

3                    ii.      LSAC shall give considerable weight to documentation of past

4    testing accommodations received in similar testing situations not covered by Paragraph 5(a), as

5    well as such testing accommodations provided in response to an Individualized Education

6    Program (IEP)[9] or a Section 504 Plan.[10]

7                    iii.     LSAC shall consider documentation provided by a qualified

8    professional[11] who has made an individualized assessment of the candidate.

9                    iv.      LSAC agrees to update the information and forms provided to

10   candidates regarding the recency of testing used in support of a testing accommodation request

11   based on a mental or cognitive impairment to permit such candidates to submit testing conducted

12   within five years of the date of the request for testing accommodations on the LSAT in support

13   of their testing accommodation request, instead of within three years as currently required for

14   certain candidates.

15                   v.       LSAC may consider objective evidence relating to the candidate's

16   diagnosed impairment and its impact on the candidate.

17                   vi.      LSAC shall not reject or deny a candidate's application for a

18   particular testing accommodation based solely on the candidate's average or above average IQ

19   score and/or high level of academic success.

20

21   [9] An IEP describes the special education and related aids and services provided under the Individuals with
     Disabilities Education Act (IDEA).

22

23   [10] A Section 504 Plan describes special or regular education and related aids and services provided
     pursuant to section 504 of the Rehabilitation Act of 1973.

24   [11] A "qualified professional," as that term is used throughout this Decree, is "licensed or otherwise
     properly credentialed and possess[es] expertise in the disability for which modifications or
25   accommodations are sought."  28 C.F.R. pt. 36, app. A, at 784.

26                                                    - 6 -

27

28

vii.     LSAC shall not reject or deny a candidate's application for a particular testing accommodation (including a request for a different or additional testing accommodation than previously received) solely because the candidate has no formal history of receiving that testing accommodation.

viii.     LSAC may make a timely request for supplemental information if the documentation submitted by a candidate does not clearly establish the nature of the impairment or the need for requested testing accommodations.  Any such request for supplemental information must be consistent with the remaining requirements of Paragraphs 5(b)-(d).  LSAC may also have the documentation that is submitted by or on behalf of a candidate timely reviewed by one or more qualified professionals of LSAC's choosing at LSAC's request and expense.

e.     LSAC shall clearly state, on its website and in its print materials (if any), the documentation it requires to substantiate a request for testing accommodations, consistent with this Decree and the ADA, as well as common reasons why supporting documentation is deemed insufficient by LSAC.  Additionally, LSAC shall provide, on its website and in its print materials (if any), a non-exhaustive list of the types of testing accommodations available.

f.     LSAC shall modify the deadline information stated at various locations on its website and in the LSAC Accommodations Request Packet (currently located at http://www.lsac.org/jd/pdfs/accommodationsformgeninfo.pdf) to include the following:  "Persons with disabilities seeking testing accommodations must submit their request for testing accommodations together with all supporting documentation by the stated registration deadline to be considered for testing accommodations.  The stated registration deadline is also the deadline for LSAC to receive any supplemental documentation that may be requested by LSAC or submitted by the candidate after the receipt of the original request and for LSAC to receive any request for reconsideration of LSAC's testing accommodations determinations.

1  Barring unforeseen circumstances, LSAC will respond to each request for testing

2  accommodations within 14 business days of its receipt.  Therefore, if a request is received within

3  two weeks of the deadline, you may not have the opportunity to supplement your file if, after

4  review of your request, we determine that additional information is needed to make a decision.

5  Additionally, you may not be able to request reconsideration of our decision."  This language is

6  subject to further direction from the Panel regarding the need for and availability of an appeals

7  process and, if needed, what that process should be, as set forth in Paragraph 7(c)(iii)(7).

8  g.   LSAC agrees to revise its Guidelines for Documentation of Cognitive

9  Impairments to eliminate the following language:  "Please note that if you are currently taking

10 medication, you should consider being evaluated while on your medication.  Any deviation from

11 this practice must be explained by your evaluator."  LSAC further agrees to revise its Evaluator

12 Form to eliminate the request for an "explanation" if a candidate was not on his or her prescribed

13 medication during the evaluation.  LSAC may continue to ask evaluators whether a candidate

14 was on his or her prescribed medication during the evaluation, followed by the words, "If

15 relevant and appropriate, please comment."

16 h.   The provisions of Paragraph 5, including any changes to LSAC's policies

17 or practices required by Paragraph 5, shall be implemented for the next administration of the

18 LSAT following entry of this Decree by the Court ("Effective Date").  However, if the next

19 administration of the LSAT is less than two months away from the Effective Date, LSAC shall

20 implement the changes for the second administration of the LSAT following the Effective Date

21 of this Decree.

22 6.   LSAC Shall Diversify The Expert Consultants It Uses To Review Requests For

23 Testing Accommodations.  LSAC shall increase the number of expert consultants and diversify

24 the areas of expertise of the expert consultants it uses to review and evaluate requests for testing

25 accommodations.

26

27

28

7.      <u>LSAC Shall Implement Best Practices As Established By A Panel Of Experts To Be Agreed Upon By The Parties[12] To Comply With 28 C.F.R. § 36.309.</u>

a.      <u>Panel.</u>  The Panel shall be comprised of five experts: two selected by LSAC; two selected by the United States and the DFEH; and a fifth selected by those four experts from a list prepared by the United States and the DFEH.  For their two selections, the United States/DFEH and LSAC will each select one individual with expertise in the provision of testing accommodations within the context of standardized test administration and one individual with expertise in cognitive disabilities.  The Parties will select their experts within ten (10) days of the Effective Date.  Within five (5) days of confirmation of service by all the selected experts, the United States and the DFEH will give to the four experts a list of three additional experts, each of whom shall have expertise in ADA compliance.  The individuals listed for possible selection as this fifth Panel member shall not have previously assisted or consulted with any Party (including the individual Plaintiff-Intervenors) for purposes of this litigation.  No Panel member can be an attorney who has previously personally represented a party adverse to LSAC or the United States in a lawsuit or government agency proceeding involving LSAC; LSAC shall provide a list of all such attorneys to the United States and the DFEH by the Effective Date of the Decree.  Within five (5) days, the four selected experts will choose a fifth expert from the list provided by the United States and the DFEH.  Within five (5) days of the fifth expert confirming his or her willingness to serve on the Panel, all of the chosen experts will be notified of the final composition of the Panel by joint letter from the Parties.  During the period of their service under this Consent Decree and through conclusion of any reconvening of the Panel (or expiration of the time period for reconvening the Panel) pursuant to Paragraph 7(d)(vi), members of the Panel

---

[12] All references to the "Parties" in Paragraph 7 refer solely to the United States, the DFEH, and LSAC.

1   may not personally represent anyone, or serve as expert witnesses for anyone, who is adverse to

2   LSAC in any pending lawsuit or government agency proceeding.

3          b.    <u>Duties.</u>  It shall be the Panel's duty to prepare a written report establishing

4   Best Practices that comport with the requirements of 28 C.F.R. § 36.309, all of which LSAC

5   shall implement to the extent that it is not already following such Best Practices.  When

6   establishing the Best Practices, the Panel shall clearly and expressly state in writing whether

7   each Best Practice is already being followed by LSAC or needs to be implemented by LSAC.

8   The Best Practices shall be consistent with the provisions of this Decree and shall not violate the

9   ADA or its implementing regulations, or California law where applicable.  The United States

10   and the DFEH agree that, for the four-year term of this Decree, neither the United States nor the

11   DFEH will assert in any forum that LSAC has violated the ADA, its implementing regulations,

12   or any provision of California law by taking actions in compliance with any of the Best

13   Practices that have not been challenged by a Party pursuant to Paragraphs 7(d)(iv)-7(d)(vii)

14   below or, if challenged, have not been invalidated by the Court.  The Panel shall determine how

15   many of the five Panel members must agree on each Best Practice in order for it to be imposed

16   as a Best Practice.

17          c.    <u>Issues To Be Addressed By Panel.</u>

18            i.    <u>Diversification.</u>  The Panel shall provide LSAC with

19   recommendations on how to diversify its expert consultants, in terms of numbers and areas of

20   expertise, which LSAC shall implement.

21            ii.    <u>Documentation.</u>  The Panel shall consider and establish the type

22   and scope of appropriate documentation that may be requested from candidates whose requests

23   fall under Paragraphs 5(b)-(d) above.  The Panel shall include in its consideration the

24   documentation requirements for candidates who have received some of their requested testing

25   accommodations for a standardized examination related to applications for post-secondary

26

27

28

admission but who request additional testing accommodations, or in excess of double time, for the LSAT,[13] consistent with the terms of Paragraph 5(b) above.

                    iii.          Review of Testing Accommodation Requests.  The Panel shall address the following elements of the process for reviewing and evaluating testing accommodation requests:

          1)   Reviewers.  The Panel shall consider and establish the appropriate qualifications for persons, such as LSAC staff and/or outside consultants, who make substantive adverse decisions on requests for testing accommodations.

          2)   Qualified Professionals.  The Panel shall determine whether more than one qualified professional should review a documented request for testing accommodations before LSAC may deny the request in whole or in part.

          3)   Criteria and guidelines for reviewers.  The Panel shall consider and establish criteria and guidelines for use by persons who review or evaluate testing accommodation requests.

          4)   Written recommendations from reviewers.  The Panel shall consider whether there should be particular parameters for written recommendations from any outside consultant who reviews or evaluates requests for testing accommodations and, if so, what those parameters should be.  The Panel shall also consider whether there should be particular parameters for internally documenting written decisions by LSAC personnel who make substantive decisions on requests for testing accommodations and, if so, what those parameters should be.

          5)   Written explanations for denials of testing accommodation requests.  The Panel shall consider whether there should be particular parameters for written explanations provided by LSAC to candidates whose requests for testing accommodations are partially or fully denied and, if so, what those parameters should be.

          6)   Automatic review of partial and full denials.  The Panel shall consider whether an automatic review of partial and/or full denials

---

[13] For example, a candidate may have received 50% extended time previously (to which he or she is entitled under Paragraph 5(a)) but may request 100% additional time for the LSAT (where the additional extended time is subject to Paragraphs 5(b)-(d)).

is warranted and, if warranted, how such a review should be conducted.

7) Timely/streamlined appeals process. The Panel shall consider whether there should be a process available, beyond that already provided by LSAC, to candidates who wish to seek review of LSAC's decision to deny a candidate's request and, if so, what that process should be relative to LSAC's existing registration deadlines.

8) Training. The Panel shall consider and establish the parameters, such as content and timing of, training for persons (both LSAC staff and outside consultants) who evaluate or review testing accommodation requests.

    iv.    Other. The Best Practices shall not invalidate or conflict with any other provisions of this Decree.

    d.    Process. The Panel shall complete its written report within six (6) months after the fifth Panel member has been appointed in accordance with Paragraph 7(a). Upon agreement of the Parties, the Panel may be granted additional time if necessary to complete its report. Except as otherwise explicitly stated in this Decree, LSAC is not required by this Decree to implement changes to its policies or forms prior to the Panel's completion of its written report.

    i.    At its first meeting, the Panel shall establish a process with measurable benchmarks to effectuate its duties herein and a time frame for achieving those benchmarks.

    ii.    At the Panel's first meeting, the Parties shall have the opportunity to present their views on the issues addressed herein to the full Panel.

    iii.    The Panel shall also give each of the Parties an opportunity to comment in writing on the Panel's draft Best Practices at least two (2) weeks prior to the issuance of a final report.

    iv.    Within two (2) months of the issuance of the Panel's final report, any Party may appeal to the Court for appropriate relief if any of the Panel's final Best Practices,

1  as written, are believed to violate the ADA or its implementing regulations, or California law

2  where applicable, or to conflict with the provisions of this Decree.  If any Party intends to file

3  such an appeal with the Court, the Party must first notify all other Parties of its intent in writing

4  within one (1) month of the issuance of the final report.  Such notice must include a list of the

5  Best Practice(s) the Party intends to challenge, as well as the Best Practice(s) for which

6  implementation will, and will not, be stayed during the pendency of the appeal, subject to the

7  dispute-resolution provisions set out in Paragraph 7(d)(v).

8                    v.        LSAC shall implement the Best Practices no later than six (6)

9  months following either the expiration of the one (1) month notice period required under

10  Paragraph 7(d)(iv) or LSAC's receipt of a written agreement by all Parties not to challenge the

11  Best Practices pursuant to Paragraph 7(d)(iv), whichever comes first.  If, however, any Party

12  submits notification that it intends to appeal to the Court with respect to any of the Panel's final

13  Best Practices pursuant to Paragraph 7(d)(iv), LSAC's implementation of the Best Practice(s)

14  subject to appeal, as well as any other Best Practice(s) identified by the appealing Party as

15  subject to the stay in its notice under Paragraph 7(d)(iv), are stayed pending a final determination

16  by the Court with respect to the appealed Best Practice(s).  During the duration of any such stay,

17  LSAC shall continue to implement all other Best Practices.  If a dispute arises as to whether

18  implementation of any of the other Best Practices should be stayed pending appeal, the Parties

19  shall meet and confer, and a good faith effort shall be made by the Parties to resolve such

20  differences promptly.  If the United States, the DFEH, or LSAC believes that resolution cannot

21  be achieved, it shall promptly notify the other two Parties in writing and shall specify its final

22  position with regard to the dispute.  Thereafter, any of these Parties may pursue the issue with

23  the Court.[14]

24

25  _____

[14] The provisions of Paragraph 21(b) do not apply to any pursuit by the DFEH of relief from the Court

26  under this Paragraph 7(d)(v) or Paragraph 7(d)(vii), and the DFEH will not be entitled to payment of any

27

28

vi.      Within two (2) months of the United States' and the DFEH's receipt, pursuant to Paragraph 23, of LSAC's first annual report after LSAC's implementation of the Best Practices for at least one test administration, or at any time prior to that, any of the Parties may request in writing that the Panel be reconvened to consider revising the Best Practices, in which event the Panel shall be reconvened to make recommendations regarding whether revisions are necessary to the applicable Best Practice(s).  For purposes of this paragraph, the Panel will only consider "revisions" to the Best Practices that fall within the ten (10) topics for consideration by the Panel defined in Paragraphs 7(c)(i)-7(c)(iii) above.  The Panel shall provide its recommendations in a written report to be completed within three (3) months of the Panel being reconvened; provided, however, that with the agreement of all the Parties, the Panel may be granted additional time to issue this report.  The Panel shall give the Parties an opportunity to comment in writing on the Panel's draft revised Best Practices at least two (2) weeks prior to the issuance of the final revised Best Practices.

vii.     The Parties shall have two (2) months from the issuance of the final revised Best Practices to appeal to the Court for appropriate relief if any of the Panel's final revised Best Practices, as written, are believed to violate the ADA or its implementing regulations, or California law where applicable, or to conflict with the provisions of this Decree. If any Party intends to file such an appeal with the Court, the Party must first notify all other Parties of its intent in writing within one (1) month of the issuance of the final revised Best Practices.  Such notice must include a list of the Best Practice(s) the Party intends to challenge, as well as the Best Practice(s) for which implementation will, and will not, be stayed during the pendency of the appeal, subject to the dispute-resolution provisions discussed in this paragraph, below.  LSAC shall implement any final revised Best Practices no later than four (4) months

---

attorneys' fees or costs by LSAC if it prevails on any issue brought before the Court under Paragraphs 7(d)(v) or 7(d)(vii).

1   following either the expiration of the one-month notice period required under this paragraph or

2   LSAC's receipt of a written agreement by all Parties not to challenge the final revised Best

3   Practices pursuant to this paragraph, whichever comes first.  If, however, any Party provides

4   notification of its intent to appeal to the Court with respect to any of the Panel's final revised

5   Best Practices under this paragraph, implementation of the revised Best Practice(s) subject to

6   appeal, as well as any other Best Practice(s) identified by the appealing Party as subject to the

7   stay in its notice under this paragraph, are stayed pending a final determination by the Court with

8   respect to the appealed Best Practice(s).  During the duration of any such stay, LSAC shall

9   continue to implement all other Best Practices.  If a dispute arises as to whether implementation

10  of any of the other Best Practices should be stayed pending appeal, the Parties shall meet and

11  confer, and a good faith effort shall be made by the Parties to resolve such differences promptly.

12  If the United States, the DFEH, or LSAC believes that resolution cannot be achieved, it shall

13  promptly notify the other two Parties in writing and shall specify its final position with regard to

14  the dispute.  Thereafter, any of these Parties may pursue the issue with the Court.

15              e.      Communications.  The Panel may:

16                          i.      Have ex parte communications at any time with the Parties,

17  including counsel for the Parties and employees, agents, contractors, and all others working for

18  or on behalf of the Parties.  Any such communications with employees, agents, or contractors of

19  LSAC must be arranged through in-house counsel for LSAC, and counsel for LSAC may be

20  present for such communications if counsel's presence is requested by the Panel or any LSAC

21  employee, agent, or contractor involved in such communication.

22                          ii.     Request meetings with the Parties, individually or in combination.

23  The purpose of these meetings shall include, among other things, prioritizing areas for the Panel

24  to review and discussing areas of concern.

25

26

27

28

1           iii.     Speak with anyone else the Panel deems necessary for

2    accomplishing its duties under this Decree, including without limitation current or past test-

3    takers.  LSAC, however, will be under no obligation to provide the names or contact information

4    of current or past test-takers to the Panel.  To the extent the Panel deems it necessary to

5    communicate with any current or past test-takers, LSAC agrees to facilitate such

6    communications upon request.

7           iv.     Individual Panel members shall not engage in any ex parte

8    communications without the knowledge and approval of all other Panel members.

9           v.     The Panel shall disclose to the Parties prior to issuance of its final

10   report all individuals with whom the Panel or any of its members have communicated, the Panel

11   members participating in the communication(s), and the date(s) of such communication(s), but it

12   need not disclose the substance of such communication(s).

13          f.     Access.  LSAC shall direct all employees to cooperate fully with the

14   Panel.  LSAC will request that its contractors cooperate fully with the Panel.  No Party shall

15   interfere with the independent functions of the Panel.  Information or documents obtained in

16   performing their duties hereunder may only be used by Panel members for the purposes of

17   considering, establishing, and reporting on the Best Practices pursuant to this Decree.  The Panel

18   members shall further be subject to the terms of the protective order entered in this case: ECF

19   No. 123, Parties' Stipulated Protective Order Respecting Confidential Information ("Protective

20   Order").

21          g.     Final Report.  The Panel's final report shall be publicly available.  If the

22   final report contains confidential information, as defined in the Protective Order, such

23   information shall be redacted from the publicly available final report.

24          h.     Cost.  All reasonable fees, costs, and expenses of the Panel shall be borne

25   by LSAC, but the Panel and its members are neither agents nor contractors of the United States,

26

27

28

the DFEH, or LSAC.  The Panel shall provide sufficiently detailed monthly invoices justifying

any fees, costs, and expenses.  Panel members shall be paid a standard reasonable rate, to be

determined by the Parties following identification of the proposed Panel members.  If the Parties

cannot reach agreement on the rate to be paid, the issue shall be submitted to Magistrate Judge

Joseph Spero for resolution.  LSAC shall reimburse all reasonable expenses incurred by the

Panel, or any of its members, in the course of the performance of the duties of the Panel in

accordance with LSAC's current applicable policies, practices, and procedures for

reimbursement of employee travel and expenses, excluding the approval process applicable to

LSAC staff and employees and the requirement that air travel be charged to LSAC's corporate

account or an LSAC corporate credit card.  The Court retains the authority to resolve any dispute

that may arise regarding the reimbursement of fees and costs charged by the Panel.  The Court

shall be the final arbiter of what costs and expenses shall be reimbursed by LSAC.

       8.      Tracking and/or Maintenance of Testing Accommodation Data.

       a.      For each candidate who requests testing accommodations subsequent to

the Effective Date of this Decree, LSAC shall maintain for the term of the Decree and track in a

readily searchable format the following information for each specific request by that candidate:

(a) date the candidate requested testing accommodations; (b) candidate's date of birth; (c) LSAC

account number; (d) test date requested; (e) disabilities for which the candidate requested testing

accommodations; (f) each testing accommodation requested; (g) each testing accommodation

previously received on standardized tests (if documented by the candidate); (h) whether the

candidate ever had a Section 504 Plan (if documented by the candidate); (i) whether the

candidate ever had an IEP (if documented by the candidate); (j) whether LSAC requested

additional documentation from the candidate; (k) for each testing accommodation requested,

whether the request was granted in full or denied in full or denied in part; (l) date of LSAC's

decision letter for each requested testing accommodation; (m) the name of any outside

consultant(s) who reviewed the request; (n) the name(s) of all other individual(s) who reviewed

the request for the purpose of making a substantive decision whether to grant or deny the request;

(o) reasons each requested testing accommodation was denied in full or denied in part, if

applicable; and (p) fees paid to LSAC by the candidate relating to the LSAT. LSAC shall have

eight (8) weeks after the Effective Date of this Decree to have such database(s) in place.

b.       For any lawsuit or any complaint filed with a government agency alleging

that LSAC improperly failed to provide testing accommodations following LSAC's final

determination regarding a test taker's request for testing accommodations for the LSAT, LSAC

shall maintain the complaint and documentation reflecting any response by LSAC and the

resolution (if any) for the term of the Decree and track in a readily searchable format the

following information: (1) the nature of the complaint, (2) the name of the candidate on whose

behalf the complaint was sent, and (3) the outcome of the complaint (if any). LSAC shall have

eight (8) weeks after the Effective Date of this Decree to have such database in place. For the

term of the Decree, LSAC shall maintain appropriate supporting documentation for the

information being tracked pursuant to this paragraph.

c.       Subject to its standard document retention schedule, but at minimum for

the term of the Decree, LSAC agrees to maintain in the candidates' accommodated testing files

copies of correspondence received by LSAC on behalf of candidates whose testing

accommodation requests have been denied, in whole or in part, by LSAC.

d.       LSAC agrees to establish a separate electronic mailbox and corresponding

email address dedicated to the receipt of complaints (other than complaints filed with courts or

government agencies) alleging that LSAC improperly failed to provide testing accommodations

following LSAC's final determination regarding a test taker's request for testing

accommodations on the LSAT. LSAC shall post this email address on the accommodated testing

webpage (currently located at http://lsac.org/jd/lsat/accommodated-testing), to remain posted for

- 18 -

1  the term of this Decree.  LSAC will instruct candidates that the subject line of emails sent to this

2  email address should contain the candidate's LSAC account number and that a copy of any

3  complaints sent by mail or facsimile should also be sent to this email address.  LSAC shall have

4  four (4) weeks after the Effective Date of this Decree to have such an electronic mailbox in

5  place.  LSAC will maintain any correspondence sent to this email address for the term of this

6  Decree and shall provide such documents and/or information in a timely manner to the United

7  States, and to the DFEH (to the extent that such documents and information pertain to

8  individuals who tested in California), upon reasonable request.

9          e.      To the extent that any of the documents, information, and/or data

10  described in Paragraph 8 is provided to the United States pursuant to this Decree (and/or to the

11  DFEH for individuals testing in California), LSAC may redact the names, addresses, and any

12  other personally identifiable information, unless otherwise expressly stated herein, of any current

13  or past test-takers before providing the documents, information, and/or data.

14                    **PERMANENT INJUNCTION ON SCORE ANNOTATIONS**

15      9.      Permanently Discontinue Score Annotating.  LSAC shall permanently discontinue

16  all forms of the practice of annotating score reports of candidates who receive the testing

17  accommodation of extended test time due to disability.  For candidates applying to law school

18  after the Effective Date of this Decree, LSAC shall henceforth provide the same information on

19  test score reports for all candidates for whom score reports are provided.

20      All relief provided for in this Decree with respect to LSAT test score reports and/or score

21  annotations is solely prospective in nature.  No monetary relief is being paid by LSAC on the

22  basis of its prior score annotation practices.

23                                **CIVIL PENALTY**

24      10.     Civil Penalty ($55,000).  The ADA authorizes the Attorney General to seek, and

25  the Court to award, civil penalties of fifty-five thousand dollars ($55,000) for a first violation of

26

27

28

1   Title III of the ADA.  42 U.S.C. §§ 12188(b)(2)(C) & (b)(3); 28 C.F.R. §§ 36.504(a)(3) & (b).

2   The United States believes the imposition of a civil penalty in this case is warranted to vindicate

3   the public interest in eliminating discrimination on the basis of disability.  LSAC denies that a

4   civil penalty is warranted in this case, but, in the interest of settling this litigation and without

5   admitting any wrongdoing, LSAC shall pay the amount of fifty-five thousand dollars ($55,000)

6   to the United States as a civil penalty.  LSAC shall issue a check in the amount of fifty-five

7   thousand dollars ($55,000), payable to the "United States Treasury," to be delivered by counsel

8   for LSAC to counsel for the United States identified in Paragraph 29 within five (5) days of the

9   Effective Date of this Decree.

10                                    **<u>MONETARY RELIEF</u>**

11          11.   <u>Payments To Individuals ($7,675,000.00).</u>  LSAC agrees to pay seven million, six

12   hundred and seventy-five thousand dollars ($7,675,000.00) in compensatory damages, to be

13   apportioned as detailed below.  None of the payments provided for in this Decree, other than

14   those set forth in Paragraph 10, constitute payment of exemplary or punitive damages.  LSAC is

15   making these payments without conceding either liability or entitlement to claimed damages.

16          a.   <u>Monetary Relief To Individuals Named In The United States' And The</u>

17   <u>DFEH's Complaints ($945,000).</u>  LSAC agrees to pay a sum of nine hundred and forty-five

18   thousand dollars ($945,000) to the Plaintiffs for compensation of the individuals named in

19   Plaintiffs' complaints, as follows: five hundred and eighty-five thousand dollars ($585,000) to

20   the DFEH; two hundred and twenty-five thousand dollars ($225,000) to the United States; and

21   one hundred and thirty-five thousand dollars ($135,000) to be distributed to individual Plaintiff-

22   Intervenors Andrew Quan, Nicholas Jones, and Elizabeth Hennessey-Severson.  Payment of

23   these sums shall be rendered to respective counsel for the United States, the DFEH, and the

24   individual Plaintiff-Intervenors within fourteen (14) days after LSAC's receipt of all signed

25   releases. For all individuals named in the United States' and the DFEH's complaints, other than

26

27

28

the individual Plaintiff-Intervenors, these releases will be in the form of Exhibit 3.  The United States and the DFEH shall have thirty (30) days after the Effective Date of this Decree to obtain releases from all of the individuals named in their complaints (other than the individual Plaintiff-Intervenors) and/or to inform LSAC of those individuals who have not provided releases.  If any individual named in the United States' or the DFEH's complaint does not execute his or her release during this thirty (30) day period, his or her payment amount will be added to the Residual Amount referenced in Paragraph 17 of this Decree.  Payment shall be made by LSAC through checks issued in the name of each individual[15] named in the Plaintiffs' complaints who has provided a signed release, to be delivered by LSAC to the applicable counsel identified in Paragraph 29 and footnote 18.[16]  All individuals entitled to payment under this Paragraph 11(a) will provide completed and executed W-9 Forms to LSAC as a condition precedent to receiving payment under the terms of this Decree.

       b.     <u>Compensation Fund For Individuals Who Requested Testing Accommodations For The LSAT Between January 1, 2009 And May 20, 2014 And Who Are Eligible Persons Under This Decree ($6,730,000).</u>  Within forty-five (45) days after the Effective Date of this Decree, LSAC shall deposit the sum of six million, seven hundred and thirty thousand dollars ($6,730,000) in an interest-bearing qualified settlement account for Eligible Persons under this Decree ("Compensation Fund").  This account shall be established within ten (10) days of retention of the Third-Party Claims Administrator (described in Paragraph 11(b)(iii)

---

[15] The Plaintiffs anticipate that some checks may need to be issued for the benefit of a named individual and, in such instances, LSAC shall issue the check as designated by Plaintiffs' counsel for one or more particular individuals named in their complaints.

[16] For those individuals named solely in the DFEH's complaint, checks will be delivered to counsel for the DFEH at the address listed in Paragraph 29(b).  For those individuals named solely in the United States' complaint, checks will be delivered to counsel for the United States at the address listed in Paragraph 29(a).  For the individual Plaintiff-Intervenors, checks shall be sent to their attorneys at the Legal Aid Society – Employment Law Center at the address listed in footnote 18.

1  below).  This account shall be established, maintained, and administered by the Administrator,

2  and shall be identified on payment checks using the short-hand title, "LSAC Consent Decree."

3  Title to this account shall be in the name of "LSAC for the benefit of aggrieved individuals

4  pursuant to Order of the Court in Civil Action 3:12-cv-01830-EMC."  LSAC shall submit written

5  verification to the United States and the DFEH that the funds have been deposited.  The initial

6  deposit, and all interest accrued on that amount, shall make up the Compensation Fund and be

7  available for compensation of Eligible Persons under this Decree.  LSAC shall bear all costs of

8  administering the Compensation Fund, including costs associated with establishing the account,

9  maintaining it, and issuing payments.  On written request to the Administrator, copies of account

10  statements shall be provided within seven (7) days to the United States and the DFEH.

11                 i.    Potential Eligible Persons.  "Potential Eligible Persons" are

12  individuals who requested testing accommodations on the LSAT between January 1, 2009 and

13  May 20, 2014, provided that they have not entered into a prior written release agreement with

14  LSAC that applies to the request(s) for testing accommodations for which they would otherwise

15  be eligible to submit a claim under this Decree.  An individual who executed such a prior written

16  release shall nonetheless be potentially eligible if he or she requested a testing accommodation

17  for an administration of the LSAT that was not the subject of the release.  LSAC agrees to

18  provide the United States and the DFEH a list of the individuals who both requested testing

19  accommodations on the LSAT between January 1, 2009 and May 20, 2014 and signed a release

20  of claims against LSAC, with the dates of the releases, within ten (10) days of the Effective Date

21  of this Decree.

22                 ii.    Eligible Persons.  "Eligible Persons" are those Potential Eligible

23  Persons who timely submit completed claims forms and properly executed releases in the form

24  of Exhibit 3 ("Release") to the Administrator within the Claims Period.  Any Potential Eligible

25  Person may decline all monetary benefits from this Decree by not returning a signed Release.

26

27

28

The Decree does not limit the legal rights of any Potential Eligible Person who does not return a signed Release within the Claims Period or any individual who is not a Potential Eligible Person under this Decree.

iii.     Retention Of Claims Administrator.  A Third-Party Claims Administrator ("Administrator") will have access to and control of the Compensation Fund for the purpose of compensating Eligible Persons.  Within twenty (20) days of the Effective Date, LSAC, the United States, and the DFEH will agree upon a third-party organization to serve as Administrator.  Within thirty (30) days of the Effective Date, LSAC will contract to retain the Administrator to conduct the activities set forth in this Decree ("Retention Date").  LSAC will obtain the United States' consent to the contract prior to its execution.  The United States shall consult with the DFEH regarding any provisions specific to California claimants or processes, if any, prior to consenting to such contract.  LSAC will bear all costs associated with the claims administration.  LSAC's contract with the Administrator will require that the Administrator comply with the provisions of this Decree, as applicable to the Administrator, and with all confidentiality and privacy restrictions applicable to the Parties in this matter, including the Protective Order (ECF No. 123).  The Administrator's contract will also require the Administrator to work cooperatively with the United States and the DFEH in the conduct of the Administrator's activities, including reporting regularly to and providing all requested information to the United States and the DFEH.  All information and data provided to the Administrator pursuant to this Decree shall be used by the Parties and the Administrator only for the purposes of implementing this Decree.

iv.     Duties Of The Claims Administrator.  The duties of the Administrator shall include: (1) locating current addresses of Potential Eligible Persons; (2) communicating with Potential Eligible Persons; (3) distributing documents to Potential Eligible Persons; (4) tracking the return of claim forms, releases, and other documents; (5) tracing

Potential Eligible Persons whose notices are returned as undeliverable; (6) reviewing documents provided by the Parties and Potential Eligible Persons; (7) compiling a list of Eligible Persons pursuant to the criteria set forth in this Decree and any further reasonable instructions provided by the United States that would not result in significant additional administration costs; (8) distributing payments to Eligible Persons; (9) reporting to the United States, the DFEH, and LSAC on the distribution process; (10) verifying fund balances; (11) filing tax returns as required by law; (12) establishing and maintaining an accessible[17] website providing information about the claims process; (13) establishing cost-free means for Potential Eligible Persons to contact it, including both email and a toll-free number (and accompanying TTY text telephone number); and (14) such other duties that are reasonably necessary to carry out the provisions of this Decree as set forth in the contract with the Administrator.  In no event shall the Administrator send payment to any Eligible Person for whom the Administrator does not have a properly executed Release.

> v. <u>Dispute Resolution.</u>  In the event the United States or the DFEH has reason to believe that the Administrator is not materially complying with the terms of its contract with LSAC, the United States and LSAC will meet and confer for the purpose of agreeing on a course of action to effect the Administrator's material compliance with its contract. In the event that the United States and LSAC are unable to so agree, the United States or LSAC may present the matter to the Court.  To the extent any dispute involves California claimants or

---

[17] For the purposes of this Consent Decree, websites will be considered "accessible" if they comply with the Level A and Level AA Success Criteria and Conformance Requirements of the Web Content Accessibility Guidelines 2.0 (Dec. 11, 2008) ("WCAG 2.0 Level AA"), published by the World Wide Web Consortium ("W3C"), Web Accessibility Initiative ("WAI"), available at www.w3.org/TR/WCAG/. "Websites," as used herein, includes: (i) all web pages, web applications, resources, and services within the website domain, its subdomains, and related domains; and (ii) all of the information, resources, files, databases, images, graphics, text, audio, video, multimedia, services, code, and any other communications sent by or retrieved from the website to members of the public accessing it.

1   processes, the United States will consult with the DFEH regarding such disputes prior to

2   reaching agreement with LSAC or presenting the matter to the Court.

3               vi.     Potential Eligible Persons List To Administrator.  Within ten (10)

4   days of the Retention Date, LSAC shall deliver to the Administrator a "Potential Eligible Persons

5   List" that includes the following information, if known to LSAC, in electronic format for every

6   individual who requested testing accommodations for the LSAT from January 1, 2009 through

7   May 20, 2014:

8               1)  name;

9               2)  LSAC identification number; and

10              3)  contact information, including permanent address, last known
                    addresses, phone numbers, and email addresses.

11  This information shall be provided in a computerized format.  LSAC will provide the

12  Administrator any additional information reasonably requested by the Administrator in

13  furtherance of any aspect of the claims process pursuant to this Decree, including social security

14  numbers for particular individuals if known to LSAC and if provision of such information is

15  legally permitted.

16              vii.    Notice By LSAC.

17              1)      LSAC Website.  Within ten (10) days after the Retention
                        Date, and through the start of the Claims Period (as defined
18                      in Paragraph 11(b)(x)), LSAC will publish the Notice in the
                        form of Exhibit 2(a).  Within ten (10) days of the start of
19                      the Claims Period, LSAC will replace the Exhibit 2(a)
                        Notice with the Notice in the form of Exhibit 2(b), which it
20                      will publish for the remainder of the Claims Period.   For
                        purposes of this paragraph, "publish" means to maintain on
21                      LSAC's website in an accessible and conspicuous location
                        (*i.e.*, directly linked from the primary web portals used by
22                      customers, with the description "Americans with
                        Disabilities Act Claims Fund").  Such Notice (and all
23                      LSAC content linked to the Notice, if any) shall be in an
                        accessible format to individuals who are blind or have low
24                      vision, as described in footnote 17.

25

26

27

28

- 25 -

2) <u>To Law Schools.</u>  Within ten (10) days after the start of the Claims Period, LSAC shall make a one-time distribution of the Notice, attached hereto as Exhibit 2(b), to every law school LSAC has reported LSAT scores to since January 1, 2009.  LSAC shall determine the method for delivery of such Notice.

 viii. <u>Notice By Administrator.</u>  Within ten (10) days after the standards are established by the Administrator and approved by the United States pursuant to Paragraph 12, the Administrator shall send the Release (attached hereto as Exhibit 3) and an approved claim form and notice (to be prepared by the Administrator in consultation with LSAC and the United States pursuant to Paragraph 12) (collectively, the "Notice Package"), via first-class, postage-prepaid U.S. mail and via electronic mail if possible, to each individual on the Potential Eligible Persons List.  The claim form will instruct the Potential Eligible Person to provide a permanent address to which any payment under this Decree can be mailed for a period of up to twelve (12) months following delivery of the claim form.

 ix. <u>Locating Potential Eligible Persons.</u>  The Administrator will utilize all reasonable methods routinely used by companies that administer litigation and government enforcement compensation funds to locate each Potential Eligible Person.  For every individual on the Potential Eligible Person List whose Notice Package is returned to the Administrator as undeliverable, the Administrator will conduct a trace and search for additional contact information using reasonably available methods and technology.  Within fifteen (15) days of receiving a returned Notice Package as undeliverable, the Administrator shall mail the Notice Package via first class, postage-prepaid U.S. mail to all additional addresses generated for the individual from the Administrator's database search, and also attempt to reach the individual by phone and electronic mail if possible.

 x. <u>Claims Period.</u>  Potential Eligible Persons shall have one-hundred eighty days (180) from the date that the Notice Package is sent to all Potential Eligible Persons

1  ("Claims Period") within which to submit a claim and all required documentation to the

2  Administrator in connection with this Decree.

3         12.    <u>Establishment Of Standards.</u>  Subject to the terms of this Decree, the

4  Administrator shall create a notice and claim form in consultation with LSAC and the United

5  States, and propose standards to: (1) distribute and collect claim forms from Potential Eligible

6  Persons; (2) distribute and collect Releases from Potential Eligible Persons; (3) fix deadlines for

7  all required processes; and (4) address any other considerations associated with establishing,

8  maintaining, and distributing payment to Eligible Persons.  Within thirty (30) days of the

9  Retention Date, the Administrator shall send the proposed notice, claim form, and standards to

10  LSAC, the DFEH, and the United States.  Within fifteen (15) days of receipt of the proposed

11  notice, claim form, and standards, the United States, following consultation with LSAC and the

12  DFEH regarding California claimants and processes, shall communicate its approval of or any

13  changes to the notice, claim form, and standards to the Administrator, who shall accept and

14  implement any such changes.  No procedures beyond those in this Decree or approved by the

15  United States pursuant to this paragraph shall be imposed on any Eligible Person.

16         13.    <u>Claims Reporting.</u>  At regular intervals, but in no event less frequently than every

17  thirty (30) days after the Notice Package is sent to all Potential Eligible Persons, the

18  Administrator shall send the United States and the DFEH a list containing: (1) the names of all

19  Potential Eligible Persons who submitted a claim form and/or Release; (2) identification of all

20  Eligible Persons; and (3) if applicable, a brief description of why any Potential Eligible Person

21  was deemed not eligible.  Within thirty (30) days of the close of the Claims Period, the

22  Administrator shall provide the United States, the DFEH, and LSAC with a proposed distribution

23  list that includes the information referenced above in this paragraph plus the proposed amount of

24  compensation to be awarded to each Eligible Person.  The proposed compensation per Eligible

25

26

27

28

1   Person shall be determined by dividing the Compensation Fund ($6,730,000) by the total number

2   of Eligible Persons, with each Eligible Person receiving the same payment amount.

3         The United States shall have thirty (30) days after receiving the proposed final list from

4   the Administrator to submit any corrections.  Before submitting any such corrections, the United

5   States shall consult with the DFEH regarding any California claimants.  The Administrator shall

6   make any changes or corrections submitted by the United States and, no later than ninety (90)

7   days after the close of the Claims Period, the Administrator shall issue to the United States, the

8   DFEH, and LSAC the final list containing the names of Eligible Persons and amounts to be paid

9   ("Final Distribution List").

10         The determination of Eligible Persons and the amount awarded as contained in the Final

11   Distribution List are final and non-appealable.  No individual or Party may request a review by

12   the Court or the Administrator of these determinations.

13         14.    Payment.  The Administrator's contract shall require the Administrator to set forth

14   deadlines, subject to approval of the United States in consultation with the DFEH, so that

15   payments are promptly sent within a reasonable amount of time after the date the Administrator

16   issues the Final Distribution List in accordance with Paragraph 13.  All such payments shall be

17   void if not cashed or deposited within ninety (90) days after the date of issue.  If a check is

18   returned as undeliverable and/or goes uncashed after ninety (90) days from the date of issue, the

19   Administrator shall make reasonable attempts to contact and reissue checks to such individuals

20   for the next thirty (30) days.

21         15.    No Set-Off.  LSAC will not be entitled to a set-off, or any other reduction, of the

22   amount of payments to Eligible Persons, resulting from unpaid debts or otherwise, except as

23   expressly provided herein.

24         16.    Notification Of Final Payment.  The Administrator will notify LSAC, the United

25   States, and the DFEH in writing on the day when all payments of monetary relief to Eligible

26

27

28

1   Persons required by this Decree have been sent.

2        17.    Residual Amount In Compensation Fund.  Within thirty (30) days after the

3   mailing of the last payment to an individual on the Final Distribution List, the Administrator

4   shall notify the United States, the DFEH, and LSAC in writing of the remaining balance of the

5   Compensation Fund (the "Residual Amount").  Any payments made to Eligible Persons that are

6   returned or not cashed or deposited within the applicable ninety (90) day period, subject to the

7   procedures set forth in Paragraph 14 for reissuing checks, will be added to the Residual Amount,

8   as will any remaining interest accrued on the Compensation Fund.

9        The entire Residual Amount shall be distributed in equal amounts to the DFEH Fair

10  Employment and Housing Enforcement and Litigation Fund, and LSAC, to be used by each for

11  purposes of implementing this Decree.

12        18.    Taxes.  Eligible Persons shall be solely responsible for paying any taxes they owe

13  resulting from payments they receive under this Decree.  LSAC shall be solely responsible for

14  paying any applicable federal, state, and/or local taxes owed by the Compensation Fund, if any

15  (*i.e.*, any such tax payments shall not be deducted from the Compensation Fund or from any

16  monetary award to Eligible Persons).

17                           **OTHER RELIEF**

18        19.    Renewed Requests For Testing Accommodations.  Individuals who requested

19  testing accommodations from LSAC between January 1, 2009 and the Effective Date of the

20  Decree, and who were denied their requested testing accommodations in whole or in part, shall

21  be entitled to reregister to take the LSAT and to reapply for testing accommodations under the

22  revised policies and procedures established by this Decree that are in effect at the time of their

23  renewed testing accommodation request.  Standard fees shall apply.

24        20.    Specific Testing Accommodations For Named Individuals.  The individuals

25  named in Plaintiffs' complaints shall be entitled to take one (1) free administration of the LSAT

26

27

28

1   with their request for testing accommodations handled in accordance with the revised policies

2   and procedures established under this Decree, as in effect at the time of their renewed request for

3   testing accommodations.

**ATTORNEY FEES AND COSTS FOR THE DFEH AND
INDIVIDUAL PLAINTIFF-INTERVENORS**

6      21.    The DFEH, individual Plaintiff-Intervenors, and LSAC agree that:

7          a.    Within five (5) days of the Effective Date of this Decree, LSAC shall pay

8   to the DFEH nine hundred thousand dollars ($900,000) and to the Legal Aid Society –

9   Employment Law Center, attorneys for individual Plaintiff-Intervenors Quan, Jones, and

10  Hennessey-Severson,[18] one hundred thousand dollars ($100,000) in full settlement of any claim

11  by the DFEH and/or the individual Plaintiff-Intervenors or their attorneys for attorney fees and

12  costs for work on or relating to the litigation up through the term of the Decree, subject only to

13  Paragraph 21(b) below.

14          b.    The DFEH shall be entitled to reasonable attorney fees and costs for work

15  performed on any prevailing motion to enforce the Consent Decree.  If the DFEH is entitled to

16  seek payment of such fees and costs hereunder, the DFEH agrees to send LSAC a statement of

17  its work on any such motion, which shall include a list of hours worked by each DFEH staff

18  person, hourly rate, and any costs incurred.  In the event LSAC disagrees with the DFEH's

19  statement of work or its requested payment amounts or rates, it shall notify the DFEH in writing

20  within five (5) days after receipt of the statement, and LSAC and the DFEH will attempt to

21  informally resolve any dispute over the statement.  In the event LSAC and the DFEH cannot

22  reach an informal resolution of any such dispute, they shall submit the matter to this Court for

---

[18] Payment to these three named individual Plaintiff-Intervenors shall be made to their attorneys, Legal
Aid Society – Employment Law Center, attention Jinny Kim, 180 Montgomery Street, Suite 600, San
Francisco, CA 94104.

1  binding determination.  LSAC shall deliver payment to the DFEH no later than ten (10) days

2  after receiving the DFEH's statement or five (5) days after the resolution of any dispute.

3          c.      Except as expressly provided herein, no Plaintiff shall be entitled to

4  recover attorney fees or costs related to this litigation.

5                          **ADA MONITOR AND REPORTING**

6          22.     <u>Notice By LSAC.</u>  Within forty-five (45) days of the Effective Date of this

7  Decree, LSAC shall publish and maintain this Decree on its website by providing a link to the

8  Decree, with the following language:  "LSAC has entered into a Consent Decree with the

9  California Department of Fair Employment and Housing and the United States regarding testing

10 accommodations for individuals with disabilities nationwide.  For further information and to read

11 the text of the Decree, please visit http://www.ada.gov/lsac_consentdecree.htm."  This language

12 and a link to the Decree shall be prominently posted on the main company webpage (currently

13 located at http://lsac.org/) and on the accommodated testing webpage (currently located at

14 http://lsac.org/jd/lsat/accommodated-testing), to remain posted for the term of this Decree.  This

15 language, link, and Consent Decree shall be in an accessible format to individuals who are blind

16 or have low vision, as described in footnote 17.

17         LSAC further agrees to revise the information on its website to notify candidates that it

18 does not annotate scores, with the following language:  "LSAC does not annotate the score

19 reports of individuals with disabilities who take the LSAT with testing accommodations,

20 including the testing accommodation of extended time.  All accommodated scores are reported in

21 the same manner as non-accommodated scores."  This language will be included in the

22 accommodated testing information currently found at http://www.lsac.org/jd/lsat/accommodated-

23 testing.  LSAC will also include the following question and answer on the "Frequently Asked

24 Questions" section of its website (currently found at http://www.lsac.org/docs/default-source/jd-

25 docs/faq-non.pdf):  (Question) "How are accommodated scores reported to law schools?"

26

27

28

1  (Answer) "Scores earned with testing accommodations, including the testing accommodation of

2  extended time, are reported in the same manner as non-accommodated scores."  These changes

3  to the website shall be made within thirty (30) days of the Effective Date of this Decree.

4      23.    Reporting By LSAC.  Within forty-five (45) days after each national

5  administration of the LSAT during the term of this Decree, beginning with the first

6  administration of the LSAT at least two (2) months after the Effective Date of this Decree,

7  LSAC will provide a written report ("Report") to the ADA Monitor, the United States, and the

8  DFEH.  Each Report shall provide the data required to be tracked in Paragraph 8 for the prior

9  administration of the LSAT.  Eighteen (18) months after the Effective Date of this Decree, and

10  annually thereafter, LSAC shall also report to the ADA Monitor, the United States, and the

11  DFEH: (a) LSAC's actions taken to comply with this Decree; (b) any further actions LSAC plans

12  to take to comply with this Decree; (c) if applicable, the timeline for implementation of any

13  further actions LSAC plans to take to comply with this Decree; and (d) if applicable, any

14  difficulties LSAC has had, or anticipates having, in complying with this Decree.  If any Report

15  contains confidential information, as defined in the Protective Order, it shall be treated in

16  accordance with the terms of the Protective Order (ECF No. 123).

17      LSAC shall maintain appropriate supporting records for the information contained in the

18  Reports, including, but not limited to, those described in Paragraph 8, and give access to such

19  information to the United States, the DFEH (to the extent that such information pertains to

20  individuals who tested in California), and/or the ADA Monitor, upon reasonable request.

21  "Access" in this paragraph is defined as access to the supporting records in LSAC's office in

22  Newtown, Pennsylvania, for a period of no longer than five (5) business days and during

23  LSAC's regular business hours, following at least ten (10) days' written notice to LSAC.

24      24.    ADA Monitor.  Within sixty (60) days after the Effective Date of this Decree,

25  LSAC shall retain an independent ADA Monitor, to be mutually agreed upon by the United

26

27

28

States, the DFEH, and LSAC.  The purpose of the ADA Monitor is to assist the United States, the DFEH, and the Court in evaluating LSAC's compliance with the Decree.  No Party, nor any employee or agent of any Party, shall have any supervisory authority over the ADA Monitor's activities or interfere with the independent functions of the ADA Monitor (although LSAC shall have authority to supervise the ADA Monitor's movements and access if the ADA Monitor is on site at LSAC's offices).  The ADA Monitor shall not be an employee or current contractor of any Party.  The ADA Monitor shall not be affiliated with any Party and shall not be an individual who has assisted or consulted with any Party for purposes of this litigation.  Except upon approval of the other Parties, neither the Disability Rights Section of the Civil Rights Division in the United States Department of Justice, the DFEH, nor LSAC shall offer or guarantee the ADA Monitor employment or future benefits, in any form, including a position as a consultant or independent contractor, during the term of the Consent Decree and for a period of two (2) years following expiration of this Decree.  During the term of this Consent Decree, the ADA Monitor may not personally represent anyone, or serve as an expert witness for anyone, who is adverse to LSAC or any of the Plaintiffs in any pending lawsuit or government agency proceeding.

25.  <u>Audits By ADA Monitor.</u>  The ADA Monitor shall conduct audits of LSAC's compliance with this Decree, by first evaluating LSAC's Reports described in Paragraph 23, and then by requesting access to additional information, such as LSAC data and personnel, and independently observing LSAC operations, to the extent reasonable and deemed necessary by the ADA Monitor in order to evaluate LSAC's compliance with those provisions of the Decree subject to the audit, as set out in this paragraph.  The ADA Monitor will audit LSAC's compliance at the following intervals after the Effective Date of this Decree: one (1) year; two (2) years; and four (4) years.  The one (1) year audit will address LSAC's compliance with the reporting requirements contained in Paragraphs 8 and 23.  The two (2) year and four (4) year audits will address LSAC's compliance with the reporting requirements contained in Paragraphs

1    8 and 23 and LSAC's implementation of the Best Practices discussed in Paragraph 7.  LSAC

2    shall maintain the data described in Paragraph 8 throughout the term of this Consent Decree.

3        26.    Audit Reports By ADA Monitor.  At the conclusion of each audit, the ADA

4    Monitor will provide a written report ("Audit Report") to LSAC, the United States, and the

5    DFEH regarding LSAC's compliance with those provisions of the Decree subject to the audit, as

6    set out in Paragraph 25.  Each Audit Report shall provide: (a) the scope of the audit; (b) a

7    detailed list of the data collected and interviews conducted, if any, in the course of the audit; (c)

8    any difficulties with conducting the audit; (d) an itemized assessment as to whether LSAC is

9    complying with those provisions of the Decree subject to the audit; (e) what data the ADA

10   Monitor relied upon in reaching this assessment, and what data contradicts this assessment, if

11   any; and (f) the ADA Monitor's recommendations for further remediation if he or she determines

12   that compliance is deficient.

13        a.    Access.  LSAC shall provide the ADA Monitor with reasonable access, as

14   needed, to all LSAC staff, facilities, and documents that are relevant to evaluate compliance with

15   the reporting requirements contained in Paragraphs 8 and 23 and LSAC's implementation of the

16   Best Practices discussed in Paragraph 7.  LSAC shall direct all employees to cooperate fully with

17   the ADA Monitor.  LSAC will request that its contractors cooperate fully with the ADA

18   Monitor.  All non-public information obtained by the ADA Monitor shall be maintained in a

19   confidential manner, and all information obtained by the ADA Monitor shall be used only for the

20   purposes of implementing this Decree.  The ADA Monitor shall also be subject to the terms of

21   the Protective Order (ECF No. 123).  Upon request from the United States, or the DFEH (with

22   respect to documents and information pertaining to individuals who tested in California), LSAC

23   will provide the requesting Party with access to the data underlying the ADA Monitor's Audit

24   Reports and may provide the United States, and the DFEH (to the extent that such documents

25   and information pertain to individuals who tested in California), with access to additional

26

27

28

1    information as reasonably requested.  Such information and data shall be used by the Parties only

2    for the purposes of implementing this Decree.  "Access" in this paragraph and Paragraph 25 is

3    defined as access to LSAC's materials in LSAC's office in Newtown, Pennsylvania, for a period

4    of no longer than five (5) business days and during LSAC's regular business hours, following at

5    least ten (10) days' written notice to LSAC.

6         27.    Communications.  The ADA Monitor may:

7              a.    Have ex parte communications at any time with the Parties, including

8    counsel for the Parties and employees, agents, contractors, and all others working for or on

9    behalf of the Parties.  Any such communications with employees, agents, or contractors of LSAC

10   must be arranged through in-house counsel for LSAC, and counsel for LSAC may be present for

11   such communications if counsel's presence is requested by the ADA Monitor or by any LSAC

12   employee, agent, or contractor involved in such communications.

13             b.    Speak with anyone else the ADA Monitor deems necessary for

14   accomplishing its duties under this Decree.

15        28.    Cost.   All reasonable fees, costs, and expenses of the ADA Monitor shall be

16   borne by LSAC, but the ADA Monitor is not an agent or contractor of the United States, the

17   DFEH, or LSAC.  The ADA Monitor shall provide sufficiently detailed monthly invoices

18   justifying any fees, costs, and expenses.  The ADA Monitor shall be paid on the basis of a

19   standard reasonable rate to be agreed upon by the United States, the DFEH, and LSAC.  If the

20   Parties cannot agree on a reasonable rate, the issue shall be presented to Magistrate Judge Joseph

21   Spero for resolution.  LSAC shall reimburse all reasonable expenses incurred by the ADA

22   Monitor in the course of the performance of the duties of the ADA Monitor in accordance with

23   LSAC's current applicable policies, practices, and procedures for reimbursement of employee

24   travel and expenses, excluding the approval process applicable to LSAC staff and employees and

25   the requirement that air travel be charged to LSAC's corporate account or an LSAC corporate

26

27

28

1  credit card.  The Court retains the authority to resolve any dispute that may arise regarding the

2  reimbursement of fees and costs charged by the ADA Monitor.  The Court shall be the final

3  arbiter of what costs and expenses shall be reimbursed by LSAC.

**ADDITIONAL TERMS**

5       29.   <u>Notification</u>.  All documents and communications required to be sent to one or

6  more Parties under the terms of this Decree shall be sent to the following individuals by

7  overnight courier or, where practicable, by e-mail (at the election of the sending party) to:

8          a.   <u>For the United States</u>:

9            Chief
          ATTN: US v. LSAC – DJ # 202-62-342
10            Disability Rights Section
          Civil Rights Division
11            United States Department of Justice
          1425 New York Avenue, NW, 4th Floor
12            Washington, DC 20005
          nabina.sinha@usdoj.gov
13

14          b.   <u>For the DFEH</u>:

15            ATTN: DFEH v. LSAC
          Department of Fair Employment and Housing
16            2218 Kausen Drive, Suite 100
          Elk Grove, CA 95758
17            mari.mayeda@dfeh.ca.gov

18          c.   <u>For LSAC</u>:

19            Joan Van Tol
          General Counsel
20            Law School Admission Council, Inc.
          662 Penn Street
21            Newtown, PA 19640
          jvantol@lsac.org

22            Bob Burgoyne
          Fulbright & Jaworski LLP
23            801 Pennsylvania Avenue, NW
          Washington, DC 20004
24            robert.burgoyne@nortonrosefulbright.com

25

26

       - 36 -

27

28

30.     Term Of This Decree.  This Decree shall become effective as of the date that it is entered by the Court and shall remain in effect for four (4) years from that date.  However, LSAC's agreement to discontinue score annotations as stated in Paragraph 9 shall continue in perpetuity beyond the term of this Decree, absent agreement of the United States and the DFEH. The Court shall retain continuing and exclusive jurisdiction for the duration of the Decree to enforce the terms of the Decree.  The United States, the DFEH, and/or LSAC may apply to the Court for such further orders as may be necessary for, or consistent with, the enforcement of this Decree.

31.     Disputes.  If a dispute arises with respect to the United States', the DFEH's, or LSAC's compliance with, interpretation of, or implementation of, the terms of this Decree, a good faith effort shall be made by the Parties to the dispute to resolve such differences promptly in accordance with the following procedure.

If the United States, the DFEH, or LSAC believes a dispute must be resolved, it shall promptly notify the other two Parties in writing of the issue together with relevant facts and analysis.  The Party against whom the complaint is issued shall be given a reasonable period of time (not to exceed thirty (30) days) to provide a response.  Within a reasonable time thereafter (not to exceed fifteen (15) days), the Parties to the dispute shall meet and confer by telephone and attempt to resolve the issue informally.  If the United States, the DFEH, or LSAC believes that resolution cannot be achieved, it shall promptly notify the other two Parties in writing and shall specify its final position with regard to the dispute.  Thereafter, any of these Parties may pursue the issue with the Court.

Nothing in this procedure shall prevent the United States, the DFEH, or LSAC from promptly bringing an issue before the Court when, in the moving Party's view, the facts and circumstances require immediate court attention.  The moving Party's papers shall explain the facts and circumstances that necessitate immediate court action.  In any enforcement motion

1  brought by any Party, no Party will object to the admissibility, on hearsay grounds, of the ADA

2  Monitor's Audit Reports.

3       32.    Use of Information.   All Parties agree that any documents or information acquired

4  through performance of this Consent Decree may be used solely for the purpose of implementing

5  and enforcing this Consent Decree, and not for any other purpose.  The provisions of the

6  Protective Order (ECF No. 123) remain in effect and applicable to all Parties throughout the term

7  of this Decree.

8       33.    Scope.   This Decree does not purport to remedy any violations or potential

9  violations of the ADA or the Unruh Act, other than as set forth in Paragraph 34 below.  Except

10 as explicitly provided herein, this Decree does not affect LSAC's continuing responsibility to

11 comply with the ADA.

12      34.    Releases.   Each Plaintiff hereby releases, acquits, and forever discharges LSAC

13 and its attorneys, agents, administrators, officers, employees, directors, members, and

14 contractors, from any and all claims, demands, and causes of action, if any, under the ADA, the

15 California Unruh Civil Rights Act, the California Education Code (§ 99161.5), and/or the

16 California Unfair Competition Law, as each law is in effect on the Effective Date of the Decree,

17 that are known or reasonably could have been known (whether asserted or unasserted), and that

18 arise out of or relate to any dealings, actions, or events involving LSAC's review or evaluation of

19 requests for testing accommodations on the LSAT and/or its reporting of accommodated test

20 scores, from January 1, 2009 until the Effective Date of this Consent Decree, specifically

21 including, but not limited to, all causes of action that were or could have been asserted in any of

22 the complaints filed by the Plaintiffs or any other controversy arising from or relating to any

23 individual's request for testing accommodations on the LSAT and/or LSAT score reports.

24

25

26

27

28

If applicable, Plaintiffs waive any rights he/she/it has, or after signing this Decree becomes aware that he/she/it may have had, under California Civil Code section 1542, which provides as follows:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The consideration recited herein is accepted by each Plaintiff in full satisfaction of all claimed and unclaimed damages and losses arising out of or related to any of the complaints filed by the Plaintiffs or any other controversy arising from or relating to any individual's request for testing accommodations on the LSAT and/or LSAT score reports during the time referenced above.

35.  <u>Pending Complaints.</u>  The United States and the DFEH will close their investigations of all complaints received by the United States Department of Justice or the DFEH, respectively, against LSAC that allege disability discrimination in its provision of testing accommodations and/or its reporting of accommodated test scores under the ADA (or California law where applicable) for the time period of January 1, 2009 to the Effective Date of the Decree.

36.  <u>Binding.</u>  This Decree shall be binding on the United States, the DFEH, Andrew Quan, Nicholas Jones, Elizabeth Hennessey-Severson, and LSAC, including all principals, agents, executors, administrators, representatives, employees, successors in interest, beneficiaries, assigns, and legal representatives thereof.  LSAC shall have a duty to notify all of its successors in interest of the existence and terms of this Decree.

37.  <u>Non-Waiver.</u>  Failure by any Party to seek enforcement of this Decree pursuant to its terms with respect to any instance or provision will not be construed as a waiver of such enforcement with regard to other instances or provisions.

1    38.    Severability.  If any provision of this Decree is determined by any court to be

2  unenforceable, the other provisions of this Decree shall nonetheless remain in full force and

3  effect, provided, however, that if the severance of any such provision materially alters the rights

4  or obligations of the Parties, the Plaintiffs and LSAC shall engage in good faith negotiations in

5  order to adopt mutually agreeable amendments to this Decree as may be necessary to restore the

6  Parties as closely as possible to the initially agreed upon relative rights and obligations.

7    39.    Litigation Holds.  The Parties agree that, as of the Effective Date of this Decree,

8  for purposes of the Parties' preservation obligations pursuant to Federal Rule of Civil Procedure

9  26 and/or common law, litigation is not "reasonably foreseeable" concerning the claims raised in

10  any of the Plaintiffs' complaints.  To the extent that any Party previously implemented a

11  litigation hold to preserve documents and/or electronically stored information related to the

12  claims asserted in any of the Plaintiffs' complaints, the Party is no longer required to maintain

13  such a litigation hold.  Nothing in this paragraph relieves the Parties of their obligations to

14  maintain documents, information, and/or data as imposed by this Decree.

15    40.    Authority.  The signatories represent that they have the authority to bind the

16  respective Parties identified below to the terms of this Decree.

17

18

19

20

21

22

23

24

25

26

27

28

By their signatures below, the Parties respectfully consent to the entry of this Consent

Decree, including the Order and Permanent Injunction.

**FOR THE CALIFORNIA**
**DEPARTMENT OF FAIR**
**EMPLOYMENT AND HOUSING:**

**FOR THE UNITED STATES**
**OF AMERICA:**

PHYLLIS W. CHENG
Director

JOCELYN SAMUELS
Acting Assistant Attorney General
Civil Rights Division

JON ICHINAGA
Chief Counsel

EVE L. HILL
Deputy Assistant Attorney General
Civil Rights Division

REBECCA B. BOND
Chief
ROBERTA KIRKENDALL
Special Legal Counsel
KATHLEEN P. WOLFE
Special Litigation Counsel
Disability Rights Section
Civil Rights Division

_Mari M_____

_Nabina Sinha_____

MARI MAYEDA
PHOEBE LIU
JULIA MONTGOMERY
JONI CARRASCO
SAMI HASAN
IRINA TRASOVAN
Attorneys
Department of Fair
  Employment and Housing
2218 Kausen Drive, Suite 100
Elk Grove, CA 95758

NABINA SINHA
MEGAN E. SCHULLER
Attorneys
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W. – NYA
Washington, D.C. 20530
Telephone: (202) 307-0663
Facsimile: (202) 305-9775
Nabina.Sinha@usdoj.gov

5-19-14
Date

5-19-14
Date

- 41 -

**FOR THE UNITED STATES
OF AMERICA, CONTINUED:**

MELINDA HAAG
United States Attorney
Northern District of California

ALEX G. TSE
Chief, Civil Division
Assistant United States Attorney

*Melanie L. Proctor*
MELANIE L. PROCTOR
Assistant United States Attorney
United States Attorney's Office
 Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-6730
Facsimile: (415) 436-6748
Melanie.Proctor@usdoj.gov

*May 19, 2014*
Date

- 42 -

**FOR ANDREW QUAN, NICHOLAS JONES, AND ELIZABETH HENNESSEY-SEVERSON:**

Date: _____          _____
                                ANDREW QUAN

Date: _____          _____
                                NICHOLAS JONES

Date: _____          _____
                                ELIZABETH HENNESSEY-SEVERSON


APPROVED AS TO FORM:

_____
JINNY KIM
The Legal Aid Society – Employment Law Center
180 Montgomery Street, Suite 600
San Francisco, CA 94104
Attorneys for Plaintiff-Intervenors Andrew Quan,
Nicholas Jones, and Elizabeth Hennessey-Severson

5/13/14
_____
Date

- 42 -

CASE NO. CV 12-1830-EMC
[PROPOSED] CONSENT DECREE

**FOR ANDREW QUAN, NICHOLAS JONES, AND ELIZABETH HENNESSEY-SEVERSON:**

Date: 5-13-2014                          *Ayden Quan*
                                         ANDREW QUAN

Date: _____                      _____
                                         NICHOLAS JONES

Date: _____                      _____
                                         ELIZABETH HENNESSEY-SEVERSON


APPROVED AS TO FORM:

                                         _____
                                         JINNY KIM
                                         The Legal Aid Society – Employment Law Center
                                         180 Montgomery Street, Suite 600
                                         San Francisco, CA 94104
                                         Attorneys for Plaintiff-Intervenors Andrew Quan,
                                         Nicholas Jones, and Elizabeth Hennessey-Severson


                                         _____
                                         Date

- 42 -

**FOR ANDREW QUAN, NICHOLAS JONES, AND ELIZABETH HENNESSEY-SEVERSON:**

Date: _____          _____
                           ANDREW QUAN

Date: 5/15/2014            _____
                           NICHOLAS JONES

Date: _____          _____
                           ELIZABETH HENNESSEY-SEVERSON

APPROVED AS TO FORM:

                           _____
                           JINNY KIM
                           The Legal Aid Society – Employment Law Center
                           180 Montgomery Street, Suite 600
                           San Francisco, CA 94104
                           Attorneys for Plaintiff-Intervenors Andrew Quan,
                           Nicholas Jones, and Elizabeth Hennessey-Severson


                           _____
                           Date

- 42 -

**FOR ANDREW QUAN, NICHOLAS JONES, AND ELIZABETH HENNESSEY-SEVERSON:**

Date: _____

_____
ANDREW QUAN

Date: _____

_____
NICHOLAS JONES

Date: 05/13/2014

_____
ELIZABETH HENNESSEY-SEVERSON

APPROVED AS TO FORM:

_____
JINNY KIM
The Legal Aid Society – Employment Law Center
180 Montgomery Street, Suite 600
San Francisco, CA 94104
Attorneys for Plaintiff-Intervenors Andrew Quan,
Nicholas Jones, and Elizabeth Hennessey-Severson

_____
Date

Error! Unknown switch argument.

CASE NO. CV 12-1830-EMC
[PROPOSED] CONSENT DECREE

1    FOR THE LAW SCHOOL ADMISSION COUNCIL, INC.:

2

3

4

5                                           JOAN E. VAN TOL
6                                           General Counsel
7                                           Law School Admission Council, Inc.
                                            662 Penn Street
8                                           Newtown, PA 18940

9                                           _5/19/2014_
10                                          Date

11   APPROVED AS TO FORM:

12                                          ROBERT A. BURGOYNE
                                            CAROLINE MEW
13                                          Fulbright & Jaworski LLP
                                            801 Pennsylvania Avenue, N.W.
14                                          Washington, D.C. 20004

15

16                                          _5/19/14_
17                                          Date

18

19

20

21

22

23

24

25

26

27                              - 44 -

28                   CASE NO. CV 12-1830-EMC
                     [PROPOSED] CONSENT DECREE

## <u>ORDER AND PERMANENT INJUNCTION</u>

**IT IS SO ORDERED**, and LSAC is accordingly permanently enjoined from all forms of the practice of annotating score reports of candidates who receive the testing accommodation of extended test time due to disability, and, for candidates applying to law school after entry of this Order, LSAC shall henceforth provide the same information on test score reports for all candidates for whom score reports are provided, this 29th day of ___May___, 2014.

_____
EDWARD M. CHEN
UNITED STATES DISTRICT COURT JUDGE

IT IS SO ORDERED

Judge Edward M. Chen

- 45 -

# EXHIBIT 1

## <u>TESTING ACCOMMODATIONS AVAILABLE</u>
## <u>UNDER CONSENT DECREE</u>
## <u>PARAGRAPH 5(a)</u>

1. Braille version of LSAT
2. Large-print (18 pt.) test book
3. Screen-readable HTML test (including, where applicable, use of screen reader software (e.g., JAWS))
4. Extended time up to double time
5. Use of computer and printer for the Writing Sample
6. Use of spell check
7. Alternate non-Scantron answer sheet
8. Use of a reader
9. Use of an amanuensis (scribe)
10. Additional rest time during breaks (standard break is 10-15 minutes between third and fourth sections)
11. Breaks between sections
12. Sit/stand with a podium
13. Wheelchair accessibility (if table is requested, specify height)
14. Separate room (e.g., small group testing)
15. Private testing room (e.g., low-distraction test setting)
16. Stop-the-clock breaks
17. Scratch paper
18. Voice recognition software (e.g., Dragon)
19. Physical prompts (e.g., for test-takers with hearing impairments)
20. Reserved or assigned seating location (e.g., seating near the exam proctor)
21. Bring and eat food
22. Permission to bring insulin, check blood sugar
23. Permission to bring and take medications
24. Earplugs
25. Use of line marker
26. Use of magnification devices (e.g., magnification reading glasses, handheld video magnifier, closed circuit television (CCTV), ZoomText)
27. Ability to pace (walk around)
28. Marking answer choices in the test book
29. Book stand

# EXHIBIT 2(a)




# NOTICE OF
# NATIONWIDE SETTLEMENT

### IF YOU APPLIED FOR TESTING ACCOMMODATIONS
### FOR THE LAW SCHOOL ADMISSION TEST (LSAT)
### YOU MAY BE ELIGIBLE FOR A MONETARY AWARD FROM A
### $6.73 MILLION NATIONWIDE COMPENSATION FUND

The **Law School Admission Council (LSAC)** has entered into a Consent Decree with the **California Department of Fair Employment and Housing (DFEH)** to settle a statewide lawsuit and with the **U.S. Department of Justice (DOJ)** to settle a nationwide lawsuit. This resolution addresses alleged violations of the Americans with Disabilities Act (ADA) and the California Unruh Civil Rights Act, including LSAC's alleged failure to offer the LSAT in a manner accessible to individuals with disabilities.

**If you applied for testing accommodations from LSAC between January 1, 2009 and May 20, 2014, you may be eligible to receive a payment from a $6.73 million nationwide compensation fund.**

TO BE ELIGIBLE FOR CONSIDERATION FOR PAYMENT, YOU MUST SUBMIT A CLAIM. THE DEADLINE TO SUBMIT A CLAIM HAS YET TO BE DETERMINED AND WILL BE POSTED HERE WITHIN FOUR MONTHS OF [INSERT DATE OF ENTRY OF CONSENT DECREE].

You may obtain information on how to submit a claim by:

1. Sending an e-mail with your name, address, and telephone number to [insert email address to be designated by Claims Administrator], or

2. Calling the Claims Administrator at [insert toll free voice and TTY telephone numbers to be designated by Claims Administrator].

Claimants who receive a payment from this fund must sign a release of any related claims against LSAC.

For more information or for a copy of the Consent Decree, visit www.dfeh.ca.gov or www.ada.gov.

# EXHIBIT 2(b)




# NOTICE OF
# NATIONWIDE SETTLEMENT

**IF YOU APPLIED FOR TESTING ACCOMMODATIONS
FOR THE LAW SCHOOL ADMISSION TEST (LSAT)
YOU MAY BE ELIGIBLE FOR A MONETARY AWARD FROM A
$6.73 MILLION NATIONWIDE COMPENSATION FUND**

## ► <u>DEADLINE TO RESPOND IS [INSERT DATE], 2014</u>◄

The **Law School Admission Council (LSAC)** has entered into a Consent Decree with the **California Department of Fair Employment and Housing (DFEH)** to settle a statewide lawsuit and with the **U.S. Department of Justice (DOJ)** to settle a nationwide lawsuit.  This resolution addresses alleged violations of the Americans with Disabilities Act (ADA) and the California Unruh Civil Rights Act, including LSAC's alleged failure to offer the LSAT in a manner accessible to individuals with disabilities.

**If you applied for testing accommodations from LSAC between January 1, 2009 and May 20, 2014, you may be eligible to receive a payment from a $6.73 million nationwide compensation fund.**

TO BE ELIGIBLE FOR CONSIDERATION FOR PAYMENT, YOU MUST SUBMIT A CLAIM BY [INSERT DATE WHICH IS 180 DAYS AFTER DATE WHEN ALL NOTICE PACKAGES ARE SENT TO POTENTIAL ELIGIBLE PERSONS].

You may obtain information on how to submit a claim by:

1. Sending an e-mail with your name, address, and telephone number to [insert email address to be designated by Claims Administrator], or

2. Calling the Claims Administrator at [insert toll free voice and TTY telephone numbers to be designated by Claims Administrator].

Claimants who receive a payment from this fund must sign a release of any related claims against LSAC.

For more information or for a copy of the Consent Decree, visit www.dfeh.ca.gov or www.ada.gov.

# EXHIBIT 3

## <u>RELEASE OF CLAIMS</u>

For and in consideration of acceptance of the relief offered to me by the Law School Admission Council, Inc. ("LSAC"), pursuant to a Consent Decree between LSAC, the California Department of Fair Employment and Housing ("DFEH"), and the United States of America, arising out of Civil Action 3:12-cv-01830-EMC (the "Consent Decree"):

I, _____ (print name), hereby release and forever discharge LSAC and its current, past, and future officers, directors, shareholders, employees, and agents, of and from any legal and/or equitable claims arising out of the facts identified in the DFEH's and the United States' respective Complaints, as amended, filed in the United States District Court for the Northern District of California, Case No. 3:12-cv-01830-EMC, and any other claims, known or unknown, relating to my request(s) for testing accommodations on the Law School Admission Test ("LSAT") and/or the reporting of my scores on any administration of the LSAT preceding the date of this Release.  Excluded from this Release are any rights and claims that cannot be waived by law.

This Release constitutes the entire agreement between myself and LSAC with regard to the claims identified above, without exception or exclusion.

I acknowledge that a copy of the Consent Decree has been made available to me.  By signing this Release, I acknowledge that I have been provided the opportunity to review the Consent Decree with an attorney of my choosing, and that I understand that I am solely responsible for paying any applicable federal, state and local taxes I owe as a result of receiving payment under this Consent Decree.

In signing this Release, I hereby waive any rights that I have, or after signing this Release become aware that I may have had, under California Civil Code section 1542, which provides as follows:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

I HAVE READ THIS RELEASE AND UNDERSTAND THE CONTENTS THEREOF, AND I EXECUTE THIS RELEASE OF MY OWN FREE ACT AND DEED.

Date:_____   _____
                                                        Signature

Full Mailing Address: