**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, an agency of the State of California, | **Case No. CV 12-1830-JCS** |
| Plaintiff, | **DECLARATION OF** |
| vs. | **PETER BLANCK, Ph.D., J.D.** |
| LAW SCHOOL ADMISSION COUNCIL, INC., | **IN SUPPORT OF PLAINTIFF DFEH'S MOTION FOR AN ORDER HOLDING DEFEDANT LSAC IN CIVIL CONTEMPT AND** |
| Defendant. | |
| THE UNITED STATES OF AMERICA, | **IN SUPPORT OF PLAINTIFF DFEH'S MOTION IN LIMINE RE: ADA MONITOR'S CONCLUSIONS AND TESTIMONY** |
| Plaintiff-Intervenor, | |
| vs. | |
| LAW SCHOOL ADMISSION COUNCIL, INC., | |
| Defendant. | |

I, Peter Blanck, declare:

1. I am over eighteen years of age and make this declaration of my own personal knowledge.

2. I am submitting this declaration in support of Plaintiff's Motion for an Order Holding Defendant in Civil Contempt and Plaintiff's Motion in Limine re: ADA Monitor's Conclusions and Testimony.

**Summary of Relevant Expertise**

3. I hold the rank of University Professor at Syracuse University, which is the highest faculty rank at the University.[1]  I am the Chairman of the Burton Blatt Institute (BBI) at Syracuse University, which works to advance the civic, economic, and social participation of

---

[1] I hold other appointments at Syracuse University in the Colleges of Law, Arts and Sciences, and Education, and in the Falk College and the Maxwell School.

persons with disabilities worldwide.[2]  Prior to my academic appointment at Syracuse, I was Kierscht Professor of Law and Director of the Law, Health Policy, and Disability Center at the University of Iowa, from 1990 to 2005.

4.  I received a Ph.D. in Social Psychology from Harvard University, with a minor in Organizational Behavior.  I also received a Juris Doctorate from Stanford University, where I served as President of the *Stanford Law Review*.  I have published more than 200 articles and books on the Americans with Disabilities Act and as amended ("ADA" and "ADAAA"), the Rehabilitation Act of 1973 ("Rehabilitation Act"), and other disability laws and policies, including the textbook *Disability Civil Rights Law and Policy* (3rd ed., 2014, with Waterstone, Myhill, & Siegel).[3]  I have written Harvard Business School case studies, articles, and book chapters, on the topics of organizational behavior, career development, reasonable accommodation, and scientific research design, methods, and statistical analyses, often regarding persons with and without disabilities.

5.  Among other areas, I focus my research, writings, and teaching on accommodation issues for persons with disabilities.  I study organizational procedures, policies, and best practices to lessen disability discrimination, stereotypes, and bias resulting from improper and ineffective selection and accommodation policies and practices, and related attitudes by workplace and academic supervisors, and evaluators of persons with disabilities.[4]

---

[2] BBI takes its name from Burton Blatt, a leader in promoting the civil rights of persons with disabilities, and it is a global leader in research, education, and training for persons with disabilities in such areas as employment, community living, and social participation. *See*, http://bbi.syr.edu/ .

[3] *See, e.g.*, Peter Blanck et al., *Disability Civil Rights Law and Policy; Cases and Materials* at 245 (3d ed. 2014) (accommodation interactive process); Peter Blanck et al., *Legal Rights of Persons with Disabilities, An Analysis of Federal Law* (2d ed. 2013) at 10:16 (accommodation interactive process).

[4] For instance, my colleagues and I examine organizational culture, disabling conditions, and diversity inclusion practices on employment outcomes involving individuals with a range of disabilities.  Our findings show how some organizations proactively address unfounded attitudes and behavior about persons with disabilities, such as in regard to the provision of ADA and Rehabilitation Act reasonable accommodations.  In one of the first large-scale explorations of its kind, my colleagues and I explored the experiences of U.S. employees with and without ADA disabilities using a dataset with nearly 30,000 employees surveyed across fourteen companies.  We found that, although some employees with disabilities faced disparities that affected their tenure at the organization, these "disability gaps" varied substantially across companies and worksites.  Our findings suggest that corporate cultures and, policies, procedures, and best practices, play an important moderating role in how people with disabilities are treated in organizations. *See, e.g.,* Lisa Schur, Douglas Kruse, Joseph Blasi, & Peter Blanck, *Is Disability Disabling in All Workplaces? Disability, Workplace Disparities, and Corporate Culture*, 48 *Industrial Relations: A Journal of Economy and Society* 381-410 (2009). *See also* Peter Blanck & Arthur N. Turner, *Gestalt Research: Clinical Field Research Approaches to Studying Organizations*, in *Handbook of Organizational*

2

6.   I am a former member of the President's Committee on Employment of Persons with Disabilities.  I have testified about disability-related matters before Congress, the Equal Employment Opportunity Commission (EEOC), and other federal and state administrative bodies.  I have served as a court-appointed officer for the United States District Court of Wyoming in two class action lawsuits to monitor, assess, and ensure compliance with, among other areas, reasonable accommodations for individuals with a range of physical, mental, and cognitive disabilities across the life course.

7.   From 1995 to 2001, I was appointed as Facilitator by the United States District Court of Wyoming, the Honorable Alan B. Johnson presiding, in the settlement of the class action *Chris S. et al. v. Jim Geringer et al.*, 2:94-CV-00311-ABJ (D.Wyo. Dec. 29, 1994).  As a court officer in this case, I examined, monitored, and analyzed data and case files regarding the development and implementation of state and community services, and accommodation supports for persons with mental illness and related conditions to ensure their administration in a manner consistent with the principles of scientific reliability and validity, and human dignity and inclusion.[5]  In my appointments as a court officer for the United States District Court of Wyoming, I conducted archival, case file, interview, statistical, and programmatic analyses of qualitative and quantitative information from state programs and services serving individuals across the spectrum of disability.

8.   In 1997, I served as an expert witness for plaintiffs in *Guckenberger v. Boston Univ.*, 974 F. Supp. 106 (D. Mass. 1997).  Plaintiffs, undergraduate and graduate students with

---

*Behavior* 109-125 (Jay William Lorsch ed., 1987) (methods used to study organizations).

[5] In this capacity, I developed means to interview, review files, and inspect state facilities and programs.  In my work as an expert on the ADA, I have toured, reviewed and analyzed case files, and inspected prison facilities (e.g., in Wyoming, Oklahoma, and South Carolina).  During these visits, I developed and conducted structured and semi-structured interviews with officials to assess educational programs and services for individuals with a range of physical, mental, cognitive, visual, hearing, and other disabilities. Prior to my appointment by the U.S. District Court, I was retained by the Wyoming Attorney General's office to aid in resolution of allegations regarding compliance with the ADA and Rehabilitation Act in state programs and services. In addition, from 1991 to 1996, I was appointed by the U.S. District Court of Wyoming (Judge Johnson presiding) as Chairman of the Quality Assurance Committee, and subsequently as a member of the two-person Compliance Advisory Board in the settlement of the class action *Weston v. Wyoming State Training School*, 2:90-CV-0004 (D.Wyo. Apr. 27, 1994).  In that capacity, I reported to the U.S. District Court on issues facing persons with cognitive and other disabilities in the provision of services and supports. My monitoring reports were based on tours, interviews, and review of policies, procedures, and best practices in accordance with the ADA and Section 504 of the Rehabilitation Act requirements.

3

learning disabilities at Boston University ("BU"), brought a class action lawsuit claiming they had been discriminated against on the basis of their disabilities in violation of the ADA and other federal and state laws.

9. The BU students with learning disabilities—individuals with Attention Deficit Disorder and other learning and physical disorders—alleged BU had discriminated against them by, among other claims, establishing unreasonable eligibility criteria for qualifying as a student with a learning disability and not providing reasonable procedures for evaluating their requests for academic accommodations.[6]  In August of 1997, District Court Judge Patti B. Saris found BU had violated the students' rights under the ADA.

10. As a professor of law, psychology and other disciplines at Iowa and Syracuse, I have advised educational administrators and standardized testing organizations, Rehabilitation Act Section 504 coordinators, and student disability services offices regarding academic accommodations, policies, and procedures for undergraduate and graduate students with an array of physical, mental, cognitive, and other disabilities.  In this capacity, for instance, I was Chair of the "Provost Task Force to Examine Issues Facing Students with Learning Disabilities" (1998-1999), at the University of Iowa.

11. I have served as Senior Fellow of the Annenberg Washington Program, where I examined the ADA accommodation process, and in regard to the educational process.  I have been chair of the American Psychological Association's Committee on Standards in Research and a Commissioner on the American Bar Association's Commission on Mental and Physical Disability Law.

12. In terms of my other research, writings, and experience that are relevant to the issues raised in this matter, my colleagues and I–including researchers at the Job Accommodation Network (JAN)[7]–have conducted extensive quantitative and qualitative

---

[6] *See, e.g.,* Peter Blanck. Students with Learning Disabilities, Reasonable Accommodations, and the Rights of Colleges and Universities to Establish and Enforce Academic Standards: *Guckenberger v. Boston University*. *Mental & Physical Disability Law Reporter*, 21(5), 679-86 (1997) (student plaintiffs alleged university instituted a blanket policy precluding course substitutions in foreign language and mathematics as academic accommodations).

[7] The Job Accommodation Network (JAN) is a leading source of guidance on accommodations and disability employment issues. JAN is a service of the U.S. Department of Labor's Office of Disability Employment Policy.

studies of hundreds (if not thousands) of Rehabilitation Act and ADA reasonable accommodations and the associated interactive process in the workplace and in educational settings.[8]  Also relevant to my assignment in this matter, the United States Department of Labor's Office of Disability Employment Policy engaged me and my colleagues to develop a standard methodology and conduct case study research to identify valid and reliable ways to assess organizational structures, policies and procedures, and best practices in regard to, among other areas, the accommodation of people with disabilities.[9]  This study has helped to validate, assess and benchmark effective policies and strategies in the accommodation and career advancement of persons with disabilities.[10]

13. I have received millions of dollars in grant funding from federal agencies such as the United States Departments of Labor, Health and Human Services, and Education, Veterans Affairs, and the National Council on Disability, to study disability law and policy.  In these grants, I study organizational policies, procedures, and best practices in reasonable accommodations for persons with disabilities.[11]

---

*See, e.g.*, http://askjan.org/links/about.htm.

[8] *See, e.g.*, Disability Case Study Research Consortium, Conducting and Benchmarking Inclusive Employment Policies, Practices, and Culture (December 19, 2008) (available at: http://www.dol.gov/odep/research/CorporateCultureFinalReport.pdf); Lisa Schur, Douglas Kruse, & Peter Blanck, *People with Disabilities: Sidelined or Mainstreamed?* 75-79 (2013).  *See also* EEOC Policy Guidance on Executive Order 13164: Establishing Procedures to Facilitate the Provision of Reasonable Accommodation (EEOC Directives Transmittal, No. 915.003 (Oct. 20, 2000)(available at: http://www.eeoc.gov/policy/docs/accommodation_procedures.html)); Peter Blanck et al., *Implementing Reasonable Accommodations Using ADR under the ADA: A Case of a White Collar Employee With Bipolar Mental Illness*, 18 Mental & Physical Disability L. Rep. 458 (1994); Helen Schartz, Kevin Schartz, D.J. Hendricks, & Peter Blanck, *Workplace Accommodations: Empirical Study of Current Employees*, 75 Miss. L.J. 917 (2006); Helen Schartz, D.J. Hendricks, & Peter Blanck, *Workplace Accommodations: Evidence-Based Outcomes*, 27 *Work: A Journal of Prevention, Assessment and Rehabilitation* 345 (Issue 4, 2006).

[9] Disability Case Study Research Consortium, *supra*.

[10] *Id.* at Appendix A: Inclusive Employment Benchmarks (available at: http://www.dol.gov/odep/research/CorporateCultureAppendixA.pdf). I also served on the National Research Advisory Panel of the *National Technical Assistance and Research Center to Promote Leadership for Increasing Employment and Economic Independence of Adults with Disabilities*, funded by U.S. Department of Labor to build leadership regarding disability policies and procedures.

[11] *See, e.g.,* Lisa Schur, Lisa Nishii, Meera Adya, Doug Kruse, Suzanne Bruyere, & Peter Blanck, *Accommodating Employees With and Without Disabilities, Human Resource Management*, 53(4), 593-621 (2014) (examining accommodations provided and requested in a study of thousands of employees nationwide and involving individuals across spectrum of disability, using interviews with CEOs and HR managers to examine disability accommodations and initiatives, how disability policies were understood and implemented, and experiences making accommodations and addressing accommodation requests).

1     14. My articles and books are published in peer-reviewed journals, law reviews, and other

2         scholarly venues.  I have given invited lectures on disability accommodation research,

3         policy, and best practices across the United States and internationally.  I serve on the

4         editorial boards of leading peer-reviewed scientific journals and as a referee for

5         manuscripts submitted to peer-reviewed scientific journals.  I am co-editor of the

6         *Disability Law and Policy* book series published by Cambridge University Press.  In these

7         roles, I evaluate and review the research methods and substantive content of reports and

8         research manuscripts in the areas of disability policy and practice.

9     15. A true and correct copy of my *curriculum vitae* is attached as Appendix A.  A true and

10        accurate list of cases in which I have testified in the last four years is attached as

11        Appendix B.  The hourly rate for my work on this matter is listed in Appendix C.

12 **Background and Assignment**

13     16. I am informed, believe, and understand this case to concern the policies, procedures, and

14        practices used by the Law School Admission Council Inc. ("LSAC" or defendant) "to

15        determine whether candidates should receive accommodation for disabilities while taking

16        the Law School Admission Test ("LSAT"), a standardized test administered by LSAC and

17        widely used in law school admissions."[12]  The claims by United States and the California

18        Department of Fair Employment and Housing ("DFEH" or plaintiffs) that LSAC violated

19        California and federal law protecting people with disabilities were settled in a Consent

20        Decree.  The Consent Decree, referenced herein, established a panel of experts selected by

21        the Parties to propose "best practice" guidelines to LSAC's procedures to ensure

22        compliance with California law and the ADA as applicable.

23     17. The Consent Decree further provides for the appointment of an "ADA Monitor," to be

24        mutually agreed upon by the United States, the DFEH, and LSAC, whose purpose "*is to*

25        *assist the United States, the DFEH, and the Court in evaluating LSAC's compliance with*

26        *the Decree.*"[13]

---

[12] *Dept. Fair Employ. & Hous. v. Law School Admission Council Inc.*, 2015 WL 4719613, at 1 (2015).

[13] Consent Decree, Case 3:12-cv-01830-EMC Document 203 (05/29/14), at 31 & passim (hereinafter "Consent

18. The ADA Monitor was tasked with conducting "audits" of LSAC's compliance with paragraphs 7, 8, and 23 of the Consent Decree.  Decree, ¶ 25.

19. The audits were to be completed at the following intervals after the Effective Date of the Consent Decree: one (1) year; two (2) years; and four (4) years.  The one (1) year audit was to address LSAC's compliance with the reporting requirements contained in Paragraphs 8 and 23.  The two and four year audits were to address LSAC's compliance with the reporting requirements contained in Paragraphs 8 and 23, and LSAC's implementation of the Best Practices discussed in Paragraph 7.  Decree, ¶ 25.

20. Each audit report was to provide: (a) its scope; (b) a detailed list of the data collected and interviews conducted, if any, in the course of the audit; (c) difficulties with conducting the audit; (d) an itemized assessment as to whether LSAC was complying with those provisions of the Consent Decree subject to the audit; (e) the data the ADA Monitor relied upon in reaching this assessment, and data that may contradict this assessment, if any; and (f) the ADA Monitor's recommendations for further remediation should compliance be deemed deficient.  Decree, ¶ 26.

21. Plaintiffs allege, among other violations of the Consent Decree, that "the ADA Monitor has failed to fulfill the duties of that position as set out in the Consent Decree."[14] Specifically, as referenced above in the Consent Decree, Paragraph 24, Plaintiffs contend that the ADA Monitor has failed to "to assist the United States, the DFEH, and the Court in evaluating LSAC's compliance with the Decree."  Plaintiffs believe that the ADA Monitor has failed in his duties to conduct effective audits with accompanying written reports regarding LSAC's compliance with the Consent Decree and implementation of the Expert Panel's proposed best practices.[15]

---

Decree") (emphasis added).

[14] *See, e.g.,* U.S. Department of Justice Civil Rights Division Disability Rights Section, Letter of May 17, 2017, to Joan Van Tol, General Counsel, Law School Admission Council, Bob Burgoyne, Fulbright & Jaworski, Re: Department of Fair Employment and Housing v. Law School Admission Council, Inc., Case No. 12-cv-1830- JCS (N.D. Cal.): Notice of Consent Decree Violations, at 1 (hereinafter "Notice of Consent Decree Violations").  I have reviewed and considered Defendant's letter of June 15, 2017, in reply to the Notice of Consent Decree violations. My opinions herein regarding the ADA Monitor's obligations and responsibilities remain unchanged.

[15] Plaintiffs note that the ADA Monitor submitted a combined audit report for years one and two on February 16,

22. Plaintiffs further dispute the ADA Monitor's conclusion that the LSAC "has substantially complied with all provisions subject to the Monitor's review,"[16] and contend that Plaintiffs' "limited review of the candidate files, however, flatly contradicts the ADA Monitor's conclusion."[17]

23. I am retained by Plaintiffs to review and evaluate the ADA Monitor's Audit in three basic areas: (1) substantive and methodological specificity; (2) reliance on appropriate data and sources; and, (3) sufficiency and scope of substantive analysis.

24. As set forth in detail in Appendix D, I reviewed among the following documents in preparation for evaluating the ADA Monitor's Audit and in drafting this declaration: (1) *DFEH v. LSAC* Consent Decree; (2) Best Practices Final Report; (3) Judge Spero's Order Granting in Part and Denying in Part LSAC's Appeal of the Best Practices Panel Report; (4) Protective Order; (5) Draft ADA Monitor's Report; (6) Draft ADA Monitor's Report with Comments from DFEH and US DOJ; (7) Final ADA Monitor's Report; (8) Copy of LSAC's report on testing accommodation requests (nationwide) provided to US DOJ for the February 2016 LSAT administration; (9) Copy of LSAC's report on testing accommodation requests (California) provided to DFEH for the February 2016 LSAT administration; (10) Civil complaint and Motion for Temporary Restraining Order filed in *Harris v. LSAC*, (11) Candidate file reviewed by ADA Monitor, (12) Arthur L. Coleman's Biographical Statement and Selected Publications; (13) Declaration of Joni Carrasco; (14) Declaration of Phillip Movaghar; (15) Declaration of Russel Dean Harris; (16) Declaration of Michael Kallman; (17) Notice of Consent Decree Violations from US

---

2017 (Notice of Consent Decree Violations at 9).

[16] Report, pp. 4.

[17] *See* Notice of Consent Decree Violations at 9.  *Id.* (Plaintiffs state that "the ADA Monitor failed to identify any of the issues discussed above.  He failed to detect even the most obvious problems, such as LSAC's failure to include outside consultants (required under Paragraphs 8(m) and 23) and complete lists of LSAC personnel who review requests (required under Paragraphs 8(n) and 23) in its reporting to Plaintiffs, which are noticeable based solely on a review of the reports LSAC submitted to Plaintiffs (and the ADA Monitor).  He also failed to identify that "No Decision" was being reported to Plaintiffs in a category where the only reporting options were "granted in full," "denied in part," or "denied in full."  But what is more troubling, given his obligation to assist the United States, the DFEH, and the Court, is the ADA Monitor's failure to address this particular issue even after Plaintiffs brought it to his attention.").

Department of Justice and DFEH, Letter of May 17, 2017, to Joan Van Tol, General Counsel, Law School Admission Council, Bob Burgoyne, Fulbright & Jaworski, Re: Department of Fair Employment and Housing v. Law School Admission Council, Inc.; (18) Reply to Notice of Consent Decree Violations from Counsel for LSAC, Letter of June 15, 2017, to Department of Fair Employment and Housing, Re: *DFEH v. LSAC*, No. 12-1830-EMC (N.D. Cal.)

**Opinion**

25. The Merriam Webster Dictionary defines an audit (i.e., in this matter to be conducted as independent of the parties), as "a *formal* examination of an organization[]" and "a *methodical examination* and review."[18] Thus, an independent audit was to be conducted in this matter in a reasonably valid (i.e., asking and addressing the proper issues) and reliable (i.e., conducting the audit with transparency and capability of replication) fashion. I evaluated the ADA Monitor's Report in regard to these basic competencies associated with a meaningful review and audit (e.g., the findings of the Audit are appropriately and reasonably relevant, verifiable, and trustworthy).

26. In my opinion, the ADA Monitor has not fulfilled his responsibility to provide a valid and reliable report to the Court and the Parties because the nature and scope of his review, analysis, and reporting is deficient in basic aspects of the above-listed competencies and responsibilities.  For instance, the Monitor's Report: (1) lacks substantive and methodological specificity, (2) relies on unconfirmed and non-representative data, and (3) lacks sufficient substantive analysis.  This conclusion is based on my research, writings, experience in regard to reasonable professional and scientific standards in the conduct of similar independent audits.  The basis for this opinion is discussed in the following sections of my report.

27. Firstly, the ADA Monitor's Report lacks basic specificity and detail regarding the Audit's methodology (e.g., nature of archival analyses and interviews), and does not appropriately

---

[18] https://www.merriam-webster.com/dictionary/audit (last visited Sept. 16, 2017).

9

consider and weigh applicable information to substantiate the conclusions presented. Besides a general listing of information collected, I did not observe meaningful discussion of the methodology employed by the ADA Monitor to conduct the Report.  In my experience, methodological specificity would be expected in an Audit of a nationwide decree of this magnitude.  Nor is there sufficient discussion of the reasoning and substantive analysis used to reach the conclusions stated in the Report.[19]

28. Paragraph 26 of the Consent Decree requires that the Audit provide "a detailed list of the data collected and interviews conducted."  Reasonably precise and reliable information that is capable of verification regarding numbers of interviews, files and complaints examined, and dates of data collection are not included in the Audit.[20]  Without such appropriate and reasonable specificity and detail, the ADA Monitor's Audit would not meet even basic standards of reliability and validity.

29. Secondly, the ADA Monitor's Audit appears to rely on limited and non-representative data sources.  Without additional specificity, therefore, there is no way to determine the validity and reliability of the findings.  The ADA Monitor states that aspects of the information he reviewed were selected by LSAC under his direction and at "random."  However, I find no information in the Audit regarding how this crucial random collection process was conducted.  The ADA Monitor states that he "established criteria" for selection of the files, but again, the Audit does not present meaningful information about the criteria used for review.[21]  The ADA Monitor provides that he relied on LSAC's Manager of Accommodated Testing Kim Dempsey and General Counsel Joan Van Tol to select candidate files for the ADA Monitor's review.[22]

30. In my research and experience, it is a "red flag" in conducting an "independent" audit to allow the party being audited to essentially select the documents for review, and without

---

[19] See, e.g., Report, pp. 11 ("Analysis/Conclusion: The evidence presented reflects LSAC's adherence to this recommendation.").
[20] See, e.g., Report, pp. 3 fn. 5 (Monitor reports reviewing dozens of files, but only provides "partial list.").
[21] See, e.g., Report, pp. 3-4 fn. 5.
[22] Id.

any apparent or documented follow-up and confirmation (e.g., spot checking the findings). Perhaps it is too evident that an independent monitor cannot effectively perform a valid and reliable review where the defendant's attorney is centrally engaged in the file (data) selection process.  By allowing LSAC to select the files without any documented verification process, the independence of the ADA Monitor is brought into question. Thus, it is possible the non-independent party non-randomly "cherry picked" the files, or not.  Without any documented verification process, the Court and the Parties (or an external reviewer such as myself) simply cannot answer this crucial question.  The result of these significant methodological deficiencies is that, in my opinion, there is no reasonable basis for the Court or the Parties to be able to validate the accuracy of the ADA Monitor's conclusions based on his review of candidate files as presented.

31. In conducting his Audit, the ADA Monitor relied upon data reports that LSAC provided after administration of the LSAT, pursuant to Paragraph 8 of the Decree.  Information regarding LSAC's consideration of testing accommodation requests (e.g., "granted in full," "denied in full," or "denied in part") may be extracted from these data reports.[23] The ADA Monitor relied on LSAC to extract information from the data reports, to the extent the information was included in the ADA Monitor's Report.[24]

32. As set forth in the Declaration of Joni Carrasco, Plaintiff's separate analysis of the LSAC data reports revealed errors in LSAC's reporting in regard to testing accommodation requests.[25]  This would suggest to me that the ADA Monitor did not, or chose not to, independently analyze and verify the information reported by LSAC to determine whether it was correct and reliable.  Ascertaining whether or not there may be deficiencies in data reporting is a *sin qua non* task to ensure validity and reliability, which any reasonable auditor, let alone a court-appointed ADA Monitor, should undertake in conducting a

---

[23] *See, e.g.,* Copy of LSAC's Report on Testing Accommodations (Nationwide) provided to United States for the February 2016 LSAT Administration; Copy of LSAC's Report on Testing Accommodations (California) provided to DFEH for the February 2016 LSAT Administration.
[24] *See, e.g.,* Report, pp. 5-6 fn. 6.
[25] *See, e.g.,* Carrasco Declaration ¶¶ 31, 35-38.

1   review as required by the present Consent Decree.  There was no evidence presented to

2   me to demonstrate or suggest that the ADA Monitor undertook this important

3   foundational review procedure.  Even more troubling is that there appears to be

4   immediately apparent errors that the ADA Monitor either did not observe, and/or observed

5   and chose not to report.[26]

6   33. In my view, an independent audit with a reasonable decree of methodological rigor would

7   have considered the reporting categories listed in paragraph 8(a) of the Decree (e.g., for

8   each testing accommodation requested whether the request was granted in full or denied in

9   full or denied in part;  the name of any outside consultant(s) who reviewed the request;

10   and the name(s) of all other individual(s) who reviewed the request for purposes of

11   making a substantive decision whether to grant or deny the request).  Thus, a reasonable

12   Audit procedure would minimally involve: a documented understanding and confirmation

13   (preferable in writing) of the nature of the assignment, the variables to be examined, and

14   the categories of data and information to be assessed.  After such initial examination,

15   reasonable practice may involve initial examination of the data and information to

16   consider the type of information provided and whether there are data "outliers," which

17   may lead the reviewer to consider the veracity of the information.  Other initial steps

18   would be to consider if there are missing data and information that reasonable should have

19   been expected, and/or were required, to be provided.  Additionally, a reviewer would be

20   expected to consider whether the information and data are properly coded, if spreadsheets

21   and data files are involved.  I was presented with no evidence to suggest that the ADA

22   Monitor made any such inquiries or analyses.  I note that the Best Practices Report

23   discussed the type and scope of appropriate documentation that may be required to

24   support a request for testing accommodations (Issue No. 2: Documentation).[27]

25   34. One important issue as set forth by the Consent Decree is how LSAC should evaluate such

26

27   [26] *See, e.g.,* Copy of LSAC's Report on Testing Accommodations (Nationwide) provided to United States for the February 2016 LSAT Administration; Copy of LSAC's Report on Testing Accommodations (California) provided to DFEH for the February 2016 LSAT Administration (Column for "Outside Consultant" left blank).
28   [27] Best Practices Panel Report, pp. 3-8.

documentation of requests for accommodation and, thereby, ascertain whether or not to grant or deny a request for testing accommodations (Issue No. 5: Criteria and guidelines for reviewers).[28]  The Decree required the Monitor to provide "an itemized assessment as to whether LSAC is complying with those provisions of the Decree subject to the audit" and to report to Plaintiffs "regarding LSAC's compliance with those provisions of the Decree subject to the audit." Decree, ¶ 26.  I find no evidence in the Audit the ADA Monitor fulfilled these duties.[29] There does not appear to be any listing of the bases leading to the Monitor's conclusion that LSAC complied with Issues 5, 6, and 7.  In my view, the ADA Monitor should have reasonably considered the substance of the Best Practices, and inquired whether LSAC was requiring more documentation than necessary, and whether LSAC was appropriately evaluating that documentation in determining whether to grant or deny a request for testing accommodations.

35. In my view, it is not possible for me, and presumably the Court and the Plaintiffs, to assess the validity of the ADA Monitor's conclusions without analysis of the denial of testing accommodation requests taking into account accommodation requests categorized as "no decision."  As set forth in the Declaration of Joni Carrasco, requests categorized as "no decision," in my view, should have been categorized as denials.[30]  Failure to include these requests in the analysis likely resulted in an undercounting of actual denials.[31]  This is significant because the Monitor appears to rely on the "small number of denials" to assess LSAC's compliance with the Decree.[32]

36. The ADA Monitor presents multiple and often undefined criteria to assess LSAC's compliance with the Consent Decree.[33]  In the absence of a consistent and defined metric used by the Monitor to determine LSAC's compliance with the Decree, it is not possible

---

[28] Consent Decree, ¶ 7; Best Practices Report, pp. 9-20.
[29] *See, e.g.,* Report, pp. 10 (Conclusion re: Compliance with Issues 5, 6, and 7).
[30] *See, e.g.,* Carrasco Declaration, ¶¶ 30-31.
[31] Carrasco Declaration, ¶¶ 31, 41.
[32] *See, e.g.,* Report, pp. 5, 7, and 11.
[33] *See, e.g.,* Report, pp. 7 ("substantial compliance" for Issues 1, 3, and 4); pp. 8-9 ("satisfaction" for Issues 2 and 4); pp. 10 ("complied with" for Issues 5, 6, and 7); pp. 10-11 ("adherence to" for Issues 8 and 9); and pp. 12 ("comports with" and "a clear effort to satisfy the 'minimum objectives'" for Issue 10).

for me, or the Court and the Plaintiffs to meaningfully assess what is meant by "satisfaction," "adherence to," or "a clear effort to satisfy the 'minimum objectives'" with the compliance requirements as set forth in the Consent Decree.

37. In addition to these above-listed deficiencies, next I provide below additional examples of my conclusion that the ADA Monitor's Audit is neither reasonably reliable nor valid at a most basic level of professional conduct applicable to this matter.

38. The ADA Monitor stated that "'going behind the numbers' would be unnecessarily burdensome and unwarranted."[34] Arguably, this is the point of an independent audit as was required in this matter.  It would not seem reasonable for a monitor in circumstances such these to confirm compliance with a reporting requirement without examining the accuracy of the data provided.  It is insufficient to simply acknowledge that reports were sent to Plaintiffs.  The Decree states that "[e]ach report shall provide the data required to be tracked in Paragraph 8 for the prior administration" (Decree, ¶ 23) and the ADA Monitor is required to look at data which "contradicts" any assessment (Decree, ¶ 26(e)). The ADA Monitor's failure to determine whether and, if so, the extent to which, LSAC's data were valid and reliable fatally undermines the value of the findings to the Court and the Parties.  If the ADA Monitor had taken these basic steps, he likely would have observed such deficiencies, as the column for "outside consultants" was left blank and that LSAC created the "no decision" category.[35]

39. An "interactive" collaborative process is a central concept in resolving disability discrimination and accommodation matters.[36]  I did not find evidence that the ADA Monitor considered or commented on the Best Practices Panel Report's Issue 5 requirement that "LSAC staff shall engage in cooperative and interactive communication

---

[34] Report, pp. 5-6 fn. 6.

[35] *See, e.g.,* Copy of LSAC's Report on Testing Accommodations (Nationwide) provided to United States for the February 2016 LSAT Administration; Copy of LSAC's Report on Testing Accommodations (California) provided to DFEH for the February 2016 LSAT Administration.

[36] *See, e.g.*, Peter Blanck et al., *Disability Civil Rights Law and Policy; Cases and Materials* at 245 (3d ed. 2014) (accommodation interactive process); Peter Blanck et al., *Legal Rights of Persons with Disabilities, An Analysis of Federal Law* (2d ed. 2013) at 10:16 (accommodation interactive process).

1    with candidates concerning any modifications or specific arrangements needed for the

2    provision of testing accommodations."[37]

3    40. Based on my research and experience, it appears that the "50% email" practice effectively

4    muted, rather than encouraged, potential interactive discourse between the candidate and

5    LSAC, and, thereby, did not comport with the Panel Best Practices Report's

6    recommendation, as demonstrated in the Declarations of Phillip Movaghar, Russel Dean

7    Harris, and Michael Kallman.  The Monitor's failure to identify and/or comment on the

8    "50% email" practices further brings into question the reliability and validity of the Audit

9    findings regarding testing accommodation requests acceptance and denial.

10    41. The Carrasco Declaration notes that LSAC used "white out" to alter the internal written

11    form used to summarize testing accommodation requests in the candidate file.[38]  The

12    Carrasco Declaration describes that DFEH, for example, viewed a file where a candidate

13    had originally requested double testing time (70 minutes), but received a "50% email"

14    offering testing time and one half (53 minutes).[39]  This particular candidate accepted the

15    "50% email" offer and that on the internal reporting form used by LSAC, the Request for

16    "70" minutes was "whited out" and "53" minutes written in its place.[40]  Thus, the file

17    appeared to show that the candidate had requested 53 minutes all along, and been granted

18    53 minutes.[41] Without "looking behind the numbers," the ADA Monitor erroneously

19    concluded that LSAC had complied with the recordkeeping requirements of the Consent

20    Decree.  I found no notations that the ADA Monitor was aware of and/or noted the use of

21    "white out" to alter the findings.  It is possible that Monitor was uninformed by LSAC as

22    to this practice, or chose not to not report it.  Either way, LSAC's "white out" record-

23    keeping practice, in contradiction to the information presented by the DFEH in the

24    Carrasco Declaration, at a minimum show "nonorthodox" and questionable record-

25

26    [37] Best Practices Report, pp. 15.
       [38] Carrasco Declaration, ¶ 35.

27    [39] Carrasco Declaration, ¶ 35.
       [40] Carrasco Declaration, ¶ 35.

28    [41] Carrasco Declaration, ¶ 35.

keeping and data collection regarding matters central to compliance with the Consent Decree.  At worst, LSAC's "white out" record-keeping practices are misleading (either intentionally or not) and result in LSAC's failure to "maintain" appropriate documents in accordance with the Consent Decree.  The Audit's findings, therefore, are based on information and data whose validity and reliability are suspect, and which render the ADA Monitor's conclusions as founded on incorrect and/or unsubstantiated information.

42. As set forth in the Declaration of Joni Carrasco, LSAC's reporting of denials also appears inaccurate because partial denials were reported as "granted in full," and because the requests categorized as "no decision" in actuality and effectively were "denials."  These practices more than likely resulted in an underreporting of denials, as discussed above.[42] These reporting errors would be of the kind, in my view, that a monitor should have noticed, even with minimal training in social science data collections methods.  The result is that I, and presumably other reviewers such as the Court and the Plaintiffs, are left to question the Audit's conclusions as based on the purported reduced number of accommodation request denials, which in turn rely upon incorrect and unverified (e.g., lacking validity), and unreliable data sources.

43. It appears that the ADA Monitor did not observe, or mention in his Report, that LSAC did not provide written justification of denials (Issue 6: Written Recommendations from Reviewers) and written explanations for denials (Issue 7: Written Explanations for Denials of Testing Accommodation Requests) for requests by candidates who received "50% emails" or whose requests were categorized as "no decision."  My review of the candidate files reveals that at least two (2) of the twelve (12) files the ADA Monitor identified in the Audit's Appendix B contain "50% emails" and lacked the required written justifications and explanations.[43]  In addition, it is not apparent based on the information presented in the Audit that the ADA Monitor adequately analyzed candidate files.  If he had done so, it

---

[42] Carrasco Declaration, ¶¶ 31, 41.
[43] *See, e.g.,* ▮▮▮▮▮▮ ("50% email" at LSAC ▮▮▮▮▮_000010 - 11); (▮▮▮▮▮) ("50% email" at LSAC ▮▮▮▮_000148 - 149); Declaration of Phillip Movaghar; Declaration of Michael Kallman; Declaration of Russell Dean Harris.

is reasonable to assume that he would have noted and documented LSAC's use of the "no decision" category, given that the practice reflects LSAC's failure to either grant, deny in part, or deny in full each request as required by the Consent Decree.  The limited, and potentially fatally deficient, scope of the ADA Monitor's analysis belies the Audit's conclusion that LSAC "complied" with Issues 5, 6, and 7.

44. The ADA Monitor's assignment was to evaluate implementation of the Best Practices Panel's recommendation providing that LSAC send requests not granted in full to "automatic review" by at least one external consultant (Issue 8: Automatic Review of Denials).  I find no evidence to suggest that the ADA Monitor addressed LSAC's failure to provide automatic review of requests made by candidates who received the "50% email" or whose requests were categorized as "no decision."  I would expect a reasonable monitor to address this issue because it was readily apparent that candidates were denied external review in the files referenced in the ADA Monitor's Appendix B.[44]  By contrast, it appears that the ADA Monitor focused his inquiry on the mere existence of a list of outside consultants and a log of contacts with those consultants, but we are left to wonder.

45. Another methodological deficiency is shown in the ADA Monitor's focus on the "small number of denials."[45]  My understanding was that the ADA Monitor's focus was not solely on the number of denials, but rather whether a candidate whose request was not granted in full was provided external review.  Again, the ADA Monitor did not observe, or chose not to report, that candidates receiving the "50% email" or whose requests were categorized as "no decision" did not receive external review.[46]

46. In addition, in evaluating LSAC's compliance with Issue 9 (Timely/Streamlined Appeals Process), it seems apparent that the ADA Monitor would have examined whether

---

[44] *See, e.g.,* ▮▮▮▮▮▮▮ ("50% email" at LSAC ▮▮▮▮▮▮_000010 - 11); (▮▮▮▮▮▮) ("50% email" at LSAC ▮▮▮_000148 - 149); Declaration of Phillip Movaghar; Declaration of Michael Kallman; Declaration of Russell Dean Harris).

[45] *See, e.g.,* Report, pp. 5, 7, and 11.

[46] *See, e.g.,* ▮▮▮▮▮▮▮ ("50% email" at LSAC ▮▮▮▮▮▮_000010 - 11); (▮▮▮▮▮▮) ("50% email" at LSAC ▮▮▮_000148 - 149); Declaration of Phillip Movaghar; Declaration of Michael Kallman; Declaration of Russell Dean Harris.

candidates whose requests were not granted in full were provided the opportunity to appeal LSAC's decision.[47]  The ADA Monitor merely "reviewed" LSAC's website to confirm that a description of the appeals process existed, and he stated there were two timely appeals during the relevant period.[48]  The ADA Monitor provided no additional information about what evidence he may have relied upon to reach this conclusion.

47. Lastly, based on the evidence presented, it is not possible to discern if the ADA Monitor actually reviewed candidate files, or if he primarily relied upon LSAC's self-reporting to evaluate compliance with Issue 9.  Based on the information presented to me, I am not able to address this question because the ADA Monitor provides no sources for his conclusion that there were found only two timely appeals in the relevant period.  Similar to my critique above regarding Issue 8, there is no evidence to show or suggest that the ADA Monitor examined that candidates receiving the "50% email," or whose requests were categorized as no decision, were denied an appeal.[49]

**Conclusion**

48. I have applied basic and professionally well-recognized metrics to guide my review and analysis of the ADA Monitor's Report.  The deficiencies I have identified, in my view, undermine the usefulness and relevance of the ADA Monitor's Audit. Taken together, the deficiencies that I have discussed lead me to conclude that the Audit lacks basic validity and reliability and, therefore, fails to assist the Court and the Plaintiffs to meaningfully evaluate LSAC's compliance with the Consent Decree.

49. I respectfully reserve the right to amend, add to, or supplement this declaration and report based on such new information.

_____
Peter Blanck, Ph.D., J.D.
October 26, 2017

---

[47] *See, e.g.,* Report, pp. 11.
[48] Report, pp. 11.
[49] *See, e.g.,* ███████ ("50% email" at LSAC ██████_000010 - 11); (███████) ("50% email" at LSAC ██████_000148 - 149); Declaration of Phillip Movaghar; Declaration of Michael Kallman; Declaration of Russell Dean Harris.

18

1

**APPENDICES**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# APPENDIX A

1

**APPENDIX A**

2

**CURRICULUM VITAE OF PETER BLANCK, PH.D., J.D.**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# VITA

# PETER BLANCK

Birth: 27 August 1957.  Elmont, New York, U.S.A.
Married, Wendy; Children, Jason (daughter-in-law Elise), Daniel, Albert, & Caroline; Harry (dog)

## EDUCATION

| | |
|---|---|
| 1983-1986 | STANFORD UNIVERSITY SCHOOL OF LAW, Stanford, CA.  J.D.  President, Volume 38, STANFORD LAW REVIEW. |
| 1982-1983 | HARVARD UNIVERSITY, Department of Psychology and Social Relations, Cambridge, MA.  Post-Doctoral Fellow. |
| 1979-1982 | HARVARD UNIVERSITY, Cambridge, MA.  Ph.D., Social Psychology. |
| | Doctoral Thesis: "Children's ability to decode discrepant and consistent social communications:  Learning how, when, and who to decode." |
| | Minor field:  Organizational Behavior: "Field research in organizations." |
| 1975-1979 | UNIVERSITY OF ROCHESTER, Rochester, N.Y. |
| | B.A.  Magna cum laude, Psychology. |

## EMPLOYMENT

| | |
|---|---|
| 2005-current | *University Professor*, Syracuse University–highest faculty rank granted to eight prior individuals in the history of the University, "honors faculty whose exceptional scholarly and other professional accomplishments merit recognition by peers in the U.S. and abroad." The late U.S. Senator Daniel P. Moynihan was University Professor at Syracuse. |
| | In addition, appointments as professor in the Syracuse University Colleges of Law and of Arts and Sciences, School of Education, Falk College, and the Maxwell School of Citizenship and Public Affairs. |
| 2005-current | *Chairman*, Burton Blatt Institute, Syracuse University |
| 2002-2006 | *Charles M. and Marion Kierscht Professor of Law*, University of Iowa, College of Law |
| 2000-2006 | *Director*, Law, Health Policy & Disability Center, University of Iowa, College of Law |
| 1999-2006 | University of Iowa, College of Public Health, Department of Occupational Medicine and Environmental Health, Professor (by Courtesy) |
| 1997-2006 | University of Iowa, College of Medicine, Department of Preventive Medicine and Environmental Health, Professor (by Courtesy) |

| 1994-1995 | Princeton University, Woodrow Wilson School of Public and International Affairs, Center of Domestic and Comparative Policy, Fellow |
| 1994-2006 | University of Iowa, Department of Psychology, Professor |
| 1993-2006 | University of Iowa, College of Law, Professor of Law |
| 1990-1993 | University of Iowa, College of Law, Associate Professor of Law |
| 1987-1990 | Covington & Burling.  Associate, Washington, D.C. |
| 1986-1987 | Law Clerk, Judge Carl McGowan, United States Court of Appeals, D.C. Circuit. |
| 1982-1983 | Harvard University, Graduate School of Business. Research Associate and faculty. |

## RESEARCH GRANTS, CONTRACTS, AND MAJOR GIFTS (Illustrative)

For a detailed listing of awards to LHPDC and BBI, see bbi.syr.edu; total more than $80 million.

| 2017 | American Bar Association, Commission on Sexual Orientation and Gender Identity, Commission on Disability Rights, "Sexual Orientation and Gender Identity, Disability, and Intersectionality: Implicit and Explicit Attitudes and Behaviors in the Legal Profession," PI 6 months to 1-year grant. |
| 2016 | National Institute on Disability, Independent Living, and Rehabilitation Research (NIDILRR), Administration on Community Living (ACL), U.S. Department of Health & Human Services, SE ADA Center, PI, 5-year grant. |
| 2016 | Saks Institute for Mental Health Law, Policy, and Ethics, University of Southern California, Los Angeles, Supported Decision-Making: Giving Mental Health a Voice, Sub-Contract to BBI, PI, 3-year grant. |
| 2015 | National Institute on Disability, Independent Living, and Rehabilitation Research (NIDILRR), Administration on Community Living (ACL), U.S. Department of Health & Human Services, Understanding and Increasing Supported Decision-Making's Positive Impact on Community Living and Participation Outcomes, PI, 5-year grant. |
| 2015 | YMCA Greater Grand Rapids, Mary Free Bed YMCA, Universal by Design, PI. |
| 2014 | Quality Trust for Persons with Disabilities, Administration on Community Living (HHS), National Resource Center Supported Decision-Making (NRC-SDM), PI, 5-year agreement. |
| 2014 | Onondaga Community College, U.S. Dept. Labor, Office of Disability & Employment Policy, Onondaga Pathways to Careers (OPC) Demonstration Project, BBI, 3-year grant. |
| 2013 | Quality Trust for Persons with Disabilities, Supported Decision-Making as an Alternative to Guardianship, PI, 4-year agreement. |

| | |
|---|---|
| 2013 | Tresness Family, Gift to BBI for Communication, Hope and Assistive Technology (CHAT) Program. |
| 2013 | Olinsky Law Group, Social Security disability supports, 10-year agreement. |
| 2012 | Rehabilitation Engineering and Assistive Technology Society of North America (RESNA), Accessible Technology Action Center (ATAC), Office of Disability Employment Policy (ODEP), U.S. Department of Labor. |
| 2012 | IMPAQ, Evaluation of One-stop Career Centers' Accessibility to Persons with Disabilities, U.S. Department of Labor, PI, 2-year grant. |
| 2012 | Institute for Rehabilitation and Research, National Institute on Disability Research and Rehabilitation (NIDRR), U.S. Department of Education, Community and Work Participating Disparities: A program of the ADA Participatory Action Research Consortium (ADA-PARC), Katherine McDonald BBI PI, 5-year grant. |
| 2011 | National Institute on Disability Research and Rehabilitation (NIDRR), U.S. Department of Education, Southeast ADA Center, PI, 5-year grant. |
| 2011 | U.S. Department of Veterans Affairs, Veteran Employees in Large U.S. Business, BBI PI, 1-year contract with second year option. |
| 2010 | U.S. Department of Labor/Veterans (DOL/VETS), Homeless Veterans Reintegration Project Technical Assistance Center, Gary Shaheen BBI PI, 3-year grant. |
| 2009 | National Institute on Disability Research and Rehabilitation (NIDRR), U.S. Department of Education, Center on Effective Delivery of Rehabilitation Technology (CERT) by Vocational Rehabilitation Agencies, 5-year grant. |
| 2009-2011 | New York State, Office Mental Health, Medicaid Infrastructure Grant (MIG) |
| 2008 | Rehabilitation Services Administration (RSA), U.S. Department Education, Southeast Technical Assistance & Continuing Education (TACE) Consortium, 5-year grant. |
| 2008 | Syracuse University Kauffman Foundation Enitiative Grant, Entrepreneurship Bootcamp for Veterans with Disabilities, 2-year grant. |
| 2008 | National Institute on Disability Research and Rehabilitation (NIDRR), U.S. Department of Education, Asset Accumulation and Economic Self-Sufficiency for People with Disabilities, 3-year grant. |
| 2007 | POETA (Partnership in Opportunities for Employment in Technology for the Americas), of The Organization of American States (OAS), for disability research in Latin America. |
| 2007 | World Bank, for Global Partnership for Disability and Development (GPDD). |
| 2007 | YAI/National Disability Institute, for study on corporate attitudes and disability. |
| 2007 | Israeli Ministry of Social Welfare, for the BBI/Israel Projects. |

| 2006 | National Institute on Disability Research and Rehabilitation (NIDRR), U.S. Department Education, Southeast Disability Business & Technical Assistance Center (SE DBTAC), 5-year grant. |
|------|------|
| 2006 | U.S. Department of Labor, Office of Disability Employment Policy (ODEP), for national consortium on "Disability Case Study Research Consortium on Employer Organizational Practices in Employing People with Disabilities." |
| 2006 | U.S. Department of Labor, Employment Training Administration (ETA), to evaluate emergency preparedness policies in gulf coast. |
| 2006 | U.S. Department of Labor, Office of Disability Employment Policy (ODEP), to study Self-Employment with Onondaga County, New York. |
| 2006 | Center for International Rehabilitation (CIR), international disability rights. |
| 2006 | U.S. National Institute on Disability Research and Rehabilitation (NIDRR), U.S. Depart. Education, Demand-Side Employment Placement Models for Persons with Disabilities. |
| 2006 | Destiny Corporation, BBI Project Gift. |
| 2005 | Hammerman Family Foundation, BBI Endowment Gift. |
| 2005 | Appropriation in FY 2005 Omnibus Appropriations Bill – Rehabilitation Research and Training Center (RRTC) on Workforce Investment and Employment Policy. |
| 2004 | U.S. Dept. Labor and Social Security Administration–research on Workforce Investment Act One-Stops, and Disability Program Navigators. |
| 2004 | Stan and Gail Richards, LHPDC Endowment Gift. |
| 2003 | NIDRR, U.S. Dept. Education, Asset Accumulation & Tax Policy for Persons with Disabilities. |
| 2003 | Merrill Lynch Global Philanthropy, "Corporate Culture and Disability." |
| 2003-2005 | Nellie Ball Trust Research Grant, "Stigma and Mental Disability." |
| 2003 | Guardsmark LLC, gift to establish the Alan Ross Hawley Lecture Series at the Law Health Policy & Disability Center. |
| 2002 | NIDRR, Technology for Independence: A Community-Based Resource Center. |
| 2002-2007 | Job Accommodation Network (JAN), U.S. Department of Labor, research of provision of workplace accommodations. |
| 2002 | U.S. Department of Labor, research on Workforce Investment Act. |
| 2002-2006 | NIDRR, direct Rehabilitation Research and Training Center (RRTC) on Workforce Investment and Employment Policy for Persons with Disabilities |

| | |
|---|---|
| 2002 | Milbank Foundation, disaster mitigation for persons with disabilities. |
| 2001-2007 | NIDRR, "IT Works," information technology jobs for persons with disabilities. |
| 2001 | U.S. Dept. Labor – research on Workforce Investment Act One-Stops. |
| 2000 | Microsoft – Research on Corporate disability and employment policy. |
| 2000 | NIDRR, subcontract with Community Options, Inc., Director, Researchers' Symposium – Qualitative Research Methods research on ADA and employment policy. |
| 1999-2005 | Robert Wood Johnson Foundation, subcontract with George Washington Univ., research and technical assistance employment policy and persons with disabilities. |
| 1999-2005 | U.S. Department of Justice, subcontract Great Plains Disability Bus. & Tech. Ass't. Ctr., research, technical assistance on employment policy, persons with disabilities. |
| 1999-2005 | U.S. Rehabilitation Services Administration (RSA), subcontract with University of Missouri, provide technical assistance, employment policy persons with disabilities. |
| 1999 | Polk County Health Services to conduct research and provide technical assistance on employment policy and persons with mental disabilities. |
| 1998-1999 | U.S. Social Security Administration, subcontract Iowa Dept. Human Services, conduct research employment policy, persons with disabilities. |
| 1998-2004 | NIDRR, subcontract with Community Options, Inc., ADA and employment policy. |
| 1997-1998 | Iowa CEO, to study the implications of the staffing industry on the employment of persons with disabilities, and case study of Manpower Inc. |
| 1997 | National Organization on Disability, social participation persons with disabilities. |
| 1997 | Director, Obermann Center for Advanced Studies Fellowship Grant, University of Iowa grant to study ADA. |
| 1997 | National Council on Disability to Iowa Law, Health Policy and Disability Center, grant to support conference and study of "Socially Assisted Dying." |
| 1994-2006 | Director, Law, Health Policy & Disability Center, Iowa College of Law Foundation. |
| 1992-1996 | Annenberg Washington Program, grant to study the ADA. |
| 1991-1996 | State of Wyoming, to Iowa Law College, Integration Persons with Mental Disabilities. |
| 1990-1994 | State of Oklahoma, data sharing administered at University of Iowa College of Law, Empirical Study of the Americans with Disabilities Act. |

## RESEARCH and APPLIED EXPERIENCE (Illustrative)

| | |
|---|---|
| 2011-2016 | Advisory Board, Institute on Disability and Public Policy (IDPP) |
| 2011- | Israel Ministry of Welfare and Social Services, Member, Expert Committee on Future of Deinstitutionalization and Community Living in Israel. |
| 2010- | The Saks Institute for Mental Health Law, Policy, and Ethics, Board Member, University of Southern California, Los Angeles. |
| 2008- | Centre for Disability Law and Policy, Advisory Forum Board, Galway, Ireland. |
| 2008-2012 | National Research Advisory Panel, National Technical Assistance and Research Center to Promote Leadership for Increasing Employment and Economic Independence of Adults with Disabilities (NTAR Leadership Center). |
| 2006- | Faculty Affiliate, Aging Studies Institute, Syracuse University. |
| 2004-2006 | Chair, Blue Ribbon Panel, ADA Impact Study, National Council on Disability. |
| 1995-2001 | U.S. District Court Facilitator, *Chris S. et al. v Geringer et al.,* State of Wyoming. |
| 1994-1996 | Senior Fellow, Annenberg Washington Program, "Communicating the ADA." |
| 1993-1996 | Senior Fellow, Annenberg Washington Program, "Communications Technology for Everyone: Implications for the Classroom and Beyond" |
| 1992-1993 | Fellow, Annenberg Washington Program, "The Americans with Disabilities Act" Annenberg Washington Program, "Communicating with Juries." |
| 1991-1994 | Member, Compliance Advisory Board, *Weston v. WSTS,* State of Wyoming. |
| 1988-1992 | Legal/Program Counsel, Developmental Disabilities Ser. Division, State of Oklahoma. |
| 1982-1983 | Research Associate, Graduate School of Business Administration, Harvard University. |
| 1979-1982 | Research Assistant to Robert Rosenthal, Psychology & Social Rel., Harvard University. |
| 1978-1979 | Research Assistant to Miron Zuckerman, Department of Psychology, Univ. of Rochester. |
| 1977-1978 | Research Assistant to Edward L. Deci, Department of Psychology, Univ. of Rochester. |

## PRIMARY RESEARCH, TEACHING AND PRACTICE INTERESTS

Legal:  Contracts; Civil Procedure; public law litigation; social science & law; web and technology accessibility.

Disability Law:  Americans with Disabilities Act law and policy; rights of individuals with disabilities in institutions and community settings; international disability and human rights law; accessibility and Universal Design.

Psychology and the Law:  Law and ethics in behavioral sciences; verbal and nonverbal communication in applied settings; social science experimental and field research methods.

## TEACHING EXPERIENCE

| | |
|---|---|
| 2016 | Syracuse University, College of Law, Civil Procedure. |
| 2009 & 2010 | Syracuse University, College of Law, Disability Law. |
| 2006-2007 | Syracuse University Undergraduate Honors Program. |
| 2000-2005 | Law, Health Policy, and Disability Law. |
| 1998-1999 | Learning Disability and the Law. |
| 1995 | Family, Society, and Disability Law, University of Iowa, College of Law. |
| 1991 | Federal Disability Law, University of Iowa, College of Law. |
| 1991-1993 | Litigation, Social Science & Social Change, University of Iowa, College of Law. |
| 1990-1998, 2001 | Contracts I, University of Iowa, College of Law (small and large section classes). |
| 1982 | Social Psychology, Harvard University.  Career Management, Harvard Business School. |
| 1981 | Social Psychology, Harvard University. |
| 1980 | Psychological Statistics, Harvard University. |
| 1978-1979 | Social Psychology, Introductory Psychology, University of Rochester. |

## HONORS

| | |
|---|---|
| 2015 | 2015 Distinguished Service Award, NARRTC (formerly known as the National Association of Rehabilitation Research and Training Centers). |
| 2011 | Distinguished Fellow, Institute for Veterans and Military Families, Syracuse University. |
| 2010 | Honorary Professor, Centre for Disability Law & Policy, National University Ireland, Galway; appointed by President James J. Browne. |
| 2009 | Distinguished Visiting Professor, Graduate School of Social Welfare, Hokusei Gakuen University, Sapporo, Japan. |
| 2008 | University of Rochester Sports Hall of Fame–Inducted. Varsity Squash, four letters, 1975-1979, Co-Captain, 1978-1979. |
| 2007 | Keynote Address, Israeli Knesset, Israeli Disability Day |
| 2004 | Inaugural Lecturer, Thornburgh Family Lecture, Disability Law Policy, Univ. Pittsburgh. |
| 2003-2005 | Recipient, The Nellie Ball Trust Research Grant. |
| 2000 | Switzer Scholar in Rehabilitation, National Rehabilitation Association. |
| 2000-2005 | Center Fellow, University of Iowa Center for Human Rights. |
| 1998-1999 | Advisory Committee, Research Alliance for Wellness at Work, Inc. |
| 1995-1996 | Member, General Accounting Office (GAO) Advisory Board, Report on ADA Title I. |
| 1995-1996 | Chair, Legislative & Social Issues Committee, American Association Mental Retardation. |
| 1994-2000 | Member, President's Committee on Employment of People with Disabilities. |
| 1993-1996 | Member, Legal & Social Issues Committee, American Association Mental Retardation. |
| 1993-1995 | Commissioner, American Bar Assoc. Commission on Mental & Physical Disability Law. |
| 1993-1996 | Senior Fellow, Washington Annenberg Program |
| 1992-1994 | President, Legal Process and Advocacy Division, Amer. Assoc. on Mental Retardation. |
| 1990 | Order of the Coif, Honorary, University of Iowa, College of Law. |
| 1987 | Society of Experimental Social Psychology, member. |
| 1984 | Irving H. Hellman, Jr. Memorial Fund Grant, <u>Stanford Law Review</u>, Stanford Law. |
| 1981 | Edwin B. Newman Psi-Chi/American Psychological Association Award for Excellence in Graduate Research. |
| 1981 | Sigma Xi, member; Psi-Chi, member. |
| 1977-1979 | Captain, Varsity Squash, University of Rochester. |

## STATE BAR AND COURT ADMITTANCE

Commonwealth of Massachusetts Bar, Admitted January 16, 1987.
District of Columbia Bar, Admitted November 30, 1987.
United States Court of Appeals, District of Columbia Circuit Bar, Admitted January 28, 1987.
United States Court of Appeals, Tenth Circuit Bar, Admitted March 8, 1988.
United States District Court for the District of Columbia, Admitted October 3, 1988.
United States Court of Appeals for the Federal Circuit, Admitted October 13, 1988.
United States Court of Appeals, Fifth Circuit Bar, Admitted February, 2008.
United States Court of Appeals, Eleventh Circuit Bar, Admitted June 2010.
Supreme Court of the United States, Admitted February 20, 1990.

## EDITORIAL BOARDS/JOURNAL & BOOK REFEREE (Illustrative)

Advisory Board, *Yearbook on European Disability Law & Policy* (2008-2016)
Advisory Board, *Stone Canoe: A Journal of Arts and Ideas from Upstate New York* (2007-2014).
Guest Editor, *Assistive Technology Journal* (2006-2007).
Guest Editor, *Inclusion* (2014-2015).
Guest Editor, *Journal of Occupational Rehabilitation* (2016-2017).
Editorial Board, *Inclusion* (2014- ).
Editorial Board, *Psychology, Public Policy and Law* (2006- ).
Editorial Board, and Guest Editor, *Disability Studies Quarterly* (2004- )
Contributing Editor, In Pursuit: A Blueprint for Disability Law and Policy. *American Bar Association* (1999).

Advisory Committee, National Organization on Disability, *Disability Agenda* (1998-1999).
Editorial Board, and Guest Editor, *Behavioral Sciences & the Law* (1997, 2014).
Editorial Advisory Board, *Special Education Reporter* (1995-1997).
Associate Editor, Legal Forum, *Spine* (1994-1999).
Editorial Advisory Board, *Mental & Physical Disability Law Reporter* (1993-1997), Chair (1995-1997).
Consulting Editor, *Psychology, Public Policy and Law* (1995- ).
Basic and Applied Social Psychology.
Developmental Psychology.
Journal of Personality and Social Psychology.
Journal of Occupational Behavior.
Law & Society Review.
Mental Retardation.
National Science Foundation Grants in Law & Psychology.
Personality & Social Psychology Bulletin.
Social Science & Medicine.
Telecommunications Policy Journal.
University of Nebraska Press; University of Michigan Press.
Journal of Comparative Policy Analysis.

## PROFESSIONAL ACTIVITIES (Illustrative)

President and Founding Member, Raising the Floor (RtF) U.S., 2013-.
Chairman, Global Universal Design Commission (GUDC), 2008-.
Consultant, Aging of the Union Army Research Project, University of Chicago, Dr. Robert Fogel, PI, 2000-2006.
Member, Advisory Committee for the Research Alliance for Wellness at Work, Inc. 1998-1999.
Facilitator, The Partnership for Resolution of Mental Health Issues in Wyoming, 1995-2000.
Chairman, Quality Assurance Committee, State of Wyoming, 1995-1996.
Member, State-County Management Committee, Dept. Health & Human Services, State of Iowa, 1994-1996.
Member, Executive Committee, Ctr. International Rural & Environmental Health, University of Iowa, 1992-1993.
Annenberg Washington Program, Convener, Programs on the Americans with Disabilities Act, 1992-1996.
Annenberg Washington Program, Co-Convener, Program on Communicating with Juries, 1992.
Member, Compliance Advisory Board, <u>Weston</u> v. <u>WSTS</u>, Dept. of Human Services, State of Wyoming, 1991-1994.
APA/Committee on Standards in Research (CSR), Chairman, 1990-1992.
APA/Division 41, Core Committee on Amicus Briefs, Member, 1990-1992.
APA/Division 41 Liaison with Coalition for Psychology in the Public Interest (CPPI), 1989-1990.
Amer. Acad. Judicial Ed., Course Fact Finding, Communication in the Courtroom, Harvard Law School, 1990-1993.
Henry Murray Research Center, Radcliffe College, MacArthur Foundation Grant on Longitudinal Studies Mental
          Health, Consultant, 1990-1991.

## LEGAL BRIEF PARTICIPATION, ORAL ARGUMENTS AS COUNSEL AND AMICUS

In re: Guardianship of the Person and Estate of Ryan Keith Tonner, an Incapacitated Person, Seventh Court of
          Appeals, Amarillo, Texas, No. 07-13-00308-CV (2015) (Co-counsel with Jonathan Martinis, Maame
          Gyamfi) (in preparation).
Sherrie Kaw vs. School District of Hillsborough County, United States Court of Appeals for the Fifth Circuit,
          No. 8:07-cv-02222-T-27TGW (2011). Oral Argument for Appellant Kaw (Co-counsel with Matt Dietz).
Santiago Lopez vs. Pacific Maritime Association, United States Court of Appeals for the Ninth Circuit,
          No. 09-55698 (2011, co-author w Claudia Center). Request for rehearing en banc for Amici Curiae.
American Association of Persons with Disabilities v. Holland, United States Court of Appeals for the Eleventh
          Circuit, No. 3:01-cv-01275-J-99 HTS (2010, co-author).  Request for rehearing en banc.
Alexey Korneenkov and Olesya Korneenkov v. Mukasey, United States Court of Appeals for The Fifth Circuit, No.
          07-60712 (2008, co-author).  Made Oral Argument (Aug. 2009).
U.S. v. Georgia, et al. / Goodman, Tony v. Georgia, et al., United States Supreme Court (2005, co-author Brief of
          Honorable Dick Thornburgh and the National Organization on Disability as Amici Curiae).
Chevron v. Echazabal, No. 00-1406, United States Supreme Court (2002, counsel of record, co-author of Brief of

National Council on Disability as Amicus Curiae).
EEOC v. Hertz, Case No. 96-CV-72421 DT, (E.D. Mich. S.D. Oct. 16, 1997).

## TESTIMONY BEFORE CONGRESS, LEGISLATURES, AND ADMINISTRATIVE BODIES (Illustrative)

Social Security Advisory Board, "Social Security Disability: Time for Reform," Written Commentary, March 8, 2013.
U.S. House of Representatives, Committee on Government Reform, Subcommittee on Human Rights and Wellness, Testimony on "Living with Disabilities in the United States: A Snapshot," June 24, 2004.
U.S. House of Representatives, Subcommittee on Social Security, Testimony on the definition of disability under Social Security and the ADA, July 11, 2002.
General Accounting Office (GAO), Testimony on Expert Advisory Panel, The Future of Federal Disability Policies and Programs, July 10, 2002.
U.S. House of Representatives, Subcommittee on The Constitution, Testimony on the Application of the ADA's Accessibility Requirements to Private Internet Web Sites and Services, February 9, 2000.
U.S. House of Representatives, Committee on Education and the Workforce, Remarks on the ADA, Oct. 1998.
Wyoming Legislature, Select Committee on Mental Health Issues, September & November, 1998.

## MEMBERSHIP PROFESSIONAL ORGANIZATIONS/NON-PROFIT BOARDS (Past and Present)

American Association of Applied & Preventative Psychology, Fellow.
American Bar Association, Member.
Massachusetts Bar Association, Member.
District of Columbia Bar Association, Member.
American Association on Mental Retardation, Member, and past President, Legal Process & Advocacy Division.
American Psychological Association, Member.
  Personality and Social Psychology -- Division 8.
  Psychology and Law -- Division 41.
American Psychological Society, Charter Fellow.
Law and Society Association, Member.
Disability Rights Advocates, Past Board Member (1996-2009).
National Organization on Disability (N.O.D.), Board member (1996-2009).
Disability Rights Law Center, Past Board Member (2005-2009).
YAI/National Institute for People with Disabilities Network, Trustee (2006-2014).
Beit Issie Shapiro, Professional Advisory Committee (2006-2008).
Iowa Children's' Museum, Board Member (2003-2005).
University of Rochester, Board of Rochester Athletics (2007- ).
Global Universal Design Commission (GUDC).  Chairman (2008- ).
The Sarah Jane Brain Foundation.  Advisory Board (2009).
Red House Arts Center, Syracuse, NY, Board Member (2011-2014).
The Everson Museum of Art, Syracuse, NY, Trustee (2012-2016).

## UNIVERSITY SERVICE / COMMITTEES

### Syracuse University College of Law

Appointments and Leaves (2017- )
Faculty Summer Grant Requests (2016- )
Appointments (2006-2009)
Ad Hoc Committee on Centers and Institutes (Chair, 2006-2007)
Promotion & Tenure (2006-2010)

**Syracuse University**

Syracuse University Search Committee for the University Vice President for Research (2017)
Syracuse University Strategic Plan Working Group—Change: Innovation and Institutional Renewal (2014-2015)
Advisory Board, Syracuse University Hillel (2007-2011)
Strategic Planning Workgroup, "Change: Innovation and institutional renewal–Establishing the culture, structures, and mechanisms to ensure that SU undergoes productive change" (2014-2015)

**Iowa College of Law**

Building & Equipment
Computer (2001-2002, 2003-2004, Chair)
Joint Program, Interdisciplinary Studies & Undergraduate Education
Placement Research & Professional Development
Speakers (2002-2003, Co-Chair)

**Iowa University-Wide**

Member Executive Board, University of Iowa Center on Aging (2001-2005).
Chair, Provost Task Force to Examine Issues Facing Students with Learning Disabilities (1998-1999).
Co-Chair, Task Force on the Health of the Student (1994-1995).
Advisor, Undergraduate Honors Program in Psychology (1993-2005).
Committee for Ethical, Legal and Social Issues for the Human Genome Project (ELSI) (1993-1995).
Research Advisory Committee in the Social Sciences (1993-1994).

## POST-DOCTORAL FELLOWS

| | | |
|---|---|---|
| David Dawson, Ph.D. | (1998 – 2000) | University of Iowa. |
| Naomi Schreuer, Ph.D. | (2008 – 2009) | Haifa University, Israel. |
| Tal Araten Bergman, Ph.D. | (2008 - 2009 ) | Haifa University, Israel. |
| Michal Soffer, PhD. | (2008 - 2010 ) | Hebrew University, Israel. |
| Omolara Funmilola Akinpelu, M.ED., Ph.D. | (2009 - 2012) | University of Ilorin, Nigeria. |
| Ynesse Abdul-Malak, RN, MPH, Ph.D. | (2017 - ) | Maxwell School of Citizenship and Public Syracuse University |

## PUBLICATIONS

See also http://bbi.syr.edu for listing of other web-based articles and accessible formats where possible.

1.    Blanck, P.D., Zuckerman, M., DePaulo, B.M., & Rosenthal, R. (1980).  Sibling resemblance in nonverbal skill and style. Journal of Nonverbal Behavior, 4, 219-26.

2.    Zuckerman, M., Blanck, P.D., DePaulo, B.M. & Rosenthal, R. (1980).  Developmental changes in decoding discrepant and nondiscrepant nonverbal cues. Developmental Psychology, 16, 220-28.

3.    Zuckerman, M., Larrance, D.T., Porac, J.F., & Blanck, P.D. (1980).  Effects of fear of success on intrinsic motivation, causal attribution, and choice behavior. J. Personality & Social Psychology, 39, 503-13.

4.    Blanck, P.D., Rosenthal, R., Snodgrass, S.E., DePaulo, B.M., & Zuckerman, M. (1980).  Longitudinal and cross-sectional age effects in nonverbal decoding skill and style. Resources in Education. November (ERIC Documents).

5.    Blanck, P.D., Rosenthal, R., Snodgrass, S.E., DePaulo, B.M., & Zuckerman, M. (1981). Sex differences in eavesdropping on nonverbal cues: Developmental changes. Journal of Personality and Social Psychology, 41, 391-96.

6.    Blanck, P.D., Rosenthal, R. (1982).  Developing strategies for decoding "leaky" messages: On learning how and when to decode discrepant and consistent social communications.  In R.S. Feldman (ed.), Development of nonverbal behavior in children. Pp. 203-29. New York: Springer-Verlag.

7.    Blanck, P.D., Rosenthal, R., Snodgrass, S.E., DePaulo, B.M., & Zuckerman, M. (1982).  Longitudinal and cross-sectional age effects in nonverbal decoding skill and style.  Developmental Psychology, 18, 491-98.

8.    Snodgrass, S.E., Rosenthal, R., & Blanck, P.D. (1982).  Sex role socialization via teacher's behavior and sexually stereotyped materials.  Resources in Education.  (ERIC Documents - - ED209588).

9.    Blanck, P.D., Reis, H.T., & Jackson, L. (1984).  The effects of verbal reinforcement on intrinsic motivation for sex-linked tasks.  Sex Roles, 10, 369-86.

10.   Blanck, P.D. & Rosenthal, R. (1984). The mediation of interpersonal expectancy effects: The counselor's tone of voice.  Journal of Educational Psychology, 76, 418-26.

11.   Rosenthal, R., Blanck, P.D., & Vannicelli, M. (1984). Speaking to and about patients: Predicting therapists' tone of voice.  Journal of Clinical and Consulting Psychology, 52, 679-86.

12.   Blanck, P.D., & Sonnenfeld, J.A. (1984).  The Wane Division of the American Instruments Corporation (A).  In J.A. Sonnenfeld, Managing Career Systems: Channeling the flow of executive careers. pp. 203-26. Illinois: Irwin.

13.   Blanck, P.D. & Sonnenfeld, J.A. (1984).  The Wane Division of the American Instruments Corporation (B). In J.A. Sonnenfeld, Managing Career Systems: Channeling the flow of executive careers. pp. 227-41. Illinois: Irwin.

14.   Blanck, P.D., Dowd, J.J., & Sonnenfeld, J.A. (1984).  Patrick J.J. Rich.  In J.A. Sonnenfeld, Managing Career Systems: Channeling the flow of executive careers. pp. 477-89.  Illinois: Irwin.

15.     Blanck, P.D., Rosenthal, R., & Cordell, L.H. (1985).  The appearance of justice: Judges' verbal and nonverbal behavior in criminal jury trials.  38 Stanford Law Review 89-164.

16.     Blanck, P.D., Buck, R., & Rosenthal, R. (1986). General introduction: Nonverbal communication in the clinical context.  In P.D. Blanck, R. Buck, & R. Rosenthal (eds.), Nonverbal communication in the clinical context.  pp. 1-12.  Univ. Park: Penn State Press.

17.     Blanck, P.D., Rosenthal, R., Vannicelli, M., & Lee, D.T. (1986).  Therapists' tone of voice: Descriptive, psychometric, interactional, and competence analyses.  Journal of Social & Clinical Psychology, 4, 154-78.

18.     Blanck, P.D., Rosenthal, R., & Vannicelli, M. (1986).  Talking to and about patients: The therapists' tone of voice.  In P.D. Blanck, R. Buck, & R. Rosenthal (eds.).  Nonverbal communication in the clinical context. pp. 99-143. University Park: Penn State Press.

19.     Blanck, P.D., & Turner, A.N. (1987). Gestalt research: Clinical field research approaches to studying organizations.  In J. Lorsch (ed.), The handbook of organizational behavior. pp. 109-125.  New York: Prentice-Hall.

20.     Blanck, P.D. (1987). Off the record: Nonverbal behavior in the courtroom.  Stanford Lawyer, 21 (spring), 18-23 (Author's Reply-Letters, Stanford Lawyer, 22 (Fall), 84); also reprinted in Student Lawyer (1987, December), 16(4), 8-10.

21.     Blanck, P. (1987). The process of field research in the courtroom: A descriptive analysis. Law and Human Behavior, 11(4), 337-358.

22.     Blanck, P.D., Rosenthal, R., Hart, A.J., & Bernieri, F. (1990). The measure of the judge: An empirically-based framework for exploring trial judges' behavior.  Iowa Law Review, 75(3), 653-684.

23.     Blanck, P.D. (1991).  What empirical research tells us: Studying judges' and juries' behavior.  American University Law Review, 40(2), 775-804.

24.     Grisso, T., Baldwin, E., Blanck, P.D., & Rotheram-Borus, M.J. (1991).  Standards in research: APA's mechanism for monitoring the challenges.  American Psychologist, 46(7), 758-766.

25.     Blanck, P.D. (1991).  The emerging work force: Empirical study of the Americans with Disabilities Act, Journal of Corporation Law, 16(4), 693-803.

26.     Blanck, P.D. (1992).  Psychiatry in a litigious society.  Review of Review of Clinical Psychiatry and the Law- Volume 2, Contemporary Psychology, 37(1), 15-16.

27.     Blanck, P.D. (1992).  Empirical study of the employment provisions of the Americans with Disabilities Act: Methods, preliminary findings and implications, New Mexico Law Review, 22(3), 119-241.

28.     Blanck, P.D. (1992).  On integrating persons with mental retardation: The ADA and ADR, New Mexico Law Review, 22(3), 259-76.

29.     Blanck, P.D. (1992).  Review of Mental health experts and the criminal courts.  Clinical Psychology Review, 12, 3-4.

30.     Saks, M.J. & Blanck, P.D. (1992).  Justice Improved: The unrecognized benefits of aggregation and sampling in the trial of mass torts, Stanford Law Review, 44, 815-51.

31.     Blanck, P.D., Bellack, A., Rotheram-Borus, M.J., Rosnow, R.L. & Schooler, N. (1992).  Scientific rewards and conflicts of ethical choices in human subject research.  American Psychologist, 47(7), 959-65.

32.     Blanck, P.D. & Rosenthal, R. (1992).  Nonverbal behavior in the courtroom.  In Applications of nonverbal behavioral theories and research (R. Feldman, ed.) pp. 89-115.  Lawrence Erlbaum Press: New York.

33.     Blanck, P.D. (1993).  The Americans with Disabilities Act: Putting the employment provisions to work, The Annenberg Washington Program, White Paper, Washington, D.C.

34.     Blanck, P.D. (1993). Calibrating the scales of justice: Studying judges' behavior in bench trials, Indiana Law Journal, 68(4), 1119-98.

35.     Rosenthal, R. & Blanck, P.D. (1993).  Science and ethics in conducting, analyzing, and reporting social science research: Implications for social scientists, judges and lawyers, Indiana Law J., 68(4), 1209-28.

36.     Rosnow, R.L., Rotheram-Borus, M.J., Ceci, S.J., Blanck, P.D., & Koocher, G.P. (1993).  The Institutional Review Board as a mirror of scientific and ethical standards, American Psychologist, 48(7), 821-26.  *Reprinted in* (1998) Methodological Issues & Strategies in Clinical Research, Joan E. Sieber & Alan E. Kazdin (eds.), pp. 603-709.

37.     Blanck, P.D. (1993). Interpersonal expectations in the courtroom.  In P.D. Blanck (ed.), Interpersonal expectations:  Theory, research and applications, pp. 64-87.  Cambridge University Press: New York.

38.     Blanck, P.D. (1994).  The Americans with Disabilities Act: Issues for back and spine-related disability, Spine, 19(1), 103-107.

39.     Blanck, P.D. (1994).  Straight talk on the ADA, Journal of Orthopedic & Sports Physical Ther., 19(1), 1.

40.     Blanck, P.D., Schoenberg, C., & Tenney, J. (Feb. 28, 1994).  AIDS-related benefits equation: Soaring costs times soaring needs divided by federal law, New York Law Journal, 211(38), 1-4.

41.     Blanck, P.D., Schoenberg, C., & Tenney, J. (1994). AIDS-related benefits equation: Soaring costs times soaring needs divided by federal law, AIDS Policy & Law, 9(4), 1-7
        *Reprinted in* Mealey's Litigation Reports: Americans with Disabilities Act 2(5), 20-28 (June, 1994); expanded version, AIDS Policy & Law, Buraff Publications, Washington, DC (March 4, 1994).

42.     Blanck, P.D. (1994).  Reflections on the law and ethics of the Human Genome initiative.  In Genes and human self-knowledge. pp. 183-88 (S. Lawrence, E. Fales & R. Weir, eds.), University of Iowa Press.

43.     Blanck, P.D. (1994).  Empirical Study of the Americans with Disabilities Act (1990-1993), Journal of Vocational Rehabilitation, 4(3), 211-23.

44.     Blanck, P.D. (1994).  The emerging society and the Americans with Disabilities Act.  Review of Implementing the Americans with Disabilities Act; Rights and responsibilities of all Americans, Contemporary Psychology, 39(6), 596-97.

45.     Blanck, P.D. (1994). Legal Forum, Spine, 19(15), 1653.

46.     Blanck, P.D., Anderson, J.A., Wallach, E.J., & Tenney, J.P. (1994).  Implementing reasonable accommodations using ADR under the ADA: A case of a white collar employee with bipolar mental illness, Mental & Physical Disability Law Reporter, 18(4), 458-64.

47.     Blanck, P.D. (1994).  Communications Technology for Everyone: Implications for the classroom and beyond, The Annenberg Washington Program, Washington, D.C. [Accessible CD Rom Version, 1995].

48.     Blanck, P.D. (1994).  Communicating the Americans with Disabilities Act: Transcending Compliance - - A case report on Sears Roebuck & Co., The Annenberg Washington Program, White Paper, Washington, D.C.  Reprinted (1996).  In Driving Down Health Care Costs (J. Burns, ed.), pp. 209-241, Panel Publishers: New York.

49.     Blanck, P.& Folberg, R. (1994). The Americans with Disabilities Act: Emerging issues for ophthalmologists, Ophthalmology, 101, 1635-40.

50.     Blanck, P.D. (1994).  Review of Implementing the Americans with Disabilities Act: Rights and responsibilities of all Americans, American Journal on Mental Retardation, 99(2), 224-26.

51.     Blanck, P.D. (1994).  Employment integration, economic opportunity and the Americans with Disabilities Act: Empirical Study from 1990 to 1993, Iowa Law Review, 79(4), 853-923.

52.     Wallach, E.J., Tenney, J.P. & Blanck, P.D. (Dec. 19, 1994).  Extending the ADA's reach: Sponsors of self-insured funds may be sued under Title I of the ADA, National Law Journal, B5-B7.

53.     Blanck, P.D. (1994).  Celebrating Communications Technology for Everyone, Federal Communications Law Journal, 47(2), 185-91.

54.     Blanck, P.D. (1995).  Recent developments in ADA case law and implications for spine professionals, Spine, 20(1), 116-19.

55.     Wallach, E.J., Tenney, J.P., & Blanck, P.D. (Apr. 17, 1995).  If Supervisors may be personally liable for ADA discrimination, how should employers respond? National Law Journal, C2-C3, C17.

56.     Blanck, P.D. (1995).  Resolving disputes under the Americans with Disabilities Act: A case example of an employee with a back impairment, Spine, 20(7), 853-59.

57.     Blanck, P.D. (1995).  Communications technology for everyone: Accessible curriculum, AAMR News & Notes, 7(6), 1&6; 8(1), 1&6.

58.     Blanck, P.D., Wallach, E.J., & Tenney, J.P. (1995).  Supervisor personal liability for ADA discrimination: Emerging issues for physicians, Spine, 20(13), 1528-32.

59.     Wallach, E.J., Tenney, J.P., & Blanck, P.D. (1995).  Employee rights under the ADA, Employment Law Strategist, 2(11), 8,5 (Lender Pub.).

60.     Blanck, P.D. (1995).  Assessing five years of Employment Integration and economic opportunity under the Americans with Disabilities Act, Mental & Physical Disability Law Reporter, 19(3), 385-93.

61.     Blanck, P.D. (1995).  Disaster Mitigation for Persons with Disabilities: Fostering a New Dialogue, The Annenberg Washington Program, Washington, D.C.  Reprinted in <u>AAMR News & Notes</u> (Nov.-Dec. 1995), 8(6), 3-5.

62.     Blanck, P.D. (1995).  Implementing the Americans with Disabilities Act: A Case Report on Sears, Roebuck & Co., <u>Spine</u>, 20(19), 2161-67.

63.     Cate, F.H., Blanck, P.D., & Makoul, G. (1995).  Communications in Medicine: The Annenberg Washington Program and a decade of making a difference, The Annenberg Washington Program, Washington, D.C.

64.     Blanck, P.D. (1995).  Implementing the Americans with Disabilities Act: 1996 Follow-up Report on Sears, Roebuck & Co., <u>Spine</u>, 21(13), 1602-08.

65.     Blanck, P.D. (1996).  The Appearance of Justice revisited, <u>Journal of Criminal Law & Criminology</u>, 86(3), 887-927.

66.     Blanck, P.D. (1996).  Communicating the Americans with Disabilities Act:  Transcending Compliance – 1996 Follow-up report on Sears, Roebuck & Co., The Annenberg Washington Program, Washington, D.C.

67.     Blanck, P.D. (1996).  Empirical Study of the Americans with Disabilities Act: Employment Issues from 1990-1994, <u>Behavioral Sciences & the Law</u>, 14(1), 5-27.

68.     Blanck, P.D. (1996).  Transcending Title I of the Americans with Disabilities Act: A Case Report on Sears, Roebuck & Co., <u>Mental & Physical Disability Law Reporter</u>, 20(2), 278-86.

69.     Moseley, P.L., Blanck, P., & Merritt, R. (1996). Hospital privileges and the Americans with Disabilities Act, <u>Spine</u>, 21(19), 2288-93.

70.     Blanck, P.D. (1996).  Studying the Employment Provisions of the Americans with Disabilities Act, <u>Encyclopedia Britannica: 1997 Medical and Health Annual</u>, 215-19.

71.     Blanck, P.D. & Marti, M.W. (1996).  Genetic Discrimination and the Americans with Disabilities Act: Legal, Health and Policy Implications, <u>Behavioral Sciences and the Law</u>, 14, 411-32.

72.     Blanck, P.D. & Marti, M.W. (1997).  Attitudes, Behavior, and the Employment Provisions of the Americans with Disabilities Act, <u>Villanova Law Review</u>, 42(2), 345-408.

73.     Blanck, P.D. (1997).  Assessing Employment Integration under Title I of the Americans with Disabilities Act.  <u>The Continuing Struggle: Civil Rights and the Clinton Administration</u> (C. Yu & W. Taylor, eds., Citizen's Commission on Civil Rights), 169-76.

74.     Blanck, P.D. (1997).  The Economics of the Employment Provisions of the Americans with Disabilities Act: Part I – Workplace Accommodations, <u>DePaul Law Review</u>, 46(4), 877-914.

75.     Blanck, P.D., Kirschner, K. & Bienen, L. (1997).  Socially-Assisted Dying and People with Disabilities: Some Emerging Legal, Medical, and Policy Implications.  <u>Mental & Physical Disability Law Reporter</u>, 21(4), 538-43.

76.     Blanck, P.D. (1997).  Students with Learning Disabilities, Reasonable Accommodations, and the Rights of Colleges and Universities to Establish and Enforce Academic Standards: *Guckenberger v. Boston University*. Mental & Physical Disability Law Reporter, 21(5), 679-86.

77.     Blanck, P. (1998). Debunking Myths about the Employment of Persons with Mental Disabilities, Contemporary Psychology, 43(1), 68-70.

78.     Blanck, P.D. & Butkowski, C. (1998).  Pregnancy-Related Impairments and the Americans with Disabilities Act.  Sorosky, J. (ed.) Obstetrics and Gynecology Clinics of North American, 25(2), 435-445.

79.     Blanck, P.D. (1998).  The Americans with Disabilities Act and the Emerging Workforce: Employment of People with Mental Retardation.  American Association on Mental Retardation, Washington, D.C.

80.     Blanck, P.D. & Steele, P. (1998).  The Emerging Role of the Staffing Industry in the Employment of Persons with Disabilities – A Case Report on Manpower Inc. Iowa CEO and Law, Health Policy and Disability Center, Iowa City, IA.

81.     Berven, H.M. & Blanck, P.D. (1998).  The Economics of the Americans with Disabilities Act: Part II: Patents, Innovations and Assistive Technology.  Notre Dame Journal of Law, Ethics & Public Policy, 12(1), 9-120.

82.     Bienen, L., Kirschner, K., & Blanck, P.D. (1998).  Introduction to Conference on Socially-Assisted Dying. Cornell Journal of Law & Public Policy, 7, 255-66.

83.     Blanck, P.D. (1998).  Job placement for Employees with Disabilities – Manpower Leads the Way, Employment Relations Today, 25, 57-65.

84.     Blanck, P.D. (1998).  Civil Rights, Learning Disability, and Academic Standards, Journal of Gender, Race, & Justice, 2(1), 33-58.

85.     Blanck, P.D. (1999).  Empirical Study of Disability, Employment Policy, and the ADA, Mental & Physical Disability Law Reporter, 23Z(2), 275-80.

86.     Berven, H.M. & Blanck, P.D. (1999).  Assistive Technology Patenting Trends and the Americans with Disabilities Act, Behavioral Sciences & the Law, 17(1), 47-71.

87.     Blanck, P.D. (1999).  Introduction to the Special Section: Employment and the Americans with Disabilities Act, Behavioral Sciences & the Law, 17(1), 3-5.

88.     Blanck, P.D. & Pransky, G. (1999).  Workers with Disabilities, in 14(3) State of the Art Reviews in Occupational Medicine: Special Populations and Occupational Health, 581-93 (Hanley and Belfus Pub., Glenn Pransky & Howard Frumkin, eds.).

89.     Blanck, P.D. & Berven, H.M. (1999).   Evidence of Disability after Daubert, Psychology, Public Policy and Law, 5(1), 16-40.

90.     Schwochau, S. & Blanck, P.D. (2000).  The Economics of the Americans with Disabilities Act: Part III - - Does the ADA Disable the Disabled? Berkeley Journal of Employment and Labor Law, 21(1), 271-313.

91.     Blanck, P.D. (2000).  Studying Disability, Employment Policy, and the ADA.  In Leslie Francis & Anita
        Silvers (eds.), <u>Tenth Anniversary of the Americans with Disabilities Act</u> 209-20 (Routledge Press).

92.     Blanck, P.D. & Sandler, L.A. (2000).  ADA Title III and the Internet: Technology and Civil Rights, <u>Mental
        & Physical Disability Law Reporter</u>, 24(5), 855-59.

93.     Blanck, P.D. (ed.) (2000).  Employment, Disability, and the Americans with Disabilities Act: Issues in
        Law, Public Policy, and Research, 329-55, Northwestern University Press.

94.     Blanck, P.D. (2000).  The Economics of the ADA, in P. Blanck, (ed.), <u>Employment, Disability, and the
        Americans with Disabilities Act: Issues in Law, Public Policy, & Research</u>, 201-27, Northwestern U. Press.

95.     Berven, H.M. & Blanck, P.D. (2000).  Unanticipated Economic Gains and the ADA: Assistive Technology
        Patent Trends, in P.D. Blanck, (ed.), <u>Employment, Disability, and the Americans with Disabilities Act:
        Issues in Law, Public Policy, and Research</u>, 329-55, Northwestern University Press.

96.     Marti, M.W. & Blanck, P.D. (2000).  Attitudes, Behavior, and the ADA, in P.D. Blanck (ed.), <u>Employment,
        Disability, and the Americans with Disabilities Act: Issues in Law, Public Policy, and Research</u>, 356-84,
        Northwestern University Press.

97.     Blanck, P.D., Sandler, L.A., Schmeling, J.L., & Schartz, H.A. (2000).  The Emerging Workforce of
        Entrepreneurs with Disabilities: Preliminary Study of Entrepreneurship in Iowa, <u>Iowa Law Review</u>, 85,
        1583-1670.

98.     Debate - - Blanck, P.D. & Olson, W. (2000).  The Unintended Consequences of the Americans with
        Disabilities Act [Proceedings], <u>Iowa Law Review</u>, 85, 1811-34.

99.     Blanck, P.D. & Millender, M. (2000).  Before Civil Rights: Civil War Pensions and the Politics of
        Disability in America, <u>Alabama Law Review</u>, 52, 1-50.

100.    Blanck, P.D. (2001).  Civil War Pensions and Disability. <u>Ohio State Law Journal</u>, 62, 109-249.

101.    Blanck, P.D. & Schartz, H.A. (2001).  Towards Reaching a National Employment Policy for Persons with
        Disabilities, 1-10, in <u>Emerging Workforce Issues: W.I.A., Ticket to Work, and Partnerships</u>, R. McConnell
        (ed.), Switzer Seminar Monograph Series, National Rehabilitation Association.

102.    Blanck, P.D., Schartz, H.A. & Schartz, K.M. (2001).  Labor Force Participation and Income of Individuals
        with Disabilities in Sheltered and Competitive Employment: Cross-Sectional and Longitudinal Analyses
        from Seven States during the 1980s and 1990s, <u>President's Task Force on Employment of Adults with
        Disabilities</u>.

103.    Blanck, P.D. & Song, C. (2001).  "With Malice Toward None: With Charity Toward All": Civil War
        Pensions for Native and Foreign-Born Union Army Veterans, <u>Journal of Transnational Law &
        Contemporary Problems</u>, 11(1), 1-76.  Portion reprinted in The <u>Civil War Veteran: A Historical Reader</u>,
        Larry M. Logue & Michael Barton (eds.), New York University Press, 221-26 (2007).

104.    Blanck, P.D. (2001).  Introduction to The Social Construction of Disability: Historical, Contemporary, and
        Comparative Views, <u>Journal of Transnational Law & Contemporary Problems</u>, 11(1), i-ii.

105.    Blanck, P.D. & Song, C. (2002).  Civil War Pension Attorneys and Disability Politics, University of Michigan Journal of Law Reform, 35(1 & 2), 137-217.

106.    Blanck, P.D. & Schmeling, J.L. (2002).  Americans with Disabilities Act: Recent and Pending U.S. Supreme Court Decisions and Implications for Spine Professionals, Spine, 27(4), 439-443.

107.    Zwerling, C., Whitten, P.S., Sprince, N.L., Davis, C.S., Wallace, R.B., Blanck, P.D., & Heeringa, S.G. (2002).  Workforce Participation by Persons with Disabilities: The National Health Interview Survey Disability Supplement, 1994-5, Journal of Occupational and Environmental Medicine, 44(2), 358-64.

108.    O'Day, B., Schartz, H., & Blanck, P. (eds.)  (2002).  Introduction: Disability, Public Policy and Employment, Behavioral Sciences & the Law, 20(6), 537-39.

109.    Schartz, K., Schartz, H., & Blanck, P.  (2002). Employment of Persons with Disabilities in Information Technology Jobs: A Literature Review for "IT Works," Behavioral Sciences & the Law, 20(6), 637-57.

110.    Blanck, P., Clay, L., Schmeling, J., Morris, M., & Ritchie, H. (2002).  Applicability of the ADA to "Ticket to Work" Employment Networks, Behavioral Sciences & the Law, 20(6), 621-36.

111.    Blanck, P., Linares, C., & Song, C. (2002).  Evolution of Disability in Late Nineteenth Century America: Civil War Pensions for Union Army Veterans with Musculoskeletal Conditions, Behavioral Sciences & the Law, 20(6), 681-97.

112.    Schwochau, S. & Blanck, P.D. (2003).  Does the ADA Disabled the Disabled? More Comments, Industrial Relations, 42(1), 67-77.

113.    Blanck, P.D. & Song, C. (2003).  "Never Forget What They Did Here": Civil War Pensions for Gettysburg Union Army Veterans and the Politics of Disability in Late Nineteenth Century America, William & Mary Law Review, 44, 1109-71.

114.    Blanck, P., Schartz, H.A., & Schartz, K.M. (2003).  Labor Force Participation and Income of Individuals with Disabilities in Sheltered and Competitive Employment: Cross-Sectional and Longitudinal Analyses of Seven States during the 1980s and 1990s, William & Mary Law Review, 44, 1029-1108.

115.    Odem, N. & Blanck, P. (2003).  Physician Shareholder Practice Groups and ADA Coverage, Spine, 28(3), 319-12 (Feb. 1, 2003).

116.    Schartz, H., O'Day, B., & Blanck, P. (eds.) (2003).  Introduction: Disability, Public Policy, and Technology, Behavioral Sciences & the Law, 21(1), 1-3.

117.    Ritchie, H. & Blanck, P.  (2003).  Promise of the Internet for Disability: Study of Online Services and Accessibility of Centers for Independent Living Web Sites, Behavioral Sciences & the Law, 21(1), 5-26.

118.    Klein, D., Myhill, W., Hansen, L., Asby, G., Michaelson, S., & Blanck, P.  (2003).  Opening Doors to Education:  Iowa School Website Accessibility, Behavioral Sciences & the Law, 21(1), 27-49.

119.    Blanck, P., Ritchie, H., Schmeling, J.A., & Klein, D.  (2003).  Technology for Independence: A Community-Based Resource Center, Behavioral Sciences & the Law, 21(1), 51-62.

120.    Blanck, P.  (2003).  Topic Paper: Righting the ADA--Chevron v. Echazabal: The ADA's "Direct Threat" Defense, Prepared for the National Council on Disability, Washington, DC, at http://www.ncd.gov/newsroom/publications/03publications.html.

121.    Blanck, P.D. & Schartz, H.A. (2003).  Comparative Study of the Emerging Workforce of Persons with Disabilities 347-85, in Different but Equal: The Rights of People with Intellectual Disabilities, S. Herr, H. Koh, & L. Gostin (eds.), Oxford University Press.

122.    Blanck, P., Schartz, H.A., Schartz, K., & Schmeling, J.  (2003).  "IT Works:" Disability and Employment in Information Technology, SCI/Life, Fall 2002/Winter 2003, 26-27.

123.    Blanck, P., Schur, L., Kruse, D., Schwochau, S. & Song. C.  (2003).  Calibrating the Impact of the ADA's Employment Provisions, Stanford Law & Policy Review, 14(2), 267-90.

124.    Zwerling, C., Whitten, P.S., Sprince, N.L., Davis, C.S., Wallace, R.B., Blanck, P., & Heeringa, S.G. (2003).  Workplace Accommodations for People with Disabilities: National Health Interview Survey Disability Supplement, 1994-5, Journal of Occupational and Environmental Medicine, 45(5): 517-525.

125.    Blanck, P., Schwochau, S. & Song. C.  (2003).  Is it Time to Declare the ADA A Failed Law? 301-37, in What is Causing the Decline in the Employment of People with Disabilities? : A Policy Puzzle, David C. Stapleton and Richard V. Burkhauser (eds.), UpJohn Institute.

126.    Blanck, P., Hill, E., Siegal, C., & Waterstone, M.  (2003).  Disability Civil Rights Law and Policy, Thomson/West Publishers.

127.    Logue, L. & Blanck, P.  (2004).  "There Is Nothing That Promotes Longevity Like a Pension:" Public Policy and Mortality of Civil War Union Army Veterans, Wake Forest Law Review, 39, 49-67.

128.    Blanck, P.  (2004).  Justice for All? Stories about Americans with Disabilities and their Civil Rights, Journal of Gender, Race & Justice, 8, 1-32.

129.    Blanck, P., Wilichowski, A, & Schmeling, J.  (2004).  Disability Civil Rights Law and Policy: Accessible Courtroom Technology, William and Mary Bill of Rights Journal, 3, 825-42.

130.    Schmeling, J., Schartz, H.A., & Blanck, P.  (2004).  United States Country Report in 2004, in International Disability Rights Monitor, Center for International Rehabilitation, 349-70.

131.    Sewell, R., Song, C., Smith, R., Bauman, N., & Blanck, P.  (2004). Union Army Veterans with Hearing Loss and the Evolution of Disability in America During 1862-1920, The Laryngoscope: Journal for the Triological Society, 114(12), 2147-2153, December.

132.    Schmeling, J., Schartz, H.A., & Blanck, P.  (2005).  The New Disability law and Policy Framework: Implications for Case Managers, 88-121, in Case Management for Rehabilitation Health Professionals (2nd Ed., Vol. 1, Foundational Aspects), edited by Fong Chan, Michael J. Leahy, & Jodi Saunders, Aspen Professional Services Publisher.

133.    Blanck, P. & Schartz, H.  (2005). Special Issue: Corporate Culture and Disability, Behavioral Sciences & the Law, 23(1), 1-2.

134.   Schur, L., Kruse, D., & Blanck, P. (2005).  Corporate Culture and the Employment of Persons with Disabilities, Behavioral Sciences & the Law, 23(1), 3-20.

135.   Sandler, L. & Blanck, P. (2005).  Accessibility as a Corporate Article of Faith at Microsoft: Case Study of Corporate Culture and Human Resource Dimensions, Behavioral Sciences & the Law, 23(1), 39-64.

136.   Klein, D., Schmeling, J., & Blanck, P. (2005).  Emerging Technologies and Corporate Culture at Microsoft: A Methodological Note, Behavioral Sciences & the Law, 23(1), 65-96.

137.   Ball, P., Monaco, G., Schmeling, J., Schartz, H., Blanck, P. (2005).  Disability as Diversity in Fortune 100 Companies, Behavioral Sciences & the Law, 23(1), 97-121.

138.   Searcy, M., Duck, S., & Blanck, P.  (2005). Nonverbal Behavior in the Courtroom and the "Appearance of Justice."  41-61. In Ronald Riggio & Robert Feldman (Eds.), Applications of Nonverbal Communication, Lawrence Erlbaum Publishers.

139.   Blanck, P.  (2005). Review of the "The Disability Pendulum," Law and Politics Book Review, 15(5) (May), pp. 354-58, available at http://www.bsos.umd.edu/gvpt/lpbr.

140.   Blanck, P., Hill, E., Siegal, C., & Waterstone, M.  (2005). Disability Civil Rights Law and Policy: Cases and Materials, Thomson/West Publishers.  [Teacher's Manual, 2006.]

141.   Blanck, P. (Ed.)  (2005).  Disability Rights, in the collection of the International Library of Essays on Rights (senior eds. of the library, T.D. Campbell & C. Stuart), Ashgate Publishing Limited [with reprints of Blanck et al. articles].

142.   Blanck, P., Schartz, H.A., Ritchie, H., & Rosenthal, R.  (2005). Science and Ethics in Conducting, Analyzing, and Reporting Disability Policy Research, 141-59.  In Advances in Social and Organizational Psychology: A Tribute to Ralph Rosnow, Lawrence Erlbaum Publishers.

143.   Blanck, P. (ed.) (Fall 2005).  Introduction: Special Issue on Disability Law and Policy, 25(4) Disability Studies Quarterly, Part 1, available at http://www.dsq-sds.org/_articles_html/2005/fall. (Part 2 co-edited with H. Schartz).

144.   Hendricks, D.J., Batiste, L., Hirsh, A., Dowler, D. Schartz, H., & Blanck, P.  (Fall 2005)  Cost and Effectiveness of Accommodations in the Workplace: Preliminary Results of a Nationwide Study, 25(4) Disability Studies Quarterly, Part 1, available at http://www.dsq-sds.org/_articles_html/2005/fall.

145.   Ball, P., Morris, Hartnett, J., & Blanck, P.  (2005). Breaking the Cycle of Poverty: Asset Accumulation by People with Disabilities, 25(4) Disability Studies Quarterly, Part 2; available at http://www.dsq-sds.org/_articles_html/2005/fall/.

146.   Schmeling, J., Schartz, H., Morris, M. & Blanck, P.  (2005).  Tax Credit and Asset Accumulation: Finding from the Harris/NOD Survey of Americans with Disabilities, 25(4) Disability Studies Quarterly, Part 2; available at http://www.dsq-sds.org/_articles_html/2005/fall/.

147.   Blanck, P. (2005).  Americans with Disabilities and their Civil Rights: Past, Present, Future, Workplace Discrimination and the Law in North America, NAFTA Labor Secretariat Publisher, Washington, D.C.

148.    Hill, E., Siegal, C., Waterstone, M., & Blanck, P. (2006).  Anti-Discrimination Law: Judicial Interpretations, Vol. 1: 112-116, in Encyclopedia of Disability, Sage Publishers.

149.    Schwartz, J.A., Siegal, C., Waterstone, M., Hill, E., & Blanck, P. (2006). Disability Policy, Vol. 1: 468-476, in Encyclopedia of Disability, Sage Publishers.

150.    Waterstone, M., Hill, E., Siegal, C., & Blanck, P. (2006). Discrimination Law: United States, Vol. 1: 452-461, in Encyclopedia of Disability, Sage Publishers.

151.    Schmeling, J. & Blanck, P.  (2006). United States Country Report in 2005, in International Disability Rights Monitor, Center for International Rehabilitation, xxx-xxx.

152.    Blanck, P. & Song, C.  (2005). "I Don't Believe Any Colored Ex-Soldier Can Get Justice:" Disability, Race and Pensions for Union Army Veterans, Unpublished Manuscript; on file at disability.law.uiowa.edu.

153.    Blanck, P.  (2005). Americans with Disabilities and their Civil Rights: Past, Present, Future, University of Pittsburgh Law Review, 66, 687-719.

154.    Blanck, P.  (2005). The Burton Blatt Institute: Centers of Innovation on Disability at Syracuse University, Syracuse Law Review, 56(2), 201-32.

155.    Rich, R.F., Erb, C.T., Prudhomme, T.I., & Blanck, P. (2006).  Disability Claims, Review, Hearings and Appeals Procedures: An Analysis Of Administrative Best Practices; Technical Report submitted to the U.S. Social Security Administration, Disability Research Institute, available at: www.dri.uiuc.edu/research/p04-03c/legal_issues_final_report.doc.

156.    Blanck, P., Hill, E., Siegal, C., & Waterstone, M.  (2006 Supp. to the 1st Ed.).  Disability Civil Rights Law and Policy: Cases and Materials, Thomson/West Publishers.

157.    Schartz, H., Schartz, K., Hendricks, D.J., & Blanck, P.  (2006). Workplace Accommodations: Empirical Study of Current Employees, Mississippi Law Journal, 75, 917-43.

158.    Blanck, P.  (2006).  U.S. Society and Laws Protect the Rights of Persons with Disabilities, e-Journal USA, 5-8, at: http://iipdigital.usembassy.gov/st/english/publication/2008/05/20080526235001srenod0.2262384.html#axz z2Mxa3VOw5.

159.    Schartz, H., Hendricks, D.J., & Blanck, P.  (2006). Workplace Accommodations: Evidence-Based Outcomes, Work, 27, 345–354.

160.    Blanck, P. & Malloy, R.P. (Eds.) (2006 - present). Disability Law and Policy, Book Series for Cambridge University Press.

161.    Reina, M.V., Adya, M. & Blanck, P. (2007). Defying Double Discrimination, Georgetown Journal of International Affairs, 8, 95-104.

162.    Blanck, P., Adya, M., Myhill, W., Samant, D., & Chen, P.  (2007). Employment of Persons with Disabilities: Twenty-Five Years Back and Forward, Minnesota Law and Inequality: A Journal of Theory and Practice, 25, 323-353.

163.    Blanck, P.  (2007). Enforcing ICT Accessibility Rules, <u>The Accessibility Imperative: Implications of the Convention on the Rights of Persons with Disabilities for Information and Communication Technologies, G3ict, World Times Inc.</u>, 186-93.

164.    Myhill, W. N., Samant, D., Klein, D., Kaplan, S., Reina, M. V. & Blanck, P.  (2007). Distance Education Initiatives and Their Early 21st Century Role in the Lives of People with Disabilities, in "Distance Education Research Trends" (ed. E. Bailey, Nova Science Publishers), 1-38.

165.    Logue, L. & Blanck, P.  (2008). "Benefit of the Doubt": African-American Civil War Veterans and Pensions, <u>Journal of Interdisciplinary History</u>, xxxviii: 3 (Winter, 2008), 377–399.

166.    Baker, P., Caves, K. & Blanck, P. (Eds.) (2008).  Special Issue on Disability Policy and Law, <u>Assistive Technology Journal</u>, 20, full issue.

167.    Myhill, W., Cogburn, D.L., Samant, D., Kwasi Addom, B., & Blanck, P.  (2008). Developing Accessible Cyberinfrastructure-Enabled Knowledge Communities in the National Disability Community: Theory, Practice, and Policy, <u>Assistive Technology Journal</u>, 20, 157-74.

168.    Blanck, P. (2008).  Closing: Special Issue on Disability Policy and Law, Flattening the (In-Accessible) Cyber World for People with Disabilities, <u>Assistive Technology Journal</u>, 20, 175-80.

169.    Blanck, P.  (2008).  "The Right to Live in the World": Disability Yesterday, Today, and Tomorrow, 2008 Jacobus tenBroek Disability Law Symposium, <u>Texas Journal on Civil Liberties and Civil Rights</u>, 13, 367-401.

170.    Adya, M. & Blanck, P.  (2008). Judges' Nonverbal Behavior, in <u>Encyclopedia of Psychology and Law</u>, ed. Brian L. Cutler, Sage, 388-90.

171.    Blanck, P., Myhill, W., Solstad Vedeler, J., Morales, J., & Pearlman, P.  (2009). Individuals with Cancer in the Workforce and their Federal Rights, <u>Work and Cancer Survivors</u> (ed. Michael Feuerstein), Springer, 255-76.

172.    Schur, L., Kruse, D. Blasi, J, & Blanck, P.  (2009). Is Disability Disabling in All Workplaces? Disability, Workplace Disparities, and Corporate Culture, <u>Industrial Relations</u>, 48(3), 381-410, July.

173.    Blanck, P., Schartz, H., Hendricks, DJ, Schartz, K., & Myhill, W.N.  (2009). Empirical Study of the Americans with Disabilities Act, in <u>Assessing the Employment Provisions of the Americans with Disabilities Act</u>, (BBI Working Paper; at http://bbi.syr.edu).

174.    Blanck, P., Hill, E., Siegal, C., & Waterstone, M.  (2009). <u>Disability Civil Rights Law and Policy</u>, Second Edition, Thomson/West Publishers. [Statutory Supplement & Teacher's Manual, 2009]

175.    Araten-Bergman, T., Solstad Vedeler, J., Myhill, W., & Blanck, P.  (2009). Employment and Labor, In S. Burch (Ed.) Vol. I, <u>Encyclopedia of American Disability History</u>, NY, NY: Facts on File, Inc., 321-27.

176.    Blanck, P. & Myhill, W.  (2009).  Disabilities, Care of Children with: Legal and Public-policy Perspectives; Care for Children with Mental and/or Physical Disabilities from Birth through Adolescence, Shweder, R.A., T.R. Bidell, A.C. Dailey, S.D. Dixon, P.J. Miller, & J. Modell, eds. <u>The Child: An Encyclopedic Companion</u>. Chicago: University of Chicago Press, 275-76.

177.     Schreuer, N.U., Myhill, W., Aratan, T., Samant, D., & Blanck, P.  (2009). Workplace Accommodations: Occupational Therapists as Mediators in the Interactive Process, Work, 33, 1-12.

178.     Samant, D., Soffer, M., Hernandez, B., Akinpelu, O., Adya, M., Levy, J., Repoli, E., Kramer, M., & Blanck, P.  (2009). Corporate Culture and Employment of People with Disabilities: Role of Social Workers and Service Provider Organizations, Journal of Social Work in Disability & Rehabilitation, 8, 171–188.

179.     Myhill, W. & Blanck, P.  (2009). Disability and Aging: Historical and Contemporary Challenges, Marquette University Law School Elder's Advisor, 11(1), 47-80.

180.     Logue, L. & Blanck, P.  (2009). Civil War, In S. Burch (Ed.) Vol. I, Encyclopedia of American Disability History, NY, NY: Facts on File, Inc., 181-83.

181.     Blanck, P. & Logue, L.  (2009). Lemon, George, In S. Burch (Ed.) Vol. II, Encyclopedia of American Disability History, NY, NY: Facts on File, Inc., 559-60.

182.     Stein, M.A., Stein, P.J.S. & Blanck, P. (2009). Disability, Vol. 2, Legal History Encyclopedia, NY, NY: Oxford University Press, 334-37.

183.     Hill, E. & Blanck, P.  (2009). Future of Disability Rights:  Part Three—Statutes of Limitations in Americans with Disabilities Act, "Design and Construct" Cases, Syracuse Law Review, 60, 125-159.

184.     Hill, E. & Blanck, P.  (2009).  Future of Disability Law and Advocacy and "The Right to Live in the World", Second Jacobus tenBroek Disability Law Symposium, Texas Journal on Civil Liberties and Civil Rights, 15, 1-31.

185.     Logue, L. & Blanck, P.  (2010). Race, Ethnicity, and Disability: Veterans and Benefits in Post-Civil War America, Cambridge University Press. [Reviewed in American Historical Review, 116(5), Dec. 2011, at 1504.]

186.     Soffer, M., Rimmerman, A., Blanck, P., & Hill E.  (2010). Media and the Israeli Disability Rights Legislation: Progress or Mixed and Contradictory Images? Disability and Society, 25(6), 687–700.

187.     Soffer, M., McDonald, K., & Blanck, P.  (2010). Poverty Among Adults with Disabilities: Barriers to Promoting Asset Accumulation in Individual Development Accounts, American Journal of Community Psychology, 46(3-4), 376-385.

188.     Gottlieb, A., Myhill, W., & Blanck, P.  (2010). Employment of People with Disabilities, International Encyclopedia of Rehabilitation, at http://cirrie.buffalo.edu/encyclopedia/en/article/123/.

189.     Blanck, P.  (2010). Disability and Aging: Historical and Contemporary Views, in Disability and Age Discrimination: Perspectives in Law and Psychology (ed. R. Wiener), Springer, 49-70.

190.     Nakagawa, J. & Blanck, P.  (2010). Future of Disability Law in Japan: Employment and Accommodation, Loyola International & Comparative Law Review, 33(1), 173-221.

191.     Ali, M., Schur, L., Kruse, D., & Blanck, P.  (2011).  What Jobs Do People with Disabilities Want? The Same as Anyone Else, Journal of Occupational Rehabilitation, 21(2), 199-210 (2011). Online First Article, 10-6-10 at http://www.springerlink.com/content/8784326332537566/fulltext.pdf.

192.    Blanck, P.  (2012). Disability and Diversity: Historical and Contemporary Influences, Workplace Inclusion of Employees with Disabilities, <u>Managing Diversity in Today's Workplace: Vol. 1: Gender, Race, Sexual Orientation, Ethnicity, and Power</u>, 173-208, in Women and Careers in Management Series, Michele Paludi (ed.) Praeger.

193.    Lord, J., Raja Samant, D., & Blanck, P.  (2013). Beyond the Orthodoxy of Rule of Law and Justice Sector Reform: A Framework for Legal Empowerment and Innovation through the Convention on the Rights of Persons with Disabilities, in <u>World Bank Legal Review</u> (Eds. H. Cisse, S. Muller, C. Thomas & C. Wang), 4: 45-65.

194.    Blanck, P., Goldstein, B., & Myhill, W.  (2013). <u>Legal Rights of Persons with Disabilities: An Analysis of Federal Law</u>: Second Edition, LRP Publications.

195.    Schur, L., Kruse, D., & Blanck, P.  (2013). <u>People with Disabilities: Sidelined or Mainstreamed?</u> Cambridge University Press.

196.    Blanck, P., Waterstone, M., Myhill, N. & Siegal, C.  (3rd ed., 2014). <u>Disability Civil Rights Law and Policy: Case and Materials</u>, West Publishers.

197.    Blanck, P. (Ed.) (2014). Introduction: Disability, Law and Public Policy, and the World Wide Web, <u>Behavioral Sciences & the Law,</u> 32(1), 1-3.

198.    Blanck, P. (2014). The Struggle for Web Equality by Persons with Cognitive Disabilities, <u>Behavioral Sciences & the Law</u>, 32(1), 4-32.

199.    Schur, L., Nishii, L., Adya, M., Kruse, D., Bruyere, S., & Blanck, P. (2014).  Accommodating Employees with and without Disabilities, <u>Human Resource Management</u>, 53(4), 593-621.

200.    Blanck, P. (2014). *eQuality*: The Struggle for Web Accessibility by Persons with Cognitive Disabilities, Cambridge University Press.

        Reviewed by G. Anthony Giannoumis. (2015). Articulating a right to the Web for persons with cognitive disabilities, <u>Universal Access to the Information Society</u>; DOI 10.1007/s10209-015-0432-1.

        Reviewed by Shirly Avrami. (2017). eQuality: The Struggle for Web Accessibility by Persons with Cognitive Disabilities, <u>Social Security</u> [in Hebrew] at: <u>https://www.btl.gov.il/Publications/Social_Security/bitahon101/Documents/70-new-books.pdf</u>

201.    de Paor, A., Quinn, G., & Blanck, P. (Eds.) (2015). Introduction, 1-8, <u>Genetic Discrimination: Transatlantic Perspectives on the Case for a European Level Legal Response,</u> Routledge Press.

202.    de Paor, A., Quinn, G., & Blanck, P. (Eds.) (2015). Conclusion, 269-74, <u>Genetic Discrimination: Transatlantic Perspectives on the Case for a European Level Legal Response</u>, Routledge Press.

203.    Blanck P. & de Paor, A. (2015). U.S. Legislative and Policy Response–Some Historical Context to GINA, 97-113, <u>Genetic Discrimination: Transatlantic Perspectives on the Case for a European Level Legal Response</u>, Routledge Press.

204.    Blanck, P. & Martinis, J. (2015). "The Right to Make Choices": National Resource Center for Supported Decision-Making, <u>Inclusion</u>, 3(1), 24-33.

205.    McDonald, K.E., Williamson, P., Weiss, S., Adya, M., Blanck, P. (2015). The March Goes On: Community Access for People with Disabilities, <u>Journal of Community Psychology</u>, 43(3), 348-363.

206.    Lord, J.E., Raja Samant, D., & Blanck, P. (2015). Law and People with Disabilities, in <u>International Encyclopedia of Social & Behavioral Sciences</u>, ed. J. Wright; Oxford: Elsevier, 2d ed., Vol. 13, 497–503.

207.    Blanck, P. (2015). ADA at 25 and People with Cognitive Disabilities: From Voice to Action, <u>Inclusion</u>, 3(2), 46-54.

208.    Blanck, P. (2015). *eQuality*: Web Accessibility and People with Cognitive Disabilities, <u>Inclusion</u>, 3(2), 75-91.

209.    International Labour Organization (Murray, B., Blanck, P., Myhill, W., & O'Reilly, A.: Contributing Authors) (3d edition, 2015). <u>Decent work for persons with disabilities: promoting rights in the global development agenda</u>, International Labour Organization (ILO), Geneva, Switzerland.

210.    Blanck, P. (2016). ADA at 25 and Persons with Cognitive Disabilities: From Action to Inclusion, <u>Inclusion</u>, 4(1): 1-5.

211.    Blanck, P. (2016). The First "A" in the ADA: And 25 More "A"s Toward Equality for Americans with Disabilities, <u>Inclusion</u>, 4(1): 46-51.  *Reprinted as* Blanck, P. (2016). The First "A" in the ADA: And Twenty-Five More "A"s Towards Equality for Americans with Disabilities, in <u>The Future of Disability Law: Presentations from the 2015 Jacobus tenBroek Disability Law Symposium</u> 27-36 (ed. D. Ferleger; National Federal of the Blind, Baltimore: MD).

212.    Morris, M., Rodriguez, C., & Blanck, P. (2016). ABLE Accounts: A Down Payment on Freedom, <u>Inclusion</u>, 4(1): 21-29.

213.    Blanck, P. (2016, April 29). Universal Architectural Design and People with Disabilities, <u>Numbers Magazine by Kreab</u>, 14, 64-69 (Spanish and English).

214.    de Paor, A. & Blanck, P. (2016). Precision Medicine and Advancing Genetic Technologies—Disability and Human Rights Perspectives, Special Issue on Precision Medicine, Law & Disability, <u>Laws</u>, 5(3), 36-59.

215.    Ekberg, K., Pransky, G., Besen, E., Fassier, J., Feuerstein, M., Munir, F., & Blanck, P. (2016). New Business Structures Creating Organizational Opportunities and Challenges for Work Disability Prevention, <u>Journal of Occupational Rehabilitation</u>, 26(4), 480-489.

216.    Pransky, G., Fassier, J.P. Besen, E., Blanck, P., Ekberg, K., Feuerstein, M., Munir, F. (2016). Sustaining Work Participation across the Life Course, <u>Journal of Occupational Rehabilitation</u>, 26(4), 465-479.

217.    Blanck, P. & Flynn, E. (Eds.) (2017). <u>Routledge Handbook of Disability Law and Human Rights</u>, Taylor & Francis Group, London, UK.

218.    Blanck, P. (2017). *eQuality*: The Right to the Web, in <u>Routledge Handbook of Disability Law and Human Rights</u>, 166-94, Taylor & Francis Group, London, UK.

219.    Blanck, P., Campanella, T., & Martinis, J. (2017). Advocacy and Legal Considerations to Ensure Civil Rights, in <u>A Comprehensive Guide to Intellectual and Developmental Disabilities</u> (eds. Michael

Wehmeyer, Ivan Brown, Maire Percy, Karrie Shogren, & Alan Fung), 79-88 (2nd ed., 2017, Paul H. Brookes Publishing Company).

220.    Arstein-Kerslake, A., Browning, M., Watson, J., Martinis, J., & Blanck, P. (2017). Future Directions in Supported Decision-Making, <u>Disability Studies Quarterly</u>, 37(1).

221.    Blanck, P. (2017). Disability in Prison, <u>University of Southern California Interdisciplinary Law Journal</u>, 26(2), 309-22.

222.    Jeste, D., Eglit, G., Palmer, B., Martinis, J., Blanck, P., & Saks, E. (2017). An Overview of Supported Decision in Serious Mental Illnesses, <u>Psychiatry: Interpersonal and Biological Processes</u>, xx, xx-xx.

223.    Giannoumis, A.G., Land, M., Wondwossen, B., & Blanck, P. (2017). Web Accessibility and Technology Protection Measures: Harmonizing the rights of persons with cognitive disabilities and copyright protections on the web, <u>Cyberpsychology: Journal of Psychosocial Research on Cyberspace</u>, Special issue on "Internet use and disability–risks, opportunities and challenges," *11*(1), article 5. doi: 10.5817/CP2017-1-5.

224.    Blanck, P. (2017). Web Accessibility for People with Cognitive Impairments: A Legal Right? In <u>Global Inclusion: Disability, Human Rights, and Information Technology</u> (eds. Michael Stein & Jonathan Lazar), University of Pennsylvania Press, 41-57.

225.    Blanck, P. & Rotella, M. (2017, March 21). Universal Design and People with Disabilities: "Destiny Arms," a Global Universal Design Commission Living Laboratory, <u>Numbers Magazine by Kreab</u> 19, 59-61 (Spanish and English).

226.    Wehmeyer, M., Shogren, K., Campanella, T., Martinis, J., & Blanck, P. (2017). Supported Decision-Making as an Alternative to Guardianship and Means of Increasing Self-Determination for People with Intellectual and Developmental Disabilities, xx-xx, in <u>Handbook of Positive Psychology in Intellectual and Developmental Disabilities: Translating Research into Practice</u> (eds. M. Wehmeyer, K. Shogren, & N. Singh) (Springer: NY).

## Forthcoming Publications and Working Papers

227.    Perry, M.L., Rotella, M., & Blanck, P. (2017, November __). Universal Design's Positive Return on Investment and Social Impact: The Mary Free Bed YMCA Living Laboratory and Study, <u>Numbers Magazine by Kreab</u> xx, xx-xx (Spanish and English) (in press).

228.    Logue, L. M. & Blanck, P. (2018). <u>Heavy Laden: Union Veterans, Psychological Illness, and Suicide</u>, Cambridge University Press (in press).

229.    Shogren, K., Wehmeyer, M., Martinis, J., & Blanck, P. (2018). <u>Supported Decision-Making: Theory, Research, and Practice to Enhance Self-Determination and Quality of Life</u>, Cambridge University Press (in press).

230.    Blanck, P. & Adya, M. (2018). Future Directions in Employment, Occupational Rehabilitation, and Disability: Introduction to the Special Section, <u>Journal of Occupational Rehabilitation</u> (P. Blanck & M. Adya, eds.) (in press).

231.   Uyanik, H., Shogren, K., & Blanck, P. (2018). Supported Decision-Making:  Implications from Positive Psychology for Assessment and Intervention in Rehabilitation and Employment, Journal of Occupational Rehabilitation (in press).

232.   Schur, L., Han, K., Kim, A., Ameri, M., Adya, M., Blanck, P., & Kruse, D. (2018). Disability at Work: A Look Back and Forward, Journal of Occupational Rehabilitation (in press).

233.   Harpur, P., Connolly, U., & Blanck, P. (2018). Hierarchies of Impairments at Work in Australian and Irish Workers Access to Compensation for Injuries, Journal of Occupational Rehabilitation (in press).

234.   Blanck, P., Martinis, J., et al. (2018). Supported Decision-Making as an Alternative to Guardianship: Law, Policy, Research, and Practice, American Association on Intellectual and Developmental Disabilities (AAIDD) (in preparation).

235.   Giannoumis, A.G. & Blanck, P. (2018). Future of Information and Communications Technology for People with Disabilities: A Comparative Case Study of Auto-Personalization with Implications for Occupational Rehabilitation (in revision).

236.   Blanck, P. (2019). *eQuality* 2.0: The Struggle for Web Accessibility by Persons with Cognitive Disabilities, 2d edition, Cambridge University Press (in preparation).

237.   Blanck, P., Waterstone, M., & Martinis, J. (2nd ed., 2019). Treatise on Disability Civil Rights Law and Policy, West Publishers (in preparation).

238.   Soffer, M., McDonald, K., & Blanck, P. (2019). Community Participation for Individuals with Disabilities, (in preparation).

239.   Hammel, J., McDonald, K. E., Frieden, L., & Blanck, P. (2019). People with Disabilities and the Americans with Disabilities Act Participatory Action Research (ADA-PARC) Consortium (in preparation).

## Newspaper/Magazine/Newsletter Articles and Commentary

Blanck, P. (Mar., 8, 2010).  Commentary:  E-Books Must Be Accessible, and That Means Audio, <u>The Chronicle of Higher Education,</u> at http://chronicle.com/article/E-Books-Must-Be-Accessible/64518/.

Blanck, P. (Nov. 11, 1991). Persons with disabilities can be assets to business. O'Brien County Bell, Primghar, IA.

[Reprinted] (Nov. 14, 1991).  Disability act being phased in. Tama News-Herald, Tama, Iowa.

[Reprinted] (Dec. 4, 1991). Disability act will soon begin to have an impact.  Bloomfield Democrat, Bloomfield, IA.

Blanck, P.D. (Oct. 7, 1992).  Disabilities act myths are often unfounded.  Journal-Gazette, Fort Wayne, IN.

[Reprinted] (Oct. 12, 1992).  Disabilities getting a bad rap. Middlesex News, Framingham, MA.

[Reprinted] (Oct. 22, 1992).  Look at reality, not myth, in disabilities act.  Valley Foothills News, Yuma, AZ.

[Reprinted] (Oct. 23, 1992).  Realities, myths of disabilities.  The Evening Bulletin, Providence, RI.

[Reprinted] (Oct. 23, 1992).  Realities, myths of disabilities.  The Providence Journal, Providence, RI.

Blanck, P.  (Jan. 1993).  Americans with disabilities: The hidden electorate. Region VIII, AAMR Newsletter, ND.

Blanck, P.D. (Sept. 24, 1993).  ADA – Separating fact from fiction.  31(3) FYI at 4, U. of Iowa.

[Reprinted] (Oct. 19, 1993).  Emphasize the facts about disabilities act.  Des Moines Register, Iowa (at 7a).

Blanck, P.D. (Dec. 1993).  Americans with Disabilities Act and health care reform.  Scripps-Howard News service.

Blanck, P.D. (Dec. 1993).  Judges and juries are getting a bad rap.  Scripps-Howard News service.

[Reprinted] (Nov. 26, 1993).  Judging juries.  Syracuse Herald-Journal, Syracuse, NY.

[Reprinted] (Nov. 29, 1993).  Judges and juries do better than the public might think. Daily Local News, West Chester, PA.

[Reprinted] (Nov. 30, 1993).  Jurors do a better job than most people think.  Winston-Salem Journal, Winston-Salem, NC.

Blanck, P. (Dec. 1994).  Transcending the ADA at Sears, Roebuck and Co.: For the price of dinner and a movie.

Blanck, P.D. (Jan. 1995).  Buck v. "The Bell Curve."

Blanck, P.D. & Pope, M.H. (1995).  Editorial: Spine research, law and public policy. 20(5) <u>Spine</u> 511-12.

Blanck, P.D. (Sept. 1995).  Editorial: Disaster Mitigation for People with Disabilities.

Blanck, P.D. (May 6, 1998).  Letter to Editor: <u>JAMA</u>, 279(17), 1349.

Blanck, P.  (Sunday, Sept. 2, 2001). Op. Ed. Business: Make Use of Disabled Work Force.  IA City Press Cit., 9A.

Blanck, P.  (Aug. 2005). Guest Column, Corporate Culture & Disability, ADA Compliance Guide Newsletter, Washington, D.C., available at http://www.thompson.com.

Logue, L. & Blanck, P. (Apr. 6, 2017). A Creature of Its Time: The Pension Bureau, National Museum of Civil War Medicine, The Clara Barton Missing Soldiers Office, available at: http://www.clarabartonmuseum.org/pension/.

## Harvard Business School Case Publications

9-483-031(1982).          Patrick J.J. Rich (with J. Dowd).

9-483-050 (1982).         A note on career planning in industry.

9-483-058 (1982).         The Wane Division of the American Instruments, Corporation (A).

9-483-094 (1982).         The Wane Division of the American Instruments, Corporation (B).

## PRESENTATIONS

   See also http://bbi.syr.edu for listing of other web-based presentations and accessible formats where possible.

1.     Blanck, P., Reis, H.T., & Jackson, L. (1979).  The effects of the verbal reinforcement on intrinsic motivation for sex-linked tasks.  Presentation meeting of the American Psychological Association, NY.

2.     Blanck, P.D., Rosenthal, R., Snodgrass, S.E., DePaulo, B.M, & Zuckerman, M. (1980).  Longitudinal and cross-sectional age effects in nonverbal decoding skill and style.  Presentation at the meeting of the Eastern Psychological Association, Hartford.

3.     Blanck, P.D., Rosenthal, R., Snodgrass, S.E., DePaulo, B.M., & Zuckerman, M. (1980).  Developmental changes in females' superiority at decoding nonverbal cues.  Presentation at the meeting of the American Psychological Association, Montreal.

4.     McLeod, P.L., Rosenthal, R., Blanck, P., & Snodgrass, S.E. (1980). Micromomentary movement and the decoding of face and body cues.  Presentation meeting of American Psychological Association, Montreal.

5.     Blanck, P.D. & Rosenthal, R. (1980).  Nonverbal sensitivity and athletic team performance.  Presentation at the meeting of the New England Psychological Association, Boston.

6.     Blanck, P.D. & Rosenthal, R. (1981).  Measuring sensitivity to verbal and nonverbal discrepant and consistent multichannel messages: The MOVANS Test.

7.     Presentation at the meeting of the Eastern Psychological Association, New York.

8.     Snodgrass, S.E., Rosenthal, R., & Blanck, P. (1981).  Sex role association via teachers' behavior and sexually stereotyped materials.  Presentation at meeting of Association of Women in Psychology, Boston.

9.     Blanck, P.D. & Rosenthal, R. (1981).  Nonverbal styles and skills in best-friend relationships.  Presentation at the meeting of the New England Psychological Association, Brandeis University.

10.    Blanck, P.D., Rosenthal, R., & Cordell, L.H. (1985).  Nonverbal communication in the clinical and legal context.  Presentation at the meeting of the California Psychological Association, San Francisco.

11.     Blanck, P.D. & Rosenthal, R. (1986).  Judges' verbal and nonverbal in criminal jury trials.  Symposium of jury decision-making.  Presentation at the meeting of the American Psychological Association, Washington, D.C. Colloquium. (1986). Trial judges' behavior in criminal jury trials.  U. Nebraska, Lincoln, Law School.

12.     Blanck, P.D. (1988).  The Archeology of Field Research in the Courtroom.  Presentation at the meeting of the Law and Society Association, Vail, Colorado.

13.     Blanck, P.D. (1989).  Trial judges' behavior in criminal jury trials.  University of Iowa, College of Law.

14.     Bernieri, F., Blanck, P.D., Rosenthal, R., Vannicelli, M., & Yerrell, P.H. (1990).  Therapists' speech: Channel congruency, affect, and variability. Presentation at the meeting of the American Psychological Association, Boston, MA.

15.     Blanck, P.D. (1990).  Legal policy and methodological issues in deinstitutionalizing the mentally retarded.  Presentation at the meeting of American Psychology-Law Society Division 41 Conf., Williamsburg, VA.

16.     Blanck, P.D. (1990).  Panelist on "Selecting impartial juries."  Annenberg Washington Program Forum, Washington, D.C.

17.     Blanck, P. (1991).  Ethical, moral, and legal issues in the primary and secondary analysis of videotape data of family interactions.  Presentation at Henry Murray Research Center, Radcliffe College, Harvard Univer.

18.     Blanck, P.D. (1991).  Empirical study of the Americans with Disabilities Act: Model of Study and Preliminary Results.  Presentation at the American Association for Mental Retardation, Washington, D.C.

19.     Blanck, P.D. (1991).  The interface of law and psychology, Keynote at the Iowa Psychological Association meeting, Iowa City, IA.

20.     Blanck, P.D. (1991).  The Americans with Disabilities Act: A new Bill of Rights, Presentation at the University of Iowa, College of Law celebration of the Bicentennial of the Bill of Rights, Iowa City, IA.

21.     Saks, M.J. & Blanck, P.D. (1992).  Improving on Justice: The Unrecognized Benefits of Sampling and Aggregation in the Trial of Mass Torts.  Presentation at the meeting of the American Association of Law Schools, San Antonio, TX.

22.     Blanck, P.D. (1992).  The Americans with Disabilities Act, Colloquium, Department of Sociology, University of Iowa.

23.     Blanck, P.D. (1992).  Ethical and legal implications of the human genome initiative.  Presentation at the Iowa Humanities Symposium, "Genes and Human Self-Knowledge," University of Iowa, College of Medicine, Iowa City, IA.

24.     Blanck, P.D. (1992).  Americans with Disabilities Act: Advising employers and employees.  Presentation at the University of Iowa, College of Law Symposium (CLE) on Employee Rights and Benefits.

25.     Blanck, P.D. (1992).  Introduction to Program on "Communicating with Juries." Presentation at the Annenberg Washington Program, Washington, D.C.

26.     Blanck, P.D. (1992).  The Emerging Work Force of Persons with Disabilities: The ADA and ADR.  Address to the Industry-Labor Council Meeting "Giving Us the Tools," National Center for Disability Services, St. Louis, MO.

27.     Blanck, P.D. (1992).  The Emerging Work Force of Persons with Disabilities.  Address to the Equal Employment Opportunity Commission, Washington, D.C.

28.     Blanck, P.D. (1992).  Americans with Disabilities Act: Advising employers and employees.  Presentation at the University of Iowa, College of Law (CLE).

29.     Blanck, P.D. (1992).  Fact Finding and Decision Making, Address at the meeting of the Ohio Judicial Conference, Columbus, OH.

30.     Blanck, P.D. ((1992).  Americans with Disabilities Act: Facts and Myths.  Presentation at the University Hospital School Rounds, University of Iowa.

31.     Blanck, P.D. (1992).  Americans with Disabilities Act: The Basics, Invited Lecture at Goodwill Industries, Inc. & Iowa City Chamber of Commerce, Iowa City, IA.

32.     Blanck, P.D. (1992).  Americans with Disabilities Act: Basics, Invited Lecture at Alliance for the Mentally Ill meeting, Iowa City, IA.

33.     Blanck, P.D. (1993).  The Emerging Work Force: Studying the ADA.  Invited Public Address at the Woodrow Wilson School of Public Policy, Princeton University.

34.     Blanck, P.D. (1993).  Americans with Disabilities Act: Issues for Rehabilitation Professionals, Invited Lecture at Rehabilitation Psychology Program, University of Iowa.

35.     Blanck, P.D. (1993).  Americans with Disabilities Act: Issues for Pulmonary Physicians, Invited Rounds at Univ. Iowa Hospitals.

36.     Blanck, P.D. (1993).  Social Change through Law:  Where is the Difference, Invited Presentations, Teaching Texts & Diversity, University of Iowa.

37.     Blanck, P.D. (1993).  The ADA and ADR, Invited Presentation, American Association on Mental Retardation Convention, Washington, D.C.

38.     Blanck, P.D. (1993).  Americans with Disabilities Act: Issues for Eye Researchers and Clinicians, Invited Rounds Univ. Iowa Hosp.

39.     Blanck, P.D. (1993).  The ADA and ADR, Invited Presentation, USPDI Conference on ADA and Technology, Washington, D.C.

40.     Blanck, P.D. (1993).  The ADA and ADR, Invited Presentation, Access Center Conference, Davenport, IA.

41.     Blanck, P.D. (1993).  Field of Dreams and the ADA, Keynote Address, Iowa ARC, Cedar Rapids, IA.

42.     Blanck. P. (1993). Rural employment and the ADA, Invited Address, Rural Employment Alt., Conroy, IA.

43.     Blanck, P.D. (1993).  Implementing the ADA, Keynote, Missouri Association County Developmental Disabilities Ser., St. Louis, MO.

44.     Blanck, P.D. (1993).  Implementing the ADA, Invited Address, Iowa City Public Library, IA.

45.     Blanck, P.D. (1994).  Health care reform: Access and partnerships. Presentation to the President's Committee on Mental Retardation Health Care Reform Conference, Washington, D.C.

46.     Blanck, P.D. (1994).  ADA and ADR, Address to the Iowa Risk Project, Iowa City, IA.

47.     Blanck, P.D. (1994).  Putting the employment provisions of the ADA to work, CLE, Univ. Iowa, College of Iowa, Iowa City, IA.

48.     Blanck, P.D. (1994).  Introduction/Moderator to Program "Communications technology for everyone," Conference at the Annenberg Washington Program, Washington, D.C.

49.     Blanck, P.D. (1994).  Emerging issues in ADA and ADR, Address to the American Association on Mental Retardation Annual Convention, Boston, MA.

50.     Blanck, P.D. (1994).  Moderator, Implementing Consent Decrees, American Association on Mental Retardation Annual Convention, Boston, MA

51.     Blanck, P. (1994). Inclusive Education and the ADA, Presentation at the Department of Special Education, Univ. Iowa, Iowa City, IA.

52.     Blanck, P.D. (1994). Community integration and the ADA, Invited Address, Barry-Lawrence Retreat, Branson, MO.

53.     Blanck, P.D. (1994).  Communications Technology for everyone.  Invited Address, Smithsonian Museum, Washington, D.C.

54.     Blanck, P.D. (1994).  Empirical Study of the ADA, Invited Address, Department of Psychology, & Woodrow Wilson School, Princeton University, NJ.

55.     Blanck, P.D. (1994).  The Appearance of Justice, Moderator for conference co-sponsored by Princeton University, Woodrow Wilson School, and the Annenberg Washington Program, Princeton, NJ.

56.     Blanck, P.D. (1995).  On diversity, disability, and employment, Invited address, American Association of Law Schools Conference, New Orleans, LA.

57.     Blanck, P.D. (1995).  Human rights and persons with intellectual disability: International and national perspectives, Symposium, Yale Law School, New Haven, CT.

58.     Blanck, P.D. (1995).  ADA and occupational medicine, Invited address, Iowa Conference on Occupational Medicine, Iowa City, IA.

59.     Blanck, P.D. (1995).  Implications of ADA for Psychologists, Invited address, American Psychology–Law Society Conv., NY, NY.

60.     Blanck, P.D. (1995).  ADA in the Workplace – Evolutionary or Revolutionary, Invited address, California Committee on Employment of Persons with Disabilities Conference, Sacramento, CA.

61.     Blanck, P.D. (1995).  ADA in the workplace: "Back" to work, Invited address, Southam Occupational Health & Safety Conference, Toronto, Canada.

62.     Blanck, P.D. (1995).  ADA's Impact on the Workplace: Empirical Findings, Invited address, National Employment Lawyer's Association, San Francisco, CA.

63.     Blanck, P.D. (1995).  U.S. Disability Policy and Law, Invited Address to Handikapp Ombudsmannen, Stockholm, Sweden.

64.     Blanck, P.D. (1995).  Voices of Freedom: America Speaks Out on ADA, National Council on Disability Forum, Washington, D.C.

65.     Blanck, P.D. (1995).  Work Force Diversity and the ADA, Invited Address, Northern States Power Company, Minneapolis, MN.

66.     Blanck, P.D. (1995).  ADA, Employment, Civil Rights. Invited Address, American Association on Mental Retardation Public Policy Forum, Washington, D.C.

67.     Blanck, P.D. (1996).  Persons with Mental Retardation in the Juvenile Justice System.  Invited Address, American Association on Mental Retardation Annual Conference, San Antonio, TX.

68.     Blanck, P.D. (1996).  Institutional reform litigation.  Panel Address, American Association on Mental Retardation Annual Conference, San Antonio, TX.

69.     Blanck, P.D. (1996).  How Does ADA Work for You? / Getting ADA to Work for You.  Invited Address, St. Francis Health Care Center, Green Springs, OH.

70.     Blanck, P.D. (1996).  The ADA and internal medicine, Medicine & Society Lecture Series, Department of Internal Medicine, University of Iowa.

71.     Blanck, P.D. (1996).  The ADA and rehabilitation medicine, Prince Lecture and Prince Visiting Professorship, Rehabilitation Institute of Chicago, Northwestern University, IL.

72.     Blanck, P.D. (1996).  Emerging ADA Law, Faculty Workshop, Northwestern University Law School.

73.     Blanck, P. (1996).  Emerging Issues under the ADA, Keynote Address, Assoc. ADA Coordinators Conference, Raleigh Durham, NC.

74.     Blanck, P.D. (1996).  ADA Title I, Ergonomics and Workers' Compensation Law, Invited Address, Worksafe Iowa Conference, Reducing Workplace Injuries & Illnesses through Ergonomics, Iowa City, IA.

75.     Blanck, P.D. (1996).  Transcending the ADA, Invited Address, Villanova Law School Symposium on the ADA, Villanova, PA.

76.     Blanck, P. (1996).  Disability and Rural Health, Health in a Changing Rural Environment Conf., IA City.

77.     Blanck, P.D. (1997).  The Ergonomics of the ADA, Invited Address, DePaul Law School, Symposium on the ADA, Chicago, IL.

78.     Blanck, P. (1997). Socially Assisted Dying: Opening Remarks. Conf. Socially Assisted Dying, Northwestern University, Chicago, IL.

79.     Blanck, P.D. (1997).  ADA and Psychiatry, Grand Rounds, Department of Psychiatry, University of Iowa.

80.     Blanck, P. (1997).  Corporate Culture and the ADA, ADA Title I Conference Sponsored by the Industry-Labor Council, Chicago, IL.

81.     Blanck, P.D. (1997).  The emerging role of the staffing industry in employing people with disabilities. Working together, leading the way, Conference sponsored by Iowa CEO, Des Moines, IA.

82.     Blanck, P.D. (1997).  Students with Learning Disabilities, Reasonable Accommodations, and the rights of institutions of higher education to establish and enforce academic standards.  Invited Presentation at the Journal of Gender, Race and Justice, Annual Symposium, Iowa City, IA.

83.     Blanck, P.D. (1998).  Exploring the Future: Trends and Challenges. Keynote Address at Region VII, Four State, Issues Forum, Kansas City, MO. [also speaking Economic Cents of Hiring Persons with Disabilities.]

84.     Blanck, P. (1998). Human & Civil Rights: An Iowa Perspective. Keynote 1998 Iowa Civil Rights Commission, Des Moines, IA.

85.     Blanck, P. (1998).  ADA: Issues and Impact. Invited Presentation at Current Topics in Occupational Health Symp., Iowa City, IA.

86.     Blanck, P.D. (1998).  Treatment and Habilation and the ADA.  Invited Presentation, American Bar Assoc. Conference "In Pursuit" … A Blueprint for Disability Law and Policy: ABA National Conference.

87.     Blanck, P.D. (1998).  Closing Roundtable.  Invited Moderator at American Bar Association Conference "In Pursuit" … A Blueprint for Disability Law and policy: An ABA National Conference.

88.     Blanck, P.D. (1998).  The Emerging Role of the Staffing Industry in Employing People with Disabilities and Manpower, Inc., Keynote Address, Shriners Hospitals Choices Conference, Chicago, IL.

89.     Blanck, P.D. (1998).  The ADA and the Emerging Workforce. Invited Address, American Association on Mental Retardation Disability Summit, Washington, D.C.

90.     Blanck, P. (1998).  ADA, Disabilities, and Discrimination in Health Care, Presentation before the Bioethics Forum, Univ. Iowa.

91.     Blanck, P.D. (1998).  Statement of Professor Peter David Blanck, Before the U.S House of Representatives Committee on Education and the Workforce, Monday, October 5, 1998, Washington, D.C.

92.     Blanck, P.D. (1998).  Statement of Professor Peter David Blanck, Before the U.S. Commission on Civil Rights, Public Hearings on the Americans with Disabilities Act, Thursday, November 12, 1998, Washington, D.C.

93.     Blanck, P. (1999).  Work and Disability. Invited Address, Annual Meeting of the American Assoc. Law Schools, New Orleans, LA.

94.     Blanck, P.D. (1999).  Civil War Pensions, Civil Rights, and the Americans with Disabilities Act. Invited Address, Symposium on ADA Backlash, University of California at Berkeley.

95.     Blanck, P.D. (1999).  The ADA and the Emerging Workforce. Invited Address, Annual Colloquium, University of Iowa, Department of Rehabilitation Counseling.

96.     Blanck, P. (1999). Genetic Knowledge and Disability, Symposium Moderator, Rehab. Inst. Chicago, IL.

97.     Blanck, P.D. (1999).  The ADA and the Emerging Workforce. Invited Plenary Address, Joint Employment & Technical Training Conference, U.S. Department of Labor, Washington, D.C.

98.     Blanck, P.D. (1999).  The Unintended Consequence of the ADA. Invited Address, National Disability Management Conference, Rehearsing Your Future, Washington Business Group on Health & Unum-Provident Corp., Washington, D.C.

99.     Blanck, P. (1999).  Disability and Compliance. Invited Address, National Workers' Compensation and Disability Conf., Chicago, IL.

100.    Blanck, P.D. (1999).  The Year of the ADA at the U.S. Supreme Court, University of Iowa College of Law Continuing Legal Education, Iowa City, IA.

101.    Blanck, P.D. (2000).  The Disabilities of Civil War Veterans: Empirical Study. Invited Address, Disability Institute ADA Symposium, University of Alabama School of Law, Tuscaloosa, AL.

102.    Blanck, P.D. (2000).  Entrepreneurs with Disabilities. Invited Address, President's Committee on Employment of People with Disabilities Annual Meeting, Washington, D.C.

103.    Blanck, P.D. (2000).  Civil War Pensions and Disability in America. Invited Address, ADA Tenth Anniversary Symposium, Ohio State University, Columbus, OH.

104.    Blanck, P.D. (2000).  Employment, the ADA, and the Supreme Court. Invited Address, Issues Forum, Kansas City, MO.

105.    Blanck, P.D. (2000).  Graduating from High School/High Tech, Keynote Address, Grant Wood Area Educational Agency Graduation, Cedar Rapids, IA.

106.    Blanck, P.D. (2000).  Disability, Employment Policy and the ADA. Invited Address, Central States Occupational Medicine Association Meeting, Davenport, IA.

107.    Blanck, P. (2000).  ADA and Health Care, Panel, Rehabilitation Institute Chicago and Northwestern Univ. Conf., Chicago, IL.

108.    Blanck, P.D. (2000).  Rethinking ADA Civil Rights Enforcement, Moderator for National Retreat for the National Council on Disability Meeting, Washington, D.C.

109.    Blanck, P. (2000).  Employment Policy and the ADA: Research Questions and Challenges. Invited Address, Mary Switzer Lec. Ser., NIDRR, Lansing, MI.

110.   Blanck, P.D. (2000).  Studying Employment Policy and the Workforce of Persons with Disabilities. Rehabilitation Services Administration Annual Conference, Plenary Address, Philadelphia, PA.

111.   Blanck, P.D. (2000).  The Disabilities of Civil War Veterans. Invited Address, University of Nebraska College of Law, Lincoln, NE.

112.   Blanck, P.D. (20000.  Conceptions of Disability after the Civil War, Invited Address, University of Chicago, Center for Population Economics, Graduate School of Business, Chicago, IL.

113.   Blanck, P.D. (2000).  Studying the Impact of the ADA: Past and Present Issues, University of Michigan Law School, Invited Address, ADA Symposium, Ann Arbor, MI.

114.   Blanck, P.D. (2001).  Employment, Disability Policy and the ADA, Featured Address, "The Future is Not What It Used to Be," Conference on Workforce of Iowans with Disabilities, Des Moines, IA.

115.   Blanck, P.D. (2001).  Before Civil Rights: Veterans' Pensions and the Politics of Disability in America, 1862-1907, Invited Faculty Colloquium, Stanford Law School, CA.

116.   Blanck, P.D. (2001).  Veterans' Pensions and the Politics of Disability in America, Invited Discussant, National Bureau of Economic Research Conference, Health and Labor Force Participation over the Life Cycle: Evidence from the Past, Cambridge, MA.

117.   Blanck, P.D. (2001).  Before Civil Rights: Veterans' Pensions and the Politics of Disability in America, 1862-1907, Invited Faculty Colloquium, William & Mary Law School, VA.

118.   Blanck, P.D. (2001).  Keynote Address: Emerging Issues for the New Millennium, Annual Conference on Vocational Rehabilitation, Rehabilitation Institute of Chicago, Chicago, IL.

119.   Blanck, P.D. (2001).  Civil War Pensions and the Politics of Disability, Invited Enrichment Speaker Series/Faculty Colloquium, University of Houston, School of Law, Houston, TX.

120.   Blanck, P.D. (2001).  The Emerging Workforce of Entrepreneurs with Disabilities, America's Workforce Network Research Conference, U.S. Department of Labor, Washington, D.C.

121.   Blanck, P.D. (2001).  Civil War Pension Attorneys and the Politics of Disability in America, Invited Address, Conceptions of Disability Symposium, Bills of Right Institute, William & Mary Law School, VA.

122.   Blanck, P. (2001).  Economics of Employing People with Disabilities, Invited Speaker, Cornell Univ., RRTC Employment Conference, Washington, D.C.

123.   Blanck, P.D. (2001).  Ticket to Work and Work Incentives, Expert Roundtable Participant, Social Security Administration Conference, Washington, D.C.

124.   Blanck, P.D. (2001).  Civil War Pensions and the Politics of Disability in America, Invited Address, American Historical Association Convention, Chicago, IL.

125.   Blanck, P.D. (2001).  National Workplace Forum: Setting a National Agenda for Increasing the Employment of Individuals with Disabilities, U.S. Chamber of Commerce & Virginia Commonwealth University, Invited Presented, Washington, D.C.

126.    Blanck, P. (2002). Exploring the Future of Disability Civil Rights. Keynote Region VII, Four State, Issues Forum, Kansas City, MO.

127.    Blanck, P.D. (2002).  Exploring the Future of Disability Rights.  Keynote Conversations with J. Young at the World Institute on Disability/Virginia Commonwealth University Policy Forum, Los Angeles, CA.

128.    Blanck, P.D. (2002).  Exploring the Future of American Disability Civil Rights, and Comparisons to the UK Disability Discrimination Act.  Keynote Address, Employers' Forum on Disability, London, England.

129.    Blanck, P.D. (2002).  Ticket to Work and Work Incentives, Expert Roundtable Participant, Applicability of the ADA to Employment Networks (ENs), Social Security Administration Conference, Washington, D.C.

130.    Blanck, P.D. (2002).  The Definition of Disability under the Social Security Act and its Relation to the Americans with Disabilities Act, Testimony before the U.S. House of Representatives Subcommittee on Social Security, Thursday, July 11, Washington, D.C.

131.    Blanck, P.D. (2002).  ADA Research & Policy Agenda, Advisory Panel, GAO Meetings, Washington, D.C.

132.    Blanck, P.D. (2002).  The Future of American Disability Civil Rights, Keynote Address at the Iowa Rehabilitation Professionals Annual Meeting, Des Moines, IA.

133.    Blanck, P.D. (2002).  National Summit on Technology and Disabilities, Invited participant and facilitator, RESNA Conference, Providence, RI.

134.    Blanck, P. (2002).  AT Outcome Measurement: Where are we now and where are we headed? Washington University Program in Occupational Therapy Conference, St. Louis, MO.

135.    Blanck, P. (2003).  Nonverbal Communication in Applied Research Involving Persons with Disabilities, Invited participant, Claremont Applied Social Psychology Conference, Applications of Nonverbal Communication, Claremont, CA.

136.    Blanck, P. (2003).  "It Works," Invited moderator, The Information Technology Association of America (ITAA) Annual Workforce Convocation, Arlington, VA.

137.    Blanck, P. (2003).  The De-Evolution of the ADA: Federalism, and the Rise of State Disability Law, Invited speaker, Annual Conference of State Court Chief Justices, San Juan, PR.

138.    Blanck, P. (2003).  Politics and Practice of Accommodation, Invited Speaker, Job Accommodation Network (JAN), Annual Conference, Arlington, VA.

139.    Blanck, P. (2003).  Poverty and Disability, Invited Speaker, Intersection of Disability with Gender, Race and Justice, Symposium sponsored by the Journal of Race, Gender and Justice, Iowa City, IA.

140.    Blanck, P. (2003).  Keynote Address, Journal of Gender, Race & Justice Annual Symposium, Justice for All?  Exploring Gender, Race and Sexual Orientation within Disability Law, Iowa City, IA.

141.    Blanck, P. (2003).  American Disability Law and Policy, Invited Speaker, International Seminar: Anti-Discrimination Legislation: Disability Experience, Norwegian "Commission against Discrimination of Disabled People", appointed by the Norwegian Government 2003-2004, Oslo, Norway.

142.  Blanck, P. (2003).  Law and Ethics of Data Sharing, Invited Speaker, Data Sharing Workshop, Sponsored by The National Institutes of Health, National Institute of Child Health and Development (NIH/NICHD), Bethesda, MD.

143.  Blanck, P. (2003).  ADA and the European Year of the Disabled, Invited Address, Merrill Lynch Conf. European Year Disabled, London, UK.

144.  Blanck, P. (2003).  The Law and Politics of the ADA, Invited Speaker, Research Council of Norway, Conference on "Anti-Discrimination Legislation as an Instrument to Promote Equal Opportunities for People with Disabilities - International Experiences", Oslo, Norway.

145.  Blanck, P. (2003).  The Law and Politics of the ADA, Invited Speaker, Conference on "Anti-discrimination Legislation: The Disability Experience," Norwegian Governmental Commission Against Discrimination of People with Disabilities, Oslo, Norway.

146.  Blanck, P. (2003).  Is the ADA a Failed Law? Speaker, Middlesex University, London, GB.

147.  Blanck, P. (2004).  Disability Law and Policy in Rehabilitation Education.  Keynote Address, National Council on Rehabilitation Education (NCRE), Annual Meeting, Tucson, AZ.

148.  Blanck, P.  (2004).  The Accessible Courtroom, Invited Speaker, The Legal and Policy Implications of Courtroom Technology, International Conference Sponsored by The Courtroom 21 Project and William and Mary Bill of Rights Journal, Williamsburg, VA.

149.  Blanck, P.  (2004). Realities and Opportunities in the 21st Century Workplace–Disability Issues, Invited Panelist, U.S. Equal Employment Opportunity Commission, Forum with Chair Cari Dominguez, DC.

150.  Blanck, P.  (2004). Future of Disability Law and Policy, Invited Talk, U.S. Equal Employment Opportunity Commission, Office of Legal Counsel, Washington, DC.

151.  Blanck, P.  (2004).  Union Army Veterans' Pensions and the Politics of Disability in Nineteenth Century America, Distinguished Lecture on Human Rights, Syracuse University College of Law, Syracuse, NY.

152.  Blanck, P.  (2004).  Employees with Disabilities: Employer Misconceptions Versus Data and Practice, Master Tutorial Presenter, Society for Industrial and Organizational Psychology, Ann. Conf., Chicago, IL.

153.  Sewell, R., Song, C., Smith, R., Bauman, N., & Blanck, P.  (2004). Union Army Veterans with Hearing Loss and the Evolution of Disability in America During 1862-1920, Paper, Annual Meeting of the Triological Society, Phoenix, AZ.

154.  Blanck, P.  (2004). Disability Rights: Thematic Issues, Moderator at Equality and Disability: Exploring The Challenge and Potential of Framework Directive 2000/78/EC, Conference organized in Louvain-La-Neuve, Belgium (29-30 April).

155.  Blanck, P. (2004). Definition of Disability, Social Security Advisory Board Forum, Invited Discussant, DC.

156.  Blanck, P.  (2004).  Disability Law and Technology Policy, State of Technology Conference, Rehabilitation Engineering Research Center (RERC) on Mobile Wireless Technologies for Persons with Disabilities, Georgia Centers for Advanced Telecommunications Technology, Invited Address, Atlanta Georgia.

157.    Blanck, P. (2004). The Past, Present and Future of Disability Rights, Keynote address, at the Job Accommodation Network (JAN), Annual Conference, Orlando, FL.

158.    Blanck, P. (2004). Past and Future of Disability Law and Policy, Inaugural Thornburgh Family Lecture on Disability Law and Policy, University of Pittsburgh, PA.

159.    Blanck, P. (2004). Celebrating Disability Rights, Keynote address for the Arkansas Rehabilitation Services Commission Meeting for Disability Awareness Month, Little Rock, Arkansas.

160.    Blanck, P. (2004). Disability Law and Policy, Invited address, at the Miller Center of Public Affairs, University of Virginia, Charlottesville, VA.

161.    Blanck, P. (2004). Demystifying Workplace Accommodations, Panel at National Business Group on Health Annual Conference, Orlando, FL.

162.    Blanck, P. (2004). Disability Discrimination in North America, Panel at Workplace Discrimination and the Law in North America, NAFTA Labor Secretariat, Washington, DC.

163.    Blanck, P. (2004). Disability Civil Rights Law and Policy. Keynote Address, Israeli Association of Rehabilitation Professionals, Annual Meeting, Tel Aviv, Israel.

164.    Blanck, P. (2004). Disability Civil Rights Law and Policy. Invited Address, Israeli Knesset, Special meeting of the Committee on Labour, Social Welfare and Health Committee, chaired by MK Shaul Yahalom, Jerusalem, Israel.

165.    Blanck, P. (2005). Fifth Meeting of the Working Group on Data Collection to Measure the Extent and Impact of Discrimination in Europe, European Commission, Section on Employment, Social Affairs and Equal Opportunities, Invited Presentation on the U.S. Experience with the Measurement of the Americans with Disabilities Act, Brussels, Belgium.

166.    Blanck, P. (2005). Disability Rights and Legal Education. Invited Lecture Series on Diversity and Legal Education, University of Mississippi, School of Law, Oxford, Miss.

167.    Blanck, P. (2005). Future of Disability Law and Policy, Keynote Address, Alabama Transition Conference, Auburn University.

168.    Blanck, P. (2005). Introduction to Disability Law, Invited Address, Library of Congress, Center for International Rehabilitation, & the American Society for International Law (ASIL) Conference on International Disability Rights, Washington, D.C.

169.    Blanck, P. (2005). Employment and Disability, Annual Symposium, Invited Panelist, Disability Research Institute (DRI), University of Illinois at Urbana-Champaign, Funded by a grant from the U.S. Social Security Administration, National Press Club, Washington, D.C.

170.    Blanck, P. (2005). Americans with Disabilities and Civil Rights, Invited Address, Grinnell College, IA.

171.    Blanck, P. (2005). Disability Civil Rights Law and Policy, Keynote Address, YAI/National Institute for People with Disabilities Network, Annual Conference, New York, NY.

172.    Blanck, P.  (2005). ADA as Disability Law and Policy, 29th International Congress on Law and Mental Health, International Academy of Law and Mental Health Congress, Paris, France.

173.    Blanck, P.  (2005). Disability Law and Policy, Disability Law Summer Symposium, National University of Ireland, Galway.

174.    Blanck, P.  (2005). EEOC ADA Workshop, Moderator, Iowa City, Iowa.

175.    Blanck, P.  (2005).  Disability Law and Policy, Evidence-Based Outcomes, Plenary address for the RERC on Workplace Accommodations State of the Science Conference, Atlanta, Georgia.

176.    Blanck, P.  (2005).  Disability Law and Policy, Keynote address for the Arkansas Workers' Compensation Annual Conference, Little Rock, Arkansas.

177.    Blanck, P.  (2005). Future of Disability Law and Policy, Loyola Law School, Los Angeles, CA.

178.    Blanck, P.  (2005).  The Future of the Americans with Disabilities Act, invited speaker, University of Mississippi Law School, Conference on the ADA at 15, Oxford, Miss.

179.    Blanck, P.  (2005). The Americans with Disabilities Act, invited lecturer, Harvard Law School, Cambridge, MA.

180.    Blanck, P.  (2005). The Burton Blatt Institute and the Future of Disability Law and Policy, faculty colloquium, Center for Policy Research. Maxwell School, Syracuse University, NY.

181.    Blanck, P.  (2006).  Empirical Study of the Americans with Disabilities Act, invited speaker, New York University School of Law Conference on Assessing the Employment Provisions of the Americans with Disabilities Act, NYC, NY.

182.    Blanck, P.  (2005).  The Burton Blatt Institute and the Future of Disability Law and Policy, Syracuse University College of Law Lecture Series, N.Y.C. Lubin House Lecture Series, NY.

183.    Blanck, P.  (2006). Disability Law and Policy, Disability Law Summer Symposium, National University of Ireland, Galway.

184.    Blanck, P.  (2006).  On the Legacy of Professor Stanley Herr, Beit Issie Shapiro's First Fellow, Keynote Address, Beit Issie Shapiro Annual Conference, Tel Aviv, Israel.

185.    Blanck, P.  (2006). The Challenge of Monitoring Social Reform in the Area of Disability–The International Perspective, Keynote Address, Conference on Disability Studies as a Field of Human Rights, Inquiry and Teaching, US–Israel Binational Conference; sponsored by the Israeli Ministry of Justice, Commission for Equal Rights of People with Disabilities, Tel Aviv, Israel.

186.    Blanck, P.  (2006). Employment Demand, Invited panelist, Interagency Committee on Disability Research (ICDR), Interagency Subcommittee on Employment, Research Summit on "Employer Perspectives on Workers with Disabilities: A National Summit to Develop a Research Agenda," Crystal City, VA.

187.    Blanck, P.  (2006). New Paths in Disability Law and Policy, Keynote Address, The Indiana Governor's Council for People with Disabilities Annual Conference, Indianapolis, Indiana.

188.    Blanck, P. (2006). The US (ADA) approach and its impact on eAccessibility, speaker at the European Workshop on Achieving eAccessibility: The role of Equality Legislation and Other Measures, European Union Commission, Brussels, Belgium.

189.    Blanck, P. (2006). Social regulation of accessibility to ICT for people with disabilities: What can Norway learn from other countries? Invited speaker, NOVA Institute, Oslo, Norway.

190.    Blanck, P. (2006). Disability Politics Historically and Today, Faculty Colloquium, University of San Diego School of Law, San Diego, CA.

191.    Blanck, P. (2006). Future and Past of Disability, Colloquium, Social Psychology Department, University of California, Riverside, CA.

192.    Morris, M. & Blanck, P. (2007). Access to Ownership for Persons with Disabilities: A Post Katrina Analysis, Presentation at the American Association of Law Schools Annual Meeting, Washington, DC.

193.    Blanck, P. (2007). Politics of Disability Inequality after the Civil War and Today, Presentation at the Journal of Law and Inequality Symposium Commemorating the First 25 Years of Academic Legal Analysis of Issues in Inequality, University of Minnesota Law School, Minneapolis, Minn.

194.    Blanck, P. (2007). Litigating ICT Access, Presentation at Global Forum to United Nations Global Initiative for ICT and Development, Global Initiative for Inclusive Technologies (G3ict), W2i, Wireless Internet Institute with the Secretariat for Convention on the Protection and Promotion of the Rights and Dignity of Persons with Disabilities and UNITAR, UN Institute for Training and Research, NYC, NY.

195.    Logue, L. & Blanck, P. (2007). Aging and Disability, Presentation at "Aging and Disability Conference," Maxwell School, Syracuse University, NY.

196.    Blanck, P. & Reina, M. (2007). The Rights of People with Disabilities: Policy and Legal Aspects, U.S. Department of State Bureau of International Information Programs and the U.S. Embassy in Madrid, invited speaker for digital video conference, NY and DC.

197.    Blanck, P. (2007). People with Disabilities in Times of Crisis and War, Presentation at the Israeli OMRDD Conference, Haifa, Israel.

198.    Blanck, P. (2007). American Disability Law and Policy, Workshop Presentations at the Israeli National Social Security Office, Jerusalem, Israel.

199.    Blanck, P. (2007). The Digital Divide in the US and Abroad, Presentation at T4P'07, First International Conference on Technology for Participation and Accessible eGovernment Services, Agder University College, Kristiansand, Norway.

200.    Blanck, P. (2007). Corporate Culture, Litigation and the Global Access to the Internet, Presentation at Trondheim University, Trondheim, Norway.

201.    Blanck, P. (2007). Disability Law and Policy in the Theater, Presentation at the Kennedy Center's Leadership Exchange in Arts and Disability (LEAD) conference, Minneapolis, MN.

202.    Logue, L. & Blanck, P.  (2007). African-American Veterans and Civil War Pensions, Presentation at "Military Service, Social (Dis) advantage, and the Life Course," Maxwell School Conference on Disability and the Military Experience, Syracuse University, NY.

203.    Blanck, P.  (2007).  Exploring New Markets: What You Need to Know to Tap into the Disability Community, Address at the Opportunity Conference, hosted by U.S. Secretary of Labor Elaine L. Chao, Washington, D.C.

204.    Blanck, P.  (2007). Disability Rights and E-Accessibility, European Commission Project, Brussels, Belgium.

205.    Blanck, P.  (2007).  Disability Pensions for Union Army Veterans: Historical and Contemporary Lessons, Faculty Colloquium, for The John J. Heldrich Center for Workforce Development, at the Edward J. Bloustein School of Planning and Public Policy, and the School of Management and Labor Relations, Rutgers University, NJ.

206.    Blanck, P.  (2007). Future of Disability Rights, Keynote Address to the Israeli Knesset on Disability Day, Jerusalem, Israel.

207.    Blanck, P.  (2007). Disability World Developments, Lecture to Bekol–Organization of Hard of Hearing and Deaf People in Israel, Jerusalem, Israel.

208.    Blanck, P.  (2008).  American Disability Law and Policy in Transition, Eastern Kentucky University College Education Dean's Lecture Series, Richmond, KY.

209.    Blanck, P.  (2008). International Developments in Accessible ICT, G3ict Forum, Hosted by the Ecuadorian Ministry of Social Development, Quito, Ecuador.

210.    Blanck, P.  (2008).  The Past and Future of Disability Law and Policy, closing presentation at the 2008 Jacobus tenBroek Disability Law Symposium, National Federation of the Blind, Baltimore, MD.

211.    Blanck, P.  (2008). Best Practices, Corporate Attitudes and Employment of Persons with Disabilities, Address at Office of Disability Employment Policy (ODEP) Annual Conference, Washington, D.C.

212.    Blanck, P.  (2008). Research on the Employment of Persons with Disabilities, Interagency Subcommittee on Employment, Interagency Committee on Disability Research (ICDR) Conference, Washington, D.C.

213.    Blanck, P.  (2008). Reframing the Disability Issue for Employers, Cornell/AAPD Policy Forum, Washington, DC.

214.    Blanck, P. (2008).  Disability Rights, Options for Independence Annual Conference Keynote Address, Auburn, NY.

215.    Blanck, P. (2008).  Reasonableness of Accommodations, Presentation at the Kennedy Center's Leadership Exchange in Arts and Disability (LEAD) conference, Ft. Lauderdale, FL.

216.    Blanck, P.  (2008).  Disability Rights for Health and Medical Professions, Colloquium address, 2nd Annual Conference of the Ono Research Institute for Health and Medical Professions, Ono Academic College, Kiryat Ono, Israel.

217.	Blanck, P.  (2008). Disability Law and Policy, Colloquium address, Ono Academic College Law School, Kiryat Ono, Israel.

218.	Blanck, P.  (2008). Age and Disability, Speaker at Law and Psychology of Age and Disability Discrimination Conference, University of Nebraska.

219.	Blanck, P. (2009).  Disability as an Element of Diversity in the Legal Profession, Diversity Summit: State of Diversity in the Legal Profession, American Bar Association Presidential Initiative, Mid-Year Meetings, Boston, MA.

220.	Myhill, W. & Blanck, P.  (2009). Disability and Aging, Speaker at Symposium on Aging and Disability, Marquette University Law School, Milwaukee, WI.

221.	Blanck, P.  (2009).  The Future is Now in Disability Law and Policy, Closing presentation at the 2009 Jacobus tenBroek Disability Law Symposium, National Federation of the Blind, Baltimore, MD.

222.	Blanck, P.  (2009).  Future of Disability Law and Policy, Remarks at the Opening Ceremonies for the Centre for Disability Law and Policy, National University of Ireland, Galway, Ireland.

223.	Blanck, P.  (2009). Disability Law and Policy: Past, Present, Future, Disability Studies and Research Centre, University of New South Wales, Sidney, Australia.

224.	Blanck, P.  (2009).  Disability and Social Justice, Centre for International Governance & Justice Regulatory Institutions Network, ANU College of Asia and the Pacific, The Australian National University, Canberra, Australia.

225.	Blanck, P.  (2009).  Disability Civil Rights Law and Policy, Lectures as Distinguished Visiting Professor, Graduate School of Social Welfare at Hokusei Gakuen University, Sapporo, Japan.

226.	Blanck, P.  (2009).  Future of the ADA, Japan Association of Employment of Elderly and Persons with Disabilities, An independent administrative agency in Ministry of Health, Labor & Welfare, Tokyo, Japan.

227.	Blanck, P.  (2009).  The ADA, American Society and People, Japan Disability Forum: A national network of disability organizations to promote the implementation of the Convention on the Rights of Persons with Disabilities as well as an anti-discrimination law for persons with disabilities in Japan, Tokyo, Japan.

228.	Blanck, P.  (2009). Law of the ADA, Graduate School & Faculty of Law, Kobe University, Japan.

229.	Blanck, P. (2010). U.S. and Japanese Disability Law, at Japan's Anticipated Disability Law and the Americans with Disabilities at Twenty: Workshop on Comparative Law, Policy and Research, in Los Angeles, CA, Co-sponsored by Burton Blatt Institute & Hokusei Gakuen University, Sapporo, Japan.

230.	Blanck, P. (2010). U.S. Disability Law and the CRPD, panelist at International Disability Law Conference on the Convention on the Rights of Persons with Disabilities, at Loyola Law School, Los Angeles, CA.

231.	Blanck, P. (2010).  U.S. Disability Law and Policy after Obama, International and Comparative Perspectives on Employment and Disability Law Conference, National University of Ireland, Galway.

232.    Blanck, P. (2010).  Universal Design: Inclusion, Innovation, Livability and Economics, Address at Access to the World, Implementation of Universal Design Legislation Seminar, Centre for Excellence in Universal Design (CEUD), Irish National Disability Authority (NDA), Dublin, Ireland.

233.    Blanck, P. (2010).  ADA at 20 and Mobility Access, Keynote address at ADA 20/20: Looking Back, Looking Forward on Mobility, Sponsored by BraunAbility, National Press Club, Washington, DC.

234.    Blanck, P. (2010). Future of Disability Law, Policy and Research, Colloquium address at the University of Tokyo, Japan.

235.    Blanck, P. (2010). Americans with Disabilities Act at Twenty, Colloquium address at University of Tsukuba, Graduate School of Comprehensive Science, Japan.

236.    Blanck, P. (2010). Developments in U.S. Disability Law, presentation at International Disability Law Conference, at Remning University, Beijing, China.

237.    Blanck, P. (2010). Cloud Computing for People with Cognitive Disabilities: Legal, Policy, and Universal Design Considerations, presentation at the Coleman Institute Workshop on Implications of Cloud Computing for People with Cognitive Disabilities, University of Colorado at Boulder, Law School, CO.

238.    Blanck, P. (2010). Developing an Accessible National Information Infrastructure for People with Cognitive Disabilities, panelist at the Tenth Annual Coleman Institute Conference, "All Together Now: The Power of Partnerships in Cognitive Disability & Technology," University of Colorado at Boulder, Law School, CO.

239.    Blanck, P. (2011).  $r_{osenthal}$: Effect size indicator, and $R^2$: Robert Rosenthal's goodness of fit, Colloquium to the Social Psychology Department, University California, Riverside, CA.

240.    Blanck, P. & Lord, J. (2011). Disability as a Protected Class for the Purpose of Seeking Political Asylum, presentation at the 2011 Jacobus tenBroek Disability Law Symposium, National Federation of the Blind, Baltimore, MD.

241.    Blanck, P. (2011).  Disability History and Law, Colloquium, University of Wisconsin's Financial Literacy and Disability Project (FLAD) and the UW Disability Studies Cluster, Madison, WI.

242.    Blanck, P. (2011). Disability and Economics: Challenges and Opportunities, Symposium on Disability and Economics, Burton Blatt Institute and University of Tokyo Project on Research on Economy and Disability, Syracuse, NY.

243.    Blanck, P. (2011). Future of Deinstitutionalization and Community Living in Israel, Conference, and Expert Committee Member, sponsored by Israeli Ministry of Welfare and Social Services, Tel Aviv, Israel.

244.    Blanck, P. (2011). Understanding Disability, Discussant to Thomas Shakespeare, at the Center for International Rehabilitation Research Information and Exchange (CIRRIE), in cooperation with WHO/PAHO, World Bank, U.S. International Council on Disability and Inter-Agency Committee on Disability Research, U.S. Launch and Symposium on the World Report on Disability, Washington DC.

245.    Blanck, P. (2011). Right to Technology Access for People with Cognitive Disabilities, Closing Keynote Address, State of the States, State of the Nation, 2011: Coleman Institute National Conference on Cognitive Disability and Technology in Challenging Economic Environments, University of Colorado, Boulder, CO.

246.    Blanck, P. (2011). Equal Employment Opportunity Commission (EEOC) Regulations Implementing the American with Disabilities Amendments Act (ADAAA): Expanding Coverage under the "Disability" Definition, American Bar Association (ABA) Center for Continuing Legal Education, on behalf of the ABA Commission on Mental and Physical Disability Law, Webinar Panelist.

247.    Blanck, P. (2011). Universal Design in the World, Keynote address, at the III International Meeting on Technology and Innovation for Persons with Disabilities, The Universal Design in the Brazilian Industry, São Paulo, Brazil.

248.    Blanck, P. (2011). Universal Design in Electrical & Electronics Industry, Panelist, at the III International Meeting on Technology and Innovation for Persons with Disabilities, The Universal Design in the Brazilian Industry, São Paulo, Brazil.

249.    Blanck, P. (2011). World Bank, Legal Innovation and Empowerment through the CRPD, Panel speaker, Law, Justice & Development Week 2011, World Bank, Washington D.C.

250.    Blanck, P. (2011). Accessibility and Universal Design: The Global Universal Design Commission (GUDC), Conference sponsored by Israeli Ministry of Welfare and Social Services, Tel Aviv, Israel.

251.    Blanck, P. (2012). U.S. Genetic Antidiscrimination Law, Invited speaker at the Symposium on Genetic Discrimination, European Union Parliament, Brussels, Belgium.

252.    Blanck, P. (2012). Hot Issues in Disability Law, Invited speaker, National Council on Disability (NCD) Quarterly Meetings, NY, NY.

253.    Blanck, P. (2012). Introduction and Moderator, Psychotropic Medication and the Law, The Saks Institute for Mental Health Law, Policy, and Ethics, Los Angeles, CA.

254.    Blanck, P. (2012). Implementing the American with Disabilities Amendments Act (ADAAA), Plenary speaker, American Bar Association (ABA), ABA Commission on Mental and Physical Disability Law, Annual Conference, Washington, D.C.

255.    Blanck, P. (2012). The Right to the Web and the Cloud, Interagency Committee on Disability Research (ICDR) Assistive Technology/Technology (AT/T) Forum (June 26, 2012, Webinar).

256.    Blanck, P. (2012). Full and Equal Participation by Persons with Disabilities to the Courts and Civil Society, Speaker, Access to Justice for Persons with Disabilities, Side Event of the Fifth Session of the Conference of States Parties to the Convention on the Rights of Persons with Disabilities, United Nations, NY, NY.

257.    Blanck, P. (2012). ADA Legal Update: What's on the Docket? Colloquium, University of Houston Law Center, ILRU (Independent Living Research Utilization) Southwest ADA Center, Houston, TX.

258.    Blanck, P. (2012). Right to the Web for People with Cognitive Disabilities, Keynote Address, Coleman Institute on Cognitive Disability, National Conference, Univ. Colorado, Boulder, CO.

259.    Blanck, P. (2012). Disability and the Experience of Social Isolation, Speaker at Symposium on Social Isolation and Disconnectedness as a Risk Factor for Family Members across the Lifespan, National Human Services Assembly, National Collaboration for Families, Washington, D.C.

260.     Blanck, P. (2013). Civil Rights of People with Disabilities, Upstate Medical University, SUNY, Diversity Lecture Series, Syracuse, NY.

261.     Blanck, P. (2013). eQuality: The Right to the Web for People with Cognitive Disabilities, Faculty Colloquium, Southwestern Law School, Los Angeles, CA.

262.     Blanck, P. (2013). Social Security Reform Proposals: Toward Fiscal and Structural Balance, Discussant at Social Security Disability: Time for Reform, Social Security Advisory Board Disability Forum, Washington, D.C.

263.     Blanck, P. (2013). "When Gawd make cripple, He mean him to be lonely;" Disability, the Web and an Inclusive World, Presentation at the Symposium on Including Disability: How Legal Discourse Can Shape Life's Transitions, UCLA Law Disability Symposium, Los Angeles, CA.

264.     Blanck, P. (2013). Disability Law and Policy: U.S. and Japan, Symposium on U.S. and Japanese Disability, Loyola Law School, Los Angeles, CA.

265.     Blanck, P. (2013). The Right to the Web for People with Cognitive Disabilities and Ownership of Web Content, Participant at Cherry Blossom Symposium on Intellectual Property and Federal Policy: Universal Access in the Digital Environment, American University Washington College of Law, Washington, D.C.

266.     Blanck. P. (2013). The Right to Web Equality for People with Cognitive Disabilities, Guest Speaker at NIDRR Presents, National Institute for Disability Rehabilitation Research, Washington, D.C.

267.     Blanck, P. (2013). Emergency Care for Homebound and Vulnerable Populations, Keynote Address at 2013 Rural and Ready Symposium, Sault Sainte Marie, Mich.

268.     Blanck, P. (2013). Web Quality for People with Cognitive Disabilities, Talk Co-hosted by the Irish National Disability Authority (NDA) Centre for Excellence in Universal Design, National University of Ireland (NUI) Galway Centre for Disability Law and Policy, Dublin, Ireland.

269.     Blanck, P. (2013). The Future of Accessible Technology—Legal Perspectives, NOVA—Norwegian Social Research Institute—Talk at the European Assistive Technology Ecosystem Symposium, 4th DREAM Network-Wide Event, Oslo, Norway.

270.     Blanck, P. (2013). Declaration of the Right to Web Equality for People with Cognitive Disabilities, Address, Coleman Institute on Cognitive Disability, National Conference, Univ. Colorado, Boulder, CO.

271.     Blanck, P. (2013). Symposium on Best Practices in Supported Decision-Making, Research Group Facilitator, American University, Washington College of Law, Washington, D.C.

272.     Blanck, P. (2014). Closing Remarks, Workshop on the UN Convention for the Rights of Persons with Disabilities, University of Haifa, Haifa, Israel.

273.     Blanck, P. (2014). eQuality, Speaker at the U.S. and Japan Accessibility Policy Symposium, Center on Japanese Studies, University of California, Berkeley, CA.

274.     Blanck, P. (2014). Emergency Planning for People with Disabilities, Address to Northern Virginia Emergency Response System (NVERS) and the Regional Hospital Coordination Center (RHCC), Virginia

Department of Emergency Management, and Northern Virginia Hospital Alliance, Symposium on Emergency Operations Planning: An Inclusive Approach, Alexandria, VA.

275.   Blanck, P. (2014). Supported Decision Making as an Alternative to Guardianship, Plenary Session at the 2014 Jacobus tenBroek Disability Law Symposium, National Federation of the Blind, Baltimore, MD.

276.   Blanck, P. (2014). Web eQuality for People with Cognitive Disabilities, National University of Ireland (NUI) Galway Centre for Disability Law and Policy, DREAM Symposium, Galway, Ireland.

277.   Blanck, P. (2014). Web Equality and Persons with Disabilities, 2014 International Summit on Accessibility, Carleton University, Ottawa, Canada.

278.   Blanck, P. (2014). New Directions in Disability Policy, Presentation to the National Council on Disability, Washington, D.C.

279.   Blanck, P. (2014). Legal Aspects of Internet Access for People with Cognitive Disabilities, Coleman Institute on Cognitive Disability, National Conference, Univ. Colorado, Boulder, CO.

280.   Blanck, P. (2015). Co-Facilitator, Integrating the Internet Now and in 25 Years, Jacobus tenBroek Disability Law Symposium, National Federation of the Blind, Baltimore, MD.

281.   Blanck, P.  (2015).  The Future of Disability, Plenary Panelist, 2015 Jacobus tenBroek Disability Law Symposium, National Federation of the Blind, Baltimore, MD.

282.   Blanck, P. (2015). Launching for a Successful Career: Preparing Students for the Future, Moderator at Saks Institute Spring Symposium 2015, Mental Health on Campus: Keys to Success for University, Community College and Veteran Students, University of Southern California, CA.

283.   Blanck, P. (2015). *eQuality* and the Future of the Web for People with Disabilities, National ADA Symposium on the Americans with Disabilities Act, Atlanta, GA.

284.   Blanck, P. (2015). U.S. Strategic Litigation: Moving courts in the direction of supported decision-making and Lessons for Israel, at Symposium: Just Being Me: My Right to be in the World (Community Living) and my Right to make my own Decisions in the World (Legal Capacity). A Global Context for the Reform Process in Israel. Jerusalem, Israel.

285.   Blanck, P. (2015). *eQuality* and Web Access, Webinar for Institute on Disability and Public Policy for the ASEAN Region Association of Southeast Asian Nations (ASEAN).

286.   Blanck, P.  (2015). Web *eQuality* and People with Disabilities, Symposium Speaker at Ritsumeikan University, Kyoto, Japan.

287.   Blanck, P.  (2015). The Future of the Web, Keynote Address, First Japanese Association on Higher Education and Disability (AHEAD) Symposium, University of Tokyo, Japan.

288.   Blanck, P.  (2015). Web *eQuality* and People with Disabilities, Symposium Speaker at University of Melbourne, Australia.

289.   Blanck, P.  (2015). Supported Decision Making and the U.S. Experience, Symposium Speaker at University of Melbourne, Australia.

290.    Blanck, P.  (2015). Web *eQuality* and People with Disabilities, Symposium Speaker at University of Sydney, Australia.

291.    Blanck, P.  (2015). Supported Decision Making and the U.S. Experience, Symposium Speaker at University of Sydney, Australia.

292.    Blanck, P.  (2015). The National Resource Center for Supported Decision Making, Address to the Australia Office of the Public Guardian and the University of New South Wales, Sydney, Australia.

293.    Blanck, P.  (2015). Corporate Culture and Disability, Address to the Australian Human Rights Commission, Sydney, Australia.

294.    Blanck, P. (2015). *eQuality* for Individuals with Cognitive Disabilities, Lecture, Sapienza University of Rome, Gruppo Asperger Lazio ONLUS, Rome, Italy.

295.    Blanck, P. (2015). The Future of Workplace Accommodations, Improving Research of Employer Practices to Prevent Disability, Liberty Mutual Research Institute for Safety, Hopkinton, MA.

296.    Blanck, P. (2015). Americans with Disabilities Act at 25, Talk at the Harvard Law School, Prison Legal Assistance Project, Cambridge, MA.

297.    Blanck, P. (2015). *eQuality*: Future of Web Accessibility for People with Disabilities, Federal Communications Commission (FCC), Colloquium Series, Washington, D.C.

298.    Blanck, P. (2015). Emerging Technology in Employment and Education, Presenter to the U.S. National Council on Disability, Quarterly Meeting, Concord, NH.

299.    Blanck, P. (2015). The Future of the Americans with Disabilities Act, Keynote Address, Maine Association for Community Service Providers Annual Meeting, Auburn, ME.

300.    Blanck, P. (2015). Research and Evidence Based Practice, Presentation & Facilitation, Supported Decision-Making Invitational Symposium 2015: Promoting the Right to Choose: Moving from Theory to Practice, Quality Trust for Individuals with Disabilities, American University, Washington College of Law, D.C.

301.    Blanck, P. (2015). Universal Design Certification, Mary Free Bed YMCA Dedication Celebration, Grand Rapids, MI.

302.    Blanck, P. (2016). *eQuality*: Future of Web Accessibility for People with Disabilities, Hall Center for the Humanities, Invited lecture, Disability Studies Seminar, University of Kansas, Lawrence, KS.

303.    Blanck, P. (2016). *Sheehan* and Beyond: Disability Rights Litigation and Use of Force, Invited speaker, Beating Mental Illness: Race, Gender, Disability and the Problem of Police Brutality, University of Southern California, CA.

304.    Blanck, P. (2016). *eQuality* and the Future of Web Accessibility for People with Disabilities, Keynote Address, The American Network of Community Options and Resources (ANCOR) Annual Conference, Chicago, IL.

305.    Blanck, P. (2016). *eQuality*, Web Accessibility, and Disability Rights, Rey Juan Carlos University, Madrid, Spain.

306.    Blanck, P. (2016). Supported Decision-Making as an Alternative to Guardianship: Comparisons between the United States and Spain, Rey Juan Carlos University, Madrid, Spain. [Series of three University and public lectures].

307.    Blanck, P. (2016). *Fireside Chat* with Bill Coleman and Sue Swenson, Coleman Institute on Cognitive Disability, National Conference, Univ. Colorado, Boulder, CO.

308.    Blanck, P. (2016). The Architect of Her Life: Elyn's Journey: Supported Decision Making (SDM) Approach–Giving people with mental illness a voice in their treatment. Commentator, University of Southern California Gould School of Law, Los Angeles, CA.

309.    Blanck, P. (2016). Self-Determination and Legal Capacity: Developments in Supported Decision-Making for Persons with Intellectual and Psychosocial Disabilities, University of California, San Diego, Center for Healthy Aging, San Diego, CA.

310.    Blanck, P. (2017). Self-Determination and Legal Capacity: Developments in the USA on Supported Decision-Making for Persons with Intellectual and Psychosocial Disabilities, Centre for Law & Social Justice & Disability Law Hub, University of Leeds, Leeds, UK. [and other lectures on *eQuality*]

311.    Blanck, P. (2017). Disability Civil Rights: Past, Present, and Future, Faculty Colloquium, Mississippi Valley State University, Itta Bena, MS.

312.    Blanck, P. (2017). The Burton Blatt Institute: Law in Action and Research, Faculty Colloquium, University of Kentucky, College of Law, Lexington, KY.

313.    Blanck, P. (2017). Supported Decision-Making for People with Disabilities: Law, Research and Practice, Lectures in Spain at: Barcelona Fundacio Malalts Mentals de Catalunya; King Juan Carlos University, Law School Symposium, Madrid.

## Forthcoming Presentations

314.    Blanck, P. (2017). *Fireside Chat* with Bill Coleman, Coleman Institute on Cognitive Disability, National Conference, Univ. Colorado, Boulder, CO.

315.    Blanck, P. (2018). Fluidity in Sexual Orientation, Gender Identity, and Disability: Intersectionality of Lawyers. Presentation at the American Bar Association Mid-Year Convention, New York, NY.

316.    Blanck, P. (2018). *eQuality*: Right to the Web for People with Disabilities, Oslo and Akershus University College of Applied Sciences, Oslo, Norway.

# APPENDIX B

**APPENDIX B**

**PETER BLANCK, PH.D., J.D.**

**PRIOR TESTIMONY IN THE LAST FOUR YEARS**

In the last four years, I have testified as an expert in trial in:

■ IN RE: Leslie McDonald, Protected Person, State of Maine Probate Court, Kennebec County Probate Court, Augusta, Maine (August, 2016) (guardianship proceeding);

■ Ross and Ross v. Hatch (Newport News Circuit Court, Virginia, Aug. 2, 2013) (guardianship proceeding);

■ Brooklyn Center for Independence of the Disabled, et al. v. Bloomberg, et al. (U.S.D.C. Southern Dist. NY, Nov. 7, 2013) (emergency preparation for persons with disabilities).

I have been deposed as an expert witness in:

■ Joshua Dunn, et al. v. Jefferson Dunn, in his official capacity as Commissioner of the Alabama Department of Corrections, et al. (U.S.D.C. Middle Dis. AL, May 10, 2016) (American with Disabilities Act class action litigation by prisoners with disabilities).

21

# APPENDIX C

**APPENDIX C**

**PETER BLANCK, PH.D., J.D.**

**FEE RATE IN THIS MATTER**

My hourly fee in this matter is $350 per hour, and I charge for transportation and out-of-pocket expenses.

APPENDIX D

**APPENDIX D**

**INDEX OF PRIMARY DOCUMENTS REVIEWED BY DR. PETER BLANCK**

1.  *DFEH v. LSAC* Consent Decree

2.  Best Practices Final Report

3.  Judge Spero's Order Granting in Part and Denying in Part LSAC's Appeal of the Best Practices Panel Report

4.  Protective Order

5.  Draft ADA Monitor's Report

6.  Draft ADA Monitor's Report with Comments from DFEH and US DOJ

7.  Final ADA Monitor's Report

8.  Copy of LSAC's report on testing accommodation requests (nationwide) provided to US DOJ for the February 2016 LSAT administration

9.  Copy of LSAC's report on testing accommodation requests (California) provided to DFEH for the February 2016 LSAT administration

10. Civil complaint and Motion for Temporary Restraining Order filed in *Harris v. LSAC*

11. Candidate files reviewed by ADA Monitor

12. Arthur L. Coleman's Biographical Statement and Selected Publications

13. Declaration of Joni Carrasco

14. Declaration of Phillip Movaghar

15. Declaration of Russel Dean Harris

16. Declaration of Michael Kallman

17.  Notice of Consent Decree Violations from US Department of Justice and DFEH, Letter of May 17, 2017, to Joan Van Tol, General Counsel, Law School Admission Council, Bob Burgoyne, Fulbright & Jaworski, Re: Department of Fair Employment and Housing v. Law School Admission Council, Inc.

18. Reply to Notice of Consent Decree Violations from Counsel for LSAC, Letter of June 15, 2017, to Department of Fair Employment and Housing, Re: *DFEH v. LSAC*, No. 12-1830-

23

1        EMC (N.D. Cal.)