Timothy P. Fox – Cal. Bar No. 157750
CIVIL RIGHTS EDUCATION AND
ENFORCEMENT CENTER
104 Broadway, Suite 400
Denver, CO 80203
(303) 757-7901
tfox@creeclaw.org

Bill Lann Lee – Cal. Bar No. 108452
CIVIL RIGHTS EDUCATION AND
ENFORCEMENT CENTER.
2120 University Ave.
Berkeley, CA 94704
(510) 431-8484
blee@creeclaw.org

Attorneys for *Amicus Curiae*
American Foundation for the Blind, *et al.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, an agency of the State of California,<br><br>Plaintiff,<br><br>vs.<br><br>LAW SCHOOL ADMISSION COUNCIL, INC.,<br><br>Defendant.<br><br>UNITED STATES OF AMERICA,<br><br>Plaintiff-Intervenor,<br><br>vs.<br><br>LAW SCHOOL ADMISSION COUNCIL, INC.,<br><br>Defendant. | **Case No. CV 12-1830-JCS**<br><br>**NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF**<br><br>Date: December 1, 2017<br>Time: 9:30 am<br>Judge: Hon. Joseph C. Spero<br>Location: Courtroom G (15th Floor) |

NOTICE OF MOTION AND MOTION FOR
LEAVE TO FILE *AMICUS CURIAE* BRIEF
CASE NO. CV 12-1830-JCS

TABLE OF CONTENTS

I.   STANDARD FOR MOTION FOR LEAVE TO FILE BRIEF OF
     AMICI CURIAE…………………………………………………………………......1

II.  STATEMENT OF IDENTITY AND INTEREST IN AMICI CURIAE……………..……2

III. AMICI CURIAE'S EXPERIENCE WILL BENEFIT THIS COURT…………………...14

IV.  CONCLUSION………………………………………...…………………………14

TABLE OF AUTHORITIES

**Cases**

Cobell v. Norton,
    246 F. Supp. 2d 59 (D.D.C. 2003)……………………………………………………1-2

In re Roxford Foods Litig.,
    790 F. Supp. 987 (E.D. Cal. 1991)………………………………………………..……1

Sonoma Falls Devs., LLC v. Nev. Gold & Casinos, Inc.,
    272 F. Supp. 2d 919 (N.D. Cal. 2003)……………………………………...……………1-2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT American Foundation for the Blind, Association on Higher Education And Disability, Association of University Centers on Disabilities, Center for Public Representation, Karen Dahlman Ph.D., Professor Robert Dinerstein, Disability Rights Bar Association, Disability Rights Education & Defense Fund, Disability Rights New York, Everyone Reading, Inc., Professor Paul Grossman, Elizabeth Hennessey-Severson, Jo Anne Simon P.C., Professor Arlene Kanter, Brenda Cheryl Kaplan, Ph.D., Antoinette J. Lynn, Ph.D., Learning Disabilities Association of America, Amy Margolis, Ph.D., National Association of Law Students with Disabilities, National Federation of the Blind, Professor Richard K. Neumann, Professor Michael A. Schwartz, The Judge David L. Bazelon Center for Mental Health Law, Alexandra Tucker, Esq., and Jeanette Wasserstein, Ph.D. hereby move the Court for leave to file a brief amici curiae in the above-captioned case in support of Plaintiff Department of Fair Employment and Housing. A copy of the proposed *amicus curiae* brief is appended to this motion as Exhibit A.

**I.   STANDARD FOR MOTION FOR LEAVE TO FILE BRIEF OF AMICI CURIAE**

District courts have discretion to permit third parties to participate as *amici curiae*. There are no strict prerequisites that must be established to qualify for amicus status, and the court's discretion is generally exercised liberally. In re Roxford Foods Litig., 790 F. Supp. 987 (E.D. Cal. 1991). Individuals and/or organizations requesting leave to file an *amicus curiae* brief must demonstrate that its "participation is useful or otherwise desirable to the court." Id. at 997. District courts accept *amicus curiae* briefs from non-parties where the legal issues in a case "have potential ramifications beyond the parties directly involved or if the *amicus* has 'unique information or perspective.'" Sonoma Falls Devs., LLC v. Nev. Gold & Casinos, Inc., 272 F.

Supp. 2d 919, 925 (N.D. Cal. 2003) (quoting Cobell v Norton, 246 F. Supp. 2d 59, 62 (D.D.C. 2003)).

## II. STATEMENT OF IDENTITY AND INTEREST OF AMICI CURIAE

These *Amici* are non-profit organizations, law professors, lawyers and prospective lawyers with disabilities, clinicians, disability rights advocates, policy makers, and researchers who collectively possess extensive personal, public policy, legislative, and litigation experience regarding the Law School Admission Council's (hereinafter "Defendant" or "LSAC") pattern or practice of discrimination against individuals with disabilities.

The **American Foundation for the Blind (AFB)**, Helen Keller's cause in the United States, is the leading national nonprofit organization advocating for the rights and capabilities of the more than 25 million Americans living with vision loss. AFB champions access and equality for all people with disabilities, particularly those who are blind, visually impaired or deafblind and their families, breaking down societal barriers and promoting equity and broad systemic change. Through nearly a century of advocacy, AFB has helped to shape the contours of every congressional enactment of disability-related civil rights legislation, and AFB continues to stand at the forefront of national disability policy and evidence-based advocacy. The outcome of this case is of significant importance to AFB's constituency.

The **Association on Higher Education And Disability** ("AHEAD") is a not-for-profit organization committed to full participation and equal access for persons with disabilities in higher education. Its membership includes faculty, staff and administrators at approximately 2,000 colleges and universities, not-for-profit service providers and professionals, and college and graduate students planning to enter the field of disability practice. AHEAD members strive to ensure that institutions of higher education comply with applicable disability rights protections and provide reasonable accommodations to both students and employees. AHEAD is a nationally-

NOTICE OF MOTION AND MOTION FOR
LEAVE TO FILE *AMICUS CURIAE* BRIEF        - 2 -
CASE NO. CV 12-1830-JCS

recognized voice advocating for access to higher education and graduate admissions and licensing examinations. The outcome of this case is of significant importance to AHEAD members and the individuals they serve.

**Association of University Centers on Disabilities (AUCD)** is a membership organization that supports and promotes a national network of university-based interdisciplinary programs. These programs serve and are located in every U.S. state and territory and are all part of universities or medical centers. AUCD's mission is to advance policies and practices that improve the health, education, social, and economic well-being of all people with developmental and other disabilities, their families, and their communities by supporting our members in research, education, health, and service activities that achieve our vision. The outcome of this case is of significant importance to AUCD members and the individuals they serve.

The **Center for Public Representation (CPR)** is a national public interest law firm with offices in Northampton and Newton, Massachusetts and Washington, D.C. that advocates for the rights of adults and children with disabilities. Through its systemic activities and policy work during the past forty years, CPR has been a major force in protecting the rights of citizens with disabilities. CPR has persistently advocated for inclusion in mainstream settings and for fundamental fairness and reasonable accommodation that are necessary to ensure integration and equal opportunity. The outcome of this case is of significant importance to CPR and the individuals they represent.

**Karen Dahlman Ph.D**. is an Assistant Clinical Professor in the Department of Psychiatry at Icahn School of Medicine at Mount Sinai. An accomplished academic and clinician, Dr. Dahlman founded the Psychological Services Clinic at Mount Sinai in 1995; data collected there has been used to describe discreet neuropsychological functions such as fluency (Dahlman, 1997). She was Director of the Neuropsychology Service and Neuropsychology Training from

1995 -2012.  Dr. Dahlman is now in full-time private practice. In her clinical work, Dr. Dahlman is regularly called upon to examine individuals for a variety of brain-based disabilities and to substantiate those findings in neuropsychological reports. Based on Dr. Dahlman's findings of learning disabilities, attention-deficit disorders, or other relevant disability, her patients submit her reports to support their applications for accommodations to LSAC and other testing agencies. The outcome of this case is of significant importance to Dr. Dahlman and her current patients.

Professor **Robert Dinerstein** is professor of law, associate dean for experiential education, and director of the Disability Rights Law Clinic (which he founded in 2005) at American University, Washington College of Law, where he has taught since 1983. Prior to coming to American, he was a trial lawyer for five years in the Department of Justice, Civil Rights Division, Special Litigation Section.  His academic, clinical, and professional work has focused on the rights of people with disabilities. Over the years, he has interacted with many law students with disabilities and has informally advised them about reasonable modifications to testing protocols in pre- and post-law school contexts, as well as within the law school itself. He has been active in legal education at the national level, serving on the Council of the American Bar Association's Section of Legal Education and Admissions to the Bar from 2006-11. He is interested in this case because its outcome affects the many law students and applicants to law school who have disabilities and need reasonable modifications that permit the relevant authorities to measure what these individuals know or have learned without their disabilities interfering with their ability to communicate that knowledge and learning.

The **Disability Rights Bar Association (DRBA)** was formed by a group of disability counsel, law professors, legal nonprofits and advocacy groups who share a commitment to effective legal representation of individuals with disabilities.  The DRBA is an online network of

attorneys who specialize in disability civil rights law. The DRBA is hosted by but independent of the Burton Blatt Institute (BBI) at Syracuse University. BBI is a research, education and advocacy organization dedicated to advancing the civic, economic and social participation of people with disabilities worldwide. The DRBA was established to advance and enforce the rights of people with disabilities in all spheres of life through the use of litigation and other legal advocacy strategies. The outcome of this case is of significant importance to DRBA members and the individuals they serve.

The **Disability Rights Education & Defense Fund (DREDF)**, based in Berkeley, California, is a national non-profit law and policy center dedicated to protecting and advancing the civil rights of people with disabilities. Founded in 1979 by people with disabilities and parents of children with disabilities, DREDF engages in education, advocacy and law reform efforts. As part of its involvement in the passage process leading up to the Americans with Disabilities Act (ADA) of 1990 and its implementing regulations, DREDF worked to ensure that specific provisions of relevance to professional testing and credentialing appropriately balanced the interests of all involved stakeholders, including covered entities and individuals with disabilities. As part of its mission, DREDF is dedicated to ensuring that effective legal remedies are available to vindicate nondiscrimination rights.

**Disability Rights New York ("DRNY")** is the federally authorized Protection and Advocacy System for people with disabilities in New York. DRNY provides free legal services and other advocacy services to advance and protect the rights of people with disabilities. DRNY advocates to ensure that its clients are free from abuse and neglect and from unlawful discrimination. DRNY provides these services under federal grant funded mandates that have been established by Congress to protect and advocate for the rights, safety, and autonomy of people with disabilities.

NOTICE OF MOTION AND MOTION FOR
LEAVE TO FILE *AMICUS CURIAE* BRIEF              - 5 -
CASE NO. CV 12-1830-JCS

**Everyone Reading, Inc.** (formerly known as the New York Branch of the International Dyslexia Association) is a not-for-profit organization that provides public information, referrals, training and support to professionals, families and affected individuals regarding the impacts to and treatment of people with dyslexia and related learning disorders. Its members believe in targeted educational interventions and the provision of accommodations for students with dyslexia at all levels of education, including access to the professions. The outcome of this case is of significant importance to Everyone Reading's members and the individuals they serve.

Professor **Paul D. Grossman,** is an individual with multiple learning disabilities. For over 30 years, Mr. Grossman was the Chief Civil Rights Attorney for the US Department of Education (ED), Office for Civil Rights (OCR), in San Francisco; a position from which he has recently retired. While at OCR, Mr. Grossman also directed OCR's internal, national disability law training program. He continues in his position as an Adjunct Professor of Disability Law at Hastings College of Law, University of California, a subject which he has taught for over 20 years, using his widely assigned textbook, Colker and Grossman, the *Law of Disability Discrimination, Eighth Edition*. Mr. Grossman is well-recognized as an expert on post-secondary disability law, conducting numerous CLE trainings and delivering multiple keynote speeches across the country every year. Mr. Grossman is also on the Board of Directors of the Association on Higher Education and Disability (AHEAD) and the Public Policy Committee of Children and Adults with AD/HD (CHADD), the premier educational and public policy organization for individuals with AD/HD. While Mr. Grossman was at OCR, complaints of discrimination against children with AD/HD was the single most frequent type of disability discrimination complaint received by OCR. This problem was so wide spread and deep that Mr. Grossman devoted six years to initiating and collaborating with OCR on national compliance guidance concerning students with AD/HD. That guidance published last year, remains in

force. Mr. Grossman's classes at Hastings include many students with disabilities. The outcome of this case is of significant importance to Professor Grossman, his future students, and the many individuals with disabilities he mentors in the legal profession.

**Elizabeth Hennessey-Severson** is a complainant named in <u>DFEH v. LSAC</u> and in the United States' Complaint in Intervention. When Ms. Hennessey-Severson requested accommodations for the June 2011 LSAT she had a long and well-documented history of several learning disabilities and Attention Deficit-Hyperactive Disorder. The LSAC denied Ms. Hennessey-Severson's request for accommodations despite her doctors' recommendations for accommodations requested and her having received similar accommodations on prior exams. Ms. Hennessey-Severson was forced to take the LSAT without the accommodations she and her doctors requested, and as a result her LSAT scores did not fully reflect her knowledge of the tested subject matter or her ability to succeed in law school, pass the bar, and practice law. Enforcement of this Court's Orders and the Consent Decree made it possible for Ms. Hennessey-Severson to take the LSAT with the accommodations needed to level the playing field. She is presently in her third year at Boston University School of Law and is expected to receive her juris doctor degree in May 2018. The outcome of this case is of significant importance to Ms. Hennessey-Severson who wants ensure that future law school applicants with disabilities are given a fair opportunity to compete and succeed.

**Jo Anne Simon, P.C.** are attorneys and advocates providing representation to individuals with disabilities throughout the country who face discriminatory barriers in high stakes standardized testing, higher education, or employment because of their disability. The firm has successfully advised and represented hundreds of individuals seeking fair treatment and equal access in connection with professional admissions and licensing examinations, including the pre-litigation representation of seven of the individual complainants named in <u>Department of Fair

Employment and Housing v. Law School Admission Council and intervenor United States v. Law School Admission Council, herein. The firm was instrumental in the passage of the Americans with Disabilities Amendments Act (2008), and in securing passage of Education Code section 99161.5 (Stats. 2012, Ch. 583 (AB 2012)), advising the Assembly, and testifying before the Senate to ban the "flagged" reporting of the LSAT scores of California test takers who received disability accommodations on the exam. The outcome of this case is of significant importance to Jo Anne Simon, P.C. and the clients it serves.

Professor **Arlene Kanter** is the founder and director of the Disability Law and Policy Program at Syracuse University College of Law.  For the past thirty years, she has mentored students with disabilities seeking admission to law school. She also advises current law students with disabilities.  She is the former co-founder of the Disability Law Section of the American Association of law Schools, editor of the Disability Law SSRN Journal, and a former Commissioner on the ABA Commission on Disability.  The outcome of this case is of significant importance to her current and future students and to ensure equal access to legal education for students with disabilities.

**Brenda Cheryl Kaplan, Ph.D**. has been a New York State licensed psychologist for the past 29 years and has a private practice in New York City.  Her patients are predominantly children and adults who present with Learning Disorders and related cognitive issues (e.g., Language Disorders, Attention Disorders, Developmental Coordination Disorders, Memory issues, etc.).  In addition, some of her patients also present with emotional disabilities.  In her clinical work, Dr. Kaplan evaluates individuals with brain-based disabilities and communicates her findings in reports, including making recommendations for standardized testing accommodations. The outcome of this case is of significant importance to Dr. Kaplan and her current patients.

**Antoinette J. Lynn, Ph.D.** is a clinical psychologist /neuropsychologist who has been in private practice for more than 30 years. Dr. Lynn works with pre-school and school-aged children, adolescents, and adults. She is familiar with and has interacted extensively with both private and public schools and colleges in the New York metropolitan region.  Dr. Lynn also treats couples and families, with principal clinical interests in the areas of neuropsychological assessment, remediation of learning disabilities, individual, couples, and family therapy, and parenting. Dr. Lynn has taught various courses on the neuropsychology of learning disabilities and consulted with several private mainstream and special education schools.  In her clinical work, Dr. Lynn evaluates individuals with brain-based and emotional disabilities and communicates her findings in reports, including making recommendations for standardized testing accommodations.  The outcome of this case is of significant importance to Dr. Lynn and her current patients.

The **Learning Disabilities Association of America (LDA)** is a grassroots, nonprofit organization whose thousands of members include individuals with learning disabilities, their families and the professionals who work with them. Organized by a group of parents and professionals in 1963, LDA has over 100 state and local affiliates throughout the United States as well as members from countries around the world. LDA's mission is to create opportunities for success for all individuals affected by learning disabilities and to reduce the incidence of learning disabilities in future generations. The nonprofit is dedicated to encouraging research that seeks to identify the causes of learning disabilities and disseminating research findings that could lead to promoting prevention. LDA also seeks to enhance the quality of life for all individuals with learning disabilities and their families by encouraging effective identification and intervention, fostering research in best practices and protecting their rights under the law. LDA seeks to accomplish this through awareness, advocacy, empowerment, education, service and

collaborative efforts. The outcome of this case is of significant importance to LDA's members and the individuals they serve.

**Amy Margolis, Ph.D.** is Assistant Professor of Medical Psychology with an appointment in the Division of Child and Adolescent Psychiatry, and an affiliation with the Cognitive Development and Neuroimaging Laboratory at Columbia University. Dr. Margolis uses neuroimaging to inform the development of novel therapeutics and early prevention programs for people with learning disabilities. She is Principal Investigator of several neuroimaging studies that examine the brain bases of reading disorder, nonverbal learning disorder, and the effects of prenatal exposure to tobacco smoke on brain function and the manifestation of learning problems. She has received funding from the National Institute of Environmental Health Sciences, the Northern Manhattan NIEHS Center, the Promise Project at Columbia, Gray Matters at Columbia, and the NVLD Project. Dr. Margolis has directed a pediatric neuropsychology training program in comprehensive assessment and treatment of children with learning disabilities and attention disorders for nearly 20 years. She has developed novel treatment methods for children with learning disabilities and attention disorders by combining tutoring, cognitive remediation and psychotherapy techniques. In the course of her clinical work, Dr. Margolis evaluates individuals with brain-based and emotional disabilities and communicates her findings in reports, including making recommendations for standardized testing accommodations. The outcome of this case is of significant importance to Dr. Margolis and her current patients.

The **National Association of Law Students with Disabilities (NALSWD)** is a coalition of law students dedicated to disability advocacy and the achievement of equal access, inclusion, diversity and non-discrimination in legal education and in the legal profession. The outcome of this case is of significant importance to NALSWD's mission to ensure that future law school applicants with disabilities are given a fair opportunity to compete and succeed.

The **National Federation of the Blind (NFB)** is the largest and most influential membership organization of blind people in the United States. With more than 50,000 members, affiliates in all fifty states, the District of Columbia, and Puerto Rico, and over 700 local chapters in most major cities, the NFB is recognized by the public, Congress, governmental agencies, and the courts as a collective and representative voice of blind Americans and their families. The ultimate purpose of the NFB is the complete integration of the blind into society on an equal basis. The NFB serves its members through advocacy, education, research, technology, and programs encouraging independence and self-confidence. The NFB promotes the general welfare of the blind by (1) assisting them to integrate into society on terms of equality and (2) removing barriers and changing social attitudes, stereotypes and mistaken beliefs held by both sighted and blind individuals concerning blindness that result in the denial of opportunity to blind persons in virtually every sphere of life. The NFB actively engages in litigation on behalf of blind persons throughout the country seeking educational advancement who encounter systemic barriers in testing for admission, licensure and employment.

Professor **Richard K. Neumann** has been a law school professor for 42 years at Hofstra University School of Law. In that capacity he works with many students who have ADHD, a disability that he also experiences. He is the author or coauthor of five textbooks: *Essential Lawyering Skills*; *Transactional Lawyering Skills*; *Legal Drafting by Design*; *Legal Writing*; and *Legal Reasoning and Legal Writing*. He has served on American Bar Association (ABA) committees and ABA accreditation site inspection teams and has given more than 80 speeches and presentations on various subjects at legal education conferences — including two presentations about ADHD at conferences sponsored by LSAC. The outcome of this case is of significant importance to Professor Neumann and his future students.

Professor **Michael A. Schwartz** directs the Disability Rights Clinic in the Office of Clinical Legal Education at Syracuse University College of Law where he supervises law students in disability advocacy and teaches clinical skills and disability law. Dr. Schwartz, who was born deaf, is fluent in American Sign Language and is a full-fledged member of the Deaf community in the United States and overseas. An attorney for over 35 years, Dr. Schwartz has extensive experience in ADA litigation, and his clinic focuses on employment discrimination, access to local and state government services, and access to places of public accommodations. The outcome of this case is of significant importance to Dr. Schwartz and his clients.

The **Judge David L. Bazelon Center for Mental Health Law**, founded in 1972 as the Mental Health Law Project, is a national non-profit advocacy organization that provides legal assistance to individuals with mental disabilities.  Through litigation, public policy advocacy, education, and training, the Bazelon Center works to advance the rights and dignity of individuals with mental disabilities in all aspects of life, including community living, employment, education, health care, housing, voting, parental rights, and other areas.  Much of the Center's work involves efforts to remedy disability-based discrimination through enforcement of the Americans with Disabilities Act (ADA).  The outcome of this case is of significant importance to Bazelon and the individuals it serves.

**Alexandra Tucker, Esq.** is a complainant named in the United States' Complaint in Intervention to the action originally brought by DFEH against LSAC.  When Ms. Tucker was 13 years old she was involved in an all-terrain vehicle accident that which caused a right temporal bone fracture.  In the few years that followed, she sustained two additional head injuries that caused to experience permanent slow processing speed, attention deficits, memory deficits, and migraine headaches.  Several clinicians diagnosed her with learning, attention, and cognitive disabilities secondary to her head injuries and recommended that she receive specific

accommodations for her examinations, including, but not limited to, extended time and extra break time.

When Ms. Tucker was approximately 21 years of age, she requested accommodations for the LSAC and her request was repeatedly denied despite her extensive medical records and history of receiving testing accommodations in similar situations. Ms. Tucker was forced to take the LSAT without the accommodations she and her doctors requested, and as a result her LSAT scores did not fully reflect her knowledge of the tested subject matter or her ability to succeed in law school, pass the bar, and practice law. Enforcement of this Court's Orders and the Consent Decree made it possible for Ms. Tucker to take the LSAT with the accommodations needed to level the playing field. She is now a Staff Attorney at the Center for Family Representation in New York City where she represents indigent parents in child abuse and neglect proceedings in family court and criminal court. The outcome of this case is of significant importance to Ms. Tucker, who wants ensure that future law school applicants with disabilities are given a fair opportunity to compete and succeed.

**Jeanette Wasserstein, Ph.D.** is a neuropsychologist who is known for her clinical work synthesizing conventional therapies with emerging understanding of brain functioning. She works with a wide age range and spectrum of patients, but specializes in adults with neurodevelopmental disorders, such as learning disabilities or attention deficit disorder. In the course of her clinical work, Dr. Wasserstein evaluates individuals with brain-based and emotional disabilities and communicates her findings in reports, including making recommendations for standardized testing accommodations. Currently Director of New York City-based CNS Support and on the faculty of The Mount Sinai School of Medicine, Department of Psychiatry, Dr. Wasserstein founded the graduate Neuropsychology training program at The New School for Social Research. Her other academic appointments have been in the Graduate Department of

Neuropsychology, Queens College, The Institute for Child, Adolescent and Family Studies and the Department of Neurosurgery, The Mount Sinai School of Medicine. The outcome of this case is of significant importance to Dr. Wasserstein and her current patients.

### III. AMICI CURIAE'S EXPERIENCE WILL BENEFIT THIS COURT

This Court has accepted statements from *amici* in the prior proceedings. Disability rights advocacy organizations, bar associations, lawyers, prospective lawyers with disabilities, law professors, clinicians, and policymakers across the United States share an interest in the elimination of disability bias and discrimination within the legal profession and at entry points to law school and to bar membership, and the integration of the legal profession to include qualified individuals with disabilities. Moreover, as previously stated, *amici* collectively possess extensive personal, public policy, legislative, and litigation experience regarding Defendant's pattern or practice of discrimination against individuals with disabilities.

### IV. CONCLUSION

For the foregoing reasons, the above-listed *amici* respectfully request this Court's leave to submit the attached brief *amici curiae*.

Dated: November 3, 2017

CIVIL RIGHTS EDUCATION AND
ENFORCEMENT CENTER

By: /s/ Timothy P. Fox
    Timothy P. Fox

Attorneys for *Amici Curiae*
American Foundation for the Blind, *et al.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 3, 2017, a copy of the foregoing Notice of Motion and Motion for Leave to File *Amicus Curiae* Brief was filed and served pursuant to the Courts' electronic filing procedures using CM/ECF.

          /s/Caitilin Hall_____
          Caitilin Hall