EXHIBIT A

Timothy P. Fox – Cal. Bar No. 157750
CIVIL RIGHTS EDUCATION AND
ENFORCEMENT CENTER
104 Broadway, Suite 400
Denver, CO 80203
(303) 757-7901
tfox@creeclaw.org

Bill Lann Lee – Cal. Bar. No. 108452
CIVIL RIGHTS EDUCATION AND
ENFORCEMENT CENTER.
2120 University Ave.
Berkeley, CA 94704
(510) 431-8484
blee@creeclaw.org

Attorneys for *Amici Curiae*
American Foundation for the Blind, *et al.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, an agency of the State of California, <br><br> Plaintiff, <br><br> vs. <br><br> LAW SCHOOL ADMISSION COUNCIL, INC., <br><br> Defendant. <br><br> UNITED STATES OF AMERICA, <br> Plaintiff-Intervenor, <br><br> vs. <br><br> LAW SCHOOL ADMISSION COUNCIL, INC., <br> Defendant. | **Case No. CV 12-1830-JCS** <br><br> **BRIEF OF *AMICI CURIAE* IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER HOLDING DEFENDANT IN CIVIL CONTEMPT** <br><br> Date:       December 1, 2017 <br> Time:      9:30 am <br> Location: Courtroom G (15th Floor) <br>                Hon. Joseph C. Spero |

On the brief:
Jo Anne Simon, Esq.
Mary J. Goodwin-Oquendo, Esq.
JO ANNE SIMON, P.C.


COURT PAPER
State of California
Std. 113 Rev. 3-95
FE&H Automated

## TABLE OF CONTENTS

INTERESTS OF AMICI CURIAE………………………………………………………………1

STATEMENT OF ISSUES AND FACTS……………………………………………………….1

ARGUMENT……………………………………………………………………………...……..5

I.    THE LSAC'S FAILURE TO COMPLY WITH THE LAW, CONSENT DECREE, AND THIS COURT'S ORDERS HAS DENIED INDIVIDUALS WITH DISABILITIES ACROSS THE COUNTRY EQUAL ACCESS TO THE LSAT, AND THUS TO LAW SCHOOL AND THE LEGAL PROFESSION……………….………… 5

II.    THIS COURT'S ORDERS ARE PROPERLY ENFORCED NATIONWIDE……………………………………………………………...…………...8

CONCLUSION…………………………………………………………………………..………8


COURT PAPER
State of California
Std. 113 Rev. 3-95
FE&H Automated

-i-

*Dept. Fair Empl. & Hous. v. Law School Admission Council*
BRIEF OF *AMICI CURIAE* IN SUPPORT OF PLAINTIFF'S MOTION FOR CIVIL CONTEMPT



| | |
|---|---|
| 1 | TABLE OF AUTHORITIES |

**Cases**

Bonnette v. District of Columbia Court of Appeals,

    796 F.Supp.2d 164 (D.D.C. July 13, 2011)……………………………………...……………….6

Elder v. Nat'l Conference of Bar Examiners,

    No. C 11-00199 SI, 2011 WL 672662 (N.D. Cal. Feb. 16, 2011)……………………………..6

Enyart v. National Conference of Bar Examiners,

    630 F.3d 1153 (9th Cir. 2011)…………………………………………………………………6

Grutter v. Bollinger,

    539 U.S. 306 (2003)……………………………………………………………………………4

Hartnett v. Fielding Graduate Inst.,

    400 F.Supp.2d 570 (S.D.N.Y.2005)……………………………………………………..…...7

Jones v. National Conference of Bar Examiners,

    801 F.Supp.2d 270 (D. Vt. Aug. 2, 2011)………………………………………………..….6

Long v. Howard University,

    439 F.Supp.2d 68 (D.D.C. 2006)……………………………………………………………7

Staron v. McDonald's Corp.,

    51 F.3d 353 (2d Cir.1995)……………………………………………………………………..7

U.S. Airways, Inc. v. Barnett,

    535 U.S. 391 (2002)……………………………………………………………………………7

**Statutes**

42 U.S.C. §12101……………………………………………………………………………………2

42 U.S.C. § 12101(a)………………………………………………………………………………..6

42 U.S.C. § 12182(b)(1)(D)……………………………………………………………………….5

42 U.S.C. § 12182(b)(2)(A)(ii)…………………………………………………… ……………5

-ii-

*Dept. Fair Empl. & Hous. v. Law School Admission Council*
BRIEF OF *AMICI CURIAE* IN SUPPORT OF PLAINTIFF'S MOTION FOR CIVIL CONTEMPT

COURT PAPER
State of California
Std. 113 Rev. 3-95
FE&H Automated

**Regulations**

28 C.F.R. 36.309 §(b)(1)(i)……………………………………………………………..……..…6

28 C.F.R. §36.309(b)(1)(iv)……………………………………………………………………. 6

28 C.F.R. §36.309 (b)(1)(v)……………………………………………………………….....…6

28 C.F.R. §36.309 (b)(2)……………………………………………………………………….5

**Other Authorities**

154 Cong. Rec. H 8286, 8296 (Sept. 17, 2008)………………………………………………..7

ABA Commission on Disability Rights Report on Resolution 111,

    http://www.americanbar.org/content/dam/aba/administrative/mental_physical_disability/2011

    nov11_cdr_resolution.authcheckdam.pdf …………………………………………………..4

American Bar Association Resolution 111 (2012)…………………………………………….4

"About the LSAT,"

    https://www.lsac.org/jd/lsat/about-the-lsat...............................................................................4

Technical Assistance Manual for Testing Accommodations,

    http://www.ada.gov/regs2014/testing_accommodations. html………………………….....8



-iii-

*Dept. Fair Empl. & Hous. v. Law School Admission Council*
BRIEF OF *AMICI CURIAE* IN SUPPORT OF PLAINTIFF'S MOTION FOR CIVIL CONTEMPT

# INTERESTS OF *AMICI CURIAE*

*Amici* (American Foundation for the Blind, Association on Higher Education And Disability, Association of University Centers on Disabilities, Center for Public Representation, Karen Dahlman Ph.D., Professor Robert Dinerstein, Disability Rights Bar Association, Disability Rights Education & Defense Fund, Disability Rights New York, Everyone Reading, Inc., Professor Paul Grossman, Elizabeth Hennessey-Severson, Jo Anne Simon P.C., Professor Arlene Kanter, Brenda Cheryl Kaplan, Ph.D., Antoinette J. Lynn, Ph.D., Learning Disabilities Association of America, Amy Margolis, Ph.D., National Association of Law Students with Disabilities, National Federation of the Blind, Professor Richard K. Neumann, Professor Michael A. Schwartz, The Judge David L. Bazelon Center for Mental Health Law, Alexandra Tucker, Esq., and Jeanette Wasserstein, Ph.D.) are non-profit organizations, law professors, lawyers and prospective lawyers with disabilities, clinicians, disability rights advocates, policy makers, and researchers who collectively possess extensive personal, public policy, legislative, and litigation experience regarding the Law School Admission Council's (hereinafter "Defendant" or "LSAC") pattern or practice of discrimination against individuals with disabilities.

*Amici* believe that this Court's intervention is necessary to enforce the civil rights of individuals with various physical, cognitive, emotional, sensory, and print disabilities, and ensure that individuals with disabilities across the United States are afforded equal access to the educational and economic opportunities afforded by admission to law school and the profession of law. *Amici* submit this brief in support of Plaintiff's motion in the instant matter and urge this Court to grant Plaintiff's motion for civil contempt, extend the duration of the Consent Decree, and enforce its orders on a nationwide basis.

# STATEMENT OF ISSUES AND FACTS

Disability rights advocacy organizations, bar associations, lawyers, prospective lawyers with

-1-
*Dept. Fair Empl. & Hous. v. Law School Admission Council*
BRIEF OF *AMICI CURIAE* IN SUPPORT OF PLAINTIFF'S MOTION FOR CIVIL CONTEMPT

disabilities, law professors, clinicians, and policymakers across the United States share an interest in the elimination of disability bias and discrimination within the legal profession and at entry points to law school and to bar membership, and the integration of the legal profession to include qualified individuals with disabilities. Such interests fall squarely within the contours of the rights conferred by the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* (hereinafter the "ADA"), and are broadly in the public's interest.

The Law School Admission Test (LSAT) is required for Admission to 98.5% of American law schools and is currently comprised of five thirty-five minute multiple-choice sections and a writing sample that tests reading comprehension, analytical reasoning, and logic. *See,* https://www.lsac.org/jd/lsat/about-the-lsat. According to the LSAC, the LSAT was created to measure "reading and comprehension of complex texts with accuracy and insight; the organization and management of information and the ability to draw reasonable inferences from it; the ability to think critically; and the analysis and evaluation of the reasoning and arguments of others." Id.

Many individuals with disabilities require specific accommodations to access the LSAT so as to ensure that the knowledge and abilities that the LSAT purports to test are accurately measured (i.e., specific amounts of extended test time, specific amounts of break time, a computer with assistive technology, such as a screen reader, a private room, large font materials or a scribe, etc.). Testing accommodations thus do not confer an unfair advantage, but instead provide an equal opportunity to participate and compete at what is, practically speaking, the only entry point to the legal profession.

**LSAC has a long history of disability discrimination**

Had the LSAC complied with all its provisions, this Court's orders and the Consent Decree would have remedied decades of discrimination by the LSAC. The Consent Decree established a framework of general principles to ensure that documentation requests sought by LSAC are reasonable and limited to the need for the testing accommodation requested.



Prior to DFEH's suit against the LSAC, *amici* (both those who were themselves applying for disability accommodations and those representing, treating, and advocating on behalf of those seeking disability accommodations) observed that the LSAC maintained a pattern or practice of arbitrarily awarding fewer accommodations than requested. For example, *amici* observed that applicants requesting 100% extended time for the LSAT were instead likely to be granted 50% extended time, applicants requesting 50% extended time were likely to be granted 25% extended, applicants requesting any amount of extended time might have been granted only breaks instead, and many applicants received no accommodations and were falsely accused − despite having a well-documented history disability and need for accommodation – of having no disability at all.

*Amici* also observed that the slow processing of requests for accommodation too often resulted in late denials, effectively foreclosing an opportunity to appeal these decisions. Applicants were then forced to re-register for subsequent administrations of the exam (offered only four times each year) and expend substantial financial resources to work with clinicians and/or attorneys to submit supplemental information to what was already a legally sufficient request for accommodation.

The LSAC's posture towards disability accommodations was legendary and its discriminatory policies, practices, and procedures had a chilling effect on prospective law students with disabilities' requests for accommodations. Many applicants with disabilities assumed that they would not receive necessary accommodations and either chose to pursue another profession or sat for the LSAT without having the accommodations that they and their clinicians determined were necessary to level the playing field for them. The Court's granting of Plaintiff's motion will send a strong message that the LSAC may no longer flaunt the law.

The LSAC's pattern or practice of discrimination was so pervasive that in 2012 the American Bar Association (hereinafter "ABA") – a volunteer organization of more than 400,000 members that accredits law schools and considers itself the national voice of the legal profession – released a report



-3-

*Dept. Fair Empl. & Hous. v. Law School Admission Council*
BRIEF OF *AMICI CURIAE* IN SUPPORT OF PLAINTIFF'S MOTION FOR CIVIL CONTEMPT

on the subject. The ABA called "on the legal profession to eliminate bias and to enhance diversity, including for persons with disabilities" and found that

> "the testing process for law school admission remains an obstacle to the full and equal participation of individuals with disabilities in the legal profession. Students with disabilities are substantially underrepresented in law schools across the country. [fn. omitted] In part, this is due to the fact that the testing process relied upon by most law schools in the United States does not afford the same benefits to applicants with disabilities that it affords to other applicants"

ABA Commission on Disability Rights, Report on Resolution 111. The report also found that "LSAC typically grants at most time-and-a-half, while the College Board (which administers the SAT, PSAT, and Advanced Placement tests)" granted greater than 50% extended time. Id.

Based upon these findings, the ABA subsequently passed Resolution 111 urging the LSAC to institute policies, practices, and procedures that would provide individuals with disabilities the accommodations that would best ensure that the LSAT measures their reading comprehension, logic, and analytical ability – the skills the LSAT purports to assess – and not the limitations and impacts of their disabilities. American Bar Association, Resolution 111 (2012). The resolution also called for the institution of fair appeals policies and practices for applicants whose requests for accommodations were denied and specifically highlighted the lack of sufficient time to appeal adverse LSAC accommodation decisions as a major barrier. Id.

The denial of equal access to the LSAT and thus an equal opportunity for individuals with disabilities to compete on a level playing field with individuals without disabilities has far-reaching consequences. LSAT scores "not only help to determine whether an applicant is admitted to law school, but whether an applicant will receive financial support and has access to the nation's leading law schools… The U.S. Supreme Court recognized the importance of gaining admission to the leading law schools in Grutter v. Bollinger [539 U.S. 306 (2003)]." Id.

For individuals with disabilities, one of the greatest barriers to access to the legal profession has been, and continues to be, the LSAC and its discriminatory practices. It has been the *amici*'s experience that most law schools grant the accommodations needed for individuals with disabilities to compete on a level playing field. However, it has also been the *amici*'s experience that when evaluating requests for accommodations, bar examining agencies in various jurisdictions tend to give great weight to the accommodations decisions of the LSAC, regardless of the accommodations the candidate's law school provided. For example, a bar applicant's request for 100% extended time is often denied by bar examiners simply because the LSAC granted only 50% extended time (even if this applicant had previously received 100% extended time on other standardized exams, such as the ACT and SAT, and received 100% extended time in school).

## ARGUMENT

**I. THE LSAC'S FAILURE TO COMPLY WITH THE LAW, CONSENT DECREE, AND THIS COURT'S ORDERS HAS DENIED INDIVIDUALS WITH DISABILITIES ACROSS THE COUNTRY EQUAL ACCESS TO THE LSAT, AND THUS TO LAW SCHOOL AND THE LEGAL PROFESSION.**

Title III of the ADA states, in part, that testing companies such as the LSAC are public accommodation that "shall not, directly or through contractual or other arrangements, utilize standards or criteria or methods of administration -- (i) that have the effect of discriminating on the basis of disability" 42 U.S.C. § 12182(b)(1)(D). In addition, it is discriminatory to fail "to make reasonable modifications to policies, practices and procedures when necessary to provide goods and services… to a person with a disability." 42 U.S.C. § 12182(b)(2)(A)(ii). Title III regulations specifically provide that accommodating an individual with a disability may require the testing entity to change the length of the time for an exam and/or the manner in which the examination is given. 28 C.F.R. §36.309 (b)(2).

Title III regulations enforcing the ADA's protections in connection with standardized testing are clear. The individual with a disability is entitled to accommodations that *best ensure* that the test



-5-

*Dept. Fair Empl. & Hous. v. Law School Admission Council*
BRIEF OF *AMICI CURIAE* IN SUPPORT OF PLAINTIFF'S MOTION FOR CIVIL CONTEMPT

COURT PAPER
State of Californi
Std. 113 Rev. 3-9
FE&H Automated

being taken reflects the protected individual's demonstration of knowledge and/or ability, and not the limitations of their disabilities. 28 C.F.R. §36.309(b)(1)(i).  The regulations further require that considerable weight be given to prior history of accommodations in similar circumstances, 28 C.F.R. §36.309 (b)(1)(v), and that an entity may not require unreasonable levels of documentation. 28 C.F.R. §36.309(b)(1)(iv).

In <u>Enyart v. National Conference of Bar Examiners</u>, 630 F.3d 1153, 1162 (9th Cir. 2011), *cert. denied*, No. 10-1304, 2011 WL 4536525 (U.S. Oct. 3, 2011), the Court held that with reference to making standardized exams accessible "entities [such as LSAC] must provide disabled people with an equal opportunity to demonstrate their knowledge or abilities to the same degree as nondisabled people taking the exam – in other words, the entities must administer the exam "so as to best ensure" that exam results accurately reflect aptitude rather than disabilities." *See also*, <u>Elder v. Nat'l Conference of Bar Examiners</u>, No. C 11-00199 SI, 2011 WL 672662 (N.D. Cal. Feb. 16, 2011), <u>Bonnette v. District of Columbia Court of Appeals</u>, 796 F.Supp.2d 164 (D.D.C. July 13, 2011), and <u>Jones v. National Conference of Bar Examiners</u>, 801 F.Supp.2d 270 (D. Vt. Aug. 2, 2011).

Indeed, Title III regulations have long required that tests such as the LSAT be administered so as to "best ensure that [the LSAT]… accurately reflect[s] the individual´s aptitude or achievement level… rather than reflecting the individual´s [impairment]." 28 C.F.R. §36.309 (b)(1)(i).  When amending the Americans with Disabilities Act in 2008, Congress found that: "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity." 42 U.S.C. § 12101 (a).

The ADA was amended, in part, because due to discriminatory actions previously and currently taken by LSAC and other standardized testing companies, "[t]oo many individuals with



-6-

documented learning disabilities…are denied access to easily administered and often low-cost accommodations that would make the critical difference in allowing them to demonstrate their knowledge" on standardized examinations. 154 Cong.Rec. H 8286, 8296 (Sept. 17, 2008).

The LSAC's actions since it entered into the Consent Decree and the issuance of this Court's orders evidence an intent to continue to discriminate against individuals with disabilities who require specific testing accommodations to compete on equal footing on the LSAT.  For example, the LSAC's creation a "50% email" policy (*See*, Dkt. 249) not only violates the Court's orders and Consent Decree, but is a deliberate "end run" around the law and a renewal of the very practices that harmed students and caused Plaintiffs to bring suit in the first place. Moreover, it ignores the fact that the law is predicated upon the notion that accommodation decisions are to be made on an individualized basis.

There is no "one size fits all" under the ADA and the LSAC's persistence in restricting the rights of test takers with disabilities flaunts the law.  The Supreme Court has already held that a modification is not an accommodation unless it is effective. *See* US Airways, Inc. v. Barnett, 535 U.S. 391, 400 (2002) ("An *ineffective* "modification" or "adjustment" will not *accommodate* a disabled individual's limitations.")  *See also*, Long v. Howard University, 439 F.Supp.2d 68, 76 (D.D.C. 2006) ("[T]he determination of whether a particular modification is 'reasonable' involves a fact-specific, case-by-case inquiry" that   typically requires jury resolution. *See* Staron v. McDonald's Corp., 51 F.3d 353, 356 (2d Cir.1995); *see also* Hartnett v. Fielding Graduate Inst.*,* 400 F.Supp.2d 570, 577 (S.D.N.Y.2005).

The LSAC's bullying tactics coercing individuals with disabilities to accept inadequate test modifications not only deprive those individuals of the opportunity to equally access the exam and fully demonstrate their mastery of the tested subject matter, it also jeopardizes their admission to law



COURT PAPER
State of Californi
Std. 113 Rev. 3-9
FE&H Automate

-7-

*Dept. Fair Empl. & Hous. v. Law School Admission Council*
BRIEF OF *AMICI CURIAE* IN SUPPORT OF PLAINTIFF'S MOTION FOR CIVIL CONTEMPT

school, their receipt of financial aid, their subsequent receipt of bar exam accommodations, their entry into the legal profession, and their earning ability.

To the extent that the LSAC outright denied applications for accommodations, or delayed decisions sufficiently to have effectively denied the accommodations, without providing a clear, specific explanation for its determination, it deprived applicants and their clinicians the ability to clarify material in violation of this Court's orders.  Dkt. 203, 220, and 245.  The same is true where the LSAC refused to grant applicants sufficient time to appeal its adverse decisions. Id**.**

## II. THIS COURT'S ORDERS ARE PROPERLY ENFORCED NATIONWIDE.

Requests for LSAC accommodations affect students in California and nationwide, and uniformity in the accommodation process benefits all students as the policies and procedures are consistently applied.  The public's interest is benefitted from the consistent application of LSAC procedures and it is contrary to the public interest not to have nationwide enforcement of a nationwide testing procedure.

This Court has personal jurisdiction over both the LSAC and DFEH, and any orders issued by this court will directly impact law school applicants and law schools across the country, and indirectly impacts the nation's economy. Moreover, nationwide orders from this court would not impinge upon the sovereignty of any other courts because the May 19, 2014 consent decree in this case was intended to apply nationally and was subsequently incorporated into federal regulatory guidance.  *See*, http://www.ada.gov/regs2014/testing_accommodations. html.

## CONCLUSION

For all of the reasons stated herein, this Court should grant Plaintiff DFEH's motion in full.



*Dept. Fair Empl. & Hous. v. Law School Admission Council*
BRIEF OF *AMICI CURIAE* IN SUPPORT OF PLAINTIFF'S MOTION FOR CIVIL CONTEMPT

| | |
|---|---|
| Dated: November 3, 2017 | Respectfully submitted on behalf of *amici*, |
| | Jo Anne Simon, Esq. |
| | Mary J. Goodwin-Oquendo, Esq. |
| | JO ANNE SIMON, P.C. |
| | 356 Fulton Street, 3rd Floor |
| | Brooklyn, New York 11201 |



-9-

*Dept. Fair Empl. & Hous. v. Law School Admission Council*
BRIEF OF *AMICI CURIAE* IN SUPPORT OF PLAINTIFF'S MOTION FOR CIVIL CONTEMPT