UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING,

Plaintiff,

v.

LAW SCHOOL ADMISSION COUNCIL INC,

Defendant.

Case No. 12-cv-01830-JCS

**ORDER REGARDING MOTION FOR ATTORNEYS' FEES**

Re: Dkt. No. 282

## I. INTRODUCTION

The California Department of Fair Employment and Housing ("DFEH"), one of the plaintiffs in this action, previously obtained substantial success on a motion to hold Defendant Law School Admission Council, Inc. ("LSAC") in civil contempt for violation of a consent decree. DFEH now seeks to recover attorneys' fees. The Court held a hearing on November 2, 2018. For the reasons discussed below, the motion is GRANTED in part and DENIED in part. LSAC is ORDERED to pay $480,489.05 to DFEH for DFEH's allowable fees.[1]

## II. BACKGROUND

DFEH filed this action in 2012 asserting that LSAC, which administers the Law School Admission Test, failed to accommodate test takers with disabilities as required by California law. The United States and several individuals intervened as additional plaintiffs, the parties reached a settlement in 2014, and the Court entered a consent decree that imposed certain requirements on LSAC and delegated other issues to a panel of experts to be appointed by the parties. *See generally* Consent Decree (dkt. 203). After the panel issued its report establishing additional

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

procedures for LSAC's treatment of requests to accommodate disabilities, LSAC challenged aspects of the report, but in 2015 the Court largely upheld the report as within the panel's authority and binding on LSAC. *See generally* Order Re Best Practices Panel Report (dkt. 245).[2] As the end of the consent decree's original four-year term drew near, DFEH determined that LSAC had failed to comply with several of its obligations. The parties engaged in informal negotiations as required by the consent decree, *see* Consent Decree ¶ 31, but after they were unable to resolve their disputes, DFEH brought a motion for civil contempt, and in March of 2018 the Court granted that motion in large part and extended the term of the consent decree by two years. *See generally* Order Re Mot. for Contempt (dkt. 278).[3]

DFEH now seeks its attorneys' fees and costs for bringing that motion pursuant to paragraph 21(b) of the consent decree. DFEH's motion seeks a total award of $529,341, plus costs of $4,077.54. Mot. (dkt. 282) at 17. DFEH's reply, which withdraws its claim as to a small number of hours but includes additional fees for work on the present motion, seeks $567,295.50 in fees, plus the same costs. Reply (dkt. 289) at 15. LSAC does not dispute that DFEH is entitled to fees, but argues that the fees it seeks are excessive. *See generally* Opp'n (dkt. 285). Most significantly, LSAC argues that DFEH should recover fees at $170 per hour rather than prevailing market rates, that DFEH should not recover fees for its investigation of LSAC's practices or for engaging in informal negotiations before bringing its contempt motion, and that DFEH's fees incurred for bringing the present motion for attorneys' fees should be reduced significantly because, according to LSAC, DFEH did not follow the procedure for seeking fees set by the consent decree. The parties' arguments are addressed in more detail in the analysis below.

## III. ANALYSIS

### A. Legal Standard

"A consent decree is construed with reference to ordinary contract principles of the state in

---

[2] *Dep't of Fair Emp't & Hous. v. Law Sch. Admission Council, Inc.*, No. 12-cv-01830-JCS, 2015 WL 4719613 (N.D. Cal. Aug. 7, 2015). Citations herein to the Court's previous orders refer to page numbers of the versions filed in the Court's ECF docket.
[3] *Dep't of Fair Emp't & Hous. v. Law Sch. Admission Council, Inc.*, No. 12-cv-01830-JCS, 2018 WL 1156605 (N.D. Cal. Mar. 5, 2018).

2

which the decree is signed"—in this case, California. *See Gates v. Gomez*, 60 F.3d 525, 530 (9th Cir. 1995). Section 1717 of the California Civil Code governs awards of attorneys' fees in actions on contracts, providing that "where the contract specifically provides [for an award of] attorney's fees . . . [r]easonable attorney's fees shall be fixed by the court" and awarded to "the party who recovered a greater relief in an action on the contract." Cal. Civ. Code § 1717(a). In an appeal from an action on a consent decree governing tobacco advertising, a California appellate court held that section 1717 applies to enforcement of consent decrees that include attorneys' fees provisions. *In re Tobacco Cases I*, 193 Cal. App. 4th 1591, 1600–02 (2011). California courts have generally applied the "lodestar" method of calculating attorneys' fees under section 1717 as well as other fee-shifting statutes, multiplying hours reasonably spent on a case by a reasonable hourly billing rate, with possible adjustments based on factors such as the difficulty of the issues presented, the skill of the attorneys, and whether counsel's compensation was contingent on success. *Laffitte v. Robert Half Int'l, Inc.*, 1 Cal. 5th 480, 500 (2016) ("[W]e have several times, *in fee shifting cases*, endorsed the lodestar or lodestar-multiplier method of calculating an attorney fee award . . . ."); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (discussing the method of calculating a lodestar award); *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1097 (2000).

### B. Hourly Rates

"LSAC is not contesting for the purposes of this motion whether the hourly rates sought by DFEH reflect market rates for similarly-experienced attorneys." Opp'n at 11. LSAC argues, however, that DFEH should be held to statements made by its then-director in 2012 and 2013 indicating that, as a general practice in cases where attorneys' fees had recently become available to DFEH under a revised statute, DFEH would seek fees at $170 per hour, the rate then in use by the California Attorney General. *Id.* (citing Mew Decl. (dkt. 285-1) Exs. E & F).

After determining that section 1717 applies to consent decrees, the *Tobacco* court went on to hold that even though the decree at issue only authorized recovery of fees "incurred," and the People of the State of California were represented by lawyers from the California Attorney General's office who were paid less than the market billing rate for private sector attorneys, section 1717 required "an award . . . of prevailing market rates." *In re Tobacco*, 193 Cal. App. 4th

at 1604–05. The court therefore reversed both the trial court's determination that section 1717 did not apply and the People could recover fees without a showing that they "recovered a greater relief," and the trial court's award of fees based on actual salaries rather than market rates. *Id.* at 1598, 1604.

In reaching its conclusion regarding reimbursement rates, the *Tobacco* court relied on two decision of the California Supreme Court, and distinguished a third:

> In *PLCM Group, Inc. v. Drexler* (2000) 22 Cal. 4th 1084, 1094, 95 Cal. Rptr. 2d 198, 997 P.2d 511, the California Supreme Court affirmed the trial court's award of prevailing market rates under section 1717 to a corporation represented by salaried in-house counsel. The court explained "the fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. 'California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award.' [Citation.] The reasonable hourly rate is that prevailing in the community for similar work." (*PLCM Group, Inc. v. Drexler,* at p. 1095, 95 Cal. Rptr. 2d 198, 997 P.2d 511.) The court rejected the opposing party's argument the trial court erred by not using "a so-called cost-plus approach, based on a precise calculation of the actual salary, costs, and overhead of in-house counsel," explaining that "[n]othing in . . . section 1717 compels such an approach." (*Id.* at pp. 1096–1097, 95 Cal. Rptr. 2d 198, 997 P.2d 511.) The court added: "Requiring trial courts in all instances to determine reasonable attorney fees based on actual costs and overhead rather than an objective standard of reasonableness, i.e., the prevailing market value of comparable legal services, is neither appropriate nor practical; it 'would be an unwarranted burden and bad public policy.'" (*Id.* at p. 1098, 95 Cal. Rptr. 2d 198, 997 P.2d 511.) The court also rejected the "argument that awarding fees to in-house counsel based on prevailing market rates for attorney services, as a general matter, 'most likely constitutes an unjustified windfall.' " (*Id.* at p. 1097, 95 Cal. Rptr. 2d 198, 997 P.2d 511.)
>
> In *Lolley v. Campbell* (2002) 28 Cal. 4th 367, 374, 121 Cal. Rptr. 2d 571, 48 P.3d 1128, the court emphasized that in *PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th 1084, 95 Cal. Rptr. 2d 198, 997 P.2d 511, it "specifically rejected the contention . . . that attorney fees 'incurred' means *only* fees a litigant actually pays or becomes liable to pay from his own assets." The court added, "Our appellate courts have repeatedly affirmed awards of attorney fees under various fee-shifting provisions for legal services provided at no personal expense to the client." (*Lolley v. Campbell,* at p. 374, 121 Cal. Rptr. 2d 571, 48 P.3d 1128.)
>
> Reynolds asserts that even if section 1717 governs fees, the People cannot obtain fees greater than those actually incurred. Reynolds cites *Reynolds Metals Co. v. Alperson, supra,* 25 Cal. 3d 124, 130, 158 Cal.

4

> Rptr. 1, 599 P.2d 83, in which a provision in promissory notes limited attorney fees to 15 percent of the amount of the notes, and the court held "recovery of fees under section 1717 must be similarly limited" because "the statutory right should be no greater than the contractual right." The attorney fees clause in the Consent Decree, however, does not place a monetary cap on fees. Rather, it provides for an award of fees "incurred" by the state, which simply brings the provision within the ambit of section 1717. Reynolds's theory is contrary to the express language of section 1717, subdivision (a), which provides for "reasonable" fees when a contractual provision authorizes an award of attorney fees "incurred" by one party or the prevailing party. . . .

*Id.* at 1604–05 (alterations in original).

This Court agrees with the Court of Appeal's interpretation of California Supreme Court precedent. In *PLCM*, the court held that a lodestar method based on prevailing market rates was "presumably reasonable," that prevailing market rates are appropriate even for in-house counsel whose services may not have been provided at those rates, and that a "meticulous analysis" of the actual costs incurred by a litigant who uses salaried counsel is generally inappropriate. 22 Cal. 4th at 520. The court held in *Lolley* that fees could be recovered under California Labor Code section 98.2(c) even where an employee was represented by the state Labor Commissioner at no personal cost, noting that "fee-shifting provisions similar to the one herein have been held to authorize an award of reasonable attorney fees to publicly as well as privately funded legal services providers." 28 Cal. 4th at 375. Although that case considered statutory fee-shifting under the Labor Code rather than contractual fee-shifting under section 1717, the statute at issue—like the consent decree in this case—authorized recovery of "fees incurred," and the court cited with approval a lower court's decision awarding fees under section 1717 where the prevailing party was represented at no personal cost by a public interest organization. *Id.* at 375 (citing *Beverly Hills Props. v. Marcolino*, 221 Cal. App. 3d Supp. 7, 12 (1990)). Taking those decisions together, California law calls for government agencies that are parties to fee-shifting contracts to recover fees for the work of their salaried attorneys based on prevailing market billing rates, at least absent unusual circumstances.

LSAC's primary argument against awarding market-rate fees is that DFEH's then-director publicly stated in 2012 and 2013 that DFEH would seek fees at $170 per hour rather than at prevailing market rates. Such statements were not tied to this particular case, and LSAC offers no

legal authority why they should affect the Court's consideration of the issue. There is no indication that DFEH established binding policy on its fee rates, through rulemaking or some similar procedure, and DFEH presents evidence that after the Court of Appeal affirmed a final fee award for the California Attorney General at market rates in the *Tobacco* case in 2013, DFEH has since sought fees at market rates as a matter of course. *E.g.*, Cheng Decl. (dkt. 289-2) ¶¶ 3–5. LSAC also argues that as a matter of policy, state agencies do not need the incentive of market-rate fees to perform their duties. Opp'n at 11–12. But "[i]n the absence of a pronouncement by the highest court of a state, the federal courts must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently." *Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983) (citations and internal quotation marks omitted). LSAC has provided no convincing evidence that the California Supreme Court would reject the Court of Appeal's conclusion in the *Tobacco* litigation that state agencies should recover fees at market rates.

Because LSAC does not contest that the rates requested by DFEH reflect market rates, the Court applies those rates in determining the appropriate fee award. Specifically, the Court uses rates of $850 per hour for associate chief counsel Mari Mayeda, $425 per hour for Joni Carrasco and Irina Trasovan, and $290 per hour for Kaitlin Toyama, who was admitted to the bar and became a DFEH civil rights fellow during the course of this litigation but worked as a law clerk for much of the case before then.

### C. Number of Hours

#### 1. Investigation in Pennsylvania and Dispute Resolution Process

DFEH seeks to recover fees for the time its attorneys spent reviewing documents at LSAC's Pennsylvania headquarters (including travel time to and from Pennsylvania) as well as during the dispute resolution process prescribed by the consent decree. Mot. at 11–12; Reply at 5–6. The consent decree provides that "DFEH shall be entitled to reasonable attorney fees and costs for work performed *on any prevailing motion to enforce the Consent Decree*." Consent Decree ¶ 21(b) (emphasis added). LSAC argues that the fee provision is limited to fees incurred actually bringing a motion before the Court. Opp'n at 4–6.

DFEH relies on cases holding that fees for necessary work performed prior to filing a case or motion could be recovered under statutes or contractual provisions awarding fees to a prevailing party. *See N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 71 (1980) (concluding that Title VII of the Civil Rights Act of 1964 "authorize[s] a federal-court action to recover an award of attorney's fees for work done by the prevailing complainant in state [administrative and judicial] proceedings to which the complainant was referred pursuant to the provisions of Title VII"); *Manufactured Home Cmtys., Inc. v. County of San Diego*, 655 F.3d 1171, 1181 (9th Cir. 2011) (affirming an award of fees for both a successful second anti-SLAPP motion and an unsuccessful first motion that was nevertheless "integral to Defendants' eventual success"); *Native Village of Quinhagak v. United States*, 307 F.3d 1075, 1083 (9th Cir. 2002) (holding that the Alaska National Interest Lands Conservation Act authorized recovery of fees for necessary administrative proceedings prior to litigation, distinguishing on the basis of legislative purpose case law holding that ERISA does not allow recovery of such fees); *Hogar Dulce Hogar v. Cmty. Dev. Comm'n*, 157 Cal. App. 4th 1358, 1370–71 (2007) (allowing recovery of fees under California Code of Civil Procedure section 1021.5 for work performed after the parties entered a tolling agreement but before the plaintiff filed its complaint); *Stokus v. Marsh*, 217 Cal. App. 3d 647, 654–56 (1990) (affirming an award including fees incurred in prior actions, which the plaintiff voluntarily dismissed and refiled to cure a technical defect, and which overlapped with work that otherwise would have been necessary in the case at hand); *Best v. Cal. Apprenticeship Council*, 193 Cal. App. 3d 1448, 1461 (1987) (holding that "the term 'action' in section 1021.5 [a statute allowing courts to award fees in 'in any action which has resulted in the enforcement of an important right affecting the public interest'] encompasses administrative proceedings which were useful and necessary to the public interest litigation").

The common thread in the cases that DFEH cites is that fees were awarded for work done to resolve a dispute *after a dispute had been raised*, even where such efforts predated the filing of the action or motion subject to a fee-shifting statute or occurred in a different forum, so long as the work was necessary to the prevailing party's success on the motion or action for which fees were shifted. Here, work performed during the informal dispute resolution process falls squarely within

that framework. The consent decree required the parties to engage in such negotiations before a dispute could be presented to the Court. Consent Decree ¶ 31. Such work was therefore necessary to bring the motion, and can be considered "work performed on [the] prevailing motion," *see id.*, in the same way that, for example, California courts have held that work performed in prior necessary administrative proceedings can be considered part of an "action" for which fees are awarded under section 1021.5 of the Code of Civil Procedure. *See Best*, 193 Cal. App. 3d at 1461. DFEH is therefore entitled to $93,585 for the 162.1 hours its attorneys spent engaging in informal negotiations as required by the consent decree before DFEH brought its motion.[4]

DFEH's fees and costs incurred to review LSAC's files in Pennsylvania raise a different question. DFEH seeks $81,982.50 for 143.6 hours of work, including travel to and from Pennsylvania. Carrasco Decl. (dkt. 289-1) ¶ 16. The consent decree specifically contemplated that DFEH and the United States would have access to LSAC's files in order to evaluate LSAC's compliance with the decree and the work of an independent monitor appointed under the decree. Consent Decree ¶¶ 23, 26(a). Unlike the negotiations addressed above, DFEH's review of LSAC's files was not itself an effort to raise and resolve a dispute regarding violations, but rather an investigation of whether any violations had occurred. Such an investigation is not analogous to the administrative proceedings and prior litigation addressed in the cases on which DFEH relies for an expansive interpretation of the phrase "work performed on any prevailing motion" in the consent decree's fee-shifting provision, regardless of the undisputed relevance of information obtained during the investigation. Because vigilant oversight of LSAC's performance likely would have required much the same work by DFEH regardless of whether LSAC violated the decree, and regardless of whether such violations necessitated a motion to enforce the decree, DFEH's fees incurred in sending attorneys to Pennsylvania to review LSAC's files are not recoverable.

DFEH requests for $4,077.54 in costs, including both travel to Pennsylvania and costs

---

[4] For the same reason, the Court rejects LSAC's argument that DFEH cannot recover fees for 20.4 "hybrid" hours that DFEH characterizes as related to bringing the motion, but LSAC contends were also relevant to negotiations. *See* Opp'n at 7; Reply at 9–10.

8

incurred appearing at the hearing on the contempt motion. Mayeda Decl. (dkt. 282-1) ¶ 22. Because DFEH has not submitted any breakdown of those costs to allow the Court to differentiate costs incurred traveling to Pennsylvania (which are not recoverable) from costs incurred appearing at the hearing, and because several days of travel to Pennsylvania likely account for a significantly greater portion of the total than a single day's hearing in California (where DFEH's counsel is based), the request for costs is DENIED in full.

### 2. Preparing and Litigating the Motion for Contempt

DFEH seeks $343,488.50 for 613.8 hours that four attorneys worked to brief and argue the motion for contempt. Carrasco Decl. ¶ 16. Those figures account for DFEH's concession in its reply brief to withdraw its request for compensation for ten hours of work by Joni Carrasco, based on LSAC's objection that DFEH's counsel billed excessive and duplicative time for internal communications. *See* Reply at 10. DFEH also asserts that it has declined to claim fees for five other attorneys who worked on the matter, and that it has excluded an additional 832.8 hours of time by the four attorneys whose fees DFEH seeks to recover. Mayeda Decl. ¶¶ 6, 17–18.

LSAC argues that the fees DFEH claims are excessive, pointing to, for example, 51.7 hours spent on internal communications (of which DFEH has now agreed to withdraw 10), 39.8 hours that a junior attorney spent preparing research memoranda, 3.2 hours by the same attorney preparing a declaration that was not ultimately submitted,[5] and purportedly unnecessary overlap between time that Mari Mayeda spent preparing briefs and time that Joni Carrasco spent preparing to argue the motion. Opp'n at 7–9. LSAC speculates that some of DFEH's time might have been spent as training for junior attorneys, which is not reasonable work for the purpose of a lodestar analysis. *See id.*

Although only hours reasonably expended are compensable, courts are generally deferential to a prevailing party's staffing decisions:

> It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating

---

[5] DFEH's counsel Joni Carrasco notes in a declaration submitted with DFEH's reply that this declaration was not used because the declarant feared retaliation for participating in this action, and thus ultimately did not wish to have DFEH submit the declaration. Carrasco Decl. ¶ 12.

9

> their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Although this case involves salaried state attorneys rather than private counsel working on a contingency basis as in *Moreno*, the fact remains that neither DFEH nor its attorneys had any guaranteed monetary incentive to spend unnecessary time on this case. DFEH faced significant uncertainty whether it would recover fees, and if so, how much, and the individual attorneys are salaried employees with little incentive to inflate their hours. Moreover, deference to the hours a party actually devoted to litigation is particularly appropriate where its adversary adopted a full-court-press strategy of vigorously litigating all possible issues in a case. *See In re Tobacco Cases I*, 216 Cal. App. 4th 570, 583–84 (2013) (affirming a fee award of nearly three million dollars for enforcement of a consent decree where the defendant "engaged in the type of litigation tactics pejoratively referred to as 'scorched earth'").

Here, the issues that LSAC litigated in the context of the contempt motion included such dubious arguments as, for example: (1) whether LSAC could disregard practices imposed by the expert panel's report if LSAC determined that a candidate failed to submit sufficient documentation, despite clear language in the report stating that its procedures applied in such circumstances, *see* Order Re Mot. for Contempt at 35; (2) whether a provision of the consent decree that required LSAC to grant certain accommodations without "further inquiry" allowed LSAC to condition such accommodation on a candidate submitting additional documentation or withdrawing other requests, *see id.* at 34–35; (3) whether a LSAC could report only a single person as having reviewed all requests for accommodation when the panel's report required multiple reviewers, *see id.* at 39; (4) whether LSAC could report that requests were "granted in full" and decline to report that it requested additional documentation where candidates revised their requests after LSAC presented them with an ultimatum that their original requests would be denied if they did not accept a lesser accommodation or submit additional documents, *see id.* at 36; and (5) whether the consent decree's requirement that LSAC make files available for review

10

by DFEH upon reasonable request allowed LSAC to refuse to show DFEH files marked "granted in full," despite LSAC's substantive violations in using that designation, *see id.* at 41–43. LSAC was, of course, entitled to defend itself against DFEH's motion, but in light of the fee-shifting provision in the consent decree, the consequence of such tactics is that LSAC faces significantly greater liability for DFEH's fees than it might have incurred if LSAC had chosen to concede issues on which it had little chance of prevailing.

With respect Kaitlin Toyama's 3.2 hours spent on a declaration not ultimately used because the declarant was afraid of retaliation, the standard for compensable fees is reasonableness, not prescience or perfection, and especially in the context of LSAC's approach to this litigation, the Court declines to fault DFEH for spending a small amount of time on work that did not pan out as useful. Nor is it excessive, for example, for Joni Carrasco to have spent slightly under fifty hours preparing for and attending the hearing where she argued for DFEH, given the extensive factual record and the wide range of disputed issues. The Court concludes that DFEH's time spent on the motion was reasonable.

DFEH's request for $343,488.50 in fees incurred bringing and arguing the motion for contempt is GRANTED.

### 3. Preparing and Litigating the Motion for Attorneys' Fees

"Absent unusual circumstances, [a prevailing party is] entitled to recover compensation for all the hours its attorneys spent in prosecuting the attorney fees motion." *Hogar Dulce Hogar*, 157 Cal. App. 4th at 1371. LSAC concedes that such "fees on fees" are generally recoverable, but argues that the fees requested here are excessive. Opp'n at 12–14. DFEH seeks $48,239.50 for seventy-eight hours of work on the present motion for attorneys' fees. Carrasco Decl. ¶¶ 16–17. While the total amount is perhaps somewhat high, the number of hours worked is not unreasonable given the briefing required and the amount of money at stake, and LSAC does not contest that hourly rates requested by DFEH accurately reflect prevailing market rates.

LSAC argues that DFEH violated the consent decree by filing its motion unilaterally rather than jointly with LSAC, relying on language in the decree stating that if the parties are not able to resolve a dispute regarding fees through informal negotiation, "they shall submit the matter to this

11

Court for binding determination." Opp'n at 13 (quoting Consent Decree ¶ 21(b)). The consent decree does not specify how such a dispute would be submitted, and the procedures for submitting a dispute to this Court are set by Civil Local Rules 7-1(a), which provides that "[a]ny written request to the Court for an order must be presented by one of" six enumerated means. Of those six options, only a noticed motion under Local Rule 7-2 would apply to a dispute regarding attorneys' fees. The use of the word "they" in the consent decree does not clearly demonstrate an intent to depart from the normal procedures of the Court, and the Court concludes that DFEH did not violate the decree by raising this dispute through a unilateral motion and allowing LSAC to respond.

LSAC also suggests that some of DFEH's fees could have been avoided if DFEH had waited an extra day for LSAC to respond to DFEH's demand before DFEH filed its motion. DFEH sent LSAC a revised tally of its requested fees via email on Thursday, July 5, 2018. Mew Decl. Ex. D. LSAC replied to DFEH's email the following day—Friday, July 6, 2018—to state that it would respond to DFEH's outstanding demand letter from mid-June "next week." *Id.* DFEH, believing that its revised statement of fees triggered a five-calendar-day response deadline under the terms of the consent decree, expected a response by the following Tuesday—July 10— and asserts that it acted reasonably by waiting until after the fifth business day—Thursday, July 12—to file its motion on the morning of Friday, July 13, 2018 when it did not receive a response. LSAC disputes that the five-day deadline applied to a revised statement of fees, as opposed to an initial statement of fees, and argues that had DFEH waited for a response (presumably to come later the same day), DFEH would not have needed to retain an expert witness or include arguments in its motion addressing whether the rates it seeks reflect the market, which LSAC does not now dispute.

Regardless of whether DFEH is correct that the consent decree required an earlier response, DFEH acted unreasonably. No deadline was pending for DFEH to file its motion. Upon receiving notice that LSAC intended to respond "next week," and not receiving a response as early that week as DFEH believed was required, DFEH might reasonably have: (1) insisted on a response by the deadline that it believed applied; (2) waited until the end of the week for LSAC to

12

respond; or (3) asked LSAC if it still intended to respond and when such a response would be provided. DFEH did none of those things, and instead filed its motion with the Court. LSAC is correct that some portion of DFEH's fees might have been avoided if DFEH had known LSAC did not intend to dispute DFEH's valuation of market rates.

DFEH does not seek to recover costs for retaining its expert witness, neither party has attempted to quantify the fees DFEH expended on preparing the portion of its motion directed to justifying the rates it chose, and LSAC does not identify any other ways in which fees might have been avoided if DFEH had waited for a response. As a rough approximation, three and a half pages of the combined thirty-two and a half pages of DFEH's motion and reply brief address the particular rates assessed for DFEH's attorneys (not including briefing addressing whether DFEH could recover market rates at all—an issue that LSAC continued to dispute). *See* Mot. at 8–11. The Court therefore reduces DFEH's fee award for preparation of the present motion by ten percent, and awards DFEH $43,415.55 for its work on the attorneys' fees motion.[6]

## IV. CONCLUSION

For the reasons discussed above, DFEH's motion is DENIED as to its request for fees and costs related to reviewing documents at LSAC's office in Pennsylvania, but GRANTED as to its requests for $93,585 for engaging in informal negotiations and $343,488.50 for litigating the motion for contempt, as well as a reduced award of $43,415.55 for bringing the present motion for

/ / /

/ / /

/ / /

/ / /

---

[6] LSAC also argues in its surreply that DFEH's fee award should be reduced because DFEH propounded interrogatories on LSAC during the briefing on this matter but did not use LSAC's responses in its reply brief, which LSAC contends is an abuse of the discovery process. Surreply (dkt. 290-2) at 5–6. DFEH has not sought to recover fees for the time it spent seeking that discovery. Even if LSAC were correct that DFEH's conduct was inappropriate—which it does not appear to have been, although the Court does not reach the issue—a belated argument to reduce DFEH's recovery of fees is not an appropriate way to present that issue, and LSAC offers no authority for the proposition that undue burden on an opponent should serve to reduce an award of fees to a party otherwise entitled to recover them.

13

fees. LSAC is ORDERED to pay DFEH a total of $480,489.05 no later than five days after the date of this order. *See* Consent Decree ¶ 21(b).

**IT IS SO ORDERED.**

Dated: November 5, 2018

JOSEPH C. SPERO
Chief Magistrate Judge